# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ROCKWELL AUTOMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1238-CFC |
| | ) | |
| PARCORP S.R.L. d/b/a WI AUTOMATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>STIPULATED PROTECTIVE ORDER</u>

WHEREAS, the Parties expect discovery in this litigation to involve the disclosure of certain documents, things, and information which may constitute trade secrets and/or other confidential research, development, or commercial information within the meaning of Federal Rule of Civil Procedure 26(c)(1)(G);

WHEREAS, the Parties desire to establish a mechanism to protect information produced by the Parties and Third Parties in this litigation in order to preserve the legitimate business interests of the Parties and Third Parties;

NOW THEREFORE, pursuant to Federal Rule of Civil Procedure 26(c), upon the stipulation and consent of the parties and for good cause shown,

IT IS HEREBY ORDERED that:

## **Definitions**

1.　　As used in this Protective Order, these terms have the following meanings:

　　　　a.　　"Discovery Material" means all hardcopy and electronic documents, testimony, pleadings, exhibits, and all other material or information produced or disclosed in this litigation, including, without limitation, information, documents, and things responsive to requests for production under Fed. R. Civ. P. 34; documents and things made available for inspection under Fed. R. Civ. P. 34; responses to written interrogatories under Fed. R. Civ. P. 33; responses to requests for admission under Fed. R. Civ. P. 36; testimony adduced at depositions upon oral examination or upon written questions pursuant to Fed. R. Civ. P. 30 and 31; expert reports and testimony; testimony during hearings or at trial; all other discovery taken pursuant to any applicable Federal and/or Local Rules, including third party discovery pursuant to Fed. R. Civ. P. 45; and matters in evidence and any other information hereafter furnished, directly or indirectly, by or on behalf of any Party, Third Party, or witness in connection with this litigation. This Protective Order and protections herein shall apply to all Discovery Material.

b.      "Producing Party" means any Party or any Third Party who produces or otherwise discloses, whether through formal or informal means, Discovery Material in this litigation.

c.      "Receiving Party" means any Party that receives information produced or otherwise disclosed, whether through formal or informal means, by any Producing Party in this litigation.

d.      "Confidential Information" means all non-public information that the Producing Party reasonably and in good faith believes should be protected from public disclosure because such information (i) is commercial, proprietary, non-public information, or other business information of commercial value to the Producing Party (e.g., confidential research, development, manufacturing, technical, commercial, or financial information); or (ii) implicates an individual's legitimate expectation of privacy. Confidential Information shall apply to all information, documents, and things within the scope of discovery in this litigation that are designated as containing or comprising Confidential Information. The information contained therein, any information derived from, and all copies, abstracts, excerpts, analyses, or other writings or testimony that contain, reflect, reveal, suggest, or otherwise disclose such information shall also be deemed Confidential Information. Information originally designated as Confidential

3

Information shall not retain that status after any ruling by the Court denying such status to it.

e.      "Highly Confidential Information" means any Confidential Information that the Producing Party reasonably and in good faith believes contains highly sensitive business or personal information, the improper use or disclosure of which could result in significant competitive or commercial disadvantage to the Producing Party, including but not limited to: (i) trade secrets; (ii) distribution processes and strategies; (iii) confidential technical information and know how; (iv) sensitive financial or commercial information, including without limitation business plans, marketing plans, customer information, distributor agreements and correspondence, pricing and discount information, and (v) information that the Producing Party reasonably believes to be subject to federal, state, or foreign data protection laws or other privacy obligations.

f.      "Protected Discovery Material" means Discovery Material designated by a Producing Party as "Confidential" or "Highly Confidential" pursuant to the terms of this Protective Order.

g.      "Inside Counsel" means any attorney who is an employee of a Party.

h.    "Designated Inside Counsel" means in-house attorneys that may be designated during this litigation pursuant to Paragraph 17(c) of this Protective Order.

i.    "Outside Counsel" means any attorney from a law firm that has made a formal appearance as counsel of record for a Party in this litigation and who is not an employee of a Party. **[Defendant's Proposal]** <u>Outside Counsel shall also include Mirko Palumbo, provided he agrees to subject himself to the jurisdiction of this Court and signs Exhibit A attached hereto.</u>

j.    "Expert" means a person with specialized knowledge or experience in a matter pertinent to this litigation who has been retained by a Party or its Inside or Outside Counsel to serve as an expert witness or as a consultant in this litigation who, at the time of retention, is not an officer, director, or employee of a Party or an Affiliate and is not anticipated to become an officer, director, or employee of a Party or an Affiliate. Nothing in this Protective Order purports to alter in any way the requirements for offering testimony under Fed. R. Evid. 703, or to define the term "expert" for purposes other than those addressed in this Protective Order.

k.    "Professional Vendor(s)" means persons or entities that provide litigation support services (e.g., messenger, photocopying, audio or video recording, stenography, translating, document processing and conversion,

5

document review, preparing exhibits or demonstrations, producing trial or hearing graphics and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

### Designation and Identification

2.    A Party or Third Party may designate any Discovery Material or portion thereof as Confidential or Highly Confidential in accordance with the definitions set forth above in Paragraphs 1.d and 1.e. of this Protective Order.  Any such designation shall constitute a representation to the Court that the designating Party in good faith believes that the Discovery Material so designated meets the relevant definition set forth above in Paragraph 1.d or 1.e. and is entitled to protection from disclosure under Fed. R. Civ. P. 26(c) or otherwise.

3.    When producing documents containing Protected Discovery Material, the Producing Party shall mark each page of the document such that the Receiving Party may reasonably determine the identity of the Producing Party. This may be accomplished, e.g., through the use of a unique Bates prefix for each Producing Party.

4.    For documents or copies containing Protected Discovery Material produced as a static image, the Producing Party shall conspicuously mark each page of the document or copy with the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

5.      For documents containing Protected Discovery Material produced in native format, the Producing Party shall include the appropriate confidentiality designation in the file name and/or slip sheet produced with the native format. Any copies of such designated documents that have been printed or converted to Portable Document Format ("PDF") by the Receiving Party shall be marked at the time of printing/PDF conversion with the appropriate confidentiality designation to ensure appropriate protection.

6.      For all documents produced that contain Protected Discovery Material, the Producing Party will also include in the load file corresponding to those documents the appropriate designation that includes the appropriate level of protection (i.e., "Confidential" or "Highly Confidential").

7.      Information revealed by inspection of things and premises under Fed. R. Civ. P. 34, shall be treated as though it were designated "Highly Confidential" provided that, prior to or at any time up to thirty (30) calendar days  after the inspection, the Party permitting inspection specifically identifies in writing which of the Discovery Material qualifies for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL") to each page. There will be no waiver of confidentiality, or any privilege or immunity, by the inspection of Discovery Material before it is copied and marked pursuant to this

Order. Inspection of Discovery Material by any Party shall be conducted by persons eligible under Paragraphs 16 or 17 below.

8.      For information produced in some form other than documentary form and for any other tangible items, the Producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

9.      Testimony or information disclosed at a deposition may be designated by a Party or Third Party as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by indicating on the record at the deposition the testimony or information contains "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" materials. Alternatively, a Party or Third Party may designate testimony or information disclosed at a deposition as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by notifying all parties, in writing, within ten (10) business days following the deposition. Transcripts containing Protected Discovery Material shall have an obvious legend on the title page that the transcript contains Protected Discovery Material, using the appropriate designation of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

The designating Party or Third Party shall inform the court reporter of these requirements.

10.    Third Parties may designate as "Confidential" or "Highly Confidential" deposition transcripts of their witnesses and any Discovery Material they produce, whether voluntarily or by subpoena, to the same extent and in the same manner as Parties and any such Protected Discovery Material shall be treated by the Parties in the same manner as the Protected Discovery Material produced by a Party. Third Parties shall have the same rights and obligations under this Protective Order as parties and may move the Court to enforce the provisions of this Protective Order.

## Use

11.    All Protected Discovery Material shall not be used for any purpose whatsoever other than the prosecution or defense of this litigation , including any appeal thereof. Any other use is prohibited except by consent of the designating Party or by order of the Court. Notwithstanding the above, a Party is free to do whatever it desires with its own Protected Discovery Material.

12.    If a Party responsible for creating a captioned document in this litigation (e.g., brief, court filing, expert report, etc.) believes in good faith that the document contains either its own Protected Discovery Material or that of another Party or Third Party, it shall conspicuously mark the first page of the document with the

designation "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" and limit access to said document consistent with the provisions of this Order.

13.    Any pleading, brief, declaration, affidavit, expert report, or other filing that contains, describes, or discusses Protected Discovery Material shall be filed under seal pursuant to the requirements of D. Del. LR 5.1.3 and the Court's CM/ECF procedures. The filing Party shall conspicuously mark the first page of the document with the designation "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." The sealed material shall not be opened or released from the custody of the Clerk of Court except by Order of the Court. Outside Counsel for the Party filing papers containing, describing, or discussing Protected Discovery Material shall be responsible for providing appropriately redacted copies of the filed document to the Court in accordance with paragraph (G)(1) of the United States District Court for the District of Delaware's Administrative Procedures Governing Filing and Service by Electronic Means, Revised May 2019. If the filing contains the Protected Discovery Material of a Party or Third Party who did not file the document, within three (3) calendar days from the date of a filing made under seal, Outside Counsel for the filing Party or filing Third Party shall deliver to Outside Counsel for the non-filing Party or Third Party a proposed public version of the filing that was made under seal if it contains the non-filing Party's or non-Party's Protected Discovery Material, and this proposed public version shall

include redactions of Protected Discovery Material. Within three (3) calendar days after receipt of the proposed public version, Outside Counsel for the non-filing Party or non-Party shall provide any additional redactions it believes appropriate. Redacted versions of papers filed under seal may be made publicly available provided that (a) all Protected Discovery Material is redacted; and (b) such redacted versions are clearly marked "Public Version," and clearly identify each place where information or exhibits have been redacted or deleted.

