HEYMAN ENERIO
GATTUSO & HIRZEL LLP
PRACTICING THE ART OF LAW

Tel: (302) 472-7311
dgattuso@hegh.law

March 21, 2022

**VIA CM-ECF & HAND DELIVERY**
The Honorable Jennifer L. Hall
United States Magistrate Judge
U.S. District Court for the District of Delaware
844 N. King Street - Unit 26, Room 6124
Wilmington, DE 19801

    Re:    *Rockwell Automation, Inc. v. Parcorp S.R.L. d/b/a WI Automation*,
             C.A. No. 21-1238-CFC-JLH

Dear Judge Hall:

    Plaintiff Rockwell Automation, Inc. ("Rockwell" or "Plaintiff") submits this Opposition to Defendant Parcorp S.R.L. d/b/a WI Automation's ("Defendant" or "WI Automation") letter motion of March 16, 2022 (D.I. 32) together with a Declaration from John Miller, Esq. (the "Miller Decl.").

    Defendant seeks to prevent Rockwell's VP and Chief IP Counsel John Miller, Esq. from fully participating in this litigation by withholding from him Defendant's allegedly highly confidential information. However, Defendant's request is based on unfounded speculation regarding Mr. Miller's role and a misapplication of the law permitting in-house counsel like Mr. Miller, who are not competitive decision makers but are actively engaged in the management of litigation, to view opponents' information that is core to the claims and defenses of the parties.

    As Rockwell's Chief IP Counsel, Mr. Miller's duties are strictly legal in nature and he is not involved in any competitive decision making. Miller Decl. at ¶4. Specifically, Mr. Miller's role is to: (a) advise Rockwell on the best methods and manner to minimize legal risks to Rockwell; (b) manage the development, maintenance and policing of Rockwell's intellectual property rights and to advise as to the legality of intellectual property issues; (c) supervise all Rockwell intellectual property litigation matters in state and federal courts; and (d) ensure Rockwell's compliance with all applicable laws and regulations. *Id*. Further, as Rockwell's Chief IP Counsel, Mr. Miller does *not* render advice on or participate in any of Rockwell's decisions regarding product pricing, sales, marketing, design, or production, whether in isolation or in light of similar or corresponding information about any industrial automation technology manufacturer competitor. *Id*. at ¶5.

    Here, Defendant is not an industrial automation technology manufacturer. Defendant does not manufacture anything. They do not research, they do not develop, and any intellectual property they may have is not at issue in this case. Instead, Defendant is a "middleman" buying and selling used second and third-hand gray market products.[1] Indeed, the only "highly confidential" information of Defendant that it specifically mentions in its letter is the names of its sources of its aftermarket Rockwell products. D.I. 32 at p. 3. This is <u>precisely</u> the type of information that courts have ruled may be shared with in-house

---

[1] Rockwell contends that this business is illegal with respect to the gray market Rockwell products Defendant sells in the United States without Rockwell's authorization, as those products are materially different from the ones that Rockwell authorizes for sale in the United States. *See, e.g.*, *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988).

intellectual property counsel who is responsible for managing the litigation. *See, e.g., Hyundai Motor Am., Inc. v. Pinnacle Grp., Ltd. Liab. Co.*, No. SACV 14-00576-CJC(JPRx), 2016 U.S. Dist. LEXIS 184776 at *6, 8, 13 (C.D. Cal. Jan. 6, 2016) (granting access by in-house counsel to the identity of the supplier of defendant's gray market goods, noting that such information is "at the heart of the matter," "clearly relevant to the claims and defenses" and "necessary to the proper presentation of a claim or defense").

Just as in *Hyundai*, Defendant claims that it is not guilty of trademark infringement because of the identity of its sources of gray market Rockwell product and the actions of Rockwell with respect to these sources. For example, in its Amended Answer, Defendant directly implicates its sources of gray market Rockwell products in its defenses, stating:

- "Many competitors in the marketplace engage in the same conduct as alleged in the Complaint but Plaintiff has refused to enforce its alleged rights against said operators." D.I. 18 at p. 15, ¶12.

- "Plaintiff introduced the product(s) at issue into the stream of commerce knowing that said products would be sold on the secondary market." *Id*. at p. 16, ¶18.

- "Plaintiff authorized the first sale of the products at issue. Defendant's subsequent sale of said products in their genuine form is not infringement." *Id*. at ¶19.

- "[T]he products Defendant sells are not materially different than Rockwell products." *Id*. at p. 17, ¶26.

To be able to perform his job of managing this litigation for Rockwell, including determining when and how to resolve it for Rockwell, Mr. Miller needs to be able to understand the bases for these defenses. Miller Decl. at ¶9. Also, Outside Counsel need to be able to discuss this information with Mr. Miller to efficiently litigate this case. *Id*. at ¶8. For example, when Defendant produces its list of suppliers, a core issue will be whether any of those sources are entities that are authorized by Rockwell to distribute its products. If Mr. Miller is not permitted to know the identity of Defendant's suppliers at issue and Outside Counsel are prevented from asking Mr. Miller about the authorization status of these suppliers, it will be very difficult for Outside Counsel to independently obtain that information as Mr. Miller is Outside Counsel's source of such information from Rockwell. *Id*.

