IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCKWELL AUTOMATION, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 21-1238-GBW-JLH ) |
| PARCOP S.R.L. d/b/a WIAUTOMATION, | ) ) ) |
| Defendant. | ) ) |

### ROCKWELL AUTOMATION, INC.'S MOTION TO AMEND THE SCHEDULING ORDER TO SUPPLEMENT THE DISCOVERY RECORD TO INCLUDE RECENT COUNTERFEIT SALES BY DEFENDANT

Plaintiff Rockwell Automation, Inc. ("Rockwell") respectfully moves pursuant to Federal Rule of Civil Procedure 16(b)(4) to amend the scheduling order, D.I. 21, to supplement the discovery record for the limited purpose of including defendant WiAutomation's ("Defendant") recent sale of counterfeit Rockwell-branded goods to Syntegon Packaging Systems AG ("Syntegon").[1]

Good cause exists to adjust the case schedule to supplement the discovery record for this limited purpose of accepting the Syntegon-related evidence so that it may be presented at trial. Defendant delivered 500 Rockwell products to Syntegon on March 30, 2023, the majority of which were counterfeit. Ex. A (invoice); Ex. B (proof of delivery). Syntegon informed Rockwell that the products it had purchased appeared to be largely counterfeit Rockwell products on April 4, 2023. D.I. 224 at ¶ 8; *id.*, Ex. 10 at 1. Within days, Rockwell disclosed its intention to rely on the

---

[1] This motion seeks to adjust the schedule regarding discovery, and as such is not subject to the discovery dispute procedures under the language of the Court's scheduling order, D.I. 21, ¶ 6, or the March 7, 2022 order referring discovery disputes to Judge Hall.

information at trial by including it in its reply in support of its summary judgment motion. D.I. 222 at 6, 11. Rockwell began producing the information it has received from Syntegon soon thereafter, and initiated the meet-and-confer process leading to this motion. *See* Gattuso Decl., ¶ 3-4; *id.*, Exs. A-B, D. Defendant will suffer no prejudice should Rockwell's request be granted— Defendant, the seller, has all information about its side of the sale in its possession, custody, and control (including all information about its source of the counterfeit products and communications between Defendant and its customer, Syntegon).

Finally, no disruption of the existing trial schedule is necessary to accommodate the Syntegon evidence. Even though Defendant is in possession of key evidence regarding its sale to Syntegon, Rockwell's presentation at trial of the Syntegon-related evidence it has been able to obtain despite Defendant's obstruction is not dependent on new document requests or discovery efforts from Defendant. Accordingly, no additional time to conduct discovery is needed. Defendant has (or should have) in its possession, custody, and control all information about its side of this transaction. Should the Court, however, be inclined to permit the Syntegon materials into the case only if the trial schedule is delayed, Rockwell respectfully requests that the scheduled trial date not be disturbed, and the issue be excluded from the trial, such that Rockwell may pursue the Syntegon evidence in a subsequent action, if necessary.

### I.   Defendant's Counterfeit Sale to Syntegon

Syntegon is a manufacturer of packaging machines used in the pharmaceutical and food packaging industries. *See* Syntegon, https://www.syntegon.com. Syntegon integrates many different industrial automation components from Rockwell into packaging machine solutions that Syntegon delivers to its customers. On March 9, 2023, Syntegon ordered 500 units of Rockwell's Catalog No. 1734-EP24DC power supply modules from Defendant for a total cost with shipping of €58,190.00. Ex. A at 1. Defendant shipped 500 products marked with Rockwell's trademarks

and labelled as 1734-EP24DC products, and they were delivered to Syntegon on Thursday, March 30, 2023. Ex. B at 1. The next Tuesday, April 4, 2023 Syntegon reached out to Rockwell with concerns about the authenticity of the products that they received from Defendants. D.I. 224 at ¶ 8; *id.*, Ex. 10 at 1.

