# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCKWELL AUTOMATION, INC., | ) | |
| | ) | REDACTED - PUBLIC VERSION |
| Plaintiff, | ) | (Filed June 16, 2023) |
| | ) | |
| v. | ) | C.A. No. 21-1238-GBW-JLH |
| | ) | |
| PARCOP S.R.L. d/b/a | ) | ▉ |
| WIAUTOMATION, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE SCHEDULING ORDER TO SUPPLEMENT THE DISCOVERY RECORD

Defendant Parcop d/b/a WiAutomation ("WiAutomation") respectfully submits this opposition to Rockwell Automation, Inc.'s ("Rockwell") Motion to Amend the Scheduling Order to Supplement the Discovery Record ("Motion"). (D.I. 266.)

Rockwell seeks permission on the eve of trial to rely on new documents, from a purportedly new "customer," in support of new counterfeiting claims. Rockwell acknowledges (*id.*, pp. 1-2) that this discovery was first disclosed to WiAutomation in its reply brief in support of its summary judgment motion, thereby preventing WiAutomation from conducting any discovery on any of these "new" issues or

addressing them on summary judgment.[1]  WiAutomation will be severely prejudiced if Rockwell can rely on this unchecked "evidence."  Discovery is imperative due to numerous suspicious factors surrounding Rockwell's proofs from Syntegon Packaging Systems AG ("Syntegon") and Rockwell's general approach to discovery in this matter.

First, as detailed below, Syntegon appears to have a close relationship with Rockwell and may not be an independent "customer."  Second, Rockwell has not provided a single declaration from anyone with personal knowledge, or even secondhand knowledge, that WiAutomation shipped the products at issue to Syntegon.  (*See* D.I. 247, Ex. 1, pp. 1-6.)  Third, Rockwell has made repeated misrepresentations to the Court and WiAutomation about their alleged "counterfeiting" proofs from third parties and repeatedly subverted the Federal Rules and this Court's Rules.  (*See, e.g.*, D.I. 142, D.I. 261, D.I. 265.)  WiAutomation will suffer undue prejudice if Rockwell is able to use this unverified and untrustworthy "evidence" at trial.

The substantial discovery WiAutomation needs simply cannot be completed

---

[1] WiAutomation filed a Motion for Leave to File a Sur-reply Brief in Opposition to Plaintiff's Motion for Summary Judgment (D.I. 247) addressing the very limited information Rockwell disclosed about Syntegon at that time, among other improper things Rockwell submitted with and in its reply brief.  Rockwell did not object to the portion of WiAutomation's proposed sur-reply brief related to the Syntegon discovery.  (*See* D.I. 252, p. 1.)

before pre-trial submissions are due on June 30, 2023 or before the July 24, 2023 trial date, especially considering the supplemental briefing and motion practice that WiAutomation has been forced to engage in due to Rockwell's discovery misconduct.

For these reasons, detailed further below, the Motion must be denied.[2]

### I. WIAUTOMATION WILL BE PREJUDICED IF THE COURT GRANT'S ROCKWELL'S MOTION

The Court has broad discretion whether to reopen discovery based on the "specific factual circumstances presented." *Xcoal Energy & Res. v. Bluestone Energy Sales Corp.*, No. 18-819-LPS, 2020 WL 5369109 at *6, n.8 (D. Del. Sept. 8, 2020) (citing cases). As Rockwell notes, its Motion is governed by Rule 16(b)(4) and related case law. (D.I. 266, pp. 3-4.) Courts in this District have long held that "although the [Rule 16(b)] good cause standard focuses on the moving party's diligence, the Court may also 'consider any prejudice to the party opposing the modification.'" *Xcoal Energy*, 2020 WL 5369109 at *11 (*quoting Dow Chem. Canada Inc. v. HRD Corp.*, 287 F.R.D. 268, 270 (D. Del. 2012)). And "prejudice may include the delay of a trial date." *Dow*, 287 F.R.D. at 270 (*citing Redhead v. U.S.*, 686 F.2d 178, 184 (3d Cir. 1982)).

---

[2] One area on which the parties agree is that trial should proceed as scheduled and that this evidence should be excluded rather than postponing trial. (*See* D.I. 266, p. 2.)

