IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCKWELL AUTOMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1238-GBW-JLH |
| | ) | |
| PARCOP S.R.L. d/b/a | ) | |
| WIAUTOMATION, | ) | |
| | ) | |
| Defendant. | ) | |

**[PROPOSED] FINAL JURY INSTRUCTIONS**

## <u>TABLE OF CONTENTS</u>

1.0    GENERAL INSTRUCTIONS .........................................................................1

1.1    INTRODUCTION ........................................................................................1

1.2    JURORS' DUTIES .......................................................................................2

1.3    EVIDENCE DEFINED .................................................................................3

1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE.........................................5

1.5    CONSIDERATION OF EVIDENCE.............................................................6

1.6    STATEMENTS OF COUNSEL ....................................................................7

1.7    CREDIBILITY OF WITNESSES ..................................................................8

1.8    NUMBER OF WITNESSES .......................................................................10

1.9    EXPERT WITNESSES ...............................................................................11

1.10   DEPOSITION TESTIMONY ......................................................................12

1.11   USE OF INTERROGATORIES...................................................................13

1.12   EXHIBITS .................................................................................................14

1.13   BURDENS OF PROOF ..............................................................................15

1.14   USE OF NOTES .........................................................................................17

2.0    THE PARTIES AND THEIR CONTENTIONS ............................................18

2.1    THE PARTIES............................................................................................18

2.2    THE PARTIES' CONTENTIONS ...............................................................19

2.3    TRADEMARK OVERVIEW .......................................................................30

2.3.1 TRADEMARK INFRINGEMENT – GENERALLY .....................................31

2.3.2 [PLAINTIFF'S PROPOSAL: TRADEMARK INFRINGEMENT –
       LIKELIHOOD OF CONFUSION]...............................................................33

2.3.3 [PLAINTIFF'S PROPOSAL: COUNTERFEITING ]

2.3.4 [PLAINTIFF'S PROPOSAL: WILLFUL TRADEMARK INFRINGEMENT OR COUNTERFEITING.................................................................47

2.4     FALSE DESIGNATION OF ORIGIN .................................................50

2.4.1 [PLAINTIFF'S PROPOSAL: WILLFUL FALSE DESIGNATION OF ORIGIN] ................................................................................................51

2.5     FALSE ADVERTISING .......................................................................52

2.5.1 [PLAINTIFF'S PROPOSAL: WILLFUL FALSE ADVERTISING]............55

2.6     DECEPTIVE TRADE PRACTICES.....................................................56

2.6.1 [PLAINITFF'S PROPOSAL: WILLFUL DECEPTIVE TRADE PRACTICES]...........................................................................................60

2.7     UNFAIR COMPETITION....................................................................61

2.7.1 [PLAINTIFF'S PROPOSAL: WILLFUL UNFAIR COMPETITION].........63

2.8     MONETARY AWARDS.......................................................................65

2.8.1 DISGORGEMENT OF PROFITS........................................................67

2.8.2 [PLAINTIFF'S PROPOSAL: STATUTORY DAMAGES UNDER THE FEDERAL LANHAM ACT]....................................................................70

2.8.3 COMPENSATORY DAMAGES .........................................................73

2.8.4 PUNITIVE DAMAGES ......................................................................76

3.0     DELIBERATION AND VERDICT ......................................................78

3.1     INTRODUCTION ................................................................................78

3.2     UNANIMOUS VERDICT ....................................................................79

3.3     DUTY TO DELIBERATE ....................................................................81

3.4     SOCIAL MEDIA .................................................................................83

3.5     COURT HAS NO OPINION................................................................84

## 1.0   GENERAL INSTRUCTIONS

### 1.1   INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

## 1.2    JURORS' DUTIES

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

## 1.3    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played by video or read to you), the exhibits that I allowed into evidence, and the stipulations to which the parties agreed.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some

of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

You should not be concerned with whether there were any earlier proceedings in this case or, if there were, what the outcome of any such proceedings might have been. And as I have told you previously, the Court has no opinion on the matters you are being asked to decide. Make your decision based only on the evidence, as I have defined it here, and nothing else.

## 1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining. Circumstantial evidence is of no less value than direct evidence.

It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.5   CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**1.6**     **<u>STATEMENTS OF COUNSEL</u>**

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

### 1.7    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial. You have the right to distrust such a witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional

falsehood, and that may depend upon whether it concerns an important fact or an

unimportant detail.

## 1.8    **NUMBER OF WITNESSES**

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

## 1.9   <u>EXPERT WITNESSES</u>

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

## 1.10   <u>DEPOSITION TESTIMONY</u>

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition. If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

**1.11   <u>USE OF INTERROGATORIES</u>**

You may have heard answers that the parties gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath, before the trial.

You must consider the parties' answers to interrogatories in the same manner as if the answers were made from the witness stand.

## 1.12   __EXHIBITS__

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room to consider as evidence for your deliberations.

The remainder of the exhibits (including charts, PowerPoint presentations and graphics) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," will not be in the jury room and have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

In some instances, certain charts and summaries may have been received into evidence to illustrate information brought out in the trial. You may use these charts and summaries as evidence, even though the underlying documents and records are not here. You should give them only such weight as you think they deserve.

## 1.13   BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

Rockwell has the burden of proving its claims and the amount of its money damages, if any, by what is called a preponderance of evidence. That means that Rockwell has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Rockwell claims is more likely true than not. To put it differently, if you were to put the evidence of Rockwell and WiAutomation concerning each issue on opposite sides of a scale, the evidence supporting Rockwell's claims would have to make the scales tip somewhat on its side in each instance. If the scale should remain equal or tip in favor of the WiAutomation, you must find for WiAutomation.

If you find that WiAutomation is liable for one or more of Rockwell's claims, then as a separate question, Rockwell has also asserted that WiAutomation's conduct was willful. Rockwell has the burden of proving this additional contention by clear and convincing evidence.

Clear and convincing evidence means that it is highly probable that a fact is true.  Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof is higher than "clear and convincing," but applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

[**Source**: Exhibit 1: Adapted from Final Jury Instructions *Cirba v. VMware,* 19-cv-742, Dkt. No. 1767 (D. Del. Apr. 28, 2023).]

## 1.14   <u>USE OF NOTES</u>

You may use notes taken during trial to assist your memory. However, as I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency I think to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

## 2.0    THE PARTIES AND THEIR CONTENTIONS

### 2.1    THE PARTIES

I will now review for you the parties in this action, and the positions of the

parties that you will have to consider in reaching your verdict.

The plaintiff in this case is Rockwell Automation, Inc., which I will refer to

as "Rockwell." The defendant in this case is Parcop S.R.L., doing business as

WiAutomation. I will refer to it as "WiAutomation."

## 2.2   THE PARTIES' CONTENTIONS

Rockwell seeks **[Defendant:** "money"**]**[1] damages against WiAutomation for

**[Defendant:** alleged**]** trademark infringement, **[Plaintiff:** counterfeiting**]**[2], false

---

[1] **[PLAINTIFF**: Defendant's insertion of "money" is inappropriate and does not conform with the Court's template instruction in *Cirba* at section 6.0.  Exhibit 1: Final Jury Instructions *Cirba v. VMware,* 19-cv-742, Dkt. No. 1767 (D. Del. Apr. 28, 2023).**] [DEFENDANT:** The "damages" Plaintiff seeks are in the form of "money."  It is appropriate to instruct the Jury what Rockwell is seeking from this lawsuit, as they may not understand the meaning of damages.]

[2] **[PLAINTIFF**: Throughout these proposed final jury instructions, Defendant removes all references to counterfeiting.   This is inappropriate.   Rockwell's Complaint alleges that WiAutomation is selling counterfeit Rockwell products. D.I. 1, ¶¶ 56, 58, 136, 146.   Rockwell's motion for summary judgment asserts counterfeiting. D.I. 145, Section III.A.3 pp. 13-17 ("Defendant's Trademark Infringement Involves Counterfeit Marks."); s*ee also Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 n.2 (S.D.N.Y. 2015) ("the Lanham Act does not provide for a separate cause of action for counterfeiting…."); *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 866 (C.D. Ill. 2013) (the court held that "the use of a counterfeit mark in the context of the Lanham Act is not, in and of itself, a cause of action. Rather, in a civil action arising under § 1114, a finding that a counterfeit mark was used permits certain additional remedies, including seizure of the goods so marked, § 1116(d)(1)(A); treble damages, § 1117(b); the awarding of statutory damages, § 1117(c); and attorney's fees, § 1117(a). It is for these special civil monetary remedies that Defendant invokes the counterfeit mark provisions."). These available remedies are merely "a counterfeit mark enhancement" under the Lanham Act. *Id.*; *see also Lontex Corp. v. Nike, Inc.*, 384 F.Supp.3d 546, 554 (E.D. Pa. 2019) ("even though the [complaint] does not plead counterfeiting as a separate claim, the Court proceeds to determine … [plaintiff's] entitlement to relief for counterfeiting.") Rockwell is seeking statutory damages for its counterfeiting claims and the jury will need to deliver a verdict on whether or not Defendant has committed acts of counterfeiting.**] [DEFENDANT**: Plaintiff did not assert a separate claim for counterfeiting, and solely claims counterfeiting as trademark infringement under the Lanham Act.  It is therefore inappropriate to reference counterfeiting separate from trademark infringement here.]

designation of origin, and false advertising in violation of federal law, deceptive

trade practices and unfair competition under state law **[Defendant:** "concerning

Rockwell's industrial automation products**]**.[3]    Rockwell also contends that

WiAutomation's alleged violations were willful.  Finally, Rockwell contends that  it

---

[3]  [**PLAINTIFF**: Defendant's insertion of "concerning Rockwell's industrial automation products" is inappropriate and does not conform with the Court's template instruction in *Cirba*.  Exhibit 1: Final Jury Instructions *Cirba v. VMware,* 19-cv-742, Dkt. No. 1767 (D. Del. Apr. 28, 2023). It also diverges from the template final jury instruction in *Cirba Inc. v. VMware* in a later portion which states "**potential purchasers of goods and services in the relevant marketplace**" and this issue is further discussed in later portions of these jury instructions.  *Id*. ("A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. A trademark may be registered or unregistered. Assuming that Densify proves it owns a valid and protectable trademark, your infringement analysis is the same regardless of registration. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion among the ***potential purchasers of goods and services in the relevant marketplace***. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.") (hereinafter, emphasis added unless otherwise stated).  Further, Defendant's proposal excludes relevant consumers that were identified by Rockwell's fact witness and its expert, which include purchasers of industrial, electrical, and electronic control products.  D.I. 147 ¶ 4("Rockwell **sells industrial, electrical, and electronic control products** …."); D.I. 152 ¶ 27 ("Rockwell's survey expert found that 94.81% of his survey respondents (which included hundreds of **purchasers of industrial, electrical, and electronic control equipment**) reported that the original manufacturer's warranty was important or very important to their purchasing decision…."). Applying Defendant's overly narrowed definition of consumers in the jury instructions would invite clear error.]  [**DEFENDANT:** All of the trademarks at issue are on Plaintiff's industrial automation products. Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case. Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products.**" D.I. 1 ¶19]

is entitled to an award of WiAutomation's profits, statutory damages, compensatory damages, and punitive damages. **[Plaintiff:** WiAutomation denies that it engaged in trademark infringement, counterfeiting, false designation of origin, and false advertising in violation of federal law, deceptive trade practices and unfair competition under state law.**] [Defendant:** WiAutomation contends that Rockwell's trademark infringement claims fail because Rockwell cannot control its products after they sold. WiAutomation also asserts that Rockwell's claims fail because the sophisticated customers who purchase industrial automation products from WiAutomation understand exactly what services and products are included when they purchase products from WiAutomation."**]**[4]

Here are the issues you must decide:

1. Whether WiAutomation's has committed trademark infringement

   **[Defendant:** "by creating a likelihood of confusion in the marketplace

---

[4] **[PLAINTIFF:** Defendant's proposed instruction is inappropriate because it unnecessarily and improperly inserts argument into this jury instruction. Defendant's argumentative contention section is inconsistent with the parties' Preliminary Jury Instructions, which do not contain argument and state "WiAutomation denies all of Rockwell's claims." In addition, in the final jury instructions in *Cirba* at Section 6.0, the Court's template instruction does not contain argument. Exhibit 1: Final Jury Instructions *Cirba v. VMware,* 19-cv-742, Dkt. No. 1767 (D. Del. Apr. 28, 2023) ("***VMware denies that it engaged in trademark infringement or deceptive trade practices***."). Plaintiff's proposed language for this instruction tracks the non-argumentative model set forth in *Cirba* and should be adopted.**] [DEFENDANT**: This section appropriately sets forth Defendant's defenses to Plaintiff's claims. This is no more argumentative than Plaintiff saying it seeks damages for trademark infringement.**]**

concerning the Rockwell industrial automation products that WiAutomation sells/has sold in the United States,][5] and if so, whether it was willfully done.

