# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROCKWELL AUTOMATION, INC.,

               Plaintiff,

        v.

PARCOP S.R.L. d/b/a WIAUTOMATION,

               Defendant.

C.A. No. 21-1238-GBW-JLH

**UNSEALED 7/25/2023**

---

## MEMORANDUM ORDER

This Memorandum Order addresses the following pending motions: Defendant Parcop S.R.L. d/b/a WiAutomation's ("WiAutomation" or "Defendant") Motion for Judgment on the Pleadings (D.I. 42); Plaintiff Rockwell Automation, Inc.'s ("Rockwell" or "Plaintiff") Motion for Summary Judgment on Counts I, II, IV, and V (D.I. 144); Rockwell's Motion to Exclude the Opinions of Defendant's Expert Justin Blok (D.I. 149); Defendant's Motion for Summary Judgment on All Counts of Rockwell's Complaint (D.I. 153); Defendant's Motion to Exclude the Expert Testimony of Brett Reed (D.I. 158); Defendant's Motion to Exclude the Expert Testimony of David Franklyn (D.I. 161); and Rockwell's Motion to Strike Part of Defendant's Motion for Summary Judgment (D.I. 194). The Court will address each motion in turn and set forth the relevant legal standards when necessary.

## I.  BACKGROUND

Rockwell is a 120-year-old company dedicated to industrial automation and information. D.I. 1 ¶ 18; D.I. 145 at 1. "Rockwell's core business is built around its industrial automation products, which include the brains (programmable controllers, or 'PLCs'), muscle (motors and drives) and related devices (input/output devices, safety devices) that run a variety of industrial

and commercial operations ranging from assembly lines (*e.g.* automotive lines, food processing plants and pharmaceutical plants), to critical infrastructure (*e.g.* oil refineries), to automation involving safety of children (*e.g.*, amusement park rides)." D.I. 1 ¶ 19. Rockwell manufactures and distributes its products under the following trademarks: ALLEN-BRADLEY®, A-B®, ROCKWELL AUTOMATION®, and/or CONTROLLOGIX® trademarks (collectively, the "Asserted Trademarks"). *Id.* ¶ 36. Customers can buy Rockwell products through Rockwell or through its Authorized Distributors ("ADs"). *Id.* ¶ 22. Rockwell's products "come with a variety of services including Rockwell's manufacturer's warranty and Rockwell's quality control assurances and safety and security notices, known as product safety advisories and product notices." *Id.*

Defendant is an Italian company who "maintains a website through which it conducts business selling various automation components and products, including Rockwell products and many other products." D.I. 18 ¶¶ 6, 10; D.I. 1 ¶ 6, 10. Defendant "does not manufacture its own products for sale." D.I. 18 ¶ 55; D.I. 1 ¶ 55.

Rockwell sued Defendant under the Lanham Act and Delaware common law for trademark infringement under Section 32(1) of 15 U.S.C. § 1114(1) (Count I), false advertising under Section 43(a)(1)(B) of 15 U.S.C. § 1125(a)(1)(B) (Count II), false designation of origin under Section 43(a)(1)(A) of 15 U.S.C. § 1125(a)(1)(A) (Count III), statutory unfair competition under 6 Del. C. § 2532 *et seq.* (Count IV); common law unfair competition (Count V), and unjust enrichment (Count VI). D.I. 1. Defendant denies these allegations. D.I. 18.

## II.    *DAUBERT* MOTIONS

Rockwell moves to exclude the costs and sales opinions of Defendant's damages expert Justin Blok. D.I. 149. Defendant moves to exclude the testimony and opinions offered by

Rockwell's damages expert Brett Reed and Rockwell's survey expert David Franklyn.  D.I. 158;

D.I. 161.  The Court will address each *Daubert* motion in turn below.

### A.  Legal Standards

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court

held that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order

to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the

task at hand." 509 U.S. at 597, 580.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.  As the Third Circuit has explained,

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit.  Qualification refers to the requirement that the witness possess specialized expertise.  We have . . . [held] that a broad range of knowledge, skills, and training qualify an expert.  Secondly, the testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his o[r] her belief.  In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity.  Finally, Rule 702 requires that the expert testimony . . . must be relevant for the purposes of the case and must assist the trier of fact.

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003) (cleaned up);

*Kuhar v. Petzl Co.*, C.A. No. 19-3900, 2022 WL 1101580, at *7 (3d Cir. Apr. 13, 2022) (noting

the same trilogy).

Rule 702 "'has a liberal policy of admissibility[,]'" *Pineda v. Ford Motor Co.*, 520 F.3d

237, 243 (3d Cir. 2008) (citation omitted); *see also United States v. Scripps*, 599 F. App'x 443,

447 (3d Cir. 2015) (same), as "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court[,]" *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017) (quoting *Daubert*, 509 U.S. at 596).

### a. Justin Blok

At issue is the reliability of Defendant's damages expert Mr. Blok's costs and sales opinions. *See* D.I. 151-1, Ex. 1 ¶¶ 16, 29-31, 34-36, 41-47, Ex. 4. For the reasons stated below, the Court grants Rockwell's Motion to Exclude the Opinions of Defendant's Expert Justin Blok. D.I. 149.