14.     At the deposition of any fact witness, unless agreed to by the designating Party, such witness may be shown Protected Discovery Material if, and only if, the Protected Discovery Material reveals on its face that the deponent or witness authored, prepared, executed, had knowledge of the substance of, or received the Protected Discovery Material in the ordinary course of business and outside the context of this litigation. Notwithstanding the foregoing, any witness who is a currently employed officer, employee, or expert of a Party, or who has been designated pursuant to Fed. R. Civ. P. 30(b)(6) to testify on behalf of a Party, may be shown Protected Discovery Material designated by that Party.

15.     Outside Counsel shall have the right to exclude from depositions, other than the deponent and the reporter, any person who is not authorized under this Protective Order to receive Protected Discovery Material. Such right of exclusion shall be applicable only during periods of examination or testimony directed to

11

Protected Discovery Material. The failure of individuals other than the deponent and the reporter to leave the deposition room during any portion of the deposition that inquiries into matters designated Confidential or Highly Confidential shall constitute justification for Outside Counsel to instruct the witness that he or she should not answer the question and, if the failure persists, to end the deposition without an obligation to continue or reschedule the deposition.

## Disclosure and Access

16.    Unless otherwise directed by the Court or authorized in writing by the designating Party, Highly Confidential Information may be disclosed by the Receiving Party only to the following persons:

        a.    A court and its staff;

        b.    Outside Counsel, their law firms, their employees and agents;

        c.    Persons shown on the face of a document to have authored or received it, any person who has previously seen or was aware of it, and/or the Producing Party or its director, officer or designated representative (e.g., a 30(b)(6) witness);

        d.    Any Expert who is expressly retained by any Outside Counsel or Designated Inside Counsel to assist in this litigation, as well as their support personnel acting under their supervision, with disclosure only to the extent necessary to perform such work;

e.    Any expressly retained court reporter or other shorthand reporter or typist that is not an employee of or otherwise affiliated with a Party who is recording or transcribing documents or testimony in connection with this litigation;

f.    Any expressly retained interpreter or translator that is not an employee of or otherwise affiliated with a Party who is translating documents or testimony in connection with this litigation;

g.    Their Professional Vendors;

h.    Any other person requested by the Receiving Party and agreed to by the Producing Party in writing; and,

i.    [Rockwell's Proposal] John Miller, Esq. (VP & Chief IP Counsel – Rockwell Automation, Inc.).

17.    Unless otherwise directed by the Court or authorized in writing by the designating Party, Confidential Information may be disclosed by the Receiving Party only to the following persons:

a.    The persons identified in Paragraph 16.

b.    Their Inside Counsel who, because of their duties and responsibilities, require access to Confidential Information;

c.    No more than five (5) designated employees of the Receiving Party working under the direct supervision of Inside or Outside Counsel

who, because of their duties and responsibilities, require access to Confidential Information;

  d. Other outside persons (i.e., persons not currently employed by any Party) who are retained by a Party, its Inside Counsel or its Outside Counsel to provide assistance as mock jurors or focus group members or the like, or to furnish technical or expert services, and/or to give testimony; and

  e. Any other person requested by the Receiving Party and agreed to by the Producing Party in writing.

18. Protected Discovery Material shall not be disclosed to any person qualifying as a recipient of Protected Discovery Material only under Paragraphs 16.d., 16.e., 16.f., 16.h., **[Rockwell's Proposal]**16.i., 17.c., 17.d., or 17.e. unless and until such person has executed an acknowledgement in the form attached as Exhibit A. Either Outside Counsel or Designated Inside Counsel must maintain a copy of the executed Exhibit A for each such person during this litigation and for a period of one year thereafter.

19. As a condition precedent to disclosure of any Protected Discovery Materials to an individual described above in Paragraphs 16.d., 16.f., 16.h., 17.c. or 17.e. at least seven (7) calendar days before the disclosure of the Protected Discovery Material is made, Outside Counsel for the Receiving Party shall serve a Notice on the designating Party identifying such individual by name and including

a curriculum vitae ("CV") or equivalent resume disclosing the individual's employment history, past or present relationship with any of the Parties and their officers, directors and employees, all cases in which the individual has testified in a deposition or a trial in the past five (5) years, and an executed acknowledgment from the individual to whom the disclosure is to be made, in the form of Exhibit A attached hereto. If a designating Party objects to the proposed disclosure to such individual, the Parties shall promptly confer in good faith to resolve the concerns giving rise to the objection. If the Parties are unable to reach agreement regarding such disclosure, the objecting Party must apply to the Court for a protective order no later than fourteen (14) calendar days after receipt of the executed acknowledgement in the form attached as Exhibit A and the CV or resume, or as otherwise directed by the Court. The objecting party shall seek to have the dispute heard by the Court as soon as is practicable. If no such motion is made, Protected Discovery Material may be disclosed to the individual. If a motion for a protective order is made, Protected Discovery Material may not be disclosed to the individual until the Court has ruled upon the motion, and then only in accordance with the ruling so made.

20.    The recipient of any Protected Discovery Material that is provided under this Protective Order (including any copies or excerpts made thereof) shall maintain such information in a secure and safe area and shall exercise reasonable

and proper care with respect to the storage, custody, use, and/or dissemination of such information. The recipient of Protected Discovery Material produced in electronic form shall maintain such Protected Discovery Material on a secure, password-protected computer, drive, or server with access restricted to persons authorized under Paragraphs 16 and 17.

21.    In the event of disclosure of Protected Discovery Material to any person not authorized to such access under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately inform Outside Counsel for the Party whose Protected Discovery Material has been disclosed of all known relevant information concerning the nature and circumstances of the disclosure. The Party responsible for improperly disclosing such Protected Discovery Material shall also promptly take all reasonable measures to retrieve the improperly disclosed Protected Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made.

## **Objections and Exclusions**

22.    Any Receiving Party may object to the designation by the designating Party of any Discovery Material as Protected Discovery Material. The process for making an objection to the designation and for resolving the dispute shall be as follows:

a.    Outside Counsel for the Receiving Party shall notify Outside Counsel for the designating Party in writing as to its objection(s) to the designations. This notice shall include, at a minimum, a specific identification of the designated Protected Discovery Material as well as the reasons for the objection.

b.    Outside Counsel for the Receiving Party shall thereafter have the burden of conferring within seven (7) calendar days with Outside Counsel for the designating Party claiming protection (as well as any other interested Third Party) in a good-faith effort to resolve the dispute.

c.    Failing agreement, the Receiving Party may apply to the Court for a ruling that the Discovery Material sought to be protected is not entitled to such designation. The Producing Party bears the burden to establish that the Discovery Material is Protected Discovery Material as defined in Paragraphs 1.d or 1.e. and therefore entitled to such protection under this Protective Order.

d.    Notwithstanding any such challenge to the designation of Discovery Material as Protected Discovery Material, all such material so designated shall be treated as such and shall be subject to the provisions of this Protective Order until one of the following occurs: (a) the Party which designated the material as Protected Discovery Material withdraws such

designation in writing, or (b) the Court rules that the designation is not proper and that the designation be removed.

23.     Discovery Material is not properly designated as Protected Discovery Material if it has/had been:

        a.     available to the public at the time of its production hereunder;

        b.     available to the public after the time of its production through no act, or failure to act, on behalf of the Receiving Party, its counsel, representatives, or experts;

        c.     known to such Receiving Party, or shown to have been independently developed by such Receiving Party, prior to its production herein without the use or benefit of Discovery Material;

        d.     obtained outside of this litigation by such Receiving Party from the Producing Party without having been designated as Protected Discovery Material; provided, however, that this provision does not negate a protective order in another action or any other pre-existing obligation of confidentiality;

        e.     previously produced, disclosed, and/or provided by the Producing Party to the Receiving Party or any Third Party without an obligation of confidentiality; or

f.    obtained by the Receiving Party from a Third Party provided the production by the Third Party did not violate this Protective Order or a protective order in another action or any other pre-existing obligation of confidentiality.

## No Inadvertent Waiver of Privilege

24.    The Parties acknowledge that, while each Party will endeavor to identify and withhold from production any document which that party believes is protected by the attorney-client privilege or work-product doctrine (hereinafter referred to, in either case, as "privileged"), given the volume and nature of material being exchanged, there is a possibility that certain such privileged material may be produced inadvertently. Accordingly, the Parties have agreed to the following non-waiver agreement. A Party who produces any privileged document without intending to waive the claim of privilege associated with such document may, within fourteen (14) calendar days after the Producing Party actually discovers that such inadvertent production occurred, amend its discovery response and notify the other Party that such document was inadvertently produced and should have been withheld as privileged ("Inadvertently Produced Document". Once the Producing Party provides such notice to the Receiving Party, the Receiving Party must take reasonable efforts to promptly return the specified Inadvertently Produced Document and destroy any copies thereof. By complying with this obligation, the

Receiving Party does not waive any right it has to challenge the assertion of privilege and request an order of the Court denying such privilege.