To establish that Mr. Miller is a competitive decisionmaker and thus properly excluded from receiving Defendant's information, Defendant must show that Mr. Miller's relationship to Rockwell is such that he gives advice or participates in "any or all of [Rockwell's] decisions . . . made in light of similar or corresponding information about a competitor." *U.S. Steel Corp. v. United States*, 730 F.2d 1468 n.3 (Fed. Cir. 1984). Mr. Miller simply does not have such a role at Rockwell. Defendant cites *Deutsche Bank* to argue that, even if Mr. Miller is not involved in pricing, sales, or product design, he could still somehow be considered a competitive decision maker. *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373 (Fed. Cir. 2010). The court in *Deutsche Bank*, however, was speaking in the context of a litigation between competitor companies, both of which developed and manufactured products and in-house counsel who also prosecuted patents in a competitive decision-making role. This case has none of those elements – as noted above, Defendant does not develop or make products and the information at issue here has nothing to do with product development. Defendant also cites *Meridian,* but *Meridian* involved an outside counsel who was also a participating board member of a company directing its activities, which Mr. Miller is not. *Meridian Enterprises Corp. v. Bank of America Corp.*, No. 4:06CV01117 RWS, 2008 WL 474326, at *3 (E.D. Mo. Feb. 15, 2008); Miller Decl. at ¶6. Finally, Defendant cites *Norbrook*, but *Norbrook* also involved an irrelevant situation where an attorney also served as corporate secretary of a party and member of its board of directors and, again, Mr. Miller is

HE G&H

The Honorable Jennifer L. Hall
March 21, 2022
P a g e  |  3

neither.  *Norbrook Labs., Ltd. v. G.C. Hanford Mfg. Co.*, No. 5:03CV165(HGM/GLS), 2003 WL 1956214, at *5 (N.D.N.Y. April 24, 2003); Miller Decl. at ¶6.

Lacking facts supporting their request to restrict Mr. Miller's participation in this case, Defendant turns to speculation derived from uninformed internet searches.  Defendant notes Mr. Miller's role at Rockwell Automation Technologies, Inc.[2] ("RATI") as somehow proof of competition.  But what Defendant fails to inform the Court is that RATI is simply an intellectual property holding and licensing entity, focusing primarily on patents related to Rockwell's products. Miller Decl. at ¶7. Thus, while it makes sense that Mr. Miller leads that entity based on his role at Rockwell, that fact is irrelevant to any fears of competition Defendant might hold.  Again, Defendant does not develop products in which it might hold intellectual property rights.

Moreover, simply holding the position of President at a subsidiary, or the position of "Chief" IP counsel, does not make Mr. Miller a competitive decisionmaker at Rockwell.  It is not the title of a position held, such as "President," "Chief" IP Counsel, or "in-house" counsel, but the case-by-case substance of one's role that should determine if that person is a competitive decisionmaker.  *See, e.g., U.S. Steel, Corp.*, 730 F.2d at 1469 (holding that restricting access to confidential information simply on the status of "in-house" counsel was in error); *Matsushita Elec. v. U.S.* (Fed. Cir. 1991) 929 F.2d 1577 at 1580 ("[T]he standard is not 'regular contact' with other corporate officials who make 'policy,' or even competitive decisions, but 'advice and participation' in 'competitive decisionmaking.'").

Not only is Mr. Miller simply not a competitive decision maker, but Mr. Miller, as Chief IP Counsel of Rockwell and the primary supervisor of this litigation, *needs* access to highly confidential information to be able to make strategic decisions for this litigation (unlike Defendant's Italian business law counsel Mr. Palumbo), and Rockwell would be unable to effectively litigate and resolve this litigation should he not be permitted to do so. Miller Decl. at ¶9. Prohibiting Mr. Miller's full participation in this case would be severely prejudicial and harmful to Rockwell.  In addition, unlike Mr. Palumbo, who is a foreign counsel not admitted to practice anywhere in the U.S., has only had a relationship with Defendant for one year, and owns no assets in the U.S., Mr. Miller has had a relationship with Rockwell for over 26 years, resides in the U.S., and is an attorney admitted to practice in the U.S. who could be sanctioned should he violate the protective order or any other ethical obligations under U.S. law. *Id*. at ¶¶1, 2.

For the foregoing reasons, Rockwell respectfully requests that the Court not restrict Mr. Miller from accessing Defendant's highly confidential information and enter an order based upon Rockwell's proposed protective order.

Respectfully,

*Dominick T. Gattuso*

Dominick T. Gattuso (#3630)

cc:   Clerk of Courts (via CM-ECF)
      Counsel of Record (via CM-ECF & email)

---

[2] Although irrelevant for the purposes of this letter, RATI is incorporated as a corporation, not an LLC, as Defendant erroneously notes.