Rockwell reviewed the photographs received from Syntegon and concluded that the products were largely counterfeit. D.I. 224 at ¶¶ 9-13. The serial numbers on products that Defendant sold to Syntegon have never been applied by Rockwell to 1734-EP24DC products. *Id.* at ¶ 12. In addition, some of the labels on the products that Defendant delivered have obvious spelling errors. *Id.* at ¶ 13. After Rockwell informed Syntegon that the products that they received were counterfeit, Syntegon wrote to Defendant on April 6, 2023 demanding that they correct the issue. Ex. C at 1. Rockwell's investigation and forensic analysis of the counterfeit products that Defendant delivered to Syntegon continues and Rockwell is producing the results to Defendant on a rolling basis as they become available.

## II. Good Cause Exists to Allow Rockwell to Introduce Evidence of Defendant's Counterfeit Sale to Syntegon

Under Federal Rule of Civil Procedure 16(b)(4), "[a] schedule maybe modified only for good cause and with the judge's consent." Rule 16(b)(4) "focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). "[T]he good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party." *S. Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 521 (D. Del. 2010) (quotation marks and citation omitted).

While Defendant knew of the sale from the moment it made it, Rockwell learned of Defendant's counterfeit sale to Syntegon on April 4, 2023. *See* D.I. 224 at ¶ 8; *id.*, Ex. 10 at 1. Rockwell immediately disclosed, in its April 10, 2023 Reply in support of its Motion for Summary

Judgment, that Rockwell was aware of the sale as well and that it intended to make reference to it in support of its claims. See D.I. 222 at 6, 11.  Along with its Reply, Rockwell submitted a declaration from its Global Director of Revenue and Brand Protection that provided further detail about the counterfeit sale and Rockwell's investigation, and also provided evidence of the sale. D.I. 224 at ¶¶ 5-13, Ex. 10.  Rockwell's disclosure of its intent to rely on this sale at trial within six days of learning of it satisfies the Rule 16(b)(4)'s good cause standard. *See Lipocine Inc. v. Clarus Therapeutics, Inc.*, C.A. No. 19-622 (WCB), 2020 U.S. Dist. LEXIS 148311, at *17-18 (D. Del. Aug. 18, 2020) (measuring diligence from discovery of the factual basis for an amended pleading until the disclosure of the amended pleading, rather than until the filing of a motion for leave to amend, and finding that a four- to six-week delay was not undue).

Since then, Rockwell has diligently sought to meet-and-confer with Defendant regarding production of these materials outside of the fact discovery period. *See* Gattuso Decl., ¶¶ 2-11. After Defendant indicated that it opposed use of this recent counterfeit sale in these proceedings, on April 27, 2023 Rockwell requested a meet and confer relating to developing the record for this sale to take place during an in-person meeting previously scheduled for May 3, 2023. *Id.*, ¶ 5. At that meeting, Rockwell asked Defendant to supplement its discovery regarding Syntegon, but Defendant declined to discuss the issue, stating that they were not prepared. *Id.*, ¶ 7. On May 12, 2023, Rockwell again requested to meet and confer regarding the Syntegon sale. *Id.*, ¶ 10.  On May 15, 2023, the parties met and conferred, but Defendant refused to produce or even search for its own Syntegon-related documents and indicated it would oppose any effort by Rockwell to reference its sale of counterfeit goods to Syntegon at trial. *Id.*, ¶ 11. As such, Rockwell has diligently pursued this motion to amend, and it has been delayed only by Defendant's efforts to

drag its feet and to prevent Rockwell from fulfilling its meet-and-confer obligation under LR 7.1.1 prior to filing this motion.

Further, in compliance with Fed. R. Civ. P. 26(e), Rockwell has updated its discovery responses, document productions, and initial disclosures as soon as it became aware of new information regarding Defendant's counterfeit sale to Syntegon, as described above. Defendant has not sought to depose these witnesses and has simply taken the position that evidence of this sale cannot be part of the upcoming trial under the Court's existing schedule. Gattuso Decl., ¶ 11.