Rockwell's claims that WiAutomation will not be prejudiced if the Syntegon documents are admitted are entirely without merit. By its Motion, Rockwell asks the Court to allow "evidence," allegedly provided by a third party, to support serious allegations, all without the opportunity for WiAutomation to seek discovery from this third-party. Rockwell argues that no additional discovery is needed because WiAutomation received some documents from Rockwell and should have other documents in its possession. (D.I. 266, pp. 6-7.) Rockwell, however, fails to acknowledge the discovery that WiAutomation would need from Syntegon and its employees, as well as the potential for other discovery from Rockwell.

As detailed below, and in WiAutomation's proposed sur-reply brief (D.I. 247, Ex. 1), given the suspicious circumstances surrounding the Syntegon purchase and Rockwell's misrepresentations concerning other third-party proofs (*see, e.g.*, D.I. 142, D.I. 261, D.I. 265), the prejudice to WiAutomation if it cannot obtain discovery from Syntegon is plainly evident.

### A.   Syntegon's Relationship With Rockwell is Suspicious.

Rockwell and Syntegon have a close relationship. Syntegon was formerly known as "Bosch Packaging Technology" ("Bosch"). (Ex. A.)[3] Rockwell published an article extolling Bosch's collaboration with Rockwell (Ex. B), including its use

---

[3] Reference to "Ex." shall relate to the exhibits annexed to the Declaration of Bob Kasolas, Esq., filed contemporaneously with this brief.

of the same product Rockwell alleges Syntegon bought from WiAutomation, i.e., 1734 Point I/O.  (*Id.* p. 3; D.I. 266, Ex. A.)  And a Rockwell employee even advertises on LinkedIn that he was involved in securing a $2 million annual "long term contract" between Bosch and Rockwell.  (Ex. C, p. 5.)  Most suspicious, however, are documents from Syntegon that Rockwell only recently produced on May 24, 2023 that suggest Rockwell leveraged this relationship to help advance this litigation.

For example, on March 7, 2023, **before** purchasing any products from WiAutomation on March 9 (D.I. 266, p. 2), Syntegon provided Rockwell with a spreadsheet of products from a variety of outlets, as seen in the image below.



(Ex. D, ROCK-00015950, ROCK-00015952.) Rockwell previously brought Lanham Act claims against Radwell in the District of New Jersey, *Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, No. 15-05246 (RBK/JS). ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (Ex. E, ROCK-00012961.) It is unclear why Syntegon would be reporting the information in Exhibit D unless Rockwell was trying to leverage Syntegon for information in this litigation. Regardless, WiAutomation is entitled to discovery from both Syntegon and Rockwell on these issues.

Additionally, Rockwell's "counterfeiting" allegations are based on a sample of thirty-one products out of the 500 that Syntegon allegedly received from WiAutomation. (Ex. F, ROCK-00015974.) However, it appears that Syntegon coincidentally purchased exactly thirty-one products from Northern Industrial, a

completely separate reseller. (*See* Ex. D, ROCK-00015952, & screenshot above.) It is doubtful that Rockwell or Syntegon randomly picked a sample of exactly thirty-one products from the 500 that WiAutomation allegedly shipped, when Syntegon seems to have bought exactly thirty-one products from another retailer. Regardless, WiAutomation is entitled to discovery to determine, among other things, where these thirty-one products came from.

These dubious circumstances are compounded by the fact that nobody from Syntegon is willing to stand by Rockwell's allegations. Rockwell has not provided a declaration from anyone at Syntegon and does not plan to call any Syntegon witness at trial. (D.I. 266, Ex. E.) Rockwell continues to rely on the Declaration of Rockwell employee and 30(b)(6) witness, Ryan Smaglik (D.I. 224), for this Motion (D.I. 266, pp. 1, 3).[4] Mr. Smaglik, however, does not work for Syntegon, and did not even speak to anyone from Syntegon. (D.I. 252, pp. 2-3.) And, as noted in WiAutomation's sur-reply brief, Mr. Smaglik cannot possibly have personal knowledge of anything that Syntegon purchased or received from WiAutomation. (D.I. 247, Ex. 1, pp. 4-5.)