---

[5] **[PLAINTIFF:** Defendant's proposed instruction is inappropriate because it is inconsistent with the final jury instructions in *Cirba* at Section 6.0, which do not contain this additional proposed language. Exhibit 2: Final Instructions – *Cirba Inc. v. Vmware*, 19-cv-742, Dkt. No. 526 section 6.0(3) (D. Del. Jan. 22, 2020) ("***Whether Densify has proven that VMware engaged in trademark infringement.***"). Defendant's proposed instruction which inserts "industrial automation products" is also inappropriate because it improperly narrows the universe of products and diverges from the template final jury instruction in *Cirba* at Section 7.0 which states "potential purchasers of ***goods and services*** in the relevant marketplace." Moreover Defendant's proposal excludes products at issue in this lawsuit as identified by Plaintiff and its expert, which include industrial, electrical, and electronic control products. D.I. 147 ¶ 4("Rockwell **sells industrial, electrical, and electronic control products** ...."); D.I. 152 ¶ 27 ("Rockwell's survey expert found that 94.81% of his survey respondents (which included hundreds of **purchasers of industrial, electrical, and electronic control equipment**) reported that the original manufacturer's warranty was important or very important to their purchasing decision....").]. Deletion of Defendant's proposed language will more closely track the instruction set forth in *Cirba* and should be adopted.] **[DEFENDANT:**This proposed instruction is appropriate because it sets forth the most basic concept concerning trademark infringement. *Iberia Foods Corp v. Romeo*, 150 F.3d 298, 302-304 (3d. Cir. 1998); *Checkpoint Systems, Inc v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 284 (3d Cir. 2001). This instruction is further appropriate because of the Supreme Court's decision in *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043, limiting the reach of the Lanham Act to conduct that occurred in the United States. Plaintiff has not identified any conceivable way that the specific reference to the only products at issue can possibly limit damages. Nor can it. Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case. Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products.**" ( D.I. 1 ¶19)**]**

2. Whether WiAutomation committed false designation of origin **[Defendant:** "concerning the Rockwell industrial automation products that WiAutomation sells/has sold in the United States,"**]** and if so, whether it was willfully done.

3. Whether WiAutomation engaged in false advertising **[Defendant:** "advertising concerning the Rockwell industrial automation products that WiAutomation sells/has sold in the United States"**]**[6] and if so, whether it was willfully done.

---

[6] [**PLAINTIFF:** Defendant's proposed instruction is inappropriate because it is inconsistent with the final jury instructions in *Cirba* at Section 6.0, which do not contain this additional proposed language. Exhibit 2: Final Instructions – *Cirba Inc. v. Vmware*, 19-cv-742, Dkt. No. 526 section 6.0(3) (D. Del. Jan. 22, 2020) ("***Whether Densify has proven that VMware engaged in trademark infringement***."). Defendant's proposed instruction which inserts "industrial automation products" is also inappropriate because it improperly narrows the universe of products and diverges from the template final jury instruction in *Cirba* at Section 7.0 which states "potential purchasers of ***goods and services*** in the relevant marketplace." Moreover Defendant's proposal excludes products identified by Plaintiff and its expert, which include industrial, electrical, and electronic control equipment and devices. Deletion of Defendant's proposed language will more closely track the instruction set forth in *Cirba* and should be adopted.] [**DEFENDANT**: This instruction is appropriate because of the Supreme Court's decision in *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043, limiting the reach of the Lanham Act to conduct that occurred in the United States. Plaintiff has not identified any conceivable way that the specific reference to the only products at issue can possibly limit damages. Nor can it. Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case. Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products." (**D.I. 1 ¶19)]

23

4. Whether WiAutomation engaged in deceptive trade practices **[Defendant:** "concerning the Rockwell industrial automation products that WiAutomation sells/has sold in the United States"**]**[7] and if so, whether it was willfully done.

---

[7] **[PLAINTIFF:** Defendant's proposed instruction is inappropriate because it is inconsistent with the final jury instructions in *Cirba* at Section 6.0, which does not contain this additional proposed language. Exhibit 2: Final Instructions – *Cirba Inc. v. Vmware*, 19-cv-742, Dkt. No. 526 section 6.0(3) (D. Del. Jan. 22, 2020) ("***Whether Densify has proven that VMware engaged in trademark infringement***."). Defendant's proposed instruction which inserts "industrial automation products" is also inappropriate because it improperly narrows the universe of products and diverges from the template final jury instruction in *Cirba* at Section 7.0 which states "potential purchasers of ***goods and services*** in the relevant marketplace." Moreover Defendant's proposal excludes products identified by Plaintiff and its expert, which include industrial, electrical, and electronic control products. D.I. 147 ¶ 4("Rockwell **sells industrial, electrical, and electronic control products** …."); D.I. 152 ¶ 27 ("Rockwell's survey expert found that 94.81% of his survey respondents (which included hundreds of **purchasers of industrial, electrical, and electronic control equipment**) reported that the original manufacturer's warranty was important or very important to their purchasing decision….") Deletion of Defendant's proposed language will more closely track the instruction set forth in *Cirba* and should be adopted.**] [DEFENDANT**: This instruction is appropriate because of the Supreme Court's decision in *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043, limiting the reach of the Lanham Act to conduct that occurred in the United States. There is no indication that Delaware state law can be applied extraterritorially. Plaintiff has not identified any conceivable way that the specific reference to the only products at issue can possibly limit damages. Nor can it. Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case. Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products." (**D.I. 1 ¶19.)**]**

5. Whether WiAutomation engaged in unfair competition **[Defendant:** "concerning the Rockwell industrial automation products that WiAutomation sells/has sold in the United States"**]**[8] and if so, whether it was willfully done.

---

[8] **[PLAINTIFF:** Defendant's proposed instruction is inappropriate because it is inconsistent with the final jury instructions in *Cirba* at Section 6.0, which does not contain this additional proposed language.  Exhibit 2: Final Instructions – *Cirba Inc. v. Vmware*, 19-cv-742, Dkt. No. 526 section 6.0(3) (D. Del. Jan. 22, 2020) ("***Whether Densify has proven that VMware engaged in trademark infringement***.").  Defendant's proposed instruction which inserts "industrial automation products" is also inappropriate because it improperly narrows the universe of products and diverges from the template final jury instruction in *Cirba* at Section 7.0 which states "potential purchasers of ***goods and services*** in the relevant marketplace."  Moreover Defendant's proposal excludes products identified by Plaintiff and its expert, which include industrial, electrical, and electronic control products.   D.I. 147 ¶ 4("Rockwell **sells industrial, electrical, and electronic control products** …."); D.I. 152 ¶ 27 ("Rockwell's survey expert found that 94.81% of his survey respondents (which included hundreds of **purchasers of industrial, electrical, and electronic control equipment**) reported that the original manufacturer's warranty was important or very important to their purchasing decision….") Deletion of Defendant's proposed language will more closely track the instruction set forth in *Cirba* and should be adopted.**]**  **[DEFENDANT**: This instruction is appropriate because of the Supreme Court's decision in *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043, limiting the reach of the Lanham Act to conduct that occurred in the United States.  There is no indication Delaware state law can be applied extraterritorially.   Plaintiff has not identified any conceivable way that the specific reference to the only products at issue can possibly limit damages.  Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case.  Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products." (**D.I. 1 ¶19.)**]**

6. **[Plaintiff:** "Whether WiAutomation sold counterfeit Rockwell-branded

products in the United States, and if so, whether it was willfully done."]⁹

---

⁹ **[PLAINTIFF:** Defendant's proposed instruction is inappropriate because it is inconsistent with how the final jury instructions in *Cirba* at Section 6.0 introduces the issues to be decided, which does not contain this additional proposed language. Exhibit 1: Final Jury Instructions Exhibit 2: Final Instructions – *Cirba Inc. v. Vmware*, 19-cv-742, Dkt. No. 526 section 6.0(3) (D. Del. Jan. 22, 2020) ("*Whether Densify has proven that VMware engaged in trademark infringement*."). Defendant's proposed instruction which inserts "industrial automation products" is also inappropriate because it improperly narrows the universe of products and diverges from the template final jury instruction in *Cirba* at Section 7.0 which states "potential purchasers of *goods and services* in the relevant marketplace." Moreover Defendant's proposal excludes products identified by Plaintiff and its expert, which include industrial, electrical, and electronic control products.    D.I. 147 ¶ 4("Rockwell **sells industrial, electrical, and electronic control products** …."); D.I. 152 ¶ 27 ("Rockwell's survey expert found that 94.81% of his survey respondents (which included hundreds of **purchasers of industrial, electrical, and electronic control equipment**) reported that the original manufacturer's warranty was important or very important to their purchasing decision…."). Deletion of Defendant's proposed language will more closely track the instruction style set forth in *Cirba* and should be adopted.  Defendant claims Rockwell has not asserted allegations of counterfeiting, but that is belied by the Complaint in this action which alleges that WiAutomation is selling counterfeit Rockwell products. D.I. 1, ¶¶ 56, 58, 136, 146.   In addition, Rockwell's motion for summary judgment asserts counterfeiting. D.I. 145, Section III.A.3 pp. 13-17 ("Defendant's Trademark Infringement Involves Counterfeit Marks."); s*ee also Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 n.2 (S.D.N.Y. 2015) ("the Lanham Act does not provide for a separate cause of action for counterfeiting…."); *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 866 (C.D. Ill. 2013) (the court held that "the use of a counterfeit mark in the context of the Lanham Act is not, in and of itself, a cause of action. Rather, in a civil action arising under § 1114, a finding that a counterfeit mark was used permits certain additional remedies, including seizure of the goods so marked, § 1116(d)(1)(A); treble damages, § 1117(b); the awarding of statutory damages, § 1117(c); and attorney's fees, § 1117(a). It is for these special civil monetary remedies that Defendant invokes the counterfeit mark provisions."). These available remedies are

7.  The amount of profit WiAutomation received from the sale of Rockwell-branded products **[Defendant:** "concerning the Rockwell industrial automation products that WiAutomation sells/has sold in the United States,"]**[10]** during the relevant time period.

---

merely "a counterfeit mark enhancement" under the Lanham Act. *Id.*; *see also Lontex Corp. v. Nike, Inc.*, 384 F.Supp.3d 546, 554 (E.D. Pa. 2019) ("even though the [complaint] does not plead counterfeiting as a separate claim, the Court proceeds to determine … [plaintiff's] entitlement to relief for counterfeiting.") Rockwell is seeking statutory damages for its counterfeiting claims and the jury will need to deliver a verdict on whether or not Defendant has committed acts of counterfeiting.**]** **[DEFENDANT**: Plaintiff's objection that Defendant deviated from *Cirba* is wrong. In fact, Plaintiff deviated fom *Cirba* by improperly including a separate instruction concerning counterfeiting because the final jury sheet in *Cirba* did not include a counterfeiting claim.  Moreover, Rockwell did not properly pursue a counterfeiting claim under the Lanham Act.  Rockwell brought a claim for trademark infringement and failed to identify in its interrogatory responses that counterfeiting was a basis for the alleged trademark infringement (D.I. 142 Ex. I Rog 3, Rog 19).)**]**

[10] **[PLAINTIFF:** Defendant's proposed instruction is inappropriate because it is inconsistent with the final jury instructions in *Cirba* at Section 6.0, which does not contain this additional proposed language.  Exhibit 2: Final Instructions – *Cirba Inc. v. Vmware*, 19-cv-742, Dkt. No. 526 section 6.0(3) (D. Del. Jan. 22, 2020) ("***Whether Densify has proven that VMware engaged in trademark infringement***.") (emphasis added).  Defendant's proposed instruction which inserts "industrial automation products" is also inappropriate because it improperly narrows the universe of products and diverges from the template final jury instruction in *Cirba* at Section 7.0 which states "potential purchasers of ***goods and services*** in the relevant marketplace."  Moreover Defendant's proposal excludes products identified by Plaintiff and its expert, which include industrial, electrical, and electronic control products. D.I. 147 ¶ 4("Rockwell **sells industrial, electrical, and electronic control products** …."); D.I. 152 ¶ 27 ("Rockwell's survey expert found that 94.81% of his survey respondents (which included hundreds of **purchasers of industrial, electrical, and electronic control equipment**) reported that the original manufacturer's warranty was important or very important to their purchasing decision….") Deletion of Defendant's proposed language will more closely track

8. If you decide that Rockwell has proven that WiAutomation engaged in trademark infringement, false designation of origin, false advertising, deceptive trade practices, **[Defendant:** "or"**]** unfair competition **[Plaintiff:** ", or counterfeiting"**]**[11] **[Defendant:** "in the United States"**]**, the monetary award to Rockwell for those acts.