"[A]n expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994). "The [Rule 702] inquiry is a flexible one . . . [and its focus] must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "'[T]he reliability analysis [required by *Daubert*] applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion.'" *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012) (quoting *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 155 (3d Cir. 1999)); *see also* FED. R. EVID. 702.

Here, Defendant retained Mr. Blok to respond to the expert report of Brett Reed, Rockwell's damages expert. Mr. Reed was retained "to assess the nature and amount of damages allegedly suffered by Rockwell Automation, Inc. ('Rockwell' or 'Plaintiff') as a result of certain alleged actions of [Defendant], as well as the amount of [Defendant's] revenue and profit

attributable to its sale of Rockwell Products that it sold as new." D.I. 151-1, Ex. 1 ¶ 3 (internal quotation marks omitted).[1] Rockwell argues that Mr. Blok's costs methodology is unreliable because he "did no analysis of Defendant's costs attributable to the sales of Rockwell products" and "simply parroted back the costs for Rockwell products numbers stated in Defendant's interrogatory responses." D.I. 150 at 8 (internal quotation marks omitted). Defendant disagrees and argues that it does not have documents or data that contain costs and revenues associated with Rockwell products because "invoices [Defendant] retained for tax purposes often do not state the brand of the automation product purchased or sold." D.I. 183 at 5. Defendant further explains that "[w]ithout this branding information, [Mr.] Blok would have to sort through all of [Defendant's] invoices and speculate as to which invoices related to Rockwell products. Such an undertaking is both unreasonably burdensome and unreliable." *Id.* at 7.

The Court finds that Mr. Blok's cost methodology is unreliable. The Court agrees with Rockwell that Mr. Blok failed to show "'how each item of general expense contributed to the production of the infringing items in issue and offer a fair and acceptable formula for allocating a given portion of overhead to the particular infringing items at issue.'" D.I. 150 at 8 (quoting *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 177 (3d Cir. 2005)). Mr. Blok merely stated:

> Based on the corresponding reported "costs for Rockwell products" of €847,972 and €341,010, respectively, it is estimated that WI Automation's realized a profit margin of approximately 19.0% on the sale of Rockwell products during 2021 and 2022.[75]

D.I. 151-1, Ex. 1 ¶ 46. Footnote 75 in Mr. Blok's report cites to Defendant's interrogatory responses, which provide bottom-line Rockwell product cost summaries. D.I. 184-1, Ex. A. Mr.

---

[1] Section 35(a) of the Lanham Act provides: "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

Blok's report fails to provide any analysis or discussion regarding the category of costs included in the blanket "costs for Rockwell products." *See generally* D.I. 151-1, Ex. 1.[2]  For the first time at his deposition, Mr. Blok stated that the "costs for Rockwell products" included three categories of costs: "raw material costs, services, and personnel." D.I. 151-1, Ex. 3 at 39:8-14; *see also id.* at 38:13-21. Mr. Blok, however, never reviewed the underlying data for each cost category to determine how those costs were attributable to Defendant's sales of Rockwell products as opposed to the other products that Defendant sells. D.I. 150 at 4-6; D.I. 151-1, Ex. 3 at 41:8-25, 43:8-45:3, 99:24-100:5, 100:18-24, 103:15-20; D.I. 151-1, Ex. 4 at 94:11-19, 127:10-19, 142:24-143:1. Instead, Mr. Blok's report relies on Defendant's bottom-line interrogatory response. *See* D.I. 151-1, Ex. 1 ¶ 46. Thus, Mr. Blok's cost opinions is unreliable and, therefore, will be excluded.

The Court has also reviewed Defendant's invoices and disagrees with Defendant that its invoices lack any branding information. For example, in Defendant's brief, it includes a screenshot of an invoice that states, "Cable, MicroLogix 1000 to PC, 2 meters INFO:CONTRIBUTI CONAI E COBAT ASSOLTI." D.I. 183 at 6 (citing D.I. 184-3, Ex. C). MicroLogix is a well-known Rockwell product. Rockwell identified the MicroLogix product line in its Complaint (D.I. 1 ¶¶ 47-48), and a simple Google search of "MicroLogix" directs a user to Rockwell's website.[3] Rockwell also points out in its brief that "Defendant has numerous sub-pages of its website

---

[2] It is also concerning that Mr. Blok made no effort to understand the methodology used to gather information regarding how the costs were calculated in Defendant's interrogatory response. "Essentially, his 'lack of familiarity with the methods and the reasons underlying . . . [those costs] virtually precluded any assessment of the validity of the [costs] through cross-examination." *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 592 (D. Del. 2004) (quoting *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993)).