25.    If the claim of privilege is disputed, a single copy of the Inadvertently Produced Document at issue may be retained by the Receiving Party for the exclusive purpose of seeking a prompt judicial determination of the matter. The Parties shall engage in reasonable meet-and-confer efforts to resolve any disputes concerning whether an Inadvertently Produced Document is actually privileged. If, after a reasonable effort to meet-and-confer to resolve any disputes concerning whether any Inadvertently Produced Document is privileged, the Receiving Party may seek court intervention.

### Inadvertent Failure to Designate

26.    The inadvertent failure by a Party to designate Discovery Material as Protected Discovery Material shall not be a waiver of such designation provided that the party that fails to make such designation informs the Receiving Party that such Discovery Material is Protected Discovery Material promptly but not more than fourteen (14) calendar days after the failure to designate first became known to the designating Party. The failure by a designating Party to designate Discovery Material as Protected Discovery Material shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The Receiving Party in receipt of Discovery Material that the designating

Party failed to designate as Protected Discovery Material shall not be in violation of this Protective Order for any use made of such Discovery Material before the Receiving Party is informed of the failure to designate. Once the Receiving Party has been informed of the failure to designate pursuant to this Paragraph, the Receiving Party shall take reasonable steps to, at the designating Party's option, either ensure that all copies of any such Discovery Materials are returned promptly to the designating Party or ensure that all copies of any such Discovery Materials are marked with the proper designation and distributed only as permitted under this Protective Order.

### **Return / Destruction of Materials**

27.    Not later than ninety (90) calendar days after the termination of this litigation, all Protected Discovery Material, including all copies thereof, shall be returned to the Producing Party or destroyed, such election to be made by the Receiving Party, except that (a) Outside Counsel for each Party may each retain one (1) archival copy of all papers filed with the Court, expert reports, discovery responses, transcripts of testimony and exhibits, correspondence, mediation briefs, and their own work product containing such Discovery Material, and (b) each Party (under the custody and control of Designated Inside Counsel) may retain one (1) archival copy of all papers filed with the Court, trial transcripts, trial exhibits, expert reports, correspondence, and attorney work product containing such

Discovery Material, and provided that such Party, and their respective Outside Counsel, Designated Inside Counsel, and their respective employees shall not disclose any Party's Protected Discovery Material contained therein to any person or entity except pursuant to a written agreement with the Producing Party or as otherwise provided in this Protective Order and shall maintain the safeguards set forth in Paragraph

28.    Not later than ninety (90) calendar days after the termination of this litigation, the Party receiving any Protected Discovery Material shall certify in writing that all such material has been returned or destroyed.

## **Miscellaneous**

29.    It is not the intent of the Parties, or of the Court, that an attorney or law firm that acquires knowledge of or is given access to Protected Discovery Material pursuant to this Order should thereby be disqualified from other representations adverse to the designating Party on account of such knowledge or access.

30.    No action taken in accordance with this Protective Order shall be construed as a waiver of any claim or defense in the action or of any position as to discoverability or admissibility of evidence.

31.    Nothing in this Discovery Confidentiality Order shall bar or otherwise restrict any attorney from rendering advice to or seeking information from a party-client or, in the course thereof, relying upon his or her knowledge of Protected

Discovery Material; provided, however, that in rendering such advice or seeking such information the attorney shall not disclose any Protected Discovery Material to unauthorized persons.

32.    The obligations imposed by the Discovery Confidentiality Order shall survive the termination of this action.

33.    This Protective Order is without prejudice to the right of any Party to seek further or additional protection of information for which the protection of this Protective Order is not believed by any Party to be adequate. Nothing in this Protective Order shall be deemed to bar or preclude any Producing Party from seeking such additional protection, including, without limitation, an Order that certain information may not be discovered at all.

34.    The entry of this Protective Order shall not be construed as a waiver of any right to object to the furnishing of information in response to discovery, and except as expressly provided, shall not relieve any party of the obligation of producing information in the course of discovery.

35.    Execution of this Protective Order shall not constitute a waiver of the right of any Party to claim in this litigation or otherwise that any document, communication, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this litigation or any other proceeding.

36.     By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this Order who becomes subject to a motion to disclose another party's information designated as Confidential or Highly Confidential pursuant to this Order shall promptly notify that party of the motion so that the party may have any opportunity to appear and be heard on whether that information should be disclosed.

37.     If at any time Protected Discovery Material is subpoenaed from a Receiving Party or is the subject of a discovery request directed to a Receiving Party in any proceeding before any court or arbitral, administrative, or legislative body, the person to whom the subpoena or other request is directed shall immediately give notice to the designating Party and shall provide the designating Party with an opportunity to object to the production of such materials. If the designating Party does not move for a protective order within fourteen (14) calendar days of the date written notice is given, the Receiving Party to whom the subpoena or other request is directed may produce, on or after the date set for production in the subpoena or other request, but not prior to the end of the fourteen (14) calendar day notice period, such material in response thereto, under a

24

protective order with confidentiality provisions equal to or more restrictive than those of this Protective Order.

38.    This Order may be amended by the agreement of Outside Counsel for the Parties in the form of a written Stipulated Amended Protective Order signed by each Party's Outside Counsel and filed with the Court for approval. The Court retains the right to allow disclosure of any subject or Protected Discovery Material covered by this Protective Order or to modify or vacate this Protective Order at any time in the interest of justice.

The undersigned counsel of record, subject to the approval of the Court, request that the Court enter the above Order as an order of the Court, and stipulate that the Order shall constitute a binding contract among the Parties and their counsel.

HEYMAN ENERIO GATTUSO & HIRZEL LLP

/s/    Dominick T. Gattuso
Dominick T. Gattuso (No. 3630)
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7311
dgattuso@hegh.law

*Attorney for Plaintiff*

Dated: March 16, 2022

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/    Pilar G. Kraman
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com

*Attorneys for Defendant*

SO ORDERED this _____ day of_____, 2022.

_____
United States District Court Judge

**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCKWELL AUTOMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1238-CFC |
| | ) | |
| PARCORP S.R.L. d/b/a WI AUTOMATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**AGREEMENT TO BE BOUND BY PROTECTIVE ORDER**

I, _____, declare under penalty of perjury that:

(a)    My present address is _____ .

(b)    My present employer is _____

and the address of my present employer is _____ .

(c)    My present occupation or job description is _____ .

(d)    I have received and carefully read the Protective Order in this

litigation dated _____ and understand its provisions. Specifically, I

understand that I am obligated, under order of the Court, to hold in confidence and

not to disclose the contents of anything marked "CONFIDENTIAL" or "HIGHLY

1

CONFIDENTIAL" except as permitted by the Protective Order. I further understand that I am not to disclose to anyone other than those persons identified in Paragraphs 16 or 17 of the Protective Order any words, substances, summaries, abstracts, or indices of any Protected Discovery Material disclosed to me. According to the restrictions of Paragraph 11 of the Protective Order, I will use Discovery Material, including Protected Discovery Material, or information derived therefrom, solely for purposes specified therein. In addition to the foregoing, I understand that I must abide by all of the provisions of the Protective Order.

(e)    At the termination of this litigation or any time requested by Outside Counsel for the Party by whom I am engaged, I will return or destroy all documents and other materials, including notes, computer data, summaries, abstracts, or any other materials containing or reflecting Protected Discovery Material which have come into my possession, and will return or destroy all documents or things I have prepared relating to or reflecting such information.

(f)    I understand that if I violate the provisions of the Protective Order, I will be in violation of a Court Order and subject to sanctions or other remedies that may be imposed by the Court and potentially liable in a civil action for damages by the Producing Party. I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this litigation.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Date: _____        _____

                                   Signature

**EXHIBIT 2**

| | |
|---|---|
| **From:** | Kraman, Pilar <PKraman@ycst.com> |
| **Sent:** | Friday, March 4, 2022 3:19 PM |
| **To:** | Tanck, Paul; 'Dominick Gattuso'; 'Alvarez, Eric'; McLaughlin, Neal |
| **Cc:** | 'Kasolas, Bob'; 'Rachel Marshall'; Choi, Nick |
| **Subject:** | RE: WiAutomation Initial Disclosures |

**EXTERNAL SENDER – Proceed with caution**

Paul,

As we have stated several times now, Mr. Palumbo agrees to submit to the jurisdiction of the court and is strictly outside counsel for Defendant.  Mr. Palumbo is a sole practitioner.  He shares an office with another attorney who does criminal law.  He does not have a website, but you can find his Facebook page by searching for "Studio Legale Olimpico."  As you are already aware, Defendant does not have in-house counsel.  Mr. Palumbo's relationship with Defendant began a year ago when he was retained to assist with corporate legal matters (contracts, employment law, etc.).  The only argument Rockwell has made to bar Mr. Palumbo is his status as a non-US lawyer.  As such, under _this court's_ jurisprudence, Rockwell has no basis to object to Mr. Palumbo's access under the protective order.  The ITC's practices with respect to Protective Orders have no bearing here.  _This court_ has repeatedly acknowledged that "outside" corporate counsel should not be treated differently merely because they are not in-house (as reflected in the _Evertz_ case I shared with you).  And, similarly, _this court_ has repeatedly acknowledged that non-US counsel should not be barred assuming they agree to submit to this court's jurisdiction, which Mr. Palumbo has agreed to do.  We will happily let the court decide this issue for you, but it is Defendant's view that such a dispute would be a waste of attorney time and the court's resources.  This is particularly true considering Judge Connolly typically refers discovery disputes to Judge Hall, and you clearly are aware of Judge Hall's views on this matter.