Shortly after Rockwell raised the evidence on April 10, Defendant complained that Rockwell "did not produce any of [the new evidence] to WiAutomation." D.I. 247, 2. However, Rockwell has been producing the Syntegon evidence as it is received. On April 27, 2023, Rockwell produced more documents on this counterfeit sales transaction.  Ex. D (4/27/23 N. McLaughlin Service E-mail).[2] That same day, Rockwell served its Second Supplemental Fed. R. Civ. P. 26(a) Disclosures and its Fifth Supplemental Responses and Objections to WiAutomation's First Set (Nos. 1-25) of Interrogatories, in accord with Rule 26(e).  *See* D.I. 249. These updated discovery responses identified the new facts which came to light after the close of fact discovery due to Defendant's ongoing counterfeiting operation, and identified the Rockwell employees with personal knowledge of this latest instance of counterfeiting evidence—Christoph Bank and Anna Barbacka. *See, e.g.*, Ex. E at 3 (excerpted).  Defendant has already had an opportunity to address this evidence: it requested a sur-reply to Rockwell's summary judgment motion, D.I., 247 at 2, which Rockwell did not oppose, D.I. 252 at 1 ("Rockwell does not object to the Court considering Sections I-III of Defendant's sur-reply regarding the merits of this new evidence").

---

[2] Rockwell has since made two additional document productions, on May 8 and May 24, 2023.

5

If Defendant wanted to stop the introduction of new evidence of its own counterfeiting efforts, it should stop counterfeiting. Defendant's real objection is that it got caught, again, but that is not a sufficient basis to preclude the evidence from being considered in this action. To the contrary, it demonstrates that good cause is appropriate to allow Rockwell's supplemental responses to address this new evidence.

Further, none of this information is new to Defendant. Defendant sold the counterfeit products to Syntegon. Defendant either sent or received the communications between Defendant and Syntegon. Defendant created the invoice—on its own letterhead—and shipped the products to Syntegon. *See* Ex. A at 1. Defendant has first-hand knowledge of this transaction.

Ultimately, Rockwell moved diligently to both provide supplemental discovery responses and to meet-and-confer with Defendant regarding reopening the record. Accordingly, Rockwell respectfully requests that the Court find good cause to reopen the record regarding Defendant's additional counterfeit sale.

### III. No Prejudice for Defendant

Finally, to the extent the Court considers prejudice, there is no prejudice to Defendant here. Defendant was a party to the transaction and knows whether the products it sold were new (as advertised) or counterfeit. As discussed above, Defendant has been receiving documents (some of which Defendant created) as soon as possible.

Exclusion is not warranted given that Rockwell supplemented its discovery responses soon after learning of this new evidence and shortly after the identification of facts through the parties' summary judgment briefing concluded. The supplemental responses simply identify and cite to this collection of facts, each of which was already available to Defendant.

Far from presenting any prejudice to Defendant, exclusion of Rockwell's supplemental discovery responses would be prejudicial to Rockwell in that it would allow Defendant to

6

counterfeit Rockwell products up to and through trial without having to face consequences from its continued violation of Rockwell's rights. While not precisely analogous, other kinds of supplementation are common in intellectual property disputes, including supplementation of sales numbers through the start of trial.  On the other hand, Defendant suffers no prejudice from the updated discovery responses.

      The parties have met and conferred, pursuant to Local Rule 7.1.1, in an effort to resolve this dispute, but remain at an impasse, as discussed above.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Paul Tanck<br>Neal J. McLaughlin<br>Christopher L. McArdle<br>ALSTON & BIRD LLP<br>90 Park Avenue<br>New York, NY 10016<br><br>Matthew M. Welch<br>ALSTON & BIRD LLP<br>One South at The Plaza<br>101 South Tryon Street<br>Suite 4000<br>Charlotte, NC 28280-4000<br><br>Joshua M. Weeks<br>ALSTON & BIRD LLP<br>One Atlantic Center<br>1201 West Peachtree Street<br>Suite 4900<br>Atlanta, GA 30309-3424<br><br>Dated:  May 26, 2023 | */s/ John W. Shaw*<br>John W. Shaw (No. 3362)<br>Andrew E. Russell (No. 5382)<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>jshaw@shawkeller.com<br>arussell@shawkeller.com<br><br>*-and-*<br><br>Dominick T. Gattuso (No. 3630)<br>HEYMAN ENERIO GATTUSO & HIRZEL LLP<br>300 Delaware Avenue, Suite 200<br>Wilmington, DE 19801<br>(302) 472-7311<br>dgattuso@hegh.law<br><br>*Attorneys for Rockwell Automation, Inc.* |