Rockwell tried to fix this glaring issue by attempting to secure a declaration from a Syntegon representative. ████████████████████

---

[4] Smaglik's Declaration was the subject of WiAutomation's Motion for Leave to File a Sur-reply Brief in Opposition to Plaintiff's Motion for Summary Judgment (D.I. 247).

███████████████████████████████

███████████████████████████████

███████████████████████████████

█████████████████████

Worse, nobody from Rockwell who even spoke with Syntegon was willing to sign a declaration either. Indeed, Rockwell admits that Christoph Bank was the Rockwell employee who spoke with Syntegon (D.I. 252, p. 3), but Mr. Bank did not submit a single sworn statement. Without any declaration from Syntegon or Mr. Bank, Rockwell was forced to display mental gymnastics to argue in its May 5, 2023 submission that Mr. Smaglik somehow had personal knowledge of the Syntegon matters even though he does not work for Syntegon and has not even spoken to its representatives. (*Id*.)

Again, given these questionable circumstances, it would be highly prejudicial to WiAutomation to permit Rockwell to base counterfeiting claims off of proofs that were not the focus of any discovery.

### B. Rockwell's Misrepresentations Concerning Third-Party "Counterfeiting" Proofs.

Rockwell's bare conclusion that WiAutomation does not need discovery from Syntegon also should not be accepted at face value in light of Rockwell's prior misrepresentations and discovery abuses concerning Recon and Mark Paliszewski, briefly summarized below.

First, during fact discovery Rockwell claimed that certain products were obtained by a "customer" and did not identify any Rockwell agent that was involved in the "customer's" purchases.  (D.I. 142, Ex. D, Rog 14.)  Second, after it was revealed that the "customer" was Rockwell's agent, Mark Paliszewski, who allegedly made undercover "test purchases," Rockwell represented in writing to the Court that "[t]here was one agent involved, Paliszewski[.]"  (D.I. 164, p. 2.)  Third, Rockwell represented to the Court during the May 3, 2023 hearing that "Mark Paliszewski was the one who purchased [the products] and provided the photos" (D.I. 265, p. 1 (citing Ex. 1, 76:21-25)) and that Mr. Paliszewski would testify that he "made this purchase" for Rockwell (*id.* (citing Ex. 1, 61:11-13)).  Fourth, Rockwell submitted a Declaration where Mark Paliszewski stated under oath that he contacted WiAutomation, made the two test purchases, and took photographs of the products that he purchased and received.  (D.I. 142, Ex. F.)

As set forth in WiAutomation's recent letter to the Court (D.I. 265, pp. 1-4), none of these statements turned out to be true.  Neither Mr. Paliszewski nor his firm Recon Management Group, LLC ever contacted WiAutomation, purchased anything from WiAutomation, or directly received products from WiAutomation.  (*Id.*, p. 2.)  Rather, five undisclosed individuals, four of whom are from separate entities, conducted every step of the purchases, from initial communications with WiAutomation to receipt of the products.  (*Id.*)

Further, Rockwell belatedly produced an admission that the products obtained from these test purchases are genuine. During the May 3, 2023 hearing, Rockwell admitted that its investigation of WiAutomation was not directed by counsel. Yet at that time, Rockwell was withholding dozens of documents on the basis that they contained privileged instructions from counsel concerning Rockwell's investigation of WiAutomation. (*See id.*, pp. 4-5.) After the hearing on May 12, 2023, at WiAutomation's request, Rockwell produced some documents previously withheld as privileged. This production included an admission from a Rockwell employee that the products Rockwell allegedly obtained from test purchases came from a legitimate source of genuine Rockwell products. (*Id.*, Ex. 13.) Rockwell's response was that the supplier at issue was not authorized to sell products to WiAutomation and that WiAutomation claims it obtained the products elsewhere. (D.I. 269, p. 4.) Rockwell misses the point. The issue is that Rockwell continued to represent that products were counterfeit even though, behind closed doors, it believed that the same products came from a source that sells genuine Rockwell products.

Given all of this, it would be unquestionably prejudicial to allow Rockwell to advance new theories and new discovery at this late stage.[5]

---

[5] This is especially the case considering that the Syntegon discovery conveniently arose in March 2023, just in time for Rockwell to file its summary judgment reply brief, and just after WiAutomation made clear its intention to file a motion to strike Rockwell's belated disclosure of the "Recon" test purchases.