---

the instruction set forth in *Cirba* and should be adopted.**]**   **[DEFENDANT**: This instruction is appropriate because of the Supreme Court's decision in *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043, limiting the reach of the Lanham Act to conduct that occurred in the United States.   Plaintiff has not identified any conceivable way that the specific reference to the only products at issue can possibly limit damages.  Nor can it.  Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case.  Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products." (**D.I. 1 ¶19)**]**

[11] **[PLAINTIFF**: Defendant improperly tries to remove all references to Rockwell's trademark infringement claims involving counterfeit marks.  This is inappropriate. Rockwell's Complaint alleges that WiAutomation is selling counterfeit Rockwell products. D.I. 1, ¶¶ 56, 58, 136, 146.  Rockwell's motion for summary judgment asserts counterfeiting. D.I. 145, Section III.A.3 pp. 13-17 ("Defendant's Trademark Infringement Involves Counterfeit Marks.").  Rockwell's interrogatories provides responses regarding the counterfeit allegations. D.I. 142 Exh. I Rog 14 ("Defendant shipped a product … **that bore a counterfeit label** and was enclosed in a box bearing **a counterfeit "Factory Seal" label**."); s*ee also Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 n.2 (S.D.N.Y. 2015) ("the Lanham Act does not provide for a separate cause of action for counterfeiting…."); *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 866 (C.D. Ill. 2013) (the court held that "the use of a counterfeit mark in the context of the Lanham Act is not, in and of itself, a cause of action. Rather, in a civil action arising under § 1114, a finding that a counterfeit mark was used permits certain additional remedies, including seizure of the goods so marked, § 1116(d)(1)(A); treble damages, § 1117(b); the awarding of statutory damages, § 1117(c); and

I will now provide more detailed instructions on each of the issues you must decide.

---

attorney's fees, § 1117(a). It is for these special civil monetary remedies that Defendant invokes the counterfeit mark provisions."). Rockwell's Interrogatories also allege counterfeiting.  These available remedies are merely "a counterfeit mark enhancement" under the Lanham Act. *Id.*; *see also Lontex Corp. v. Nike, Inc.*, 384 F.Supp.3d 546, 554 (E.D. Pa. 2019) ("even though the [complaint] does not plead counterfeiting as a separate claim, the Court proceeds to determine … [plaintiff's] entitlement to relief for counterfeiting.")**]**     **[DEFENDANT**: Plaintiff's "counterfeiting" allegations in its complaint are made entirely upon information and belief.  More importantly, Plaintiff did not identify "counterfeiting" as a basis for relief for trademark infringement in its interrogatory responses served during discovery.  Specifically, Defendant's Interrogatory No. 3 asked Plaintiff to "describe the nature of each component" of Plaintiff's allegations of damages in the Complaint.  (D.I. 142, Ex. I, Rog 3) Rockwell did not identify counterfeiting as a component of damages in response. (*Id.*)  Similarly, Rockwell did not identify "counterfeiting" in response to Interrogatory No. 19, which asked Rockwell to "state all facts supporting" its trademark infringement allegation. (D.I. 12, Ex. I, Rog 19). Rockwell therefore indicated that it would not pursue a trademark infringement claim based on counterfeiting.**]**

## 2.3    TRADEMARK OVERVIEW

A federal statute known as the Lanham Act protects trademark owners. The statute prohibits the use in commerce of "any reproduction, copy, counterfeit or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion among the potential purchasers of goods and services in the relevant marketplace. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant to protect its goodwill.

**Source:** *See* Exhibit 3: The Lanham Act; Exhibit 2: Final Instructions – *Cirba Inc. v. Vmware*, 19-cv-742, Dkt. No. 526 sections 7.0 and 7.3 (D. Del. Jan. 22, 2020).

2.3.1 **TRADEMARK INFRINGEMENT – GENERALLY**

In order to prove trademark infringement, Rockwell must prove, by a preponderance of the evidence, that:

(1) Rockwell is the owner of the trademarks at issue;

(2) The trademarks at issue are valid and entitled to protections; and

(3) WiAutomation was, **[Defendant**: in the United States**]**,[12] selling, offering for sale, or distributing products bearing Rockwell's trademarks that is likely to cause confusion **[Defendant**: in the United States**]** among **[Plaintiff:** "potential purchasers of goods and services in the relevant marketplace"**]** **[Defendant:** "purchasers of industrial automation products"**]**[13] as to the source, affiliation, approval or sponsorship of the products.

---

[12] **[PLAINTIFF:** Defendant's proposed insert of "in the United States" at the beginning of the sentence is confusing as it implies that WiAutomation would need to be located in the United States. This is not supported by the Supreme Court decision that Defendant cites. The improper insertion is not supported by any of the jury instructions samples. If the words "in the United States" is inserted anywhere into this instruction, the only appropriate place would be "selling, offering for sale, or distributing products ***in the United States*** bearing Rockwell's trademarks…..")] **[DEFENDANT:** The Supreme Court's decision in *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043, limited the reach of the Lanham Act to conduct that occurred in the United States.**]**

[13] **[Plaintiff**: Defendant's proposed instruction "purchaser of industrial automation products" is inappropriate because it improperly narrows the universe of relevant consumers and diverges from the template final jury instruction in *Cirba Inc. v. VMware*, which states "potential purchasers of goods and services in the relevant marketplace." Exhibit 2, Final Instructions, 19-cv-742, Dkt. No. 526 section 7.4 (D. Del. Jan. 22, 2020) ("A trademark is a word, name, symbol, or device, or any

The parties agree that Rockwell is the owner of the registered trademarks at issue and that the trademarks are valid and entitled to protection and therefore elements (1) and (2) above are met.  Accordingly, Rockwell **[Plaintiff:** only]¹⁴ needs to prove element (3), that there is a likelihood of confusion, in order to succeed on its claim for trademark infringement.

---

combination of these items that indicates the source of goods. A trademark may be registered or unregistered. Assuming that Densify proves it owns a valid and protectable trademark, your infringement analysis is the same regardless of registration. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion among the ***potential purchasers of goods and services in the relevant marketplace***. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.").  Moreover Defendant's proposal excludes relevant consumers that were identified by Plaintiff and its expert, which include purchasers of industrial, electrical, and electronic control equipment and devices.**]**  **[DEFENDANT**:  Plaintiff fails to identify what relevant purchasers would be omitted from the phrase "purchaser of industrial automation products." Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case.  Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products." (**D.I. 1 ¶19)**]**

¹⁴ **[PLAINTIFF**: The inclusion of the word "only" is meant to focus the jury that it **only** needs to reach a decision on the third element.] [**Defendant**: Inclusion of the word "only" is improper hear because it suggests, without basis, that Plaintiff's burden is slight.**]**

### 2.3.2 [PLAINTIFF'S PROPOSAL: TRADEMARK INFRINGEMENT –LIKELIHOOD OF CONFUSION]

Likelihood of confusion may be presumed in this case if any Rockwell-branded products sold in the United States by WiAutomation are materially different from the genuine Rockwell products sold by Rockwell.[15]  Rockwell contends that the Rockwell-branded products sold by WiAutomation are materially different because they:

1. Lack Rockwell's Manufacturer Warranty;

2. Do not come with Rockwell's Customer Support;

---

[15] Exhibit 4 – *Rockwell Automation, Inc. v Radwell Int'l, Inc.*, 15-cv-5246, 2020 US Dist. Lexis 223998, at *32 (D.N.J. Nov. 24, 2020) ("In this Circuit, ***a material difference*** between goods simultaneously sold in the same market under the same mark ***creates a presumption of consumer confusion as a matter of law***.").

Exhibit 5 – Corpus Juris Secundum, 87 CJS Trademark § 304, Presumptions related to confusion or deception in civil actions on trademarks. ("In a gray market goods trademark infringement case, ***a material difference*** between goods simultaneously sold in the same market under the same name ***creates a presumption of consumer confusion*** as a matter of law.").

*Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998) ("When the products sold by the alleged infringer and the trademark owner contain identical marks but ***are materially different, consumers are likely to be confused*** about the quality and nature of the trademarked goods.").

*Soiciete Des Produits Nestle S.A. v. Casa Helvetia,* 982 F.2d 633, 641 (1st Cir. 1992) ("A ***material difference*** between goods simultaneously sold in the same market under the same name ***creates a presumption of consumer confusion as a matter of law***.").

3.  Do not come with Rockwell Product Recall Notices;

4.  Do not come with Rockwell Product Safety Notices;

5.  Lack Rockwell's post manufacture quality control;

6.  Have broken factory seals or are old or used product when they are supposed to be brand new and factory sealed; or

7.  Lack Rockwell Licensed Software.[16]

The test of whether any of these claimed differences is material is whether consumers would likely consider any of these differences to be relevant when

_____

[16] **[PLAINTIFF:** The list of material differences is provided so that the jury can determine whether one or more of the alleged material differences exist between the products.] [**DEFENDANT**: This list is improper because it unfairly serves as a summary of Rockwell's evidence by the Judge after trial, including evidence that may not have been admitted.**]**

purchasing the product.[17],[18] The threshold for materiality is low, and the existence

of any difference, even a subtle one, that consumers would likely consider to be

---

[17] As *McCarthy on Trademarks and Unfair Competition* states, "[e]ven a slight material difference will be adequate" *5 McCarthy on Trademarks and Unfair Competition* § 26:51.75 (5th ed. 2023) (citing *Zino Davidoff SA v. CVS Corp.,* 571 F.3d 238, 246 (2d Cir. 2009) ("In the context of gray-market goods, … we **apply a low threshold of materiality**, requiring no more than a slight difference which **consumers would likely deem relevant** when considering a purchase of the product.").

*Hokto Kinoko Co. v. Concord Farms, Inc.,* 738 F.3d 1085, 1093 (9th Cir. 2013) ("Because the likelihood of confusion increases as the differences between products become more subtle, the **threshold for determining a material difference is low**. The key question is whether a **consumer is likely to consider a difference relevant** when purchasing a product.").

[18] **[PLAINTIFF:** Defendant incorrectly argues below that there is no presumption of confusion upon a finding of a material difference.  This is incorrect and goes against not only the *Iberia* decision it cites, but also *Rockwell Automation, Inc. v Radwell Int'l, Inc.*, which stated "("In this [Third] Circuit, **a material difference** between goods simultaneously sold in the same market under the same mark **creates a presumption of consumer confusion as a matter of law**.").] **[DEFENDANT:** Plaintiff's assertion that a material difference is only a factor that might be relevant to a consumer is not supported by Third Circuit jurisprudence on the "material differences" test. *See e.g. Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302-304 (3d. Cir. 1998).  Notably, Plaintiff does not cite any cases within the Third Circuit for this proposition.  The Third Circuit made clear that "the purpose of the material differences test is to determine whether the allegedly infringing goods are likely to injure the goodwill developed by the trademark owner," based on confusion about the products or services received. *Id.* Plaintiff's proposal further fails to instruct that such an analysis is to be done on a case by case basis, and considering the products and market at issue, *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1073 (10th Cir. 2009), that is, the sophistication of the buyers.]  Plaintiff also fails to acknowledge that a characteristic is not necessarily a material difference just because it comes from the manufacturer. *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette*, 988 F.2d 587, 591 (5th Cir. 1993).]

relevant when purchasing a product creates a presumption of a likelihood of confusion.[19]  Material differences do not need to be physical–rather, differences may be physical or nonphysical.[20]

---

[19] *Soiciete Des Produits Nestle S.A. v. Casa Helvetia,* 982 F.2d 633, 641 (1st Cir. 1992) ("[W]hen dealing with … gray goods, a reviewing court must necessarily be concerned with subtle differences, for it is by subtle difference that consumers are most easily confused."). Thus in gray goods cases, the "*threshold of materiality is always quite low*." *Id.* In fact, "the existence of *any difference* ... that *consumers would likely consider to be relevant* when purchasing a product *creates a presumption of consumer confusion* sufficient to support a Lanham Act claim." *Id*

Corpus Juris Secundum, 87 CJS Trademark § 304, Presumptions related to confusion or deception in civil actions on trademarks. ("The presumption of consumer confusion arises since *the threshold of materiality* for the difference between gray market goods and authorized goods *is quite low*, such that the existence of *any difference* between the trademark owner's product and the allegedly infringing gray good that *consumers would likely consider to be relevant* when purchasing a product *creates a presumption of consumer confusion*.").