[3] *See, e.g.*, https://www.rockwellautomation.com/en-us/products/hardware/allen-bradley/programmable-controllers/micro-controllers/micrologix-family/micrologix-1400-controllers.html

dedicated to Rockwell's MicroLogix product line." *See* D.I. 226 at 3-4 (citations omitted). The same is true for Defendant's invoices attached as Exhibit D. *See* D.I. 184-4, Ex. D. For those invoices, in addition to the invoice identifying a well-known Rockwell product name, the prefix "RCK" is listed under the "item" column. *See id.* In fact, in a declaration Defendant filed regarding its search for purchase orders and invoices per the Magistrate Judge's Orders from May 2, 2022 and June 15, 2022, Mr. Coppola stated that some of the invoices in Defendant's possession include brand identifying information. D.I. 268-1 ¶¶ 10-12. Yet, Mr. Blok failed to rely on any of these invoices in his report.[4]

For the same reasons as stated above, the Court also finds Mr. Blok's analysis of Defendant's sales of Rockwell products not reliable.[5]

Accordingly, Mr. Blok's costs and sales opinions are not reliable and thus not proper under *Daubert* and the Federal Rules of Evidence. Mr. Blok is prohibited from testifying to matters related to ¶¶ 16, 29-31, 34-36, 41-47, and Exhibit 4 of his report (D.I. 151-1, Ex. 1).

### b. Brett Reed

Defendant seeks to exclude the testimony of Rockwell's damages expert, Brett Reed. D.I. 158. For the reasons discussed below, the Court denies Defendant's motion to exclude the testimony of Mr. Reed.

Defendant takes a varied approach to attack Mr. Reed's testimony and opinions. Defendant gives five reasons why Mr. Reed's testimony should be excluded. First, "[Mr.] Reed's opinion that Italy-based WiAutomation sells the same percentage of products in the U.S. as the American

---

[4] The cases cited by Defendant in its brief are inapposite. *See* D.I. 183. Those cases deal with situations where the data was unavailable, and an expert had to use estimates to complete his or her analysis. Here, as explained in more detail above, the data was available to Mr. Blok.

[5] Exhibit 4 in Mr. Blok's report similarly relies on Defendant's interrogatory responses. *See, e.g.*, D.I. 151-1 at Ex. 4 n.1-2, 5.

based, multi-billion dollar company Rockwell, is not supported by any quantitative test, established method, or basic common sense." D.I. 159 at 1; *see also id.* at 4-13, D.I. 215 at 1-8. Second, "[Mr.] Reed's lost damages calculation is premised on the assumption that Rockwell's products are incompatible with products from other brands." D.I. 159 at 2; *see also id.* at 13-16, D.I. 215 at 8-10. Third, "[Mr.] Reed based his opinion on critical discovery that Rockwell improperly withheld until well after the close of fact discovery—strategically disclosing this evidence at a time that ensured [Defendant] would be unable to conduct follow up discovery on these critical facts." D.I. 159 at 2; *see also id.* at 16-18. Fourth, "[Mr.] Reed opines on issues concerning marketing and perceptions of business-to-business purchasers without having any relevant expertise in that field." D.I. 159 at 2; *see also id.* at 19. Fifth, "Rockwell attempts to use [Mr.] Reed to insert facts into the record that are not supported by any admissible evidence." D.I. 159 at 3; *see also id.* at 19-23, D.I. 215 at 11-12.

Most of Defendant's arguments are rooted in disagreement with Mr. Reed's opinions, "but do not show a reason to exclude the testimony altogether." *Alcoa, Inc. v. Alcan Rolled Prod.-Ravenswood LLC*, C.A. No. 6-451-JFB-SRF, 2020 WL 433856, at *3 (D. Del. Jan. 28, 2020). Also, Defendant's criticisms of Mr. Reed's opinions go to the weight and not the admissibility of his opinions. *Daubert*, 509 U.S. at 596. Defendant's concerns regarding Mr. Reed's opinions can be adequately addressed on cross-examination. *See id.* ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"); *see also Alcoa*, 2020 WL 433856, at *3 ("any flaws in the experts' testimony can be addressed in effective cross-examination and by the presentation of competing evidence.").

Defendant also challenges Mr. Reed's qualifications to give opinions on "marketing, branding, consumer perceptions, trademark law, or business-to-business sales marketing and perceptions." D.I. 159 at 19.  Mr. Reed received his Bachelor of Arts (B.A.) and master's degree in economics from the University of California. D.I. 200-6, Ex. 7.  He "specializes in the economic analysis of intellectual property, including the assessment of economic alternatives, lost profits, price erosion, reasonable royalties, commercial success, irreparable harm/public interest and other valuation/damages/investigation issues."  *Id.*  He also has worked on a variety of trademark matters.  *Id.*; *see also* D.I. 200-5, Ex. 6 at 49:8-14.  Mr. Reed is sufficiently qualified to opine on marketing, branding, consumer perceptions, trademark law, or business-to-business sales marketing and perceptions.

Accordingly, the Court denies Defendant's motion to exclude the testimony of Brett Reed.

### c.  David Franklyn

Defendant argues that Mr. Franklyn's surveys—his material differences and false advertising surveys—and his testimony that relies on them should be excluded. D.I. 162; D.I. 212. For the reasons discussed below, the Court denies Defendant's motion to exclude Mr. Franklyn's surveys and his accompanying testimony.

Rockwell retained Mr. Franklyn to conduct two surveys and report his findings and conclusions of those surveys.  D.I. 163-1, Ex. A ¶ 20.  The first survey (the "material differences survey"):

> was conducted among purchasers, and those who influence purchase decisions, of industrial, electrical, and electronic control equipment to assess:
>
> a. The importance of service offerings on their purchase decision;
> b. Their expectations of the services that would accompany their purchase;
> c. The impact on purchase interest of [Defendant's] product offerings if consumers were provided an accurate explanation of the product's condition and origin and the services that accompany the product.