Please let us know if Rockwell will reconsider its position.

Pilar

**Pilar G. Kraman**, **Partner**
(she/her/hers)
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
P:  302.576.3586
PKraman@ycst.com | www.youngconaway.com | vCard

---

**From:** Tanck, Paul <Paul.Tanck@alston.com>
**Sent:** Thursday, March 3, 2022 1:35 PM
**To:** Kraman, Pilar <PKraman@ycst.com>; 'Dominick Gattuso' <dgattuso@hegh.law>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; 'Rachel Marshall' <RMarshall@hegh.law>; Choi, Nick <Nick.Choi@alston.com>
**Subject:** RE: WiAutomation Initial Disclosures

Hi Pilar,

That time works for us. Please send a meeting invite with the dial information.

As we stated previously, John Miller is VP and Chief IP Counsel for Plaintiff.  He is responsible for supervising the company's IP litigation, patent and trademark prosecution and technology licensing.  He is not involved in the competitive decision-making of the company, including no role in company decisions involving pricing, sales, or product design.

With regards to authority barring foreign outside counsel under a protective order, the issue is regularly addressed at the International Trade Commission ("ITC").  The ITC,  frequently deals with foreign attorneys and has repeatedly denied foreign counsel access to a party's confidential business information because they are not subject to the ITC's jurisdiction and control. *See In the Matter of Certain Sortation Sys., Parts Therefore, and Prods. Containing Same,* Inv. No. 337-TA-460, Orders No. 16 & 9, 2002 WL 266793 (Int'l Trade Comm'n Feb. 19, 2002); *In the Matter of Certain Flooring Prods.,* Inv. No. 337-TA-443, Order No. 9, 2001 WL 224539 (Int'l Trade Comm'n Mar. 6, 2001); *In the Matter of Certain Electric Power Tools, Battery Cartridges and Battery Chargers,* Inv. No. 337-TA-284, Order No. 24, 1988 WL 582963 (Int'l Trade Comm'n Dec. 12, 1988); *see also Red Bend Ltd. v. Google Inc.,* 09cv11813, Dkt. 38 (D. Mass 2009) (Transcript of Motion Hearing held on January 19, 2010, before Judge Woodlock granting access to confidential information to US in-house counsel and denying request to add foreign outside counsel to Protective Order on the basis that unlike the US in-house counsel,  there was no way to enforce a violation of the protective order against a foreign Israeli lawyer, even if she had agreed to be bound by the protective order.")

Notably, even courts that have permitted a party's U.S. in-house counsel to view the opposing party's confidential information have recognized that "in-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions." *U.S. Steel,* 730 F.2d at 1468. As the ITC has held, there are no equivalent guarantees for foreign counsel. *E.g., In the Matter of Certain Sortation Sys., Parts Therefore, and Prods. Containing Same,* 2002 WL 266793.

Here, It is not clear whether or how the protective order could be enforced against a foreign national like Mr. Palumbo in Italy, who is not a party to the action, who has not (and cannot) appear as counsel in the action, who is not admitted to practice anywhere in the United States, and who is outside the personal jurisdiction of this (and every other) U.S. federal court.  It is not clear (and no explanation has been provided) as to why Mr. Palumbo would require access to Plaintiff's highly confidential information.  Moreover, we have not been provided with any information, despite our multiple requests, as to who Mr. Palumbo is and the extent of his relationship with Defendant.  Defendant is amply represented by two sets of US counsel and it does not appear necessary for Mr. Palumbo, who is not licensed to practice US law and is not involved in litigating this case, to access Plaintiff's highly confidential information.

Finally, the *Everest* case that you provided is distinguishable. The footnote 2 states that the party challenging access to Canadian outside counsel never raised the foreign jurisdictional issue as a basis to deny access to confidential information and therefore the issue was never squarely before the Court.  Moreover, the Court was provided with information regarding the extent of the relationship between Canadian counsel and its client, which was not provided for Mr. Palumbo.  Without information about Mr. Palumbo we cannot assess the risk of or opportunity for inadvertent disclosure of confidential information.

By tomorrow, please provide the information we requested previously regarding Mr. Palumbo.

We look forward to speaking with you on Monday.

Best,

Paul

**From:** Kraman, Pilar <PKraman@ycst.com>
**Sent:** Wednesday, March 2, 2022 5:43 PM
**To:** 'Dominick Gattuso' <dgattuso@hegh.law>; Kraman, Pilar <PKraman@ycst.com>; Tanck, Paul <Paul.Tanck@alston.com>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; 'Rachel Marshall' <RMarshall@hegh.law>; Choi, Nick <Nick.Choi@alston.com>
**Subject:** RE: WiAutomation Initial Disclosures

**EXTERNAL SENDER – Proceed with caution**

The relevant information has not been provided, but we can discuss that during the meet and confer.  We are available on Monday at 10 am ET.  If that works for you I will circulate a dial in.

Pilar

**Pilar G. Kraman, Partner**
(she/her/hers)
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
P:  302.576.3586
PKraman@ycst.com | www.youngconaway.com | vCard

**From:** Dominick Gattuso <dgattuso@hegh.law>
**Sent:** Wednesday, March 2, 2022 4:31 PM
**To:** Kraman, Pilar <PKraman@ycst.com>; 'Tanck, Paul' <Paul.Tanck@alston.com>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Rachel Marshall <RMarshall@hegh.law>; Choi, Nick <Nick.Choi@alston.com>
**Subject:** RE: WiAutomation Initial Disclosures

Pilar:

Rockwell will agree to an extension of the deadline to submit the protective order until Monday.  You may e-sign the stipulation on my behalf.  Paul provided the relevant information regarding Mr. Miller, Rockwell's in-house counsel, in his prior email.  As you know, protective orders entered in this jurisdiction frequently permit in-house counsel who, like Mr. Miller, are not competitive decision makers to have access to highly confidential information produced in the litigation.  To the extent your client objects, you are of course free to raise that objection via the Court's procedures for protective order disputes.

As for Mr. Palumbo, Paul generally identified Rockwell's concerns with his receiving access to Rockwell's highly confidential information.  You are welcome to provide authority where this Court has permitted a foreign individual who is neither a party nor in-house counsel for a party with access to a party's highly confidential information

over that party's objection.  We are available to meet and confer tomorrow on this issue and will certainly consider any authority you provide.  However, Rockwell presently intends to raise an objection with the Court on this issue.

Best,

Dominick



Dominick T. Gattuso

HEYMAN ENERIO GATTUSO & HIRZEL LLP

300 Delaware Ave., Suite 200
Wilmington, DE 19801
Office: (302) 472-7311
Mobile: (302) 559-6644
dgattuso@hegh.law

-----------------------------------

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.  HEYMAN ENERIO GATTUSO & HIRZEL LLP does not render tax or securities advice.

**From:** Kraman, Pilar <PKraman@ycst.com>
**Sent:** Wednesday, March 2, 2022 3:47 PM
**To:** Dominick Gattuso <dgattuso@hegh.law>; 'Tanck, Paul' <Paul.Tanck@alston.com>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Rachel Marshall <RMarshall@hegh.law>; Choi, Nick <Nick.Choi@alston.com>
**Subject:** RE: WiAutomation Initial Disclosures

Stipulation attached.

Thanks,

Pilar

**Pilar G. Kraman, Partner**
(she/her/hers)
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
P:  302.576.3586
PKraman@ycst.com | www.youngconaway.com | vCard

**From:** Kraman, Pilar <PKraman@ycst.com>
**Sent:** Wednesday, March 2, 2022 3:36 PM

**To:** 'Dominick Gattuso' <dgattuso@hegh.law>; 'Tanck, Paul' <Paul.Tanck@alston.com>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Rachel Marshall <RMarshall@hegh.law>; Choi, Nick <Nick.Choi@alston.com>
**Subject:** RE: WiAutomation Initial Disclosures

I may be missing something, but I am not aware of a meet and confer on the protective order.  For the meet and confer to be productive, it would be helpful for you all to provide more information regarding Rockwell's in-house designee (per my earlier email).  I would also be interested in authority you have for the proposition that a non-US attorney should be barred simply for that reason, particularly when he is agreeing to submit to this court's jurisdiction.

I will be in touch regarding the meet and confer when I know Bob's availability.  I think it makes sense to extend this deadline a few more days.  I will circulate a stipulation.

**Pilar G. Kraman**, **Partner**
(she/her/hers)
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
P:  302.576.3586
PKraman@ycst.com | www.youngconaway.com | vCard

---

**From:** Dominick Gattuso <dgattuso@hegh.law>
**Sent:** Wednesday, March 2, 2022 3:25 PM
**To:** Kraman, Pilar <PKraman@ycst.com>; 'Tanck, Paul' <Paul.Tanck@alston.com>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Rachel Marshall <RMarshall@hegh.law>; Choi, Nick <Nick.Choi@alston.com>
**Subject:** RE: WiAutomation Initial Disclosures

Pilar:

Given that the parties have already discussed these issues, we do not think another meet and confer is necessary or will likely be helpful. However, if WI requires additional time and/or believes a further meet and confer would be helpful, please circulate a stipulation extending the date to submit the proposed protective order until tomorrow and provide a time WI is available to meet and confer during the window Paul offered earlier.