### C. Sufficient Discovery Cannot be Completed in Time.

The discovery needed to avoid this prejudice cannot be completed by June 30, 2023, when the pretrial order is due to be filed, or by the July 24, 2023 trial date. Substantial written discovery from Syntegon would be required regarding the products it allegedly received from WiAutomation, as well as the products it received from other retailers. WiAutomation would also request communications between Rockwell and Syntegon, which Rockwell has been trickling out,[6] and others that Rockwell may be withholding. WiAutomation would also need to depose at least two individuals from Syntegon, Milicevic Lazar and Patrick Eberwein, and likely others that would be revealed after further discovery. This discovery is further complicated by the fact that Syntegon, a Swiss company, must be served pursuant to the Hague Convention, which will cause further delays. Fed. R. Civ. P. 4(f)(1). Further, WiAutomation would also consider deposing Rockwell employees, Christoph Bank and Anna Barbacka.

Although WiAutomation firmly believes the Court should grant summary judgment in its favor, WiAutomation is ready, willing, and able to proceed to trial on July 24, 2023, and would be prejudiced if the trial date is delayed in order to

---

[6] Rockwell's claims that it "moved diligently to . . . provide supplemental discovery responses" is belied by the fact that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (see, e.g., Ex. D, Ex. F), yet Rockwell first produced these communications, among others, on May 24, 2023.

permit Rockwell to rely on this belatedly produced Syntegon discovery (as well as the belatedly-produced Recon discovery). *Dow*, 287 F.R.D. at 270; *Xcoal Energy*, 2020 WL 5369109 at *11.

## II.  CONCLUSION

For these reasons, Rockwell's Motion must be denied, and Rockwell should be barred from relying on materials from Syntegon in this matter.

Dated: June 9, 2023

*Of Counsel*:

Bob Kasolas
Eric J. Boden
BRACH EICHLER, LLC
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 403-3139
bkasolas@bracheichler.com
eboden@bracheichler.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Alexis N. Stombaugh (No. 6702)
Maliheh Zare (No. 7133)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
astombaugh@ycst.com
mzare@ycst.com

*Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that Defendant's Opposition to Plaintiff's Motion to Amend the Scheduling Order to Supplement the Discovery Record is in Times New Roman 14-point font and contains 2,263 words, exclusive of caption, tables, and signature block, counted using Microsoft Word's word count feature.

| | |
|---|---|
| Dated: June 9, 2023 | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| *Of Counsel*: | */s/ Pilar G. Kraman*<br>Pilar G. Kraman (No. 5199) |
| Bob Kasolas<br>Eric J. Boden<br>BRACH EICHLER, LLC<br>101 Eisenhower Parkway<br>Roseland, NJ 07068<br>(973) 403-3139<br>bkasolas@bracheichler.com<br>eboden@bracheichler.com | Alexis N. Stombaugh (No. 6702)<br>Maliheh Zare (No. 7133)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>pkraman@ycst.com<br>astombaugh@ycst.com<br>mzare@ycst.com |
| | *Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 16, 2023, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY E-MAIL**

Dominick T. Gattuso
HEYMAN ENERIO GATTUSO
& HIRZEL LLP
300 Delaware Ave., Suite 200
Wilmington, DE 19801
dgattuso@hegh.law

John W. Shaw
Andrew E. Russell
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
jshaw@shawkeller.com
arussell@shawkeller.com
skRockwell@shawkeller.com

Matthew M. Welch
ALSTON & BIRD LLP
One South at The Plaza
101 South Tryon Street
Suite 4000
Charlotte, NC 28280
matt.welch@alston.com

Neal J. McLaughlin
Paul Tanck
Christopher L. McArdle
Andrew J. Ligotti
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
neal.mclaughlin@alston.com
paul.tanck@alston.com
chris.mcardle@alston.com
andy.ligotti@alston.com

Joshua M. Weeks
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
joshua.weeks@alston.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Alexis N. Stombaugh*
Pilar G. Kraman (No. 5199)
Alexis N. Stombaugh (No. 6702)
Maliheh Zare (No. 7133)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
astombaugh@ycst.com

mzare@ycst.com

*Attorneys for Defendant*