[20] *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 311 (S.D.N.Y. 2007) ("Courts have found both physical and *non-physical material differences* to cause consumer confusion and/or loss of goodwill in gray goods cases.") (collecting cases).

*SKF USA Inc. v. Int'l Trade Comm'n*, 423 F.3d 1307, 1312 (Fed. Cir. 2005) ("*physical material differences are not required* to establish trademark infringement ... because trademarked goods originating from the trademark owner may have *nonphysical* characteristics associated with them, including services, such that [the sale of] similar goods lacking those associated characteristics ... may mislead the consumer and damage the owner's goodwill.")

Exhibit 4 - *Rockwell Automation, Inc. v Radwell Int'l, Inc.*, 15-cv-5246, 2020 US Dist. Lexis 223998, at *32 (D.N.J. Nov. 24, 2020) (finding Rockwell's *warranty* (a *non-physical difference*) to be a material difference).

If you believe Rockwell has proven that any of the claimed differences is material, then you are to presume that there is a likelihood of confusion.[21]

---

[21] [**DEFENDANT**: This instruction does not make sufficiently clear that the infringing conduct must occur in the United States for Rockwell to prevail on a claim for trademark infringement*. Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043]

### 2.3.2  [DEFENDANT'S PROPOSAL: TRADEMARK INFRINGEMENT – LIKELIHOOD OF CONFUSION]

Once the trademark owner's product is sold, the trademark owner loses the right to maintain control over who buys, sells, and uses the product.[22]   If WiAutomation sells genuine Rockwell products, Rockwell's trademark infringement claims fail. [23]

A product is genuine if it is not materially different from the product sold by the trademark holder.[24]   A material difference only amounts to trademark

---

[22] **[DEFENDANT**: *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 301, n.4 (3d Cir. 1998)**] [PLAINTIFF**: This proposed instruction is inappropriate.  The cited passage from *Iberia* at footnote 4 is citing the "first sale" doctrine generally in characterizing the defendant's argument and not because it applied in that case. Courts in the Third Circuit applying *Iberia* have held that the first sale doctrine does not apply in trademark cases where there are material differences.  *See Rockwell Automation, Inc.*, *v. Radwell Int'l, Inc.*, 2019 WL 7288946, at *8 (D.N.J. Dec. 30, 2019) ("The Court notes [defendant's] recurring argumentation that exhaustion based on the first sale doctrine is an absolute defense to trademark infringement. Those arguments would hold true, if not for the **"material differences"** jurisprudence that <u>excludes unauthorized gray goods from the first sale doctrine</u>, which this Court expressly holds is alive and well as discussed in the previous section.")**]**

[23] **[DEFENDANT**: *Id.***] [PLAINTIFF**: This instruction is confusing because it is isolated from that the material differences test, which is cited later in *Iberia*. 150 F.3d at 302 ("The test for whether an alleged infringer's products are genuine asks whether there are 'material differences' between the products sold by the trademark owner and those sold by the alleged infringer."). **[DEFENDANT:**  There is no confusion because the very next sentence explains what "genuine" means in this context.**]**

[24] *Id.* at 302-03

infringement if it is likely to cause confusion, or to cause mistake, or to deceive.[25]

If a WiAutomation customer got precisely what they believed they were purchasing, there is no likelihood of confusion.[26]   Thus, your determination of whether WiAutomation's customers were confused, deceived, or mistaken must consider the relevant purchasers who are in the market for industrial automation equipment, including the sophistication of the purchaser and the time spent considering a

---

[25] **[DEFENDANT**: *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1074 (10th Cir. 2009).] [**PLAINTIFF**:  This proposed instruction is inappropriate as it misstates the 10th Circuit *Beltronics* case.  *Beltronics* stated that the Lanham Act "proscribes *sales and offers for sale* that are 'likely to cause confusion, or to cause misstate, or to deceive.'" 562 F.3d at 1074 (quoting *Iberia* for "noting that the sale of materially different merchandise violates [the] Lanham Trade–Mark Act ... because *a difference* in products bearing the same name *confuses consumers* and impinges on the ... trademark holder's goodwill.").]**[DEFENDANT:** Plaintiff's argument is irrelevant to the proposed language.**]**

[26] **[DEFENDANT**: *Iberia Foods Corp.*, 150 F. 3d at 303**] [PLAINTIFF:** This instruction is confusing because it fails to quote the other relevant part of *Iberia* which states "Characteristics of the alleged infringer's goods that are not shared by the trademark owner's goods **are likely to affect consumers' perceptions** of the desirability of the owner's goods." 150 F.3d at 303.**] [DEFENDANT:** There is no confusion here.  This quote appears right after the language Rockwell cites and notes "in contrast [to the language Rockwell cites] when the differences between the products prove so minimal that consumers who purchase the alleged infringers goods get precisely what they believed they were purchasing, consumers' perceptions of the trademarked goods are not likely to be affected by the alleged infringer's sales. *Id.* at 303.  Put differently, this section contemplates that there may be product characteristics that a purchaser in the relevant market may not care about.**]**

purchase of industrial automation products.[27]  Not all differences are material.[28]  For

example, just because a manufacturer provides a service that a retailer does not

provide, that service is not necessarily a material difference.[29]

---

[27] **[DEFENDANT**: *Beltronics USA, Inc.*, 563 F.3d at 1074**] [PLAINTIFF**: This proposed instruction is inappropriate as it is not supported by the cited *Beltronics* decision.  Moreover, the instruction fails to inform the jury of the presumption of confusion associated with a material difference that this Circuit and others follow.  *See* Exhibit 4 - *Rockwell Automation, Inc. v Radwell Int'l, Inc.*, 15-cv-5246, 2020 US Dist. Lexis 223998, at *32 (D.N.J. Nov. 24, 2020) ("In this Circuit, *a material difference* between goods simultaneously sold in the same market under the same mark *creates* **a** *presumption of consumer confusion as a matter of law*."); Exhibit 5 - Corpus Juris Secundum, 87 CJS Trademark § 304, Presumptions related to confusion or deception in civil actions on trademarks. ("In a gray market goods trademark infringement case, *a material difference* between goods simultaneously sold in the same market under the same name *creates a presumption of consumer confusion* as a matter of law."); *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998) ("When the products sold by the alleged infringer and the trademark owner contain identical marks but *are materially different, consumers are likely to be confused* about the quality and nature of the trademarked goods.") Defendant fails to address the *Rockwell v. Radwell* holding in which applies the Third Circuit's law on material differences.**]** **[DEFENDANT:** This language is supported by the holding in the *Beltronics* decision that "the materiality analysis must be taken on a case by case basis and **must include an examination of the products and markets at issue." *Id.* at 1073.]**

[28] **[DEFENDANT**: *Beltronics USA, Inc.*, 562 F.3d at 1072**] [PLAINTIFF**: This instruction is inappropriate because it fails to state that material differences can be physical or non-physical. *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 310 (S.D.N.Y. 2007) ("Courts have found both physical and ***non-physical material differences*** to cause consumer confusion and/or loss of goodwill in gray goods cases.") (collecting cases); *SKF USA Inc. v. Int'l Trade Comm'n*, 423 F.3d 1307, 1312 (Fed. Cir. 2005) ("***physical material differences are not required*** to establish trademark infringement ... because trademarked goods originating from the trademark owner may have ***nonphysical*** characteristics associated with them, including services, such that [the sale of] similar goods lacking those associated characteristics ... may mislead the consumer and damage the owner's goodwill.");

If you believe Rockwell has proven that the Rockwell products WiAutomation sold in the United States are materially different from the Rockwell products sold by Rockwell's authorized distributors, you may presume that there is confusion. WiAutomation, however, can rebut this presumption by demonstrating that purchasers of industrial automation products were not confused.[30]

---

*Rockwell Automation, Inc. v Radwell Int'l, Inc.*, 15-cv-5246, 2020 US Dist. Lexis 223998, at *32 (D.N.J. Nov. 24, 2020) (finding Rockwell's **warranty** (a **non-physical difference**) to be a material difference).][**DEFENDANT**- Nothing in this citation suggests that a material difference is only a physical difference.]

[29] [**DEFENDANT**: *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette*, 988 F.2d 587, 591 (5th Cir. 1993).] [**PLAINTIFF**: This instruction is vague, confusing, and inappropriate because it provides a single example from an out of Circuit decision and then fails to provide other examples in the same case where material differences were found. 988 F.2d at 590-91 (finding a material difference where distributor did not uphold the quality control set forth by the Coors beer manufacturer). Defendant fails to put the examples where a lack of a manufacturer's warranty is a material difference which was found in its cited *Beltronics* case as well as in the *Rockwell v. Radwell* case. If the Court were to adopt examples, those examples showing where a material difference can be found would be appropriate to balance this prejudicial instruction.][**DEFENDANT**: Rockwell does not contest the language of the instruction. Rockwell's request for examples is inappropriate in this instruction because the materiality analysis must be done on a case-by-case basis. *Beltronics USA, Inc.*, 563 F.3d at 1073]

[30] [**DEFENDANT**: *Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.* 926 F.2d 134, 140 (2d. Cir. 1991)] [**PLAINTIFF**: This instruction is inappropriate because the cited *Resource Developers* case did not involve gray market goods or an application of the material difference test whatsoever. The instruction is also inappropriate because it fails to instruct the jury on the standard to apply to Defendant for the burden of proof it would need to show to overcome any presumption of confusion. The instruction is also inappropriate because it fails to provide the threshold of materiality as low and how the jury is supposed to determine whether something is confusing, which provided in Plaintiff's jury

instructions involving material differences.  *Soiciete Des Produits Nestle S.A. v. Casa Helvetia,* 982 F.2d 633, 641 (1st Cir. 1992) ("[W]hen dealing with … gray goods, a reviewing court must necessarily be concerned with subtle differences, for it is by subtle difference that consumers are most easily confused."). Thus in gray goods cases, the "***threshold of materiality is always quite low***." *Id.* In fact, "the existence of ***any difference*** ... that ***consumers would likely consider to be relevant*** when purchasing a product ***creates a presumption of consumer confusion*** sufficient to support a Lanham Act claim." *Id;* Corpus Juris Secundum, 87 CJS Trademark § 304, Presumptions related to confusion or deception in civil actions on trademarks ("The presumption of consumer confusion arises since ***the threshold of materiality*** for the difference between gray market goods and authorized goods ***is quite low***, such that the existence of ***any difference*** between the trademark owner's product and the allegedly infringing gray good that ***consumers would likely consider to be relevant*** when purchasing a product ***creates a presumption of consumer confusion***.").**]**

**[DEFENDANT**: The concept in Defendant's proposal also appears in the case Rockwell cites in its footnote objection, which is indisputably a gray market case. *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.* 982 F.2d 633, 642 (1st Cir. 1992).   Whether or not the threshold for materiality is low is irrelevant to the accuracy of this citation.]

### 2.3.3  [PLAINTIFF'S PROPOSAL: COUNTERFEITING[31]]

---

[31] [**PLAINTIFF:** Exhibit 6: Adapted from Final Jury Instructions - *Luxottica Grp. v. Airport Mini Mall, LLC*, 15-cv-1422, Dkt. No. 155, pp. 8 and 18. (N.D. Ga. 2017) ("A counterfeit trademark is a non-genuine or unauthorized copy of a trademark. It is identical with, or substantially indistinguishable from, a registered mark. The distribution, sale, or offer for sale of goods bearing a counterfeit mark is illegal under federal law and a form of trademark infringement referred to as 'counterfeiting'. This is true even if a person merely sells or offers for sale goods bearing a counterfeit mark and plays no part in affixing or placing the counterfeit mark on the goods, or otherwise designing or manufacturing the goods.") ("In the case of an alleged … use of a counterfeit trademark, *likelihood of confusion may be presumed*.").