*Id.* at 7.

The second survey (the "false advertising survey"):

> was conducted among purchasers, and those who influence purchase decisions, of industrial, electrical, and electronic control equipment to assess:
>
> > a. Whether purchasers believe Allen-Bradley products offered by [Defendant] come with Rockwell's manufacturer's warranty; and
> > b. Whether purchasers would be less likely to purchase Allen-Bradley products from [Defendant] if they were to learn that those products were not accompanied by the manufacturer's warranty.

*Id.*

Both surveys were conducted among

> - Full-time professionals employed in Engineering and Manufacturing or Procurement and Purchasing;
> - Who are primary decision makers or have influence on decision making for industrial, electrical, and electronic control devices; and
> - Who consult product, retailer, or manufacturer websites as part of their research and selection process for industrial, electrical, and electronic control devices.

*Id.* ¶¶ 25, 70.

First, Defendant argues that the "universe" of Mr. Franklyn's surveys is improper and inaccurate because the survey respondents "have no verifiable and/or relevant experience due to vague and ambiguous survey questions." D.I. 162 at 1; *see also id.* at 4-11. "A 'universe' is 'that segment of the population whose perceptions and state of mind are relevant to the issues in the case.'" *Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 118 (3d Cir. 2004) (citing MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:159 (4th ed. 2003)). "A survey of the wrong 'universe' will be of little probative value in litigation." *Id.* "The proponent of the survey bears the burden of proving that the universe is proper." *Id.*

The Court finds the "universe" of Mr. Franklyn's surveys is proper. For both surveys, Mr. Franklyn included several screening questions to ensure that the proper universe of respondents

was used. *See* D.I. 163-1, Ex. A ¶¶ 35-42, 77-87. He also retained the services of Dynata, who is a supplier of online sample for surveys, to help select the appropriate sample of panelist. *Id.* ¶¶ 43-46, 88-91. For these surveys, Dynata targeted a subpopulation of engineers. *Id.* ¶¶ 45, 90.

The Court disagrees with Defendant that the screening questions regarding respondents' experience with "industrial, electrical or electronic control devices" are "too broad and ambiguous." D.I. 162 at 5-6. Defendant argues that the term "electronic control device" is a "well-known term of art" for a taser or stun gun, but this interpretation is illogical when read in the context of the entire phrase. D.I. 162 at 6. As correctly noted by Rockwell, the "logical reading of that phrase asks respondents the degree of involvement they have in purchasing 'control devices' that are 'industrial, electrical or electronic.' It does not ask for their experience in buying tasers[.]" D.I. 197 at 10-11. Defendant also argues that Mr. Franklyn could have "cured" these purported ambiguities by "conducting a 'pre-test.'" D.I. 162 at 7. However, "the caselaw does not rigidly require the duty to pretest." *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 127-28 (S.D.N.Y. 2022), *motion to certify appeal denied*, C.A. No. 19-1422, 2022 WL 3137131 (S.D.N.Y. Aug. 5, 2022) ("the formality of a pretest was not obligatory").[6]

Defendant's argument that Mr. Franklyn failed to screen for relevant decision-making experience is also unpersuasive. D.I. 162 at 8-11; D.I. 212 at 7-8. Defendant's criticism goes to the weight, not admissibility, of the survey and Defendant is free to challenge those opinions through cross-examination of Mr. Franklyn at trial. *Daubert*, 509 U.S. at 596.

---

[6] Defendant relies on *United States v. Dentsply Int'l, Inc.*, 277 F. Supp. 2d 387, 438 (D. Del. 2003), *rev'd and remanded*, 399 F.3d 181 (3d Cir. 2005) to support its argument. While *Dentsply* states "[p]re-tests are 'absolutely essential' in survey research," it does not support the proposition that a failure to conduct a pre-test alone requires the exclusion of the survey. *Id.*

With respect to Mr. Franklyn's material differences survey, Defendant argues that his testimony should be excluded, because (1) "the survey fails to consider how multiple factors impact the respondents' answers," and (2) Mr. Franklyn's "binary questions misled respondents." D.I. 162 at 11-14. These criticisms are the proper subject of cross-examination, not grounds for exclusion. *Daubert*, 509 U.S. at 596. Defendant also argues Mr. Franklyn's false advertising survey should be excluded because, under Third Circuit authority, a survey cannot test truthful statements. D.I. 162 at 14-18.

Defendant appears to misstate the Third Circuit's authority—*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241 (3d Cir. 2011)—by broadly stating a survey cannot test truthful statements. In *Pernod*, the Third Circuit addressed whether courts could rely on survey evidence to show that consumers are misled by an advertising claim. The appellant argued that the name of a brand of rum—Havana Club—amounted to a misleading statement of geographic origin. 653 F.3d at 247-48. The label on the rum stated, on the front, that the liquor was "Puerto Rican Rum" and, on the back, that it is "distilled and crafted in Puerto Rico." *Id.* at 252. The District Court held that the rum's label made no false or misleading statements and, therefore, disregarded the survey evidence that a certain percentage of consumers were confused about the rum's geographic origin. *Id.* at 247-48.