Best,

Dominick



Dominick T. Gattuso
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Ave., Suite 200

Wilmington, DE 19801
Office: (302) 472-7311
Mobile: (302) 559-6644
dgattuso@hegh.law

------------------------------------

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. HEYMAN ENERIO GATTUSO & HIRZEL LLP does not render tax or securities advice.

**From:** Kraman, Pilar <PKraman@ycst.com>
**Sent:** Wednesday, March 2, 2022 1:34 PM
**To:** 'Tanck, Paul' <Paul.Tanck@alston.com>; Dominick Gattuso <dgattuso@hegh.law>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Rachel Marshall <RMarshall@hegh.law>; Choi, Nick <Nick.Choi@alston.com>
**Subject:** RE: WiAutomation Initial Disclosures

Paul, I have not connected yet with Bob. In any event, please provide your basis for opposing Mr. Palumbo. Also, please provide information regarding the person you added for Rockwell, such that we can assess whether or not such person is a competitive decision maker (i.e., "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."). Since you only provided that proposal today, I am not sure we can get back to you today. Regardless, before any dispute can be requested, we need to have a verbal meet and confer per D. Del. LR 7.1.1.

Pilar

**Pilar G. Kraman, Partner**
(she/her/hers)
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
P:  302.576.3586
PKraman@ycst.com | www.youngconaway.com | vCard

**From:** Tanck, Paul <Paul.Tanck@alston.com>
**Sent:** Wednesday, March 2, 2022 11:12 AM
**To:** Kraman, Pilar <PKraman@ycst.com>; 'Dominick Gattuso' <dgattuso@hegh.law>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Rachel Marshall <RMarshall@hegh.law>; Choi, Nick <Nick.Choi@alston.com>
**Subject:** RE: WiAutomation Initial Disclosures

Hi Pilar,

Following up on my message below, we are unwilling to grant access to Mr. Palumbo.

Attached please see a final redline.  Please note that we have added one inhouse counsel who is not a competitive decision maker for plaintiff to be granted access to Highly Confidential information.

Please let us know if you agree to the changes.

If not, please let Dominick (cc'd) know a good time to call chambers this afternoon to schedule a protective order dispute hearing.

Thank you.

Best,

Paul

---

**From:** Tanck, Paul
**Sent:** Monday, February 28, 2022 7:38 PM
**To:** 'Kraman, Pilar' <PKraman@ycst.com>; 'Dominick Gattuso' <dgattuso@hegh.law>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Rachel Marshall <RMarshall@hegh.law>
**Subject:** RE: WiAutomation Initial Disclosures

Thanks again Pilar.

We may just have him added directly to the PO, but we will discuss that with the client.

Could you please provide us a little more background on Mr. Palumbo.

For example:

What law firm does he work for?  Can you provide a link to the website or provide a CV of his background?
How long has he been with that firm?
Was he employed by Defendant or any other industrial equipment seller in the past or presently?
What is the nature of his relationship with Defendant?  Is it strictly an outside counsel / client relationship or does Mr. Palumbo have other personal, familial, investment relationships with the Defendant?

Since he is not counsel that has made an appearance in Delaware and is presumably not licensed to practice law in the United States, we would like some more background on Mr. Palumbo before granting him access to Rockwell's highly confidential information.

Thank you again and if its easier to chat please let me know a good time to discuss.

Best,

Paul

---

**From:** Kraman, Pilar <PKraman@ycst.com>
**Sent:** Monday, February 28, 2022 7:08 PM
**To:** Tanck, Paul <Paul.Tanck@alston.com>; 'Dominick Gattuso' <dgattuso@hegh.law>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Rachel Marshall <RMarshall@hegh.law>
**Subject:** RE: WiAutomation Initial Disclosures

**EXTERNAL SENDER – Proceed with caution**

Hi Paul, the person we are referring to is Mirko Palumbo.  My understanding is that you all are already familiar with him.  We can name him specifically in the protective order if that is your preference (something along the lines of:  "Outside Counsel" shall also include Mirko Palumbo, counsel for Defendant, who agrees to be bound by this Order by signing Exhibit A attached hereto.")

Pilar

**Pilar G. Kraman**, Partner
(she/her/hers)
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
P:  302.576.3586
PKraman@ycst.com | www.youngconaway.com | vCard

**From:** Tanck, Paul <Paul.Tanck@alston.com>
**Sent:** Saturday, February 26, 2022 8:48 AM
**To:** Kraman, Pilar <PKraman@ycst.com>; 'Dominick Gattuso' <dgattuso@hegh.law>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Rachel Marshall <RMarshall@hegh.law>
**Subject:** RE: WiAutomation Initial Disclosures

Thanks Pilar.

In order to evaluate this proposal, could you please provide the contact information for those individuals that would be given access to Rockwell's information and disclose their past and present relationship (business, familial, or personal) with Defendant, its officers, directors and employees?

Thanks again.

Best,

Paul

**From:** Kraman, Pilar <PKraman@ycst.com>
**Sent:** Saturday, February 26, 2022 8:39 AM
**To:** Tanck, Paul <Paul.Tanck@alston.com>; 'Dominick Gattuso' <dgattuso@hegh.law>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Rachel Marshall <RMarshall@hegh.law>
**Subject:** RE: WiAutomation Initial Disclosures

**EXTERNAL SENDER – Proceed with caution**

Hi Paul,

Likewise.  I'd be happy to provide more info.  WiAutomation has outside counsel in Italy who oversees this litigation for WiAutomation.  In short, he is similarly situated as I am in Delaware, except he is Italian counsel.  As we noted in the redline, he would execute the Acknowledgement and agree to submit to the jurisdiction of the Court.  If you have any further questions, or would like to discuss, please let us know!

Pilar

**Pilar G. Kraman, Partner**
(she/her/hers)
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
P:  302.576.3586
PKraman@ycst.com | www.youngconaway.com | vCard

---

**From:** Tanck, Paul <Paul.Tanck@alston.com>
**Sent:** Friday, February 25, 2022 5:30 PM
**To:** Kraman, Pilar <PKraman@ycst.com>; 'Dominick Gattuso' <dgattuso@hegh.law>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Rachel Marshall <RMarshall@hegh.law>
**Subject:** RE: WiAutomation Initial Disclosures

Hi Pilar,

I hope all is well.

We are trying to understand the addition to the definition of Outside Counsel that was added below:

"Outside Counsel" shall also include an attorney for a Party who is not an employee of the Party and who agrees to be bound by this Order by signing Exhibit A attached hereto.

Would you be able to provide more color around the need for that provision?

Thanks!

---

**From:** Kraman, Pilar <PKraman@ycst.com>
**Sent:** Friday, February 25, 2022 5:04 PM
**To:** 'Dominick Gattuso' <dgattuso@hegh.law>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Tanck, Paul <Paul.Tanck@alston.com>; Rachel Marshall <RMarshall@hegh.law>
**Subject:** RE: WiAutomation Initial Disclosures

**EXTERNAL SENDER – Proceed with caution**

---

The extension for submitting the protective order is fine.  You can sign the attached, as revised.  Also, considering that we only received the draft protective order from Rockwell less than 48 hours ago, the turnaround for our revisions was not

9

unreasonable.  In order to give us ample to time to consider your next turn, we would appreciate your comments on the (mostly minor) revisions by Monday.

Thanks,

Pilar

**Pilar G. Kraman, Partner**
(she/her/hers)
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
P:  302.576.3586
PKraman@ycst.com | www.youngconaway.com | vCard

---

**From:** Dominick Gattuso <dgattuso@hegh.law>
**Sent:** Friday, February 25, 2022 4:54 PM
**To:** Kraman, Pilar <PKraman@ycst.com>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; 'McLaughlin, Neal' <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Kraman, Pilar <PKraman@ycst.com>; 'Tanck, Paul' <Paul.Tanck@alston.com>; Rachel Marshall <RMarshall@hegh.law>
**Subject:** RE: WiAutomation Initial Disclosures

Pilar:

Given receipt of WI's revisions late Friday afternoon, Rockwell requires additional time to consider the revisions.  Thus, we propose to extend the date to file the proposed protective order to Wednesday March 2.  That will also afford the parties time to meet and confer in advance of the submission date.  A draft stipulation is attached.  Please confirm that I may e-sign on your behalf and file it.

Best,

Dominick



Dominick T. Gattuso

HEYMAN ENERIO GATTUSO & HIRZEL LLP

300 Delaware Ave., Suite 200
Wilmington, DE 19801
Office: (302) 472-7311
Mobile: (302) 559-6644
dgattuso@hegh.law

-----------------------------------

This message is sent by a law firm and may contain information that is privileged or confidential. If you

received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. HEYMAN ENERIO GATTUSO & HIRZEL LLP does not render tax or securities advice.

---

**From:** Kraman, Pilar <PKraman@ycst.com>
**Sent:** Friday, February 25, 2022 3:18 PM
**To:** Dominick Gattuso <dgattuso@hegh.law>; 'Alvarez, Eric' <ealvarez@bracheichler.com>; 'McLaughlin, Neal' <Neal.McLaughlin@alston.com>
**Cc:** 'Kasolas, Bob' <bkasolas@bracheichler.com>; Pilar Gabrielle Kraman <pkraman@ycst.com>; 'Tanck, Paul' <Paul.Tanck@alston.com>
**Subject:** RE: WiAutomation Initial Disclosures

Dominick,

WiAutomation's edits are attached. You may sign for me and file this version, but please circulate the final version with signature blocks before filing.