Defendant improperly tries to remove all references to Rockwell's trademark infringement claims involving counterfeit marks. This is inappropriate. Rockwell's Complaint alleges that WiAutomation is selling counterfeit Rockwell products. D.I. 1, ¶¶ 56, 58, 136, 146. Rockwell's motion for summary judgment asserts counterfeiting. D.I. 145, Section III.A.3 pp. 13-17 ("Defendant's Trademark Infringement Involves Counterfeit Marks."). Rockwell's interrogatories provides responses regarding the counterfeit allegations. D.I. 142 Exh. I Rog 14 ("Defendant shipped a product … **that bore a counterfeit label** and was enclosed in a box bearing **a counterfeit "Factory Seal" label**."); s*ee also Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 n.2 (S.D.N.Y. 2015) ("the Lanham Act does not provide for a separate cause of action for counterfeiting…."); *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 866 (C.D. Ill. 2013) (the court held that "the use of a counterfeit mark in the context of the Lanham Act is not, in and of itself, a cause of action. Rather, in a civil action arising under § 1114, a finding that a counterfeit mark was used permits certain additional remedies, including seizure of the goods so marked, § 1116(d)(1)(A); treble damages, § 1117(b); the awarding of statutory damages, § 1117(c); and attorney's fees, § 1117(a). It is for these special civil monetary remedies that Defendant invokes the counterfeit mark provisions."). Rockwell's Interrogatories also allege counterfeiting. These available remedies are merely "a counterfeit mark enhancement" under the Lanham Act. *Id.*; *see also Lontex Corp. v. Nike, Inc.*, 384 F.Supp.3d 546, 554 (E.D. Pa. 2019) ("even though the [complaint] does not plead counterfeiting as a separate claim, the Court proceeds to determine … [plaintiff's] entitlement to relief for counterfeiting.")**]** [**DEFENDANT:** Plaintiff cannot pursue a claim for "counterfeiting" because Plaintiff failed to plead a separate claim for counterfeiting, nor did Plainitff identify in its interrogatory responses that

43

A counterfeit trademark is a non-genuine or unauthorized copy of a trademark. It is identical with, or substantially indistinguishable from, a registered mark.[32] The distribution, sale, or offer for sale of goods bearing a counterfeit mark is illegal under federal law and a form of trademark infringement referred to as "counterfeiting".

This is true even if a person merely sells or offers for sale goods bearing a counterfeit mark and plays no part in affixing or placing the counterfeit mark on the goods, or otherwise designing or manufacturing the goods.[33] **[Defendant:** To establish trademark counterfeiting, a plaintiff must show that the defendant intentionally used the trademark knowing it was counterfeit or was wilfully blind to such use.[34]**]**

---

counterfeiting was a basis for the alleged trademark infringement (D.I. 142 Ex. I Rog 3, Rog 19).  Thus, this section should be deleted in its entirety.]

[32]**PLAINTIFF:**  Lanham Act - 15 U.S.C. § 1127 (the term "counterfeit" is defined to mean "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.")

[33][**PLAINTIFF:** *Chanel, Inc. v. RealReal, Inc.*, 449 F.Supp.3d 422 (S.D.N.Y. 2020) (quoting *El Greco Leather Prods. Co.* 806 F.2d at 396 (2d Cir. 1986) ("[E]ven though [the defendant] *was involved neither in the manufacture nor the affixing* of [plaintiff's] trademark [to any counterfeit], its *sale* of the [counterfeits] *was sufficient 'use'* for it to be liable for the results of such infringement and its *claimed lack of knowledge of its supplier's infringement*, even if true, *provides no defense.").*]

[34] [**PLAINTIFF**: Defendant's proposed insertion is inappropriate and would invite clear error as evidence of intent is not required to find liability under the Lanham Act.  *See Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 187 (3d Cir. 2010) ("Evidence of a defendant's intent is not a prerequisite for finding a Lanham

[**Plaintiff:** Any claimed lack of knowledge by WiAutomation, provides no defense.][35]

---

Act violation ...."); *Nike Inc. v. Eastern Ports Custom Brokers, Inc.*, 2018 WL 3472628, at * 6 (D.N.J. Jul. 19, 2018) ("Defendants' knowledge or intent is not relevant to the [counterfeit] analysis") ("Defendants urge the Court to read in a requirement that Defendants have knowledge or intent to use a counterfeit good in commerce as an element of liability. The Court declines to do so. The statute is clear that anyone who uses the mark in commerce in such a way that may cause confusion is liable. As indicated above, the statute defining liability does not include any mental element."); *N.V.E, Inc. v. Famous*, No. 08-1633, 2009 WL 2194538, at *3 (D.N.J. July 21, 2009) ("[U]nder the Lanham Act, sellers of counterfeit products bear strict liability. In that regard, the **plaintiff does not have to prove that the defendant intended to sell counterfeit products**, or even that the defendant was willfully blind to the fact the goods were counterfeit.") (internal citations omitted). In addition, Defendant's insertion is not supported by the *Luxottica* sample jury instruction. *See supra fn.* 31 and Exhibit 4.] **DEFENDANT**: *Astrazeneca AB v. Dr. Reddy's Labs., Inc.,* 209 F.Supp.3d 744, 755 (D. Del. 2016)]

[35] [**PLAINTIFF**: *See Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 187 (3d Cir. 2010) ("Evidence of a defendant's intent is not a prerequisite for finding a Lanham Act violation ...."); *Nike Inc. v. Eastern Ports Custom Brokers, Inc.*, 2018 WL 3472628, at * 6 (D.N.J. Jul. 19, 2018) ("Defendants' knowledge or intent is not relevant to the [counterfeit] analysis") ("Defendants urge the Court to read in a requirement that Defendants have knowledge or intent to use a counterfeit good in commerce as an element of liability. The Court declines to do so. The statute is clear that anyone who uses the mark in commerce in such a way that may cause confusion is liable. As indicated above, the statute defining liability does not include any mental element."); *N.V.E, Inc. v. Famous*, No. 08-1633, 2009 WL 2194538, at *3 (D.N.J. July 21, 2009) ("[U]nder the Lanham Act, sellers of counterfeit products bear strict liability. In that regard, the plaintiff does not have to prove that the defendant intended to sell counterfeit products, or even that the defendant was willfully blind to the fact the goods were counterfeit.") (internal citations omitted).]
[**DEFENDANT:** Plaintiff's addition is directly belied by *Astrazeneca AB v. Dr. Reddy's Labs., Inc.,* 209 F.Supp.3d 744, 755 (D. Del. 2016).  Plaintiff cited this case in its Summary Judgment papers for a proposition that directly conflicts with Plaintiff's proposed language here. (D.I. 145, pp 13-14)]

If you find by a preponderance of the evidence that WiAutomation has sold or distributed a product in the United States bearing a counterfeit Rockwell trademark, you are to presume that there is a likelihood of confusion and therefore trademark infringement.[36]**]**

---

[36] [**PLAINTIFF:** *McCarthy on Trademarks* §25:15.50 ("If an accused use is found to be a "counterfeit," this means *it automatically satisfies the confusing similarity test* of traditional infringement analysis. If the accused use is so closely similar as to be a "counterfeit," then traditional likelihood of confusion analysis is not necessary. Courts assume that if the goods are so closely similar as to be regarded as "counterfeit," then a likelihood of confusion must be present.") (collecting cases).

*Corpus Juris Secundum CJS Trademark* § 304 Presumptions related to confusion or deception in civil actions on trademarks ("Under the Lanham Act, the elements of public **confusion** or deception in trademark actions, whether for infringement or unfair competition, *may be presumed when a trademark is counterfeit* since a counterfeit mark is inherently confusing.")

*Callmann on Unfair Competition, Trademarks and Monopolies* (4th edition) § 22:36 Counterfeiting - Civil Liability ("In a federal trademark **counterfeiting** case**,** *likelihood of confusion is presumed*").

*Innovation Ventures, LLC v. Ultimate One Distributing Corp.,* 176 F.Supp.3d 137, 154 (E.D.N.Y. 2016) ("counterfeit marks are *inherently confusing*").

*Gucci America, Inc. v. Duty Free Apparel, Ltd*., 286 F.Supp.2d 284, 287 (S.D.N.Y. 2003) ("*counterfeits, by their very nature, cause confusion*").

*Opticians Ass'n of Am. v. Indep. Opticians of Am., supra,* 920 F.2d 187, 195 ("[L]ikelihood of **confusion is inevitable**, when, as in this case, the identical mark is used concurrently by unrelated entities.")]

### 2.3.4 [PLAINTIFF'S PROPOSAL: WILLFUL TRADEMARK INFRINGEMENT OR COUNTERFEITING[37]

Rockwell need not prove that WiAutomation intended to cause confusion in order for Rockwell to succeed on its claims.  However, there are certain post-trial

---

[37] [**PLAINTIFF**: The jury will need to decide whether Defendant's trademark infringement and/or counterfeiting was willful.  Defendant, below, reiterates its false claim that Plaintiff has not alleged counterfeiting in this action. Rockwell's Complaint alleges that WiAutomation is selling counterfeit Rockwell products. D.I. 1, ¶¶ 56, 58, 136, 146.  Rockwell's motion for summary judgment asserts counterfeiting. D.I. 145, Section III.A.3 pp. 13-17 ("Defendant's Trademark Infringement Involves Counterfeit Marks.").  Rockwell's interrogatories provide responses regarding the counterfeit allegations. D.I. 142 Exh. I Rog 14 ("Defendant shipped a product … **that bore a counterfeit label** and was enclosed in a box bearing **a counterfeit "Factory Seal" label**."); s*ee also Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 n.2 (S.D.N.Y. 2015) ("the Lanham Act does not provide for a separate cause of action for counterfeiting…."); *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 866 (C.D. Ill. 2013) (the court held that "the use of a counterfeit mark in the context of the Lanham Act is not, in and of itself, a cause of action. Rather, in a civil action arising under § 1114, a finding that a counterfeit mark was used permits certain additional remedies, including seizure of the goods so marked, § 1116(d)(1)(A); treble damages, § 1117(b); the awarding of statutory damages, § 1117(c); and attorney's fees, § 1117(a). It is for these special civil monetary remedies that Defendant invokes the counterfeit mark provisions."). Rockwell's Interrogatories also allege counterfeiting.  These available remedies are merely "a counterfeit mark enhancement" under the Lanham Act. *Id.*; *see also Lontex Corp. v. Nike, Inc.*, 384 F.Supp.3d 546, 554 (E.D. Pa. 2019) ("even though the [complaint] does not plead counterfeiting as a separate claim, the Court proceeds to determine … [plaintiff's] entitlement to relief for counterfeiting.")] [**DEFENDANT**:  It is unduly prejudicial to include the same, or substantially similar instruction on "willfulness" after the instruction for each cause of action.  It is more appropriate to include one instruction on willfulness after instructions for all of the other counts.  Further, Plaintiff cannot pursue a claim for "counterfeiting" because Plaintiff failed to plead a separate claim for counterfeiting, nor did Plaintiff identify in its interrogatory responses that counterfeiting was a basis for the alleged trademark infringement (D.I. 142 Ex. I Rog 3, Rog 19).  Thus, this section should be deleted in its entirety.]

issues for which it will be important for the Court to know the extent of WiAutomation's willful conduct, if any.

If you find for Rockwell on its trademark claim and/or counterfeiting, you must also determine whether Rockwell has proven by clear and convincing evidence that WiAutomation's infringement or counterfeiting was willful.

WiAutomation acted willfully if it had an intent to infringe, or it had a deliberate disregard of Rockwell's rights, or it had an aura of indifference as to Rockwell's rights.[38]

Willfulness can be presumed if WiAutomation continued to sell or distribute materially different or counterfeit products after being given notice by Rockwell of the alleged infringing activity.[39]

---

[38] **[PLAINTIFF:** *SecuraComm Consulting Inc. v. Securacom Inc.,* 166 F.3d 182, 187 (3d Cir.1999) ("[W]illful infringement … involves an ***intent to infringe*** *or a* ***deliberate disregard of a mark holder's rights***. The Second Circuit has aptly described willful infringement as involving "***an aura of indifference*** to plaintiff's rights….") *superseded by statute on other grounds as stated in Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, 173–76 (3d Cir. 2005).