The Third Circuit affirmed the District Court's judgment. The Third Circuit acknowledged that "there are circumstances under which the meaning of a factually accurate and facially unambiguous statement is not open to attack through a consumer survey. In other words, there may be cases . . . in which a court can properly say that no reasonable person could be misled by the advertisement in question." *Id.* at 252 (referencing *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 886 (7th Cir. 2000), *amended on denial of reh'g*, 209 F.3d 1032 (7th Cir. 2000) (per curiam)).

Applying that proposition, the Third Circuit found, "as did the District Court, that the Havana Club label, taken as a whole, could not mislead any reasonable consumer about where Bacardi's rum is made, which means that survey evidence has no helpful part to play on the question of what the label communicates regarding geographic origin." *Id.* at 250.

The facts here are readily distinguishable from the facts in *Pernod*. Mr. Franklyn's survey gauges the respondents' impressions regarding the product warranty. D.I. 163-1, Ex. A ¶ 72. Specifically, one of the questions asked, "whether the product [bought from Defendant's website] comes with a 12-month warranty from the manufacturer." *Id.* ¶ 73. The survey question was trying to examine whether the phrases "New Factory Sealed – Original Product – 12-month warranty" and "[t]he warranty for new sealed products is 12 months from delivery date" on Defendant's website misled consumers to believe that the warranty was referring to Rockwell's warranty. *Id.* ¶¶ 72-73. Unlike the language in *Pernod* which the Third Circuit found could not mislead any reasonable consumer, the phrases here about the warranty could mislead a reasonable consumer. The Court agrees with Rockwell that these phrases "confusingly associate[] the 12-month warranty with the phrases 'new factory sealed' and 'original product,' each of which suggests some affiliation with the manufacturer. To make matters worse, Defendant did not include any sort of disclaimer to indicate that the warranty offered was from Defendant, not Rockwell." D.I. 197 at 19. Thus, the Court finds that Mr. Franklyn's false advertising survey properly tested whether Defendant's advertisement about the warranty on its products deceives consumers.

The reality is that no survey is perfect. "The nature of the beast is that it is a sample, albeit a scientifically constructed one." INTRODUCTION TO SURVEY EVIDENCE, 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:158 (5th ed.). Here, it will be up to "the fact finder

13

to scrutinize the nature and quality of [Mr. Franklyn's] survey evidence in order to decide how much weight it deserves in light of all the evidence in the case." *Id.*

Lastly, Defendant argues Mr. Franklyn does not have the relevant education, training, or experience in (1) marketing and branding; (2) business marketing, perceptions, or behavior; and (3) industrial automation to qualify as an expert. D.I. 162 at 21-25. Rule of Evidence 702 states that a witness offering an expert opinion must possesses adequate "knowledge, skill, experience, training, or education" to support his or her opinion. Qualification requires "'that the witness possess specialized expertise.'" *Allscripts Healthcare, LLC v. Andor Health, LLC*, C.A. No. 21-704-MAK, 2022 WL 3021560, at *2 (D. Del. July 29, 2022) (quoting *Pineda*, 520 F.3d at 244). The Third Circuit interprets this requirement "liberally." *Pineda*, 520 F.3d at 244. "'[A] broad range of knowledge, skills, and training qualify an expert.'" *Allscripts*, 2022 WL 3021560, at *2 (quoting *In re Paoli*, 35 F.3d at 741). "This liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts." *Pineda*, 520 F.3d at 244.

Mr. Franklyn received his J.D. from the University of Michigan Law School and is currently a professor of Intellectual Property Law and the director of the McCarthy Institute at Arizona State University. D.I. 163-15, Ex. O. He has experience teaching seminars in survey design, a seminar on advertising, and a seminar "on the brand as a marketing entity and as a legal entity." D.I. 198, Ex. 2 at 122:2-5. "A key focus of [Mr. Franklyn's] academic work involves research and lecturing on issues concerning consumer perceptions in the area of trademark law." D.I. 163-1, Ex. A ¶ 5. He has been the director of the McCarthy Institute, which "conducts wide-ranging survey research on consumer perception issues in both the United States and Europe," for 22 years. D.I. 163-1, Ex. A ¶ 4; D.I. 198, Ex. 2 at 7:19-24. Mr. Franklyn has conducted over 100 consumer surveys. *Kodiak Cakes, LLC v. JRM Nutrasciences, LLC*, C.A. No. 20-581-DBB-JCB,

2022 WL 17340660, at *8 (D. Utah Nov. 30, 2022). Thus, Mr. Franklyn satisfies Rule 702's requirement to qualify as an expert in this case. Defendant's criticisms that Mr. Franklyn does not have adequate experience to qualify him as an expert go to the weight of his testimony and Defendant will have the opportunity to cross-examine him at trial.

The Court has considered Defendant's other arguments and finds them unpersuasive. Accordingly, for the reasons stated above, the Court denies Defendant's motion to exclude Mr. Franklyn's surveys and his accompanying testimony.