Pilar

**Pilar G. Kraman**, **Partner**
(she/her/hers)
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
P: 302.576.3586
PKraman@ycst.com | www.youngconaway.com | vCard

---

**From:** Dominick Gattuso <dgattuso@hegh.law>
**Sent:** Wednesday, February 23, 2022 6:09 PM
**To:** Alvarez, Eric <ealvarez@bracheichler.com>; McLaughlin, Neal <Neal.McLaughlin@alston.com>
**Cc:** Kasolas, Bob <bkasolas@bracheichler.com>; Kraman, Pilar <PKraman@ycst.com>; Tanck, Paul <Paul.Tanck@alston.com>
**Subject:** RE: WiAutomation Initial Disclosures

All:

A draft of the protective order is attached. Please provide your comments, if any. To the extent we need to meet and confer, Rockwell is available tomorrow afternoon and Friday until 3:00 p.m. ET.

Regards,

Dominick



Dominick T. Gattuso
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Ave., Suite 200
Wilmington, DE 19801
Office: (302) 472-7311

Mobile: (302) 559-6644
dgattuso@hegh.law

------------------------------------

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.  HEYMAN ENERIO GATTUSO & HIRZEL LLP does not render tax or securities advice.

---

**From:** Alvarez, Eric <ealvarez@bracheichler.com>
**Sent:** Friday, February 18, 2022 2:10 PM
**To:** McLaughlin, Neal <Neal.McLaughlin@alston.com>; Dominick Gattuso <dgattuso@hegh.law>
**Cc:** Kasolas, Bob <bkasolas@bracheichler.com>; Pilar Gabrielle Kraman <pkraman@ycst.com>
**Subject:** WiAutomation Initial Disclosures

Counsel,

Please see attached initial disclosures on behalf of WiAutomation.

Regards,

**Eric Alvarez, Esq.**
B R A C H | E I C H L E R LLC
101 Eisenhower Parkway | Roseland, New Jersey 07068
Direct: 973-364-8330 | Firm: 973-228-5700 | Fax: 973-618-5574
| | | website
New York City | Roseland | Palm Beach

This email is from Brach Eichler LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute this e-mail or any attachments. Instead, please notify the sender and delete this e-mail and any attachments.

-

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RED BEND SOFTWARE, INC. AND        )
RED BEND, LTD.                     )
                    Plaintiffs,    )
                                   )
                                   )  No. 1:09-CV-11813-DPW
vs.                                )
                                   )
                                   )
GOOGLE, INC.                       )
                    Defendant.     )

BEFORE:  THE HONORABLE DOUGLAS P. WOODLOCK

MOTION HEARING

John Joseph Moakley United States Courthouse
Courtroom No. 1
One Courthouse Way
Boston, MA 02210
Tuesday, January 19, 2010
11:03 a.m.

Brenda K. Hancock, RMR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way
Boston, MA 02210
(617)439-3214

```
 1    APPEARANCES:

 2         DWYER & COLLORA LLP
           By:  Daniel J. Cloherty, Esq.
 3         600 Atlantic Avenue, 12th Floor
           Boston, MA 02210
 4         On behalf of Red Bend Software.

 5         BAKER BOTTS LLP
           By:  Robert C. Scheinfeld, Esq.
 6         30 Rockefeller Plaza, 44th Floor
           New York, NY 10012-4498
 7         On behalf of Red Bend Software.

 8         BINGHAM McCUTCHEN LLP
           By: Susan Baker Manning, Esq.
 9            David Michael Magee, Esq.
           2020 K Street, N.W.
10         Washington, DC 20006-1806
           On behalf of Google, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (The following proceedings were held in open court

2    before the Honorable Douglas P. Woodlock, United States

3    District Judge, United States District Court, District of

4    Massachusetts, at the John J. Moakley United States Courthouse,

5    One Courthouse Way, Courtroom 1, Boston, Massachusetts, on

6    Tuesday, January 19, 2010):

7          THE CLERK:  All rise.

8    (The Honorable Court entered the courtroom at 11:00 a.m.)

9          THE CLERK:  This Honorable Court is now in session.

10   You may be seated.

11         Calling the case Civil Action 09-11813, Red Bend

12   Software, Inc. versus Google, Inc.

13         Will counsel please identify themselves for the

14   record.

15         MS. BAKER MANNING:  Good morning, your Honor.  Susan

16   Baker Manning, with Bingham McCutchen, for Google, Inc.  With

17   me is my colleague, David Magee.

18         MR. CLOHERTY:  Good morning, your Honor.  Daniel

19   Cloherty, here on behalf of Red Bend.

20         MR. SCHEINFELD:  Good morning, your Honor.  Robert

21   Scheinfeld, Baker Botts, on behalf of Red Bend.

22         THE COURT:  Well, I cannot recall, Mr. Scheinfeld;

23   were you present at the scheduling conference?

24         MR. SCHEINFELD:  Well, yes, your Honor.  I must have

25   made a great impression.

1          THE COURT:  I gather you did not pick up the tone of

2    what I had to say?

3          MR. SCHEINFELD:  Your Honor, I did pick up the tone of

4    what you had to say.

5          THE COURT:  Well, what I had to say was, basically,

6    that I was going to expedite this matter --

7          MR. SCHEINFELD:  Yes.

8          THE COURT:  -- to permit your claim to be put forward,

9    but that I was going to permit some discovery.  You have

10   decided to interfere with that.  I am sorry, but this is

11   outrageous, clear and simple, outrageous.

12         MR. SCHEINFELD:  Your Honor, I apologize.

13         THE COURT:  Well, you should apologize, and I

14   appreciate the apology.  It is a little late, but I appreciate

15   the apology.  Now let me tell you --

16         MR. SCHEINFELD:  Okay.

17         THE COURT:  -- you have also put off your schedule for

18   your hearing because of that.  So, you want to play a game of

19   chicken; you played and you lost.

20         MR. SCHEINFELD:  Your Honor, I apologize.  Obviously,

21   I completely misread the Court, and I apologize for that.  I

22   understood from the Court --

23         THE COURT:  Let us talk about where we are going from

24   here.

25         MR. SCHEINFELD:  Okay.

1          THE COURT:  You can apologize to your client, too, if

2     that is what is necessary, if you were acting on your own as

3     opposed to serving interests of your client that are

4     inconsistent with an orderly and fair resolution of the case.

5          But that is not my interest.  My interest is to ensure

6     that there be a fair, efficient, prompt, orderly resolution of

7     the issues that are teed up.

8          So, you said, "No," on January 6th.  Now we have just

9     managed to extend the time period from at least January 6th to

10    January 19th.  That amounts to 13 days, and it may be a little

11    longer for this strategic choice.

12         When are your clients going to be available -- or the

13    two deponents going to be available?

14         MR. SCHEINFELD:  For deposition, your Honor?  The

15    first week in February.

16         THE COURT:  What are we talking about, if not for

17    depositions?

18         MR. SCHEINFELD:  Obviously, again, I apologize.

19         THE COURT:  No; we are past apologies.  We are on to

20    the question of what we are going to do about this profound

21    mistake that you made or, more accurately, the plaintiff

22    seeking extraordinary relief from the Court made in deciding

23    that they would not make available the two most critical

24    witnesses?

25         MR. SCHEINFELD:  Your Honor -- if I may, your Honor?

1          THE COURT:  You will have an opportunity.  What I will

2     do is, I will set a schedule, and then, at the conclusion of

3     all of this, we will listen to what you have to say by way of

4     apology or whatever you want to say.  But the short of it is, I

5     am here to set a schedule.  I was here to set a schedule

6     before.  I set a schedule that I thought was relatively prompt,

7     although you wanted it even faster.

8          MR. SCHEINFELD:  I did.

9          THE COURT:  Now, having urged me to hurry up, you

10    asked, in effect, to wait.  So, let us get to the schedule.

11    Your clients will be -- or the two deponents will be available

12    the first week in February; is that right?

13         MR. SCHEINFELD:  That's correct, your Honor.

14         THE COURT:  Okay.  Do we have to set a particular

15    date, or is the tenor clear enough now so that I do not have to

16    set a particular date?

17         MR. SCHEINFELD:  Your Honor, the tenor is very clear.

18         THE COURT:  Okay.

19         MR. SCHEINFELD:  I mean, February -- the week of

20    February -- the first week in February should work.  I have

21    consulted with my client already.  He is available the first

22    week in February.  I believe the experts should be available

23    the Friday before that first week or at least the Monday or

24    Tuesday following.

25         Your Honor, if I may?  Just to address the issue of

1   depositions, we got the notice that Google wanted depositions

2   the first week in January, seeking the deposition five business

3   days later.  My client was not available at the time, nor was

4   the expert.

5           THE COURT:  That is not the grounds on which you

6   rejected the deposition.

7           MR. SCHEINFELD:  It was one of the grounds, your

8   Honor.

9           THE COURT:  No.  It was the subsidiary grounds and not

10  the primary grounds.  The primary grounds is that I did not

11  order it.  You got it wrong.  You got it absolutely wrong.

12          MR. SCHEINFELD:  When your Honor said that you would

13  not hear -- you're right, your Honor.  I don't want to argue.

14          THE COURT:  Do you want to have this discussion with

15  me about what I meant when I said certain things?

16          MR. SCHEINFELD:  No, no, your Honor; I don't.

17          THE COURT:  What I will do is I will consult the

18  person who made the order.  In fact, I consulted him over the

19  weekend, when I read these outrageous papers.

20          MR. SCHEINFELD:  Okay.

21          THE COURT:  I looked in the mirror, and I said, "What

22  did I mean by that?  Could I have meant not to have a

23  deposition?"  And the mirror said back to me, "No.  Nobody in

24  his right mind would have thought that."

25          MR. SCHEINFELD:  I apologize.

1          THE COURT:  All right.  Do you understand?

2          MR. SCHEINFELD:  Yes, I do, your Honor.

3          THE COURT:  So, depositions when, Ms. Baker Manning?

4          MS. BAKER MANNING:  Sir, unfortunately, we have a

5    couple of schedule conflicts that first week of February.  We

6    may need to go over into the second week.

7          THE COURT:  What are your schedule conflicts?

8          I feel like I am the chaperone at a tea dance.

9          MS. BAKER MANNING:  I am happy to work it out with

10   Mr. Scheinfeld, as long as we can go over into the next week.

11   I have a Federal Circuit oral argument that week, into that

12   week, that I simply can't move.

13         THE COURT:  All right.

14         MS. BAKER MANNING:  So, if we could, with your Honor's

15   permission, go over into the following week of February, I am

16   quite confident, given the clarity of your Honor's directions,

17   we can find specific times that work for everybody involved to

18   take depositions of these two witnesses.

19         THE COURT:  All right.  Now, you had a subsidiary

20   point that you wanted to make about not having depositions of

21   your own.  You can have depositions of your own, if you would

22   like to have some depositions.  Do you want it in depositions,

23   or was that simply makeweight?

24         MR. SCHEINFELD:  No, your Honor.  No.  I would like

25   depositions.

1        THE COURT:  When are they going to take place?

2        MR. SCHEINFELD:  As soon as we receive their

3    opposition and learn who --

4        THE COURT:  Oh, no, no.  You are not going to get

5    their opposition before all of the depositions go forward on

6    this.

7        MR. SCHEINFELD:  Your Honor, we don't know who their

8    declarants are, so we would like the depositions of their

9    declarants.

10       THE COURT:  You want the depositions of their

11   declarants --

12       MR. SCHEINFELD:  Correct.

13       THE COURT:  -- before you file your reply?

14       MR. SCHEINFELD:  Not necessarily.  As long as we have

15   a chance to provide a supplemental paper, if necessary, after

16   the reply.

17       THE COURT:  Well, what supplemental paper --

18       MR. SCHEINFELD:  Yes, your Honor.  Yes.

19       THE COURT:  You do not want a reply, you want a

20   "supplemental paper."  Is that a ruse by another name?

21       MR. SCHEINFELD:  No, your Honor, it is not.

22       THE COURT:  It is a reply, right?

23       MR. SCHEINFELD:  It is a reply.

24       THE COURT:  Okay.  Let us call things what they are.

25       MR. SCHEINFELD:  Yes, your Honor.  If it is possible,