Exhibit 7: Jury Instructions - *Brand Marketing Group v. Intertek,* 12-cv-1572, Dkt. No. 178 p. 30 (W.D. Pa. Aug. 27, 2013) ("If you find that Brand infringed Intertek's trademark, you must also determine whether Intertek NA has proven that, at the time Brand infringed the trademark, Brand acted willfully. Brand acted willfully ***if it knew*** that it was infringing Intertek NA's trademark **or** if it ***acted with indifference*** to Intertek NA's trademark rights.")]

[39] **PLAINTIFF:**  Exhibit 8: *New Balance Athletics, Inc. v. USA New Bunren Int'l. Co. Ltd. LLC,* 2020 U.S. Dist. LEXIS 170906, at *6 (D. Del. Sept. 18, 2020) ("***Willfulness can be inferred*** by the fact that a ***defendant continued infringing***

behavior ***after being given notice***.”); *Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002) (“Willfulness can be inferred” when defendant continued to sell counterfeit products “after the summons and complaint were served upon defendants”).

## 2.4    FALSE DESIGNATION OF ORIGIN

On Rockwell's claim for false designation of origin, Rockwell has the burden of proving by a preponderance of the evidence that WiAutomation made use of any word, description, term, name, or symbol, that

[**Plaintiff**: "is likely to cause confusion as to:

(1) the origin of WiAutomation's goods or services; or

(2) WiAutomation's affiliation, connection, or association with Rockwell; or

(3) endorsement or approval of the goods or services by Rockwell; or that

(4) misrepresents in advertising the nature, characteristics, qualities, or geographic origin of WiAutomation's goods or services."]

[**Defendant**: "(1) is likely to cause confusion as to the origin of the goods or services offered by WiAutomation, or (2) misrepresents in advertising the origin of its goods or services."][40]

[**Source:** O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions,* 6th Ed. Thomson Reuters § 159:26 False Designation of Origin and false description]

---

[40] [**PLAINTIFF**: This instruction is inappropriate because it leaves out two ways false designation of origin may be proven that are provided in the source jury instruction.  O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions,* 6th Ed. Thomson Reuters § 159:26 False Designation of Origin and false description.]

### 2.4.1  [PLAINTIFF'S PROPOSAL: WILLFUL FALSE DESIGNATION OF ORIGIN[41]]

If you find for Rockwell on its false designation of origin claim you must also determine whether Rockwell has proven by clear and convincing evidence that WiAutomation's conduct was willful.

WiAutomation acted willfully if it had an intent to conduct the wrongful conduct, or it had a deliberate disregard of Rockwell's rights, or it had an aura of indifference as to Rockwell's rights.

Willfulness can be presumed if WiAutomation continued conduct the wrongful conduct after being given notice by Rockwell of the wrongful conduct.]

---

[41] [**PLAINTIFF**: The jury will need to decide whether Defendant's false designation of origin was willful.]  [**DEFENDANT**:  It is unduly prejudicial to include the same, or substantially similar instruction on "willfulness" after the instruction for each cause of action.  It is more appropriate to include one instruction on willfulness after instructions for all of the other counts.]

## 2.5    FALSE ADVERTISING

Rockwell claims that WiAutomation engaged in false advertising. To succeed on this claim, Rockwell must prove five things by a preponderance of the evidence:

1.    WiAutomation made a false or misleading statement of fact in a commercial advertisement about the nature, quality, characteristic or geographic origin of its own product **[Plaintiff:** ", service, or commercial activities"**]**. A statement is misleading if it conveys a false impression and actually misleads a **[Plaintiff:** "consumer"**]**[42] **[Defendant:** purchaser of industrial automation

---

[42] **[PLAINTIFF**: 7th Cir. Pattern Jury Instructions 13.3.1 ("[A statement is misleading if it conveys a false impression and actually misleads a *consumer*.") Defendant's instruction "purchaser of industrial automation products" is inappropriate because it improperly narrows the universe of relevant consumers and diverges from the relevant consumers that were identified by Plaintiff and its expert, which include purchasers of industrial, electrical, and electronic control products. . D.I. 147 ¶ 4("Rockwell **sells industrial, electrical, and electronic control products** …."); D.I. 152 ¶ 27 ("Rockwell's survey expert found that 94.81% of his survey respondents (which included hundreds of **purchasers of industrial, electrical, and electronic control equipment**) reported that the original manufacturer's warranty was important or very important to their purchasing decision….").] **[DEFENDANT:** Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case. Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products."** D.I. 1 ¶19]

products"]. [**Plaintiff:** A statement can be misleading even if it is literally true or ambiguous."][43]

    2.    The statement actually deceived or had the tendency to deceive a substantial segment of WiAutomation's audience.

    3.    The deception was likely to influence the purchasing decisions of [**Plaintiff:** "consumers"] [Defendant: purchaser of industrial automation products"].

    4.    WiAutomation caused the false statement to enter interstate commerce. A false statement enters interstate commerce if WiAutomation's product, services, or commercial activities (a) were transferred, advertised, sold across state lines, or (b) were advertised on a website accessible via the Internet[44]

    [**Plaintiff:** ", or (c) WiAutomation products were imported into the United States."[45]]

---

[43] [**PLAINTIFF**: 7th Cir. Pattern Jury Instructions 13.3.1 ("***A statement can be misleading even if it is literally true or ambiguous***".)]

[44] *Laurel Capital Group, Inc. v. BT Fin. Corp.*, 45 F. Supp. 2d 469, 479 (W.D. Pa. 1999) (finding that ***maintaining a website satisfies the interstate commerce requirement***).

[45]   [**PLAINTIFF:**   "The Lanham Act  defines  "commerce"  to  include "all commerce which may lawfully be regulated by Congress," *id.,* para. 3, which of course includes the ***importation*** of goods from abroad, U.S. CONST. art. I, § 8." *Philip Morris USA, Inc. v. Lee*, 481 F. Supp. 2d 742, 748 (5th Cir. 2006); *La Fabril, S.A. v. Mi Tierra Foods, LLC*, 2021 U.S. Dist. LEXIS 242132, *11 (D.N.J. Dec. 20, 2021) (In analyzing a false advertising claim under the Lanham Act, the court found "the ***goods traveled in interstate commerce because they were imported***.")]  [ **DEFENDANT:** The Supreme Court's decision in *Abitron Austria*

**[Defendant:** ".**"]**

5.      Rockwell has been or is likely to be **[Defendant:** "financially"**]**[46]

injured as a result of the false statement. Injury can include a direct diversion of sales

from itself to WiAutomation or a loss of goodwill associated with its products.

If you find that Rockwell has proved each of these **[Plaintiff:** "things"**]**[47]

**[Defendant**: "five elements"**]**, then you must find for Rockwell. If, on the other

hand, you find that Rockwell has failed to prove any one of these **[Plaintiff:**

"things"**] [Defendant**: "five elements"**]**, then you must find for WiAutomation.

---

*GmbH et al. v. Hetronic International Inc.*, No. 21-1043, limited the reach of the
Lanham Act to conduct that occurred in the United States.

[46] **[PLAINTIFF**: The proposed addition of "financially" is inappropriate and is not
included in the pattern instructions that the parties are using as the basis for these
False Advertising jury instructions. 7th Cir. Pattern Jury Instructions 13.3.1
("Plaintiff has been or is likely to be ***injured*** as a result of the false statement."**]**

[47] **[PLAINTIFF**: 7th Cir. Pattern Jury Instructions 13.3.1 ("If you find that Plaintiff
has proved each of these ***things***, then you must find for Plaintiff. If, on the other
hand, you find that Plaintiff has failed to prove any one of these ***things***, then you
must find for Defendant.")**][DEFENDANT:** A more specific reference to the factors
that the Jury has to consider, *i.e.* the five elements, is more likely to guarantee that
the jury consider all of the factors at issue than if they were vaguely instructed to
consider "things."**]**

### 2.5.1 [PLAINTIFF'S PROPOSAL: WILLFUL FALSE ADVERTISING[48]]

If you find that WiAutomation falsely advertised, you must also determine whether WiAutomation willfully committed acts of false advertising.

WiAutomation acted willfully if it had an intent to conduct the wrongful conduct, or it had a deliberate disregard of Rockwell's rights, or it had an aura of indifference as to Rockwell's rights.

Willfulness can be presumed if WiAutomation continued to falsely advertise after being given notice by Rockwell of the alleged false advertising.

---

[48] [**PLAINTIFF**: The jury will need to decide whether Defendant's false advertising was willful.]  [**DEFENDANT**:  It is unduly prejudicial to include the same, or substantially similar instruction on "willfulness" after the instruction for each cause of action.  It is more appropriate to include one instruction on willfulness after instructions for all of the other counts.]

## 2.6 <u>DECEPTIVE TRADE PRACTICES</u>

Rockwell has asserted statutory unfair competition claims under the Delaware

Deceptive Trade Practices Act ("DDTPA"), which is also known as deceptive trade

practices.

A claim for deceptive trade practices brought under the Delaware statute can

be resolved according to the same principles that govern Rockwell's federal

trademark infringement claim **[Defendant:** except that it only relates to conduct that

occurred in the State of Delaware]**[49]**.

---

[49] [**PLAINTIFF**: Defendant's proposed insertion is not supported by any sample final jury instruction, not supported by the language of the DDPTA statute, and is not supported by the cited sample jury instructions in *Cirba* (see Exhibit 2 at Section 12.0) ("If you find for Densify on its trademark infringement claim, you should also find for Densify on its deceptive trade practice claim. Similarly, if you find for VMware on Densify's trademark infringement claim, you should also find for VMware on Densify's deceptive trade practice claim.") (not limiting to acts in Delaware). The case cited by Defendant is distinguishable and is not applying to a claim under the DDPTA. In addition, Plaintiff, Rockwell, is a Delaware corporation and a deceptive trade practice by an entity in the United States that would harm a Delaware corporation, is liable under the DDPTA.]
[**DEFENDANT**: "Delaware law presumes that a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted. Therefore, absent clear legislative intent, it is impermissible to punish an individual under Delaware law for an action occurring exclusively in another state." *Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del C. 2020). There is no clear legislative intent for the DDPTA to apply to conduct outside of the state of Delaware.]

As a result, if you find for Rockwell on its trademark infringement claim [**Defendant:** based on conduct that occurred in the State of Delaware**]**, then you also should find for Rockwell on its deceptive trade practices claim.[50]

Separately, you may also find for Rockwell on its deceptive trade practices claim if it proves by a preponderance of the evidence that WiAutomation engaged in one (or more) of the following actions [**Defendant:** in the State of Delaware]**[51]**:

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(4) Uses deceptive representations or designations of geographic origin in connection with goods or services;

---

[50][**PLAINTIFF:** Exhibit 2 - Final Instructions - *Cirba Inc. v. VMware*, 19-cv-742 Dkt. No. 526 section 7.4 (D. Del. Jan. 22, 2020) ("If you find for Densify on its trademark infringement claim, you should also find for Densify on its deceptive trade practice claim.") (not including any limitation based on conduct in Delaware)]

[51] [**PLAINTIFF:** For the same reasons above, this proposed insert by Defendant is inappropriate.]

(5)   Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

(6) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8)   Disparages the goods, services, or business of another by false or misleading representation of fact;

(9) Advertises goods or services with intent not to sell them as advertised;

(10)   Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of, price reductions; or

(12)   Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

In order to prevail in an action for deceptive trade practices, Rockwell need not prove competition between the parties, any actual confusion or a misunderstanding.

**Source**: **PLAINTIFF:**  Delaware Deceptive Trade Practices Act - 6 Del. C. 1953, § 2532 (Listing Deceptive Trade Practices 1 through 12).

### 2.6.1 [PLAINITFF'S PROPOSAL: WILLFUL DECEPTIVE TRADE PRACTICES[52]]

If you find for Rockwell on its deceptive trade practices claim you must also determine whether Rockwell has proven by clear and convincing evidence that the WiAutomation's conduct was willful.

WiAutomation acted willfully if it had an intent to conduct the wrongful conduct, or it had a deliberate disregard of Rockwell's rights, or it had an aura of indifference as to Rockwell's rights.

Willfulness can be presumed if WiAutomation continued conduct the wrongful conduct after being given notice by Rockwell of the wrongful conduct.