### III.    Motion to Strike

Pursuant to Rule 56(c)(2), Rockwell moves to strike Exhibits A through D (D.I. 156-1; D.I. 156-2; D.I. 156-3; D.I. 156-4) relied upon in Defendant's motion for summary judgment and corresponding statements and arguments in Defendant's Concise Statement of Material Facts (D.I. 154 ¶¶ 1-3, 7-8, 47), Opening Brief in support of its Motion for Summary Judgment (D.I. 155 at 1-2, 5-6, 9, 14-15, 21), and Defendant's Answering Brief in opposition to Rockwell's Motion for Summary Judgment (D.I. 185 at 1, 5, 8). D.I. 194; D.I. 233. For the reasons discussed below, the Court grants Rockwell's motion to strike.

#### A. Legal Standards

Rule 56(c)(2) recites: "*Objection That a Fact Is Not Supported by Admissible Evidence*. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). "Rule 56(c)(2) allows a party to object to material cited in a summary judgment motion if it cannot be presented in a form that would be admissible in evidence." *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 362 F. Supp. 3d 226, 234 (D. Del. 2019). The 2010 Advisory Committee notes provides an explanation for the purpose of this subsection:

Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

FED. R. CIV. P. 56 advisory cmte. notes (2010).

### B. Discussion

Rockwell seeks to strike four exhibits that Defendant relies on in its motion for summary judgment briefing. The exhibits at issue are e-mails from various third parties. *See* D.I. 156-1 (Exhibit A); D.I. 156-2 (Exhibit B); D.I. 156-3 (Exhibit C); D.I. 156-4 (Exhibit D).

The Court agrees with Rockwell and finds that Exhibits A through D are hearsay. FED. R. EVID. 801(c). Rockwell argues that Exhibits A through D are hearsay because they are statements (i.e., an e-mail) by a declarant (i.e., the e-mail author) that is out-of-court (i.e., not made while testifying in this case) and "Defendant offers each exhibit to prove the truth of the matter asserted therein." D.I. 195 at 1. Defendant contends that Exhibits A through D are not hearsay because the exhibits are "offered against an opposing party and was made by the party: (i) 'in an individual or representative capacity' (Rule 801(d)(2)(A)); or (ii) 'was made by the party's agent or employee on a matter within the scope of that relationship and while it existed' ((Rule 801(d)(2)(D))." D.I. 211 at 1. This argument is unpersuasive. Other than attorney argument, Defendant has not provided specific facts or contracts specific to the third-parties at issue in Exhibits A through D that show these third-parties are in fact Rockwell's agents. *See generally id.* The Court also disagrees with Defendant that the exhibits at issue are not hearsay because they are "used to demonstrate the declarant's belief." D.I. 211 at 4. Rather, these exhibits are being used "to show what Defendant's customers 'know.'" D.I. 232 at 2 (citing D.I. 155 at 9 ("[Defendant's] customers

know"); *id.* at 2 ("buyers of industrial automation products know"); *id.* at 21 ("customers know"); D.I. 185 at 8 ("[Defendant's] customers know")). Lastly, the exhibits at issue are not admissible under any hearsay exceptions.

The Third Circuit has held that "[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009). Accordingly, because the Court finds that the Exhibits A through D are hearsay, they will be struck along with any accompanying briefing submitted by Defendant that relies on these exhibits.

## IV.    SUMMARY JUDGMENT MOTIONS

Pending before the Court are Rockwell's Motion for Summer Judgment on Rockwell's claims (Counts I, II, IV, and V) (D.I. 144) and Defendant's Motion for Summary Judgment on All Counts of Rockwell's Complaint (D. 153).[7]

### A. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* (citations omitted). "The burden on the moving party may be discharged by pointing out to the district court

---

[7] On July 7, 2023, the Court granted Defendant's Motion for Leave to File a Sur-Reply Brief in Opposition to Rockwell's Motion for Summary Judgment (D.I. 247) and Defendant's Motion for Leave to File Supplemental Briefing in Support of its Motion for Summary Judgment (D.1. 281). D.I. 301. The Court considered the relevant additional briefing when deciding the pending summary judgment motions.

that there is an absence of evidence supporting the non-moving party's case." *Peloton Interactive, Inc. v. iFIT Inc.*, C.A. No. 20-1535-RGA, 2022 WL 1523112, at \*1 (D. Del. May 13, 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## B. Discussion

### a. Count I – Federal Trademark Infringement (15 U.S.C. § 1114)

Both parties cross-move for summary judgment on the federal trademark infringement claim. D.I. 145; D.I. 154. For the reasons discussed below, the motions are denied.

"To establish trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, a plaintiff must prove that (1) the mark is valid and legally protectable, (2) it owns the mark, and (3) the defendant's use of the mark is likely to create confusion concerning the origin of goods or

services." *E.T. Browne Drug Co. v. Cococare Prod., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008) (citing *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 469-70 (3d Cir. 2005)). Here, Rockwell brings a gray market infringement claim. The treatise "Gilson on Trademarks" addresses the issues in gray market cases brought under the Lanham Act:

> Consumer confusion in gray market goods cases is somewhat different from the typical source confusion at issue in most trademark infringement cases. It is more like confusion as to sponsorship or affiliation. With gray market goods, consumers are generally aware of the original manufacturer or source of the goods. They are not, however, aware of the chain of distribution and are likely to believe incorrectly that the products they receive are authorized by the manufacturer to be sold to them. A determination of consumer confusion in gray market cases does not follow the standard multifactor test; instead, it asks whether the defendant's gray market good is materially different from the plaintiff's authentic good.