```
 1    we would like to have the depositions of Google's declarants
 2    that are submitted with their opposition papers --
 3              THE COURT:  Okay.
 4              MR. SCHEINFELD:  -- before our reply is due.
 5              THE COURT:  All right.  That seems fair to me.
 6              MS. BAKER MANNING:  That's fine.  That's always been
 7    our position, your Honor.
 8              THE COURT:  So, now into schedule.  Your reply will
 9    presumably -- your opposition will be presumably after the
10    depositions.
11              MS. BAKER MANNING:  Yes, sir; that's our hope.
12              THE COURT:  And your reply or supplemental papers will
13    be after you have a chance to do your depositions.
14              Now, do I have to set the schedule for you for all of
15    this, the dates of depositions and so on?
16              MS. BAKER MANNING:  I don't think so, your Honor.
17              MR. SCHEINFELD:  We will work it out.
18              THE COURT:  Yes, I hope you will.  Now, let us talk
19    about when we are going to have a hearing on this, in light of
20    this contretemps.  It seems to me that what Red Bend has done
21    has bought itself at least another month and, perhaps, more.
22              Realistically, when do you think your opposition will
23    be filed?
24              MS. BAKER MANNING:  Well, if I can start with the
25    hearing, for a moment, your Honor, and then work back to your
```

1    question, we have a rather significant difficulty engendered by

2    this delay with regard to the hearing.  Google has made it

3    clear from the time we were hired in this case that they would

4    like my colleague, William Abrams, to actually argue the

5    preliminary injunction hearing.  Mr. Abrams has a month-long

6    trial that starts the beginning of March and will consume the

7    entirety of the month of March.  So, in order for Mr. Abrams to

8    be available, given his trial conflict, we would need to be

9    looking at April.

10            THE COURT:  Well, I have to tell you, I am indifferent

11   to Mr. Abrams' trial schedule; so, we are not scheduling it to

12   accommodate Mr. Abrams' or your client's preferences, not a

13   preliminary injunction that you are defending.

14            MS. BAKER MANNING:  Okay.

15            THE COURT:  So, now let us talk about it in functional

16   terms.  When, realistically, do you think you will have your

17   opposition?

18            MS. BAKER MANNING:  If we can take the witnesses by --

19   because we are going to be going into that second week of

20   February -- we could file our paper certainly March 5th.

21            THE COURT:  March 5th?

22            MS. BAKER MANNING:  I'm sorry; I'm looking at the

23   12th.  I could do February 26, which would be two weeks later,

24   which would be approximately the same kind of time frame that

25   we were looking at between when we were already planning on

1    taking the deposition and the filing of our paper.

2          THE COURT:  All right.  And then how long is it going

3    to take you to get to your depositions after looking at their

4    declarations?

5          MR. SCHEINFELD:  A week later.

6          THE COURT:  In that week of the --

7          MR. SCHEINFELD:  March 8th.

8          THE COURT:  March 8th you would do your supplemental

9    papers, or you would be doing depositions?

10          MR. SCHEINFELD:  Take the depositions of Google's --

11          THE COURT:  All right.  And then when would your

12    "supplemental paper," to adopt the term of art here, be?

13          MR. SCHEINFELD:  March 24th.

14          THE COURT:  March 24th.  Now, there is a missing

15    person in this; that is me.  I have to review these papers,

16    supplemental or not, and it takes me sometimes a little bit of

17    time to do that.

18          I will set it for April 14th at 2:00.

19          Now, you had some additional observations you wanted

20    to make regarding this matter?

21          MR. SCHEINFELD:  The only question I would have is

22    whether or not you would hear live testimony on April 14, but

23    you made it clear at the last conference --

24          THE COURT:  I do not intend to.

25          MR. SCHEINFELD:  Okay.  That's fine.

1          THE COURT:  The parties can ask me to, or say that,

2     having reviewed their declarations they think live testimony is

3     appropriate, but I am going to focus on the declarations on the

4     14th.  It may be that I will say I cannot fairly rule on the

5     Motion for Preliminary Injunction until I hear live testimony,

6     but the default here is the assumption that it is going to be

7     done on the papers.

8          MR. SCHEINFELD:  Okay.  That is fine, your Honor.

9          THE COURT:  But is there anything else that you wanted

10    to observe for the record or for other purposes?

11         MR. SCHEINFELD:  No.  Other than to extend, again, my

12    apology, your Honor.

13         THE COURT:  I am sorry.  I did not mean to interrupt

14    you.  The best apology is that we get this done in an orderly

15    fashion without this kind of gamesmanship.  I intend to get to

16    the merits of the claims and have the opportunity for both

17    sides to have an opportunity to confront the persons who are

18    offering evidence against them.

19         Mr. Cloherty?

20         MR. CLOHERTY:  Your Honor, I just want to join in the

21    apology, because I am responsible for that mistake, too.

22         THE COURT:  I welcome anyone in the courtroom who

23    would like to apologize to me, but I welcome more than anything

24    else getting to the merits of this, and I think I have made

25    that clear.

1              So, now we have a new schedule here.

2              The next issue is this protective-order issue.  Let me

3        say that I am allowing Google's Motion, No. 31, to Compel

4        Depositions, in accordance with the schedule that I have

5        established today.

6              Now, the joint motion with respect to Protective Order

7        and Ruling on Outstanding Issues, I guess there are several

8        things that I do not understand.  Is there nobody in the Boston

9        area or, I guess, in New York City who reads Hebrew and can

10       translate it?  What is the deal with sending documents in

11       Hebrew that nobody can read and then saying, Trust me?  I do

12       not understand that.  I do not understand it from the

13       defendant's point of view, that you cannot get a Hebrew

14       translator.

15             This kind of silliness -- Let me tell you, if you

16       think this has been an unpleasant experience, try some more of

17       this, and there will be less restraint shown with respect to

18       the posturing of the parties on this.

19             But enough of Hebrew.

20             MR. SCHEINFELD:  Your Honor, may I be heard on the

21       protective order?

22             THE COURT:  Yes.  But let me tell you what I see is

23       the issues.  I am told that the Google in-house counsel are

24       working on litigation.  I would want a representation that they

25       were not involved in competitive decision-making in this area,

1    and I would want them to appear *pro hac vice*.

2              MS. BAKER MANNING:  That's fine, your Honor.

3              THE COURT:  Because I intend to have full control over

4    whoever it is who gets access to this information, and if it is

5    a lawyer and a lawyer who is directing clerical staff, I mean

6    that any violation of it will survive this case and become

7    contempt.  That is my view with respect to it.  I do not

8    understand why there was not some inclusion of lack of

9    involvement in competitive decision-making in this area.

10             MS. BAKER MANNING:  They have never -- frankly, the

11   issue didn't come up until the reply papers, but the people

12   that we are interested in disclosing and having active in the

13   team are not competitive decision-makers.  That is not an issue

14   at all, and we could certainly have them appear *pro hac vice*.

15             THE COURT:  Now, let us turn to the question of the

16   Red Bend people.  Are they actively involved in the litigation?

17   What are they doing?

18             MR. SCHEINFELD:  Your Honor, Red Bend does not have

19   any in-house counsel.

20             THE COURT:  That is not the question I asked.  You

21   say, If they get three, we would like three too.

22             MR. SCHEINFELD:  No.  I'm sorry, your Honor.

23             There are different categories of confidential

24   information.  The first category of confidential information is

25   confidential, and we did not object to Google's having three

1    in-house counsel see that information.  We did object to

2    Google's having three in-house counsel for highly confidential

3    information.

4          Google has objected to have Iris Pappas, who is an

5    Israeli lawyer, counsel to Red Bend, see any kind of

6    confidential information.  Is Iris Pappas a patent lawyer?  No,

7    she is not, she is not a patent litigator, but she is counsel

8    to Red Bend, and she has provided and continues to provide

9    counsel to Red Bend.  In terms of highly confidential

10   information, we thought it would be appropriate to be able to

11   use Iris Pappas as counsel, since we would not be able to

12   communicate --

13         THE COURT:  What does that mean?  I guess I need to

14   understand more fully what is involved here.  I can understand

15   in-house counsel working to support the efforts of privately

16   retained counsel in the litigation of the case and providing

17   expertise that presumably in-house counsel would have, so long

18   as there is no -- or we minimize the dangers of competitive

19   mischief.

20         But I do not understand what Ms. Pappas adds to the

21   mix here, if she does not practice in the intellectual property

22   area.

23         MR. SCHEINFELD:  She does practice in intellectual

24   property transactions, not litigation, your Honor.

25         THE COURT:  What does she add to the mix?  I guess I