---

[52][**PLAINTIFF**: The jury will need to decide whether Defendant's deceptive trade practice was willful.] [**DEFENDANT**: It is unduly prejudicial to include the same, or substantially similar instruction on "willfulness" after the instruction for each cause of action. It is more appropriate to include one instruction on willfulness after instructions for all of the other counts.]

## 2.7 UNFAIR COMPETITION

Rockwell has asserted an unfair competition claim under the Delaware common law.

A claim for unfair competition can be resolved according to the same principles that govern Rockwell's federal trademark infringement claim.

As a result, if you find for Rockwell on its trademark infringement claim, false designation of origin, or false advertising claim, then you also should find for Rockwell on its unfair competition claim.

To the extent you did not find for Rockwell on its trademark claim, then you may still find for Rockwell on its unfair competition claim if it proves by a preponderance of the evidence that:

(1) Rockwell had a reasonable expectancy of entering a valid business relationship with

**[Plaintiff:** "its customers in the form of product sales; and"**]**[53]

---

[53] [**PLAINTIFF**: Exhibit 10: Final Jury Instructions – *Surgiquest, Inc. v. Lexion Med., LLC*, 14-cv-382, Dkt. No. 265 at 1710-11 (D. Del. June 27, 2017) ("First, that the plaintiff had a reasonable expectancy of entering a valid business relationship ***with its customers in the form of product sales***; Next. The defendant has wrongly interfered with the relationships and the defendant's actions have defeated the plaintiffs' legitimate expectancy of entering a valid business relationship.")]

[**Defendant:** "customers who bought Rockwell products from WiAutomation in Delaware[54]; and"]

(2)     WiAutomation has wrongly interfered with the relationships and its actions have defeated Rockwell's legitimate expectancy of product sales [**Plaintiff:** "."] [**Defendant:** "to the customers who bought from WiAutomation."][55]

---

[54] [**PLAINTIFF**: Defendant's proposed insertion is not supported by any sample final jury instruction, including the cited sample jury instructions in *Surgiquest* (see Exhibit 10) ("First, that the plaintiff had a reasonable expectancy of entering a valid business relationship ***with its customers in the form of product sales***;.") (not limiting to acts in Delaware). The cases cited by Defendant are distinguishable and are not applying to a claim for unfair competition. In addition, Plaintiff, Rockwell, is a Delaware corporation any unfair competition inflicted upon it would harm a Delaware corporation.] [**DEFENDANT:** "Delaware law presumes that a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted. Therefore, absent clear legislative intent, it is impermissible to punish an individual under Delaware law for an action occurring exclusively in another state." *Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del C. 2020). Common law unfair competition is a tort claim. *Preston Hollow Capital LLC v. Nuveen LLC* 216 A.3d 1, 14 (Del C. 2019). For tort claims, Delaware applies the law of the place where the misconduct primarily occurred. *Eureka Resources, LLC v. Range Resources-Appalachia, LLC* 62 A.3d 1233, 1236, n.20 (Del. Sup. C. 2012) ]

[55] [**PLAINTIFF**: Defendant's proposed addition "to the customers who bought from WiAutomation" is inappropriate as it improperly narrows the scope of the universe of relationships that may have been interfered with. For example, if Rockwell had a reasonable expectancy of entering a business relationship with a customer, an interference with that relationship by WiAutomation, regardless of whether that customer actually purchased something from WiAutoamtion, would violate the unfair competition laws. Accordingly, narrowing this instruction as defendant suggests would be improper.]

### 2.7.1 [PLAINTIFF'S PROPOSAL: WILLFUL UNFAIR COMPETITION[56]]

If you find for Rockwell on its unfair competition claim you must also determine whether Rockwell has proven by clear and convincing evidence that the WiAutomation's conduct was willful.

WiAutomation acted willfully if it had an intent to unfairly compete, or it had a deliberate disregard of Rockwell's rights, or it had an aura of indifference as to Rockwell's rights.

Willfulness can be presumed if WiAutomation continued unfairly compete after being given notice by Rockwell of the unfair competition.

---

[56] [**PLAINTIFF**: The jury will need to decide whether Defendant's unfair competition was willful.] [**DEFENDANT**: It is unduly prejudicial to include the same, or substantially similar instruction on "willfulness" after the instruction for each cause of action.  It is more appropriate to include one instruction on willfulness after instructions for all of the other counts.]

## 2.8  [DEFENDANT'S PROPOSAL: WILLFUL CONDUCT TRADEMARK INFRINGEMENT]

Rockwell need not prove that WiAutomation intended to cause confusion in order for Rockwell to succeed on its claims.  However, there are certain post-trial issues for which it will be important for the Court to know the extent of WiAutomation's willful conduct, if any.

If you find for Rockwell on its claims for trademark infringement, false advertising, false designation of origin, deceptive trade practices, or unfair competition, you must also determine whether Rockwell has proven by clear and convincing evidence that the WiAutomation's conduct was willful.  In other words, you must determine whether Rockwell has proven it is highly probable that WiAutomation intended to violate the law, or that WiAutomation deliberately disregarded the law.][57]

---

[57]  [**PLAINTIFF**: This proposed instruction is inappropriate.  Defendant has combined all of the various willfulness sections into one section, which may confuse the jury.  The instruction also improperly fails to list "an aura of indifference" as a basis for a finding of willfulness.  *SecuraComm Consulting Inc. v. Securacom Inc.,* 166 F.3d 182, 187 (3d Cir.1999) ("[W]illful infringement … involves an **intent to infringe** or a **deliberate disregard of a mark holder's rights**. The Second Circuit has aptly described willful infringement as involving "**an aura of indifference** to plaintiff's rights…."), *superseded by statute on other grounds as stated in Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, 173–76 (3d Cir.2005).]

## 2.8 <u>MONETARY AWARDS</u>

If you find for Rockwell on any of its claims, then you should consider the amount of money to award to Rockwell if any.

[**Plaintiff**: "This should include (1) any profits that WiAutomation made because of its infringement, false advertising, false designation of origin, or unfair competition; (2) any statutory damages for counterfeiting; (3) any compensatory damages that Rockwell sustained because of WiAutomation's infringement, false advertising, false designation of origin, deceptive trade practices or unfair competition; and (4) punitive damages, if any, to be awarded."][58]

[**Defendant**: "The amount to be awarded will be left to your discretion, and be supported with a reasonable level of certainty by evidence in the record. You may not speculate as to the amount of monetary damages. Your analysis may include (1) any net profits that WiAutomation made from United States sales of

---

[58] [**PLAINTIFF**: Contrary to Defendant's assertions below, Plaintiff's proposed instruction does not ignore any Supreme Court authority. This section simply introduces the remedies that are listed in the jury instructions that follow in Sections 2.8.1 through 2.8.4. Notably, Defendant's proposed instruction leaves out some of those remedies, including statutory damages.] [**DEFENDANT:** Plaintiff's instruction ignores clear Supreme Court Authority that the Lanham Act is limited to conduct that occurred in the United States. *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043. Plaintiff's proposal is improper because it fails to specify whether damages were caused by conduct in the United States. It is also improper because it fails to instruct the jury on the degree of certainty to which damages much need to be established. It is critical to inform the jury that they cannot speculate, but rather, any damages award they decide must be supported with a reasonable level of certainty by evidence in the record.]

Rockwell products because of  infringement, false advertising, false designation of

origin, or unfair competition in the United States and (2) any monetary damages that

Rockwell actually sustained because of WiAutomation's infringement, false

advertising, false designation of origin, deceptive trade practices or unfair

competition in the United States."][59]

---

[59] [**PLAINTIFF**: Defendant's proposed instruction is inappropriate because it does not include a correct summary of the monetary awards that Rockwell is seeking in the subsequent jury instruction sections.  Specifically, the instruction fails to include "statutory damages for counterfeiting" and "punitive damages".  The instruction is also confusing because it inserts the word "net" before profits, which is not what is stated in the statute, which states that plaintiff is entitled to "recover (1) defendant's profits". 15 U.S.C. § 1117.] [**DEFENDANT:** Rockwell is not entitled to pursue damages for counterfeiting because it failed to identify in its interrogatory responses that counterfeiting was a basis for the alleged trademark infringement (D.I. 142 Ex. I Rog 3, Rog 19).]

## 2.8.1  <u>DISGORGEMENT OF PROFITS</u>

A trademark owner may recover an infringer's profits attributable to the trademark infringement, false advertising, false designation of origin claims, or unfair competition claim. Profit is determined by deducting expenses from gross revenue. Gross revenue is all the money the infringer received due to its use of the trademarks in question.  The trademark owner is required only to prove the infringer's gross revenue.  The infringer is required to prove any expenses that it argues should be deducted in determining its profits.  Rockwell is entitled to recover WiAutomation's total profits from WiAutomation's wrongful conduct, unless WiAutomation proves that a portion of the profit is due to factors other than the wrongful conduct.[60]

---

[60] [**PLAINTIFF:** Exhibit 9: Final Instructions - *American Cruise Lines, Inc. v. HMS American Queen Steamboat Co. LLC*, 13-cv-324, Dkt. No. 340, Section 10.2 (D. Del. 2019) ("A trademark owner may recover an infringer's profits attributable to the infringement. Profit is determined by deducting expenses from gross revenue. Gross revenue is all the money the infringer received due to its use of the trademarks in question. The trademark owner is required only to prove the infringer's gross revenue. The infringer is required to prove any expenses that it argues should be deducted in determining its profits. A trademark owner is entitled to recover the infringer's total profits from its use of the trademarks in question, unless the infringer proves that a portion of the profit is due to factors other than the use of the trademarks in question.").  Contrary to Defendant's suggestion, this proposed instruction does not ignore Supreme Court authority and is consistent with Third Circuit precedent and sample jury instructions in Delware.] [**DEFENDANT** Plaintiff's instruction ignores clear Supreme Court Authority that the Lanham Act is limited to conduct that occurred in the United States. *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043.  Plaintiff's proposal is improper because it fails to

If you find that the amount of gross revenue from WiAutomation's sales cannot be determined precisely due to a lack of records, you may reach a reasoned approximation, resolving any doubts against WiAutomation.

Expenses are all costs incurred by WiAutomation in producing the gross revenue. WiAutomation has the burden of proving the expenses by a preponderance of the evidence. WiAutomation also has the burden of demonstrating how any cost contributed to the sale of a Rockwell-branded product. Expenses cannot be speculative, and you should reject any expense if you find that WiAutomation failed to properly substantiate and document each such expense. **[Plaintiff:** "Cost estimates should be excluded when a party could have, but failed to, introduce other, more reliable evidence as proof."**]**[61]

---

specify that the damages must relate to improperly obtained profits obtained from conduct in the United States.**]**

[61] [**PLAINTIFF:** *Banjo Buddies, Inc.* 399 F.3d at 172, 176 (3d Cir. 2005) (affirming district court's rejection of costs that "did not show how 'each item of general expense contributed to the production of the infringing items in issue and offer a fair and acceptable formula for allocating a given portion of overhead to the particular infringing items at issue.'"); *Hamil America Inc. v. GFI,* 193 F.3d 92, 107 (2d Cir. 1999) ("When infringement is found to be willful, the district court should give extra scrutiny to the categories of overhead expenses claimed by the infringer to insure that each category is directly and validly connected to the sale and production of the infringing product. Unless a strong nexus is established, the court should not permit a deduction for the overhead category.") Contrary to Defendant's suggestion below that this is not a matter for the jury, this instruction comes from jury instructions in Delaware and the jury is permitted to determine the factual issues surrounding this remedy, including determining the disputed issue of the profits and costs of Defendant.**][DEFENDANT**: This instruction is improper because this is not a

If the wrongful conduct has been found to be willful by clear and convincing evidence, you should give extra scrutiny to the categories of overhead expenses claimed by WiAutomation to ensure that each category is directly and validly connected to the sale of the products.  You will subtract the proven expenses from the gross revenue to determine the total profit that should awarded to Rockwell.