1A GILSON ON TRADEMARKS § 5.20 (2023).

The Third Circuit employs a "material differences" test: "The test for whether an alleged infringer's products are genuine asks whether there are 'material differences' between the products sold by the trademark owner and those sold by the alleged infringer." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302-03 (3d Cir. 1998) (citations omitted); *see also Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, C.A. No. 15-5246-RBK-JS, 2019 WL 7288946, at *5-8 (D.N.J. Dec. 30, 2019) (discussing the continued vitality of the *Iberia* material differences test). "The purpose of the material differences test is to determine whether the allegedly infringing products are likely to injure the goodwill developed by the trademark owner in the trademarked goods. When the products sold by the alleged infringer and the trademark owner contain identical marks but are materially different, consumers are likely to be confused about the quality and nature of the trademarked goods." *Iberia*, 150 F.3d at 303 (internal citations omitted). "In such circumstances, the alleged infringer's goods are considered 'non-genuine' and the sale of the goods constitutes infringement." *Id.*

19

At its crux, the parties dispute whether there is a material difference between Rockwell's products and the Rockwell products Defendant sells. This is a fact intensive inquiry, not suitable for resolution on a motion for summary judgment.

Rockwell argues there are several differences between the products it sells, and the Rockwell branded products Defendant sells, including that Defendant's Rockwell branded goods lack: (1) Rockwell's customer service; (2) Rockwell's post-manufacture quality control measures; (3) Rockwell's manufacturer's warranty; and (4) Rockwell's product safety and recall notices. *See, e.g.*, D.I. 145 at 9-13; D.I. 190 at 6-14; D.I. 222 at 2-6. Rockwell also submits survey evidence to establish that a material difference exists between the parties' products. *See* D.I. 163-1, Ex. A. Defendant argues that the Rockwell products that it sells are not materially different. *See, e.g.*, D.I. 155 at 5-9; D.I. 185 at 2-14; D.I. 228 at 108.[8]   For example, Defendant argues that it "not only provides the same 12-month full-refund warranty as Rockwell—[Defendant] also covers shipping costs." *Id.* at 5 (citation omitted).

Because there are disputed facts that both parties have asserted are material to their respective motions for summary judgment, the Court must deny the motions. *See Anderson*, 477 U.S. at 248. Accordingly, Rockwell's motion for summary judgment as to Count I is denied, and Defendant's motion for summary judgment as to Count I is also denied.

### b.  Count II – False Advertising (15 U.S.C. § 1125(a)(1)(B))

Both parties cross-move for summary judgment on the false advertising claim. D.I. 145; D.I. 154. For the reasons discussed below, the motions are denied.

"To establish a claim for false advertising, a Lanham Act plaintiff must prove five elements: 1) that the defendant has made false or misleading statements as to his own product [or

---

[8] In rendering its opinion, the Court did not rely on any of the struck exhibits and/or accompanying briefing. *Supra* Section III.

another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014) (citation omitted). "A plaintiff can prevail in a false advertising action if it proves that the advertisement 'is either (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers.'" *Id.* (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). "Proof of literal falsity relieves the plaintiff of its burden to prove actual consumer deception." *Id.*

The parties dispute whether Defendant has made a false or misleading statement when it advertised on its website that its Rockwell branded products are "New Factory Sealed – Original Product – 12 Months Warranty" and whether that statement mislead purchasers. Thus, genuine issues of material fact exist as to the false advertising claim. Accordingly, Rockwell's motion for summary judgment as to Count II is denied, and Defendant's motion for summary judgment as to Count II is also denied.

### c. Count III – False Designation of Origin (15 U.S.C. § 1125(a)(1)(A))

Defendant moves for summary judgment on the false designation of origin claim. D.I. 155 at 20-21. False designation of origin under 15 U.S.C. § 1125(a)(1)(A) imposes liability for the commercial use of "any word, term, name, symbol, or devise, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake." "'Federal trademark infringement, 15 U.S.C. § 1114(1)(a), and a false designation of origin claim, known more broadly as federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), are measured by identical

standards.'" *New Balance Athletics, Inc. v. USA New Bunren Int'l Co. Ltd. LLC*, 424 F. Supp. 3d 334, 346 (D. Del. 2019) (quoting *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 580 (E.D. Pa. 2002)). Because the Court denied Defendant's motion for summary judgment on its trademark infringement claim, Defendant's motion for summary judgment as to Count III (false designation of origin) also must be denied. *See id.*

### d. Count IV – Statutory Unfair Competition (6 Del. C. § 2532 *et seq.*)

Both parties cross-move for summary judgment on the statutory unfair competition claim. D.I. 145; D.I. 154. For the reasons discussed below, the motions are denied.

Rockwell alleges that Defendant's actions constitute unfair competition under Delaware's Deceptive Trade Practices Act ("DDPTA"). "Courts reviewing DDPTA violations apply the same standards as they apply to trademark infringement claims (i.e., valid and protectable mark, plaintiff owns mark, and likelihood of confusion)." *Mil. Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*, 251 F. Supp. 3d 750, 757 (D. Del. 2017) (citing *Keurig, Inc. v. Sturm Foods, Inc.*, C.A. No. 10-841-SLR, 2012 WL 4049799 (D. Del. 2012)).