```
 1    just do not understand.

 2         MR. SCHEINFELD:  I would submit, your Honor, that what

 3    she adds to the mix is what Google's in-house counsel adds.

 4    They have an expertise regarding Google's business.  Iris has

 5    an expertise regarding Red Bend's business.  She knows what Red

 6    Bend's business is about.  She's very close with the

 7    management.

 8         THE COURT:  Well, is she involved in competitive

 9    decision-making?

10         MR. SCHEINFELD:  No, she is not, your Honor.  In fact,

11    I was just in Israel the last few days, and I met with her on

12    Sunday, and we discussed this case.  And she has signed a

13    declaration, your Honor, indicating what type of background she

14    has, that she is not involved in Red Bend's competitive

15    decision-making process.  She also speaks about the ethics

16    rules in Israel as well submitting to the personal jurisdiction

17    of the court.  But, your Honor --

18         THE COURT:  Just a moment.  How are they enforceable

19    here?  What jurisdiction do I have over it?  You will see that

20    I said that these three decision-makers or three in-house

21    counsel from Google had to be *pro hac vice*, and that is so that

22    I can capture their hearts and minds through their role here in

23    terms of officers of the Court.

24         Now, I have no reason to believe that there is any

25    material difference between the ethics requirements of
```

1    attorneys practicing in Israel than in the United States, but

2    the question of who gets to enforce a violation is a touchy

3    subject for me, and I do not know how I have jurisdiction over

4    Ms. Pappas if she violates that.  I suppose I can take it out

5    on Red Bend, but that is not the way I ordinarily like to

6    proceed.  I am more interested in making sure that the actual

7    malefactor is subject to sanction.

8            MR. SCHEINFELD:  Your Honor, I am not an expert in

9    foreign judgments, but there is a Foreign Judgments Act of

10   1958, which seemingly would make judgments here enforceable

11   in --

12           THE COURT:  What is the judgment?  How do I have

13   jurisdiction over it?  What do I do?  I say I am going to have

14   a contempt proceeding, and she does not show up.  Does that

15   mean that I can issue a judgment of contempt enforceable in the

16   Israeli courts?  I do not know enough about that to be able to

17   say.

18           MR. SCHEINFELD:  And nor do I, your Honor, on that

19   point.  I do not want to belabor this point anymore.  We will

20   survive without Iris Pappas seeing highly confidential

21   information.  So, I am not sure at this point, given where we

22   are, given that we should move along to the merits, that it is

23   necessary that we spend more time arguing over this point.

24           THE COURT:  Well, what I am prepared to do is enter an

25   order that includes I believe it is paragraph 10b, with an

1  amendment that includes requirements that each of the counsel

2  subject themselves to the jurisdiction of the Court by

3  appearing *pro hac vice,* and that there be a representation that

4  they are not involved in competitive decision-making.

5        Now, with respect to Red Bend, I am prepared to

6  consider something on a parity kind of basis, but I have to be

7  satisfied that I am going to have control over persons who are

8  going to receive this information.  Here, I have got two

9  factors that are in play.  Number one, apart from long-term

10 relationship with Ms. Pappas and the company and involvement,

11 to some degree, in intellectual property matters but not in

12 litigation, I am not sure that there is any way that I have a

13 measure of enforcement over her compliance with the order.  If

14 I can be persuaded otherwise, I will consider a further

15 amendment to the Protective Order to deal with that.

16       Second, with respect to specific matters, which, if

17 counsel sees them and says, We need the assistance of someone

18 in-house here by way of an attorney, I will look at that as a

19 further order with respect to the Protective Order.  But to put

20 the Protective Order in place now, I may adopt the 10b, that

21 is, the Google proposal with the two amendments that I have

22 added.  I will expect to have submitted to me by this afternoon

23 a clean copy of this for me to sign.

24       MR. SCHEINFELD:  One supplemental point, your Honor.

25 On the confidential level, each side is allowing, I believe,

1    two business people to see the confidential information of the

2    other side.  I would like to raise that to three business

3    people, your Honor, on the confidential level, because we do

4    not have --

5              THE COURT:  Point me to the paragraph.

6              MS. BAKER MANNING:  I believe it's 6.

7              THE COURT:  6h?

8              MS. BAKER MANNING:  I believe it's 6c that

9    Mr. Scheinfeld is referring to.

10             MR. SCHEINFELD:  6c, your Honor.

11             THE COURT:  Okay.

12             MR. SCHEINFELD:  Considering that we do not have

13   in-house counsel, we thought it would be appropriate and fair.

14             THE COURT:  Any objection to that?

15             MS. BAKER MANNING:  No, your Honor.

16             THE COURT:  All right.  So, you will submit a modified

17   version that changes 6c to provide up to three employees of a

18   party who either have responsibility for making decisions, that

19   is the language of 6c, and 10b with the modifications that I

20   have indicated here and the further *provisos* that I have

21   indicated.  And I am, correspondingly, not making a change to

22   10i -- or introducing 10i.

23             Now, is there anything else?

24             MS. BAKER MANNING:  Not from Google, sir.

25             MR. SCHEINFELD:  Not from Red Bend, your Honor.

```
 1              THE COURT:  Okay.  So, I think I have, perhaps, made
 2      myself clearer than I was before.  I intend to deal with this
 3      on the merits, but on the merits the parties have to have an
 4      opportunity to confront in a reasonable time frame those who
 5      are offering evidence against them.  So, the depositions are, I
 6      think, absolutely necessary, and we take the time to get it
 7      right.
 8              MR. SCHEINFELD:  I appreciate that, your Honor.
 9              MS. BAKER MANNING:  Thank you, sir.
10              THE COURT:  We will be in recess.
11              THE CLERK:  All rise.
12      (The Honorable Court exited the courtroom at 11:30 a.m.)
13      (WHEREUPON, the proceedings adjourned at 11:30 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25
```

1                        C E R T I F I C A T E

2

3

4          I, Brenda K. Hancock, RMR, CRR and Official Reporter

5    of the United States District Court, do hereby certify that the

6    foregoing transcript constitutes, to the best of my skill and

7    ability, a true and accurate transcription of my stenotype

8    notes taken in the matter of *Red Bend Software, Inc., et al v*

9    *Google, Inc.,* No. 1:09-cv-11813-DPW.

10

11

12

13

14

15   Date: February 1, 2010          /s/ *Brenda K. Hancock*

16                                   Brenda K. Hancock, RMR, CRR

17                                   Official Court Reporter

18

19

20

21

22

23

24

25

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCKWELL AUTOMATION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 21-1238-CFC-JLH |
| ) | |
| PARCORP S.R.L. d/b/a WI ) | |
| AUTOMATION, ) | |
| ) | |
| Defendant. ) | |

## **[PROPOSED] ORDER**

The Court, having reviewed the parties' Joint Motion for Teleconference to Resolve Discovery Disputes (D.I. 30), the submissions related thereto and the parties' arguments, **HEREBY ORDERS THAT**:

Plaintiff's request for the Court to enter Plaintiff's proposed Protective Order, which (i) allows Plaintiff's in-house U.S. counsel John Miller, Esq. to access Defendant's highly confidential information, and (ii) does not permit Defendant's outside foreign counsel, Mirko Palumbo, to access Plaintiff's highly confidential information, is **GRANTED**.

SO ORDERED this _____ day of_____, 2022.


_____
United States District Court