---

matter for the jury.  It is also unduly prejudicial because there is no finding that WiAutomation withheld any documents.**]**

## 2.8.2 [PLAINTIFF'S PROPOSAL: STATUTORY DAMAGES UNDER THE FEDERAL LANHAM ACT][62]

After you have made your determinations regarding WiAutomation's profits, if you found WiAutomation liable for counterfeiting you will then proceed to the second category of recovery, and determine an appropriate amount of statutory

---

[62] [**PLAINTIFF**: Defendant, below, reiterates its false claim that Plaintiff has not alleged counterfeiting in this action. Rockwell's Complaint alleges that WiAutomation is selling counterfeit Rockwell products. D.I. 1, ¶¶ 56, 58, 136, 146. Rockwell's motion for summary judgment asserts counterfeiting. D.I. 145, Section III.A.3 pp. 13-17 ("Defendant's Trademark Infringement Involves Counterfeit Marks."). Rockwell's interrogatories provide responses regarding the counterfeit allegations. D.I. 142 Exh. I Rog 14 ("Defendant shipped a product … **that bore a counterfeit label** and was enclosed in a box bearing **a counterfeit "Factory Seal" label**."); s*ee also Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 n.2 (S.D.N.Y. 2015) ("the Lanham Act does not provide for a separate cause of action for counterfeiting…."); *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 866 (C.D. Ill. 2013) (the court held that "the use of a counterfeit mark in the context of the Lanham Act is not, in and of itself, a cause of action. Rather, in a civil action arising under § 1114, a finding that a counterfeit mark was used permits certain additional remedies, including seizure of the goods so marked, § 1116(d)(1)(A); treble damages, § 1117(b); the awarding of statutory damages, § 1117(c); and attorney's fees, § 1117(a). It is for these special civil monetary remedies that Defendant invokes the counterfeit mark provisions."). Rockwell's Interrogatories also allege counterfeiting.  These available remedies are merely "a counterfeit mark enhancement" under the Lanham Act. *Id.*; *see also Lontex Corp. v. Nike, Inc.*, 384 F.Supp.3d 546, 554 (E.D. Pa. 2019) ("even though the [complaint] does not plead counterfeiting as a separate claim, the Court proceeds to determine … [plaintiff's] entitlement to relief for counterfeiting.")**]**] [**DEFENDANT:** Plaintiff's instruction ignores clear Supreme Court Authority that the Lanham Act is limited to conduct that occurred in the United States. *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043.  Plaintiff's proposal is improper because it fails to specify whether damages were caused by conduct in the United States.  This section should also be stricken because Plaintiff failed to identify in its interrogatory responses that counterfeiting was a basis for the alleged trademark infringement (D.I. 142 Ex. I Rog 3, Rog 19).]

damages. This is a separate determination from the findings that you made regarding an award of profits and should not be affected by whatever amount of profits you determined. You will make the statutory damages determination by applying the following instructions.

You must first count the number of trademarks that were counterfeited.

If you believe WiAutomation's acts were willful, then for each trademark that was counterfeited, Rockwell is entitled to an award between $1000 and $2 million. So, if three (3) marks were counterfeited, Rockwell would be entitled to an award between $3,000 and $6 million.

If you believe WiAutomation's acts were not willful, then for each trademark that was counterfeited, Rockwell is entitled to an award between $1,000 and $200,000. So if three (3) marks were counterfeited, Rockwell would be entitled to an award between $3,000 and $600,000.

In determining what amount of statutory damages is appropriate, you should consider factors such as (1) the expenses saved, if any, and the profits reaped, if any; (2) the revenues lost by Rockwell, if any; (3) the value of the trademark; (4) the deterrent effect on others besides WiAutomation; (5) whether WiAutomation's conduct was innocent or willful; (6) whether WiAutomation has cooperated in

providing particular records from which to assess the value of the infringing

materials products; and (7) the potential for discouraging WiAutomation.][63]

---

[63] [**PLAINTIFF**: 15 U.S.C. § 1117(c)(1); Exhibit 12: Court's revised Jury Instructions - *Tiffany v. Costco,* 13cv1041 DKT 345 p.23 (S.D.N.Y. Sept. 27, 2016). Throughout these proposed final jury instructions, Defendant removes all references to Rockwell's trademark infringement claims involving counterfeit marks. This is inappropriate.    Rockwell's Complaint alleges that WiAutomation is selling counterfeit Rockwell products. D.I. 1, ¶¶ 56, 58, 136, 146.  Rockwell's motion for summary judgment assert counterfeiting. D.I. 145, Section III.A.3 pp. 13-17 ("Defendant's Trademark Infringement Involves Counterfeit Marks."); *see also Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 n.2 (S.D.N.Y. 2015) ("the Lanham Act does not provide for a separate cause of action for counterfeiting…."); *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 866 (C.D. Ill. 2013) (the court held that "the use of a counterfeit mark in the context of the Lanham Act is not, in and of itself, a cause of action. Rather, in a civil action arising under § 1114, a finding that a counterfeit mark was used permits certain additional remedies, including seizure of the goods so marked, § 1116(d)(1)(A); treble damages, § 1117(b); the awarding of statutory damages, § 1117(c); and attorney's fees, § 1117(a). It is for these special civil monetary remedies that Defendant invokes the counterfeit mark provisions."). These available remedies are merely "a counterfeit mark enhancement" under the Lanham Act. *Id.*; *see also Lontex Corp. v. Nike, Inc.*, 384 F.Supp.3d 546, 554 (E.D. Pa. 2019) ("even though the [complaint] does not plead counterfeiting as a separate claim, the Court proceeds to determine … [plaintiff's] entitlement to relief for counterfeiting.")]

### 2.8.3  **COMPENSATORY DAMAGES**

In addition to WiAutomation's profits and statutory damages, if you find for Rockwell on its trademark infringement, false advertising, false designation of origin claims, deceptive trade practices or unfair competition claim, you must determine Rockwell's compensatory damages **[Plaintiff:** ".**"] [Defendant:** "resulting from WiAutomation's proven sales in the United States."**][64]** This is a separate determination from the findings that you made regarding WiAutomation's profits and statutory damages.[65]

Rockwell has the burden of proving compensatory damages by a preponderance of the evidence.  Compensatory damages means the amount of money which will reasonably and fairly compensate the Rockwell for any injury you find was caused by the WiAutomation's wrongful conduct.

You should consider the following compensatory damages:

---

[64]  **[PLAINTIFF**: Defendant's proposed insertion of "resulting from WiAutomation's proven sales in the United States" does not conform with the instructions in *Cirba* and improperly limits and/or links any harm to "WiAutomation's proven sales" when the harm is actually broader because it includes harm for false advertising and deceptive trade practices which are not tied to "proven sales".  Exhibit 3: Final Instructions - *Cirba Inc. v. VMware*, 19-cv-742, Dkt. No. 526 Section 15.2 p. 84 (D. Del. Jan. 22, 2020)**][DEFENDANT**: Plaintiff's instruction ignores clear Supreme Court Authority that the Lanham Act is limited to conduct that occurred in the United States. *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043.  Plaintiff's proposal is improper because it fails to specify whether damages were caused by conduct in the United States.**]**

(i)     the injury or loss to Rockwell's reputation;

(ii)    the injury or loss to Rockwell's goodwill;

(iii)   any lost profits that Rockwell would have earned but for WiAutomation's wrongful conduct;

(iv)    the expense of preventing customers from being deceived; and

(v)     the cost of future corrective advertising reasonably required to correct public confusion caused by WiAutomation's wrongful conduct.

In measuring the harm to Rockwell's goodwill or reputation, you should consider Rockwell's expenditures in building its reputation to estimate the harm to its reputation after WiAutomations's bad acts **[Plaintiff** "."**]**[66] **[Defendant:** ", supported by actual evidence in the record."**][Plaintiff:** "The amount of Rockwell's lost profits may be based on a reasonable estimate supported by the evidence.**]**[67]

---

[66] [**PLAINTIFF:** Exhibit 11: Jury Instructions - *Trust ID v. Next Caller,* 18-cv-172, Dkt. No. 295 p.47 (D. Del. July 16, 2021) ("In measuring the harm to TRUSTID's goodwill or reputation, you should consider TRUSTID's expenditures in building its reputation to estimate the harm to its reputation after Next Caller's bad acts.")]

[67] [**PLAINTIFF**: *Bracco v. Amersham,* 627 F.Supp.2d 384, 490-91 (D.N.J. 2009) ("When quantifying lost profits under the Lanham Act, the Court may "***make a just and reasonable estimate of the damage based on the relevant data*** and act upon probable and inferential, as well as direct and positive proof"; "courts have been inclined to use 'limited speculation' in determining an award where it is difficult to ascertain the exact amount of damages as a result of the defendant's violative conduct.").]

[**Plaintiff:** WiAutomation's financial condition must not be considered in assessing compensatory damages."][68]

---

[68] [**PLAINTIFF:** *Pattern Jury Instructions for Civil Practice in the Superior Court of the State of Delaware* – Del. P.J.I. Civ. § 22.27 (2000) ("[*Defendant's name*]'s financial condition must not be considered in assessing compensatory damages.")]

### 2.8.4  **PUNITIVE DAMAGES**

If you found for Rockwell on its common law unfair competition claim and awarded Rockwell its lost profits or other compensatory damages, you must determine what punitive damages, if any, to award to Rockwell.

Punitive damages are different from compensatory damages.  Compensatory damages are awarded to compensate Rockwell for the injury suffered.  Punitive damages, on the other hand, are awarded in addition to compensatory damages

You may award punitive damages to punish a party for outrageous conduct and to deter a party, and others like it, from engaging in similar conduct in the future. To award punitive damages, you must find by a preponderance of the evidence that WiAutomation acted intentionally or recklessly.  Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

Intentional conduct means it is the person's conscious object to engage in conduct of that nature.  Reckless conduct is a conscious indifference that amount to an "I don't care" attitude.  Reckless conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that it knows or should know that there is an eminent likelihood of harm that can result.  Each requires that WiAutomation foresee that its conduct threatens a particular harm to another.

The law provides no fixed standards for the amount of punitive damages.

In determining any award of punitive damages, you may consider the nature of WiAutomation's conduct and the degree to which the conduct was reprehensible. Finally, you may assess an amount of damages that will deter WiAutomation and others like it from similar conduct in the future.  You may consider WiAutomation's financial condition when evaluating deterrence.  Any award of punitive damages must bear a reasonable relationship to Rockwell's compensatory damages.  If you find that Rockwell is entitled to an award of punitive damages, state the amount of punitive damages separately on the verdict form.[69]

---

[69] **Plaintiff:** Pattern Jury Instructions for Civil Practice in the Superior Court of the State of Delaware – Del. P.J.I. Civ. § 22.27 (2000)

## 3.0    DELIBERATION AND VERDICT

### 3.1    INTRODUCTION

I have concluded the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

## 3.2   <u>UNANIMOUS VERDICT</u>

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous **[Plaintiff:** ".**"]**[70] **[Defendant:** ".  In the event you do not reach a unanimous agreement, you must notify the Court without completing the jury verdict sheet and the Court will instruct you on how to proceed."**]**

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

---

[70] **[PLAINTIFF**: Defendant's proposed instruction improperly inserts extra language that is not included in this Court's template instruction found in *Cirba*. Exhibit 1: Adapted from Final Jury Instructions *Cirba v. VMware,* 19-cv-742, Dkt. No. 1767 at 16.2 (D. Del. Apr. 28, 2023) ("Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. ***Your verdict must be unanimous.***")**]**

A form of verdict has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and [Plaintiff: "when you have reached"][71] [Defendant "if you reach a"] unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the Courtroom and my deputy will read aloud your verdict. Place the completed verdict sheet in the envelope we will give you. Do not show the completed verdict form to anyone or share it with anyone until you are in the Courtroom.

It is proper to add the caution that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

---

[71] [**PLAINTIFF**: Defendant's proposed instruction improperly inserts extra language that is not included in this Court's template instruction found in *Cirba*. Exhibit 1: Adapted from Final Jury Instructions *Cirba v. VMware,* 19-cv-742, Dkt. No. 1767 at 16.2 (D. Del. Apr. 28, 2023) ("***when you have reached*** unanimous agreement as to your verdict")]

### 3.3    DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that-your own vote **[Plaintiff:** ".   It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience."**]**[72] **[**Defendant: "."**]**

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

---

[72] [**PLAINTIFF**: Defendant's proposed instruction improperly removes language from this Court's template instruction found in *Cirba*.  Exhibit 1: Adapted from Final Jury Instructions *Cirba v. VMware,* 19-cv-742, Dkt. No. 1767 at 16.3 (D. Del. Apr. 28, 2023) ("But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that- your own vote**.** ***It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience***")]

Listen carefully to what the other jurors have to say, and then decide for yourself.

### 3.4    **SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, Blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 3.5     <u>COURT HAS NO OPINION</u>

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.