Accordingly, because the Court denies the parties' cross-motion for summary judgment on the trademark infringement claim, Rockwell's motion for summary judgment as to Count IV is denied and Defendant's motion for summary judgment as to Count IV also is denied.

### e. Count V – Common Law Unfair Competition

Both parties cross-move for summary judgment on the common law unfair competition claim. D.I. 145; D.I. 154. For the reasons discussed below, the motions are denied.

Claims for common law unfair competition are governed by the same standards as trademark infringement claims. *Sanofi–Aventis v. Advancis Pharm., Corp.*, 453 F. Supp. 2d 834, 847 n.2 (D. Del. 2006) (citing *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 333 F.

Supp. 2d 239, 244 (D. Del. 2004), *aff'd*, 432 F.3d 463 (3d Cir. 2005); *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 473 (3d Cir. 1994)).

Accordingly, because the Court denies the parties' cross-motion for summary judgment on the trademark infringement claim, Rockwell's motion for summary judgment as to Count V is denied and Defendant's motion for summary judgment as to Count V also is denied.

### f.   Count VI – Unjust Enrichment

Defendant moves for summary judgment on Rockwell's unjust enrichment claim. D.I. 155 at 24. For the reasons discussed below, the Court grants Defendant's motion.

"Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (citation omitted). To prove unjust enrichment, the movant must show: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Id.* (citation omitted). The Court agrees with Defendant that Rockwell's multi-count Complaint (D.I. 1) demonstrates that there is an adequate remedy of law. "The trademark claims, if proven, provide for an adequate remedy at law. If the trademark claims are unproven, then Defendant[] have done nothing wrong." *Javo Beverage Co., Inc. v. Javy Coffee Co.*, C.A. No. 22-547-RGA, 2023 WL 387587, at *3 (D. Del. Jan. 25, 2023) (granting motion to dismiss the unjust enrichment claim).

Thus, the Court grants Defendant's motion for summary judgment on Count VI.

## V.   DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

In light of the parties' pending summary judgment motions (D.I. 144; D.I. 153), which substantially overlap with the arguments in Defendant's Motion for Judgment on the Pleadings

(D.I. 42), the Court will deny as moot Defendant's Motion for Judgment on the Pleadings (D.I. 42).

## VI.    CONCLUSION

For the foregoing reasons, the Court denies as moot Defendant's Motion for Judgment on the Pleadings (D.I. 42), denies Rockwell's motion for summary judgment on Counts I, II, IV, and V (D.I. 144), grants-in-part and denies-in-part Defendant's motion for summary judgment on all counts of Rockwell's Complaint (D.I. 153), grants Rockwell's motion to exclude the opinions of Defendant's expert Justin Blok (D.I. 149), denies Defendant's motion to exclude the expert testimony of Brett Reed (D.I. 158), denies Defendant's motion to exclude the expert testimony of David Franklyn (D.I. 161), and grants Rockwell's motion to strike part of Defendant's motion for summary judgment (D.I. 194).

\*\*\*

WHEREFORE, on this 12th day of July, 2023, IT IS HEREBY ORDERED that:

1. Defendant's Motion for Judgment on the Pleadings (D.I. 42) is **DENIED AS MOOT**.

2. Rockwell's Motion for Summary Judgment on Counts I, II, IV, and V (D.I. 144) is **DENIED**.

3. Defendant's Motion for Summary Judgment on All Counts of Rockwell's Complaint (D.I. 153) is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth herein.

4. Rockwell's Motion to Exclude the opinions of Defendant's Expert Justin Blok (D.I. 149) is **GRANTED**.  Mr. Blok is prohibited from testifying to matters related to ¶¶ 16, 29-31, 34-36, 41-47, and Exhibit 4 of his report (D.I. 151-1, Ex. 1).

5. Defendant's Motion to Exclude the Expert Testimony of Brett Reed (D.I. 158) is **DENIED**.

6. Defendant's Motion to Exclude the Expert Testimony of David Franklyn (D.I. 161) is **DENIED**.

7. Rockwell's Motion to Strike Part of Defendant's Motion for Summary Judgment (D.I. 194) is **GRANTED**. The following materials are struck: (1) Defendant's Exhibits A, B, C, and D to the Kasolas Declaration (D.I. 156-1, 156-2, 156-3, and 156-4) submitted in support of Defendant's Motion for Summary Judgment (D.I. 153); (2) Defendant's Statement of Material Facts (D.I. 154) ¶¶ 1-3, 7-8, and 47 as highlighted in Rockwell's Exhibit 5 (D.I. 195-1) to its motion to strike; (3) Defendant's opening brief in support of its Motion for Summary Judgment (D.I. 155) at pages 1-2, 5-6, 9, 14-15, and 21, as highlighted in Rockwell's Exhibit 6 (D.I. 195-1) to its motion to strike; and (4) Defendant's Answering Brief in Opposition to Rockwell's Motion for Summary Judgment (D.I. 185) at pages 1, 5, and 8.

8. Because this Memorandum Order is filed under seal, the parties shall meet and confer and submit a joint proposed redacted version no later than seven (7) days after the date of this Memorandum Order. In the absence of a timely request compliant with applicable standards, the Court will unseal the entire Memorandum Order.


GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE