1

2                    IN THE UNITED STATES DISTRICT COURT

3                    IN AND FOR THE DISTRICT OF DELAWARE

4    ROCKWELL AUTOMATION, INC.,              )
                                             )
5               Plaintiff,                   )   C.A. No.
     v.                                      )   21-1238-GBW-JLH
6                                            )
     PARCOP S.R.L. d/b/a WIAUTOMATION,       )
7                                            )
                Defendant.                   )
8

9
                              -  -  -  -
10
                           Wilmington, Delaware
11                         Thursday, July 13, 2023
                           *Pretrial Conference*
12
                           -  -  -  -
13

14
       BEFORE:  HONORABLE GREGORY B. WILLIAMS
15               UNITED STATES DISTRICT COURT JUDGE

16
                           -  -  -  -
17

18

19

20

21

22

23

24

25
                              Michele L. Rolfe, RPR, CRR

1

APPEARANCES:

2

3                          SHAW KELLER LLP
                           BY:   JOHN W. SHAW, ESQ.
                                 ANDREW E. RUSSELL, ESQ.

4

5                                -and-

6                          HEYMAN ENERIO GATTUSO & HIRZEL LLP
                           BY: DOMINICK T. GATTUSO, ESQ.

7                                -and-

8                          ALSTON & BIRD LLP
                           BY: PAUL TANCK, ESQ.

9                                NEAL J. MCLAUGHLIN, ESQ.
                                 CHRISTOPHER L. MCARDLE, ESQ.

10

11                            For the Plaintiff

12                         YOUNG CONAWAY STARGATT & TAYLOR, LLP
                           BY: PILAR G. KRAMAN, ESQ.

13                               ALEXIS N. STOMBAUGH, ESQ.
                                 MALIHEH ZARE, ESQ.

14

15                               -and-

16                         BRACH EICHLER, LLC
                           BY:  BOB KASOLAS, ESQ.

17                               ERIC J. BODEN, ESQ.

18                            For the Defendant

19

20

21

22

23

24

25

```
 1                        - - - - -

 2                  P R O C E E D I N G S

 3             (REPORTER'S NOTE:  The following pretrial conference

 4     was held in Courtroom 6B, beginning at 3:00 p.m.)

 5             THE COURT:  Good afternoon.  You may be seated.

 6             All right.  We're here this afternoon for the

 7     final pretrial conference in Rockwell Automation Inc. versus

 8     Parcop S.L.R. d/b/a as WiAutomation.  Civil Action No.

 9     21-1238.

10             Let's start by having counsel put the

11     appearances on the record.  Start with plaintiff.

12             MR. SHAW:  Good afternoon, Your Honor.  John

13     Shaw from Shaw Keller for the plaintiff.  Joining me from

14     Alston & Bird Chris McArdle, Paul Tanck, Neal McLaughlin.

15     My partner, Andrew Russell.  And Dominic Gattuso from Heyman

16     Enerio, Gattuso.

17             THE COURT:  All right.  Thank you.

18             MS. KRAMAN:  Good afternoon, Your Honor.  Pilar

19     Kraman from Young Conway for the defendant.  And with me

20     from Young Conaway is Alex Stombaugh, Maliheh Zare and Phil

21     Han.  And then at counsel table is Bob Kasolas and Eric

22     Boden from Brach Eichler.

23             And in the gallery are our summer associates

24     that are joining us.

25             THE COURT:  All right.  Welcome.
```

```
 1              MS. KRAMAN:  And I wanted to alert Your Honor to

 2    two resolutions that we've had in -- there's a dispute in

 3    the pretrial order:  Paragraph 71 and 72 related to the

 4    discovery, reading discovery into the record.

 5              THE COURT:  Yes.

 6              MS. KRAMAN:  And we've agreed --

 7              THE COURT:  You've resolved it.

 8              MS. KRAMAN:  We're going to work that out.

 9              THE COURT:  Okay.  All right.

10              MS. KRAMAN:  And then for the voir dire,

11    Rockwell has withdrawn its objection to our proposed

12    question 18.

13              THE COURT:  Okay.  We'll get to that.

14              All right.  Welcome, summer associates.  Glad to

15    see you all.

16              Before I get into the pretrial order, let me

17    disclose that Mr. Shaw's partner, Karen Keller, is a Special

18    Master for the Court in two cases that I have.  I don't --

19    she doesn't communicate, she has not to date communicated

20    directly with me on any matters.  She's just she is

21    resolving discovery disputes, but I just wanted to disclose

22    that to make sure we're all on the same page.

23              Turning to -- let's first go over the proposed

24    pretrial order, resolve the disputes therein, remaining

25    disputes therein.
```

1          And the first that I saw was in paragraph 1.

2     The Court is going to include the proposal from Rockwell,

3     that includes counterfeiting.   The statute itself includes

4     the allegations of trademark counterfeiting when you assert

5     a trademark infringement claim, so I wasn't sure why

6     WiAutomation opposed the phrase "including counterfeiting."

7          MR. KASOLAS:  May I address, Your Honor?

8          THE COURT:  Yes.

9          MR. KASOLAS:  Thank you, Judge.  Pleasure to

10    appear before the Court.   Thank you for having us in today.

11    Bob Kasolas, K-A-S-O-L-A-S.

12         Judge, we opposed any preference to

13    "counterfeiting" because they haven't alleged a

14    counterfeiting claim.

15         For starters they don't have any discrete count

16    set forth in the complaint for counterfeiting.   They

17    material references, trademark infringement.   They have

18    false designation of origin.   They have unjust enrichment,

19    which Your Honor dismissed.   They have false designation of

20    origin, but they never set forth a claim in the complaint

21    for trademark counterfeiting.

22         The complaint describes the case in paragraph

23    2-4 as a case of gray market goods.   It doesn't say anything

24    about counterfeiting.   And it goes on to talk about that

25    somehow my client engages in the unlawful sale and

1   distribution within the U.S. of unauthorized gray market

2   Rockwell products, which are materially different from those

3   sold by Rockwell and authorized distributors in the United

4   States.  They don't talk about any counterfeiting in the

5   complaint.

6           They repeat that in paragraph 4.  If you look at

7   the complaint overall, they dedicate 24 out of 32 pages of

8   factual allegations in the complaint to describe alleged

9   material differences, but there's nothing in the complaint

10  that talks about any type of counterfeiting, that we're

11  somehow knocking off their products or making products that

12  are similar to theirs to deceive the public, but putting

13  their insignia on the product.  That appears nowhere in

14  here.

15          Even if you look at material difference they

16  described from complaint 55 to about 140, it's all about

17  gray market material differences.  There's no reference to

18  counterfeiting.

19          They do sprinkle a term in, I'll acknowledge

20  that they do sprinkle a term of "counterfeiting" here and

21  there in four particular paragraphs 56, 58, 136 and 146, but

22  they never allege a district trademark infringement claim

23  based on counterfeiting.  There's no detail of any kind that

24  would survive a Rule 12(b)(6) motion or 12(c) motion

25  satisfying *Twombly*.  They don't state what specifically my

1    client somehow did that were counterfeiting goods.

2              It's all gray market items.  And even if you

3    look at, for example, the discovery in the case,

4    Interrogatory No. 3 asked them to describe the nature of the

5    damages they had in the case.  And they didn't provide any

6    notice to us of any statutory or treble damage relief they

7    are seeking pursuant to 15 U.S.C. 1117(b) or 1117(c), which

8    are the counterfeiting damages components of the statute.

9    The counterfeiting reveals separate and distinct remedies

10   and relief than traditional trade market infringement or

11   gray market goods infringement.

12             And if you look at the prayer for relief in the

13   complaint, they don't cite either of those subsections,

14   which pertain to counterfeiting.  They just state that they

15   seek treble damages, compensatory damages, punitives, an

16   award of relief, profits, attorney fees, pre-judgment and

17   post-judgment interest, and any other relief the Court deems

18   just and equitable.

19             But when it comes to the State statute at 6

20   Del.C 2532, they specifically cite the provision for treble

21   damages.  So it's clear from just that section they never

22   asserted any counterfeiting damages sought in the case.

23             Second, if you look at what I think is the most

24   persuasive, Interrogatory No. 19, we asked them to tell us

25   all facts supporting Rockwell's trademark infringement claim

and Rockwell did not put my client on notice of any specific facts that suggest that the existence of any trademark -- sorry, counterfeiting allegations in that section of the responses.  The response exclusively stated -- and it's on the docket -- that facts supporting its infringement claim that WiAutomation sold materially different products by virtue of being resold and locking nonphysical customer benefits bearing Rockwell's trademarks.  Then they go on to state that the grounds for infringement is that WiAutomation resold Rockwell products bearing Rockwell's trademarks and locking Rockwell warranty and other tangible customer benefits.

Then they go on to say the actions of such customer benefits rendered the products that my client resold into the stream of commerce to be gray market goods.

So there's nowhere in these damages descriptions or interrogatories where they come out and say here's our basis for some kind of counterfeiting claim.  And even Interrogatory 14 they said that the product was materially different, but bore a counterfeit label.  And there was a factory seal label that was counterfeit, but they don't say the product is counterfeit.  They say it's a gray market good that has labels changed that would indicate would be a Rockwell product, but that's all in one sentence.  That's separate and distinct from coming down first time ever on

1    summary judgment in March of this year and making a claim

2    that somehow they have a counterfeiting claim.  And how this

3    evolved during this case was they went from gray market

4    goods summary to on summary judgment for the first time ever

5    claiming the products themselves, the products themselves

6    are somehow counterfeit.  Not that a label was counterfeit

7    by the gray market product, not that a label was somehow

8    counterfeit on a box that ships, but the product itself is

9    counterfeit and a -- that my client may have somehow taken a

10   Rockwell mark and superimposed it on a product that is a

11   knockoff Rockwell product.  That's what counterfeiting is.

12            And they've never made any allegation, any kind

13   of disclosure, any kind of pleading detailed allegation

14   anywhere in the interrogatories or document demands that

15   says they are looking for a counterfeiting claim.

16            Even their expert David Franklyn that did the

17   survey nothing appears anywhere in that man's expert report

18   about counterfeiting, it's all about gray market goods.

19            So, I mean, I could go on more and more, but you

20   don't see anything about a counterfeiting claim until

21   summary judgment as to the product itself, and until they

22   submit final jury instructions to Your Honor for jury

23   charges, statements of issue and proposed intended proofs.

24            So, I mean, I'm happy to go into a little

25   further detail, but they've never asserted counterfeiting in

1    this case for anything.  The first time we saw it was on

2    summary judgment.  And I don't think going about discovery

3    the way they did somehow gives them any right to come in now

4    and assert that there should be a jury charge for

5    counterfeiting.  They never pled that type of a claim ever,

6    Your Honor.

7                    THE COURT:  Okay.  Let me hear from Rockwell.

8                    MR. SHAW:  Your Honor, John Shaw for Rockwell.

9                    Let me start at the complaint, Count 1 paragraph

10   146.  Count 1 entitled:  *Trademark Infringement,* paragraph

11   146 specifically says:  "WiAutomation's unauthorized use of

12   plaintiff's trademarks constitutes use in commerce, without

13   the consent of Rockwell, of a reproduction, counterfeit,

14   copy..."  and so on and so forth.  So that first starts

15   right in the complaint.

16                   During the discovery, there were sales of

17   counterfeit products that were discovered that's been long

18   known by WiAutomation, sales by WiAutomation of counterfeit

19   products; at least that's our contention, I know they are

20   disputing it.

21                   I heard reference just now that Dr. Franklyn's

22   report no expert -- I'm sorry, that the experts didn't

23   address counterfeiting, actually that's not correct.

24   Mr. Reed, the damages expert, mentions counterfeiting in his

25   expert report, although that's certainly not the focus of it

1    or need it be for his analysis.

2              Then last there was reference to not being a

3    cause of action.  In the jury instruction support that was

4    submitted there are two cases cited in the footnote that

5    addresses that specific point that counterfeiting is not a

6    separate cause of action under the Trademark Statute, it's

7    part of the regular trademark claim.

8              THE COURT:  Okay.

9              All right.  There is case law in the Third

10   Circuit that states that the elements of a trademark

11   counterfeiting claim are identical to the elements of a

12   trademark infringement claim.  And given the cites that

13   Rockwell has made to the complaint, other things in the

14   record, the Court is going to include the including

15   counterfeiting language proposed in paragraph 1 of the

16   pretrial order.

17             If, during the trial, there's no evidence of

18   counterfeiting such that it's not appropriate to be in the

19   final jury instructions, we can revisit it at that time.

20             Moving on to the next dispute, paragraph 33,

21   wherein WiAutomation proposes to include language as the

22   second sentence there, the Court is going to include that

23   language.

24             MR. SHAW:  Your Honor, I have just a question

25   about the language.

```
 1                    THE COURT:  Yes.
 2                    MR. SHAW:  The only reason we didn't agree to it
 3      is it seemed in part to conflict with -- I forget the
 4      paragraph number, but I think it's 38.  There's a provision
 5      where the parties will identify who they were calling at
 6      trial and we were only concerned that this is somehow a
 7      caveat that says parties are going to identify a person X is
 8      coming to trial and then tell us well, we don't have power
 9      to do so later.  I don't think that's what would happen
10      here, but that was the only hesitation about just agreeing
11      to the paragraph.
12                    And, Your Honor, I just --
13                    THE COURT:  Right.
14                    MR. SHAW:  I don't think it's a concern based on
15      what Mr. Kasolas just nodded to me when I asked if that was
16      a concern.
17                    THE COURT:  Okay.
18                    All right.  So we'll include the language.
19                    Paragraph 36 is the next provision that's in
20      dispute; and, again, it's the second sentence.  And Rockwell
21      makes a proposal to which WiAutomation objects.  The Court
22      is going to include that sentence, which is consistent with
23      the Court's practice.
24                    Next dispute that the Court sees appears in
25      paragraph 62 of the pretrial order, which deals with
```

1    exhibits.  Rockwell proposes to include Rule 1006 exhibits,

2    within that first sentence paragraph 62 within -- and the

3    Court will include Rockwell's proposal, with the caveat that

4    Rule 1006 exhibits have to be produced to the other side

5    before they are used.  Any Rule 1006 exhibit should be

6    produced consistent with the time exchanged that's set forth

7    in paragraph 66, which is one calendar day before its

8    intended use.

9              And any disputes, objections need to be brought

10   to the Court's attention that following morning before the

11   exhibit is used.  And we can resolve any disputes then

12   consistent with the Court's procedure for resolving

13   disputes, objections prior to the admission of any disputed

14   exhibits, demonstratives, testimony or witnesses.

15             Next dispute the Court sees is -- well, you've

16   told me that you worked those out on paragraph 71 and 72.

17             So the next on the list that remains to be

18   resolved is the Court will accept the parties' proposal in

19   paragraph 90.  So with respect to the fact that this is a

20   timed trial, which is scheduled for a five-day jury trial,

21   and the parties each will be granted 11 hours per side for

22   their trial presentation.

23             In paragraph 91, the only change will be instead

24   of 8:45 a.m., it will be 9:00 a.m.; that will take up issues

25   that need to be addressed outside of the presence of the

1    jury, which will be 9:00 p.m., at lunch or at the end of the

2    trial day.

3            Next dispute is in paragraph 93, there is a

4    dispute concerning whether or not the juror notebooks would

5    include photos of witnesses.  Typically if the parties agree

6    to including photos of witnesses in the juror notebooks, the

7    Court allows it.  But here WiAutomation objects to the

8    inclusion of witness's photos in the juror notebooks, so

9    given that both sides don't agree, we won't include the

10   photos in the juror notebooks.

11           Paragraph 97, the parties' request that the

12   Court grant them access to the courtroom at a reasonable

13   time prior to the commencement of the jury trial to allow

14   the parties to set up.  Have the parties reached out to

15   chambers regarding that request?

16           MR. SHAW:  We have, Your Honor.  And I

17   understand we have a time, the Friday before.

18           THE COURT:  All right.  Paragraph 101, Rockwell

19   had asked the Court regarding about its pending motion to

20   amend the scheduling order to supplement the discovery

21   record to include recent counterfeit sales by defendant.

22   The Court granted that motion on July the 7th.

23           Paragraph 102, the parties informed the Court

24   that they would confer to agree on the retention of an

25   independent interpreter to translate in realtime at trial

1   between English and Italian for any witness that speaks

2   Italian, but not English.

3              Have the parties conferred and agreed upon that

4   interpreter?

5              MS. KRAMAN:  Your Honor, we've provided -- we've

6   retained an interpreter from TransPerfect, right.  And we've

7   provided the name of that interpreter just today, so we

8   haven't quite conferred about it, but I'm sure we'll be able

9   to work it out.

10             THE COURT:  Okay.  All right.

11             MR. SHAW:  A logistics matter, Your Honor, with

12  an interpreter, I think we need to have some kind of table

13  or location for them to sit.

14             THE COURT:  Yes.  So if it's -- if it's just one

15  interpreter, then the interpreter will -- will you have --

16  will both sides have electronic presentations people, tables

17  for that?

18             MR. SHAW:  We will.  Would you like us to bring

19  a third?

20             THE COURT:  Yes.  There should be a place for

21  the interpreter.  And I'll let you guys kind of work when

22  you come to set up to figure out what's the best place so

23  that he or she can do their job without unnecessarily

24  obstructing something that the Court or the jury needs to

25  see.

1          With respect to paragraphs 103 and 104

2     concerning verdict forms and parties' competing verdict

3     forms.  The Court will hold a charge conference with the

4     parties on the second to the last day of the jury trial to

5     resolve any disputes regarding the final jury instructions

6     and the verdict sheet.

7          Prior to the charge conference, as is common,

8     the parties will, I'm sure, make some proposed revisions to

9     their proposed final jury instructions and possibly verdict

10    sheet.  So as those things happen, the Court will track it,

11    but once we get to the final charge conference, the parties

12    will have the opportunity to formally object to the final

13    jury instructions and verdict sheet and be heard on those

14    issues, and the Court will resolve those during the charge

15    conference.

16         The Court reminds the parties to familiarize

17    themselves with the Court's trial procedures, which are on

18    the Court's -- on my page on the website.  The Court wants

19    to bring to counsel's attention the request from the Court

20    for the parties to pay for and coordinate ordering and

21    delivering jury lunches and snacks during trial.

22         The Court's dispute resolution and objection

23    resolutions, which I referenced earlier, are included in

24    that.

25         Also, the Court requests the parties to

1    deduplicate the -- to compile a joint exhibit list, as much

2    as possible, and to deduplicate exhibits on the joint

3    exhibit list and consistently paginate the exhibits on the

4    joint exhibit list, and refer to that joint pagination when

5    possible.

6              The Court also reminds the parties that at least

7    three business days before the start of the jury trial, the

8    parties shall e-mail to the court reporter in chambers a

9    glossary of terms and names, a list of possible witnesses

10   who may appear at trial, and a list of phonetic

11   pronunciation of the attorneys and witness's names that are

12   included in the preliminary jury instructions and voir dire.

13             With respect to the rulings that have been made

14   with respect to the final purposed -- the purposed final

15   pretrial order, the Court instructs the parties to file a

16   revised proposed pretrial order consistent with my rulings

17   today by 5:00 p.m. on July 19th.

18             All right.  Let's turn to the voir dire.  First

19   going to third paragraph on page 1:  "If any of you answer

20   "yes" to any of the questions I ask, please raise your jury

21   number and then circle the question to which you have

22   answered "yes"."

23             We're going to delete "hand" and "when

24   recognized by me, please stand, state your name and your

25   juror number," we're going to delete that.

```
 1                    Going on at page 2, continuing in that

 2      paragraph:  "Seats in the jury box and after that the

 3      lawyers and I may ask those of you who answered "yes" to one

 4      or more questions to come..."  and then we're going to say

 5      "back to the jury room" and delete "up to the bench" "...to

 6      discuss your answers with the lawyers and me."

 7                    We take the folks back to the juror room with

 8      counsel.

 9                    In the next paragraph, where it says "a lunch

10      break of..." and we're going to "about" "...45 minutes."

11                    We will include questions 1-17.

12                    We're going to add and include question 18 given

13      the parties' agreement.

14                    We're going to not include the proposals for 19

15      and 20.

16                    So we will pick up with the question that is

17      currently labeled "Question No. 21:  Do you have any

18      opinions about trademarks, intellectual property or the

19      United States Patent and Trademark Office that might make it

20      difficult for you to be a fair and impartial juror in this

21      trial?"

22                    And we'll also include all of the remaining

23      questions after that.

24                    That deals with the voir dire.

25                    Moving on to the preliminary jury instructions.
```

1   There were no disputes in those.  There was just a minor

2   typo on page 4, which we corrected.  There's an extra "the"

3   that we deleted.  Other than that, they are verbatim.

4              Let's go off the record.

5              (Discussion held off the record.)

6              THE COURT:  The Court entered the order

7   resolving the motions in limine, so those have been taken

8   care of.

9              So that's all I have on my agenda.  Anything

10  else from the parties?

11             MR. KASOLAS:  Yes, Your Honor.

12             If plaintiff wants to go first, we have two or

13  three items I'd like to raise with the Court.

14             THE COURT:  Anything from the plaintiff?

15             MR. SHAW:  I have some procedural questions,

16  Your Honor, that people ask me before trials, but I haven't

17  been in a trial before you so I thought I'd ask.

18             THE COURT:  Okay.

19             MR. SHAW:  First on objections do you prefer

20  one word, a rule number or do you have a preference in terms

21  of how they are made?

22             THE COURT:  I want you to state the objection

23  and the basis for your objection, yes.

24             MR. SHAW:  Okay.  For the charge conference, is

25  there a deadline that you want us to get revised

1    instructions and verdict form to you?  I think we can make

2    progress and narrow these disputes down.

3                    THE COURT:  Yes.  Let's have them at least

4    48 hours prior the charge conference.

5                    MR. SHAW:  I accidentally got caught in this

6    once:  In terms of sequestration, we've all agreed on it,

7    does that apply during opening statements?  Traditionally I

8    think the answer has been no, but some Judge's say yes, so I

9    wanted to ask that so we don't get caught off-guard.

10                   THE COURT:  Since you agreed on sequestration,

11   have you agreed as to whether or not -- let me, do you have

12   any strong thoughts one way or the other?

13                   MR. KASOLAS:  I haven't thought about it, Judge,

14   to be honest.  He's just raising the issue.

15                   THE COURT:  So why don't you guys confer about

16   that, and if you reach agreement, great, if not then I'll

17   decide.

18                   MR. SHAW:  Thank you, Your Honor.  I apologize

19   for not raising it before, it was an issue that popped up

20   this week so I wrote it in my book to ask in a different

21   trial.

22                   THE COURT:  Okay.

23                   MR. SHAW:  Last one I have, I wanted to see if

24   Your Honor would permit us to put a very small monitor on

25   the floor in front of the jury box so that during openings

```
 1    and witness examinations -- it's quite hard to see this one

 2    down here on the screen.  The person examining witnesses or

 3    giving openings and closings can actually see what's being

 4    displayed to the jury without constantly turning.  We've

 5    done it in other trials, it would be very small, it would be

 6    up against the box, it wouldn't impede anyone.

 7              THE COURT:  So the jurors can't see it?

 8              MR. SHAW:  The jurors can't see it, but it would

 9    only display the same things in on the room.  I understand

10    they don't agree to that.

11              MS. KRAMAN:  That's not what was conveyed to us,

12    it was to put something in front to show to the jury.

13              MR. SHAW:  Oh, that's different.

14              MS. KRAMAN:  That was different, yeah.  So why

15    don't we discuss.

16              MR. SHAW:  All right.  So we may resolve that as

17    well.

18              THE COURT:  Okay.  All right.

19              MR. KASOLAS:  There's one very paramount issue

20    that is not from anyone's fault, but the Supreme Court

21    rendered a decision that has a major impact on this case

22    after all the motions were filed in this matter.  We filed

23    the notice of subsequent authority to bring to the Court's

24    attention, and that's the *Hetronic* case.  And the *Hetronic*

25    case -- and the Supreme Court held that 15 U.S.C. 1141(a)
```

| | |
|---|---|
| 1 | and 1125(a)(1) of the Lanham Act:  "Are not extraterritorial |
| 2 | in that they extend only to claims where the claimed |
| 3 | infringing use in commerce is domestic." |
| 4 | Now, why is this important here?  We anticipate |
| 5 | that Rockwell is going to try and introduce some witnesses, |
| 6 | and in particular Mr. Ryan Smaglik to talk about or testify |
| 7 | about alleged conduct that my client engaged in Europe, |
| 8 | Italy, Switzerland, England and they cannot introduce any of |
| 9 | that evidence and try and prove an Lanham Act claim based on |
| 10 | the Supreme Court's holding in *Hetronic.*  It's a very |
| 11 | black-and-white decision. |
| 12 | So Your Honor addressed the motion in limine |
| 13 | earlier today regarding what Mr. Smaglik may or may not |
| 14 | testify to, and I think any type -- not just for the purpose |
| 15 | of that motion, but anything Mr. Smaglik tries to testify to |
| 16 | in this case about alleged foreign activity by my client or |
| 17 | alleged foreign infringing sales, I think is off limits at |
| 18 | this point based on this case that came down by the Supreme |
| 19 | Court. |
| 20 | So that's one issue I wanted to raise with Your |
| 21 | Honor and see how you'd like to handle it.  We can handle it |
| 22 | during trial, we can handle it during pretrial. |
| 23 | The second issue is that the *Hetronic* I believe |
| 24 | has major impact on the financial damages expert that |
| 25 | Rockwell is calling, Mr. Brett Reed.  Mr. Reed's |

1    calculations of damages involve taking my client's global

2    worldwide sales and applying a formula against it to

3    calculate what the American sales may be here in the United

4    States.

5              I believe the *Hetronic* case precludes Mr. Reed

6    from doing so, but what Rockwell has done essentially now

7    they are going to use overseas sales of alleged infringing

8    conduct, which is prohibited by the Supreme Court decision

9    in *Hetronic,* to try and calculate my client's alleged sales

10   in America.  And I don't think they can do that anymore at

11   this point based on a holding by the Supreme Court.  So

12   that's a very barebones framework of what I believe the

13   Supreme Court case has done to this particular matter.  And

14   it's going to come up over and over and over again based on

15   Mr. Smaglik's certification, based on the allegations made

16   in the complaint, based on what we know they are going to

17   try to introduce at trial, including the amendment of the

18   scheduling order where they have these alleged sales to this

19   company in Switzerland, Syntegon.  But I already know

20   Mr. Smaglik is going to try and come into court and say

21   well, we know you guys are committing trademark infringement

22   under the Lanham Act, even though it doesn't involve

23   domestic sales because of this Syntegon stuff here in

24   Switzerland.  So it's got a profound impact on this case

25   going forward, both in terms of what witnesses may testify

1   to, what type of evidence may be presented to the Court with

2   respect to the Lanham Act claims, and also Mr. Reed's expert

3   opinion that he intends to introduce at the time of trial.

4                THE COURT:  Okay.  Let me hear from Rockwell.

5                MR. SHAW:  Your Honor, I hope I can make this

6   simple for you.  We're not claiming and haven't claimed

7   damages from overseas sales; it's very clear, we won't be

8   doing that.

9                Second, there is potential relevance of overseas

10   activities, but we're not seeking damages for those.  And

11   I'll tell you what the relevance is and the trial will

12   develop how that comes about in much more clarity, but in

13   short, beyond the sales in the United States, there have

14   been numerous instances overseas, including the recent

15   Syntegon counterfeit sales where WiAutomation has shipped

16   products that are either gray market or counterfeit.  And

17   the agreed fact No. 7 in the pretrial order, which is

18   Exhibit No. 1 states:  "WiAutomation fulfills orders for

19   Rockwell-branded products in the same manner, from the same

20   inventory regardless of where they are shipped to."

21                What the implication of that is their shipment

22   source, which is shipping counterfeit overseas, all the

23   other sales that they've admitted to in the U.S. are coming

24   from that same source and that makes some information, we

25   don't want to belabor the oversees, certainly United States

1    is the case, but it does make the fact that overseas sales,

2    which we have evidence of being counterfeit, relevant in the

3    case and probative of the jury of what they are doing in

4    terms of their overall business and what they are shipping

5    into the United States.

6              THE COURT:  Okay.

7              MR. KASOLAS:  May I, Your Honor?

8              THE COURT:  Yes.

9              MR. KASOLAS:  The argument counsel just made is

10   old law; that was what the law was prior to this decision.

11   He can't come in here now and say well, it's the same

12   inventory in Europe so, therefore, we're going to somehow

13   implicate European sales into our facts presented at trial

14   or our damages calculation.  The activity has to be

15   domestic; sales in the United States.  Any activity from

16   overseas is barred by this case.

17              I'll read from the case directly a couple of

18   what I think are key points here.  On page 10 of the

19   decision, in section 3, prior to the A section, the Courts

20   says:  Apply to the Lanham Act the upshot of this focus-only

21   standard is that any claim involving a likelihood of

22   confusion in the United States would be domestic"

23   application of the Act.  This approach is wrong in terms of

24   how things used to be done.  And it would give the Lanham

25   Act an attainable broader reach that undermines our

1   extraterritoriality framework."

2           The Court goes on in the same page in Section A:

3   "When a claim involves both domestic and foreign activity,

4   the question is whether the conduct relevant to the statutes

5   focus occurred in the United States."

6           And it goes on to state again:  "But if the

7   conduct relevant to the focus occurred in a foreign country,

8   then the case involves a impermissible extraterritorial

9   application regardless of any other conduct that occurred in

10  the U.S. territory."

11          I can go on and on, but this notion they are

12  somehow going to draw anything from Europe at this point to

13  try and get evidence in this case of alleged Lanham Act

14  infringement in the United States, those days are over based

15  on this case.

16          THE COURT:  Okay.

17          MR. KASOLAS:  Thank you, Judge.

18          THE COURT:  Let me ask, so I heard Mr. Kasolas

19  to say that WiAutomation submitted a notice of subsequent

20  authority.  Did Rockwell respond to that?

21          MR. SHAW:  We did, Your Honor, with trepidation

22  that it may not have been permitted by the rules, but we

23  did.

24          THE COURT:  Okay.  All right.  So I will --

25  let's take a 10-minute break.  I'll take a look at that and

1    come back and we can talk about this.

2              MR. KASOLAS:  Thank you, Your Honor.

3              (Break taken.)

4              THE COURT:  So this is what we're going to do.

5    Mr. Kasolas, I have taken a look at this *Hetronic* case, and

6    I'm not sure it goes as far as you believe it goes, but I'm

7    going to allow the parties to, given that the Court has read

8    this quickly and that the Court isn't aware of everything

9    that is out there that may help on the issue, I did see

10   that -- in the *Hetronic* case, the damages that were awarded

11   were in large part based on foreign sales.  And so the

12   difference here is that they are not seeking damages for

13   foreign sales, and they're saying that they want to just use

14   the evidence for the limited purpose of showing that the

15   inventory that's used to fulfill foreign sales is the same

16   as the inventory used to fulfill United States sales, and

17   that's probative of the quality of the goods.

18             So I'm not sure the case went as far as you

19   believe, but I'm going to give you -- I'm going to give the

20   parties the opportunity to submit additional briefing on an

21   expedited basis.  So on this issue, briefing of no more than

22   five pages with WiAutomation's being due by 5:00 p.m.

23   tomorrow and then Rockwell's response being due by 5:00 p.m.

24   on Monday.  And the Court will review the parties'

25   submissions and make the ruling with respect to that issue.

```
 1                    All right.  Anything else?
 2                    MR. KASOLAS:  A couple of things, Your Honor,
 3       I'm sorry.
 4                    THE COURT:  All right.
 5                    MR. KASOLAS:  One issue that's come up in the
 6       pretrial back-and-forth is there's an authorized distributor
 7       documents which are in foreign languages, in particular
 8       Italian, so -- there are on both sides' exhibit list.
 9       Rockwell was adamant that my client translate the document
10       into Italian -- into English, I'm sorry.  I think we have an
11       agreement to work that out; am I wrong, counsel?
12                    MR. SHAW:  I don't think there will be any
13       translation document issues.  Close to getting them all
14       done.
15                    MR. KASOLAS:  Okay.  That's one issue, Your
16       Honor.
17                    The other issue with respect to translation, is
18       there are groups of invoices, which are each -- they are an
19       exhibit, an invoice in particular authorized distributor
20       whether it's a sale to them or a sale to them from us, and
21       those are in foreign languages as well.  And Rockwell is
22       taking the position that we have to translate every single
23       one of those invoices into English.
24                    So, for example, there's one supplier called BSA
25       Technology, and we took all those invoices pertaining to
```

1    their sales and us, BSA is an authorized distributor, took

2    all their invoices, their sale to us is one exhibit, we said

3    we'll do a template, we'll translate one of those invoices

4    because they are pretty much the same except for different

5    dates and numbers, and we'll use that to allow the Court and

6    the jury to see what those invoices state in English as a

7    translation.  They don't want to do that.  They want us to

8    incur really extreme costs to translate every single invoice

9    in that particular exhibit, whether it is from BSA

10   Technology or RA Control who bought from us, or RS

11   Components, all from a Rockwell authorized distributors.

12   And we just want to use the documents to show that they sold

13   to us genuine Rockwell products that we then resold and that

14   we sold Rockwell products to them, their own authorized

15   distributors, we certainly wouldn't be buying non-genuine

16   Rockwell products.

17            So I'll bring it to Your Honor's attention, I

18   don't think we need to translate every single invoice from a

19   particular supplier when each invoice is the exact same

20   thing except the amount and date.

21            THE COURT:  Do you intend to introduce all the

22   invoices into evidence?

23            MR. KASOLAS:  As on exhibit.  So, for example,

24   all the BSA Technology invoices would be one exhibit, all of

25   the RA Control invoices would be their own exhibit, and all

1   of the RS Component invoice would be their own exhibit.

2              THE COURT:  Yeah, but okay -- how would the jury

3   be able to tell what those invoices say if they are not

4   translated?

5              MR. KASOLAS:  Because they'll have a template

6   for one of the invoices translated to English.  They all

7   look the same.

8              THE COURT:  That's just one page, right?

9              MR. KASOLAS:  The whole invoice -- I mean some I

10  think are two, but just the whole -- we'll take one invoice,

11  we'll take any one they want in the exhibit and we'll

12  translate to English --

13             THE COURT:  So you're saying the language in all

14  of the invoices are exactly the same?

15             MR. KASOLAS:  Yes, Judge, for that particular

16  supplier.

17             THE COURT:  Okay.  And how about the -- so it's

18  just text, are there numbers, are the amounts different on

19  each invoice?

20             MR. KASOLAS:  The numbers are different on each

21  invoice, yes.  But they'll -- if a juror is looking at it,

22  they'll be able to see it is the same invoice it is just a

23  different number in a particular spot, different date, there

24  would be different quantity, but they'll have a template

25  that translates that language from that language to English.

```
 1    So they'll know this is an invoice from that particular
 2    supplier, there's a sale of a Rockwell product for X amount
 3    on that date.  They'll be able to do all of that just
 4    looking at the template and using it as a reference tool for
 5    the other invoices within that particular exhibit.
 6              Most important thing is the name on the invoice,
 7    so BSA Technology on the invoice is the most important
 8    thing, right.  RA Control, RS Components on the invoice is
 9    the most important thing.  To show -- they're claiming we're
10    somehow selling non-genuine Rockwell products or used
11    Rockwell products as new, but their own suppliers are
12    selling the products to us and buying from us.
13              THE COURT:  Okay.  Let me hear from Rockwell.
14              MR. KASOLAS:  Thank you, Judge.
15              MR. SHAW:  Your Honor, there's been some
16    back-and-forth on this, I certainly want to make everything
17    speedy and inexpensive for everyone.  I have been in trial a
18    week, so I haven't had a chance to look at what they sent in
19    the last two or three days.  It may be this is feasible, but
20    I don't know yet, for example, that everything is identical.
21              I do think it's a proposition that's correct
22    that the jurors, we should presume, read only English or at
23    least all eight or nine jurors won't read whatever language
24    things are in, and that the exhibits ought to be in English
25    unless we can reach some agreement to the contrary.  But
```

1      we're willing to work on that and make things as efficient

2      and easy as we can.

3                   THE COURT:  All right.  Why don't the parties

4      continue to meet-and-confer on that issue and if it can't be

5      resolved, hopefully you guys can reach an agreement on it.

6                   It seems to me that if there is no difference in

7      the text in all of the pages and -- if you translate one

8      page, you're translating all of the pages, it seems to me

9      that's a reasonable thing that you guys should be able to

10     reach agreement on.  But if there's some difference in the

11     text, then that's a different story.

12                  MR. SHAW:  That was my reaction, too, Your

13     Honor, but we just need a little more time to look at the

14     papers and ascertain what's there.

15                  THE COURT:  Okay.

16                  MR. KASOLAS:  We have one final issue, Your

17     Honor.  I'm sorry.

18                  If I may, Judge?

19                  THE COURT:  Sure.

20                  MR. KASOLAS:  Thank you.

21                  So earlier today Your Honor made a decision on

22     the counterfeiting issue, and on Motion in Limine No. 3

23     regarding Mr. Smaglik's ability to testify to the

24     database -- Your Honor also decided that issue today.

25     There's one argument we think has dovetailed back before the

1    Court based on the determination today that a counterfeiting

2    issue is potentially on the table during trial, depending on

3    how things go.  Our motion in limine pointed out -- we made

4    three very specific demands in discovery for documents that

5    would equate to the database.  For example, in Interrogatory

6    No. 6 we asked for documents seeking -- that were consulted

7    for the interrogatories.

8              For Rog No. 7, we asked for all documents

9    related to the facts and theories of the case.

10             And most importantly on Interrogatory No. 14 we

11   asked for all facts supporting counterfeiting.

12             Now, Mr. Smaglik, I think, intends to testify

13   that he has this database and by looking at that database

14   he's not going to see this alleged serial number that's

15   supposed to just be for that particular product and,

16   therefore, that should be an inference for somehow

17   counterfeiting.

18             But in response to the discovery they didn't

19   produce the database that he's now claiming he's going to

20   relying upon.  So I'm going to get sandbagged if this issue

21   comes up during the case because they allegedly raised this

22   counterfeiting issue, they knew the basis for the

23   counterfeiting in response to these interrogatories would be

24   this information in this database, but they didn't produce

25   the database.  I'm not saying they have to produce the whole

1      database, but they could have produced that portion of the

2      database that applied to that particular product, they

3      didn't even do.

4              And in Your Honor's opinion today I didn't see

5      the discovery issue analyzed.  And I'm not saying Your Honor

6      didn't take it into account, I just didn't see it in the

7      decision.

8              And also the database itself is best evidence.

9              I saw there was a reference to the rule in Your

10     Honor's decision earlier today, but I didn't see any

11     analysis of the best evidence.  The database itself is a

12     writing, right, it is some database digitized, it's a

13     writing, it would get printed out, and it would show the

14     contents of that database.  And instead of them producing

15     what is the best evidence, pursuant to the best evidence

16     rule, the database itself, they never produced it in

17     discovery in response to the specific interrogatory demands.

18     They've made an allegation of counterfeiting but now

19     Mr. Smaglik wants to come into the Court and say well, I

20     have is this database and looking in that database now that

21     somehow indicates to me there's an indicia of

22     counterfeiting, I don't have that serial number in that

23     database.

24              So I'm really concerned --

25              THE COURT:  Okay.  So you're talking about

```
 1        Motion in Limine No. 3, Defendant's Motion in Limine No. 3?
 2                  MR. KASOLAS:  Yes, Your Honor, I am.
 3                  THE COURT:  Right.  So the objection -- it
 4        wasn't that it wasn't produced, you were objecting to it as
 5        hearsay.
 6                  MR. KASOLAS:  That and that it was not produced.
 7                  If you look on, Your Honor, at page -- it's the
 8        opening page of the brief.  Look at the second paragraph,
 9        Judge.  We say:  Rockwell testified that WiAutomation sold a
10        counterfeit product because its serial number did not match
11        the records in the Rockwell database.  And then I have the
12        citation.  Similarly, Rockwell's interrogatory response
13        claims WiAutomation sold products with a non-existent serial
14        number.  But Rockwell did not produce any information or
15        documents that support these claims and, therefore, they
16        should be barred.  And we also cite the best evidence rule.
17                  And below on the bottom page I have a footnote
18        to these specific interrogatories that we propounded on them
19        that apply to this so-called counterfeiting issue or
20        database issue.  It was Interrogatory No. 6, looking for
21        what documents they may have consulted to prepare the
22        interrogatory responses.
23                  Interrogatory No. 7, regarding all documents
24        relating to the facts of the case and theories of the case.
25        Obviously now he's taking the position this database
```

1   applies, it's a fact that applies to this case.

2          And Interrogatory No. 14, all facts supporting

3   counterfeiting.

4          THE COURT:  Okay.

5          MR. KASOLAS:  They doesn't say anything about a

6   database to me at any point in time during discovery.

7          THE COURT:  All right.  So let me hear from

8   Rockwell.

9          So --

10         MR. KASOLAS:  Thank you, judge.

11         THE COURT:  So the Court's ruling dealt with the

12  objection dealing with hearsay and Federal Rule of Evidence

13  1002.  I'm hearing now from WiAutomation, and the Court may

14  have overlooked it in its analysis, that there was also a

15  assertion that Rockwell did not produce this database or any

16  entries from it.

17         So let me hear from Rockwell with respect to

18  that.

19         MR. SHAW:  Your Honor, first, if I miss

20  something you want to hear about, please tell me.  We

21  weren't prepared to reargument motions today, but I think I

22  can answer your questions.

23         First, the database itself, we're not testifying

24  about the contents of the database, the testimony will be

25  about the absence of information in the database.  And we

1    set that out in our response to the motion in limine, the

2    Rule 901, Federal Rule of Evidence 901, first of all, states

3    in the commentary to the original rule that the absence of

4    information in the document is not covered by the best --

5    the original writing rule or what has been termed "the best

6    evidence rule" here.

7                    THE COURT:  All right.  So there's nothing -- so

8    the answer is there's nothing in the database to produce

9    because the answer was about the absence of any evidence in

10   the database and you provided that in an interrogatory

11   response?

12                   MR. SHAW:  I don't know about whether that exact

13   phrase was an interrogatory response or not.  I don't have

14   the discovery materials here, but what I can say is

15   generally in terms of discovery, they certainly knew enough

16   about the serial number issue to ask questions of

17   Mr. Smaglik at his deposition.

18                   I don't believe in follow up to that there were

19   questions saying produce parts of the database.  And

20   certainly in terms of interrogatories, it's always the case

21   in the trial, if you took the transcript from the trial, the

22   facts that are coming in, every word and individual item

23   that a witness utters is not in the interrogatories.  Those

24   are at a higher level.  Not that I'm saying people should

25   hide theories or not disclose theories, but certainly

1    saying, you know, what they are just asking for now is

2    certainly below that level.  Now, whether we've included it

3    not, I don't think any of us have interrogatories here

4    today, again as we weren't anticipating this issue coming

5    up.  But certainly it is the case that they had notice and

6    understanding about the serial number issue.  They know how

7    it was looked at.  It came up last December.

8                THE COURT:  Okay.  Let me hear --

9                MR. KASOLAS:  Thank you, Judge.

10               The issue isn't would I have notice at this

11   point, the issue is did they produce something I asked for.

12   The answer is no.  I have Interrogatory No. 14 here, Your

13   Honor if the Court can't pull up to the computer.  I can

14   read it into the record or I can present it to Your Honor

15   and read it that way.

16               But Interrogatory No. 14 says:  State all facts

17   supporting the allegation in paragraph 50 of the complaint

18   that "on information and belief, WiAutomation shipping

19   customers used and counterfeit products and products

20   obtained from unverified sources to fulfill orders for "new"

21   Rockwell products."

22               Response: "The general objections are

23   incorporated herein.  Rockwell objects to this

24   interrogatory, to the extent it seeks information protected

25   in disclosure by the attorney/client privilege, attorney

work doctrine or any other applicable immunity or
protection.  Rockwell also objections to this interrogatory
to the extent it seeks information not relevant to any
present claim or defense in this investigation and does not
reasonably calculate to lead to the discovery of admissible
evidence.  Rockwell further objects to this interrogatory as
overbroad and unduly burdensome.  Rockwell objects to this
interrogatory to the extent it seeks proprietary or
confidential information relating to nonparties.  Rockwell
further objects to this interrogatory to the extent it seeks
information not within Rockwell's possession, custody or
control or equally available to defendant.  Subject to
without waiving the forgoing objections, Rockwell states a
defendant shipped a product bearing an asserted trademark to
a customer in the United States in an attempt to fulfillment
of an order for a "new" product that bore a counterfeit
label and was enclosed in a box bearing a counterfeit
"factory sealed" label.  Both of these counterfeit labels
contained a serial number that did not match the type of
product that was ordered and that was contained in the box.
Neither labels made or applied by Rockwell, yet both labels
bore at least one asserted trademark.

Rockwell further states pursuant to Rule 33(d)
that an answer may be derived from the following documents
produced to defendants.  Rockwell ROCK 126-138 and ROCK

1    228-256.

2          Rockwell further states that it may make

3    available or produce furtherer relevant, nonprivileged

4    response or information or documents in its possession,

5    custody or control pursuant to Rule 33(d) permitory response

6    may be derived.  To the extent such information exists,

7    Rockwell will provide this information in accordance with a

8    scheduling order and the relevant local rules.  Rockwell

9    reserves the right to alter, amend or supplement this

10   response as this case proceeds.

11          No database information whether it is specific

12   to this particular product, group of products overall was

13   produced.  They are absolutely trying to prove the content

14   of the database, Judge.  Okay.  If I don't see the database,

15   how am I going to know what it says whether or not it

16   actually has the serial in there or not.  And to come into

17   court and say well, our position is not in there and,

18   therefore, we need to produce it, how am I supposed to know

19   that?  Who am I going to cross-examine?  I'm going to

20   cross-examine the adverse witness who claims it is not

21   there?  Should have produced the database information, said

22   this is the serial number that it should be in our database,

23   this number is not in our database, do what you want with it

24   for discovery purposes for trial.  They didn't do that.

25   They did don't.

1              And now I'm going to get sandbagged at this case

2    because they have a counterfeiting allegation.  He wants to

3    talk about an alleged serial number that's alleging not in

4    there, and I can't cross-examine anybody about it.  Hands

5    are completely tied behind my back.

6              So that's all I have to say about the issue,

7    Judge.  They should have produced the database information.

8    It was very easy to do.  They knew it was out there.  They

9    mentioned SAP is a software provider that does this

10   database.  There's just no excuse for it, Judge.

11             MR. SHAW:  So, Your Honor, the interrogatory

12   response that was just read talks about the absence of the

13   serial number being in the database.

14             He was reading from exhibit B, page 25 and 26,

15   that's the carryover paragraph.  And the part that they

16   highlighted here:  "Both of the counterfeit labels contain

17   serial number that did not match the type of product that

18   was ordered and contained in the box."  That's what we've

19   been saying all along.

20             I did misspeak when I was at the podium

21   previously, I said Rule 902, I should have said Rule 1002.

22   And the comment -- the notes of the advisory committee that

23   I referenced that I have now in my hand and they say:  Nor

24   does the rule apply to testimony that books or records have

25   been examined and found not to contain any reference to the

1    designated matter.  And that's what the witness will testify

2    to.  The serial number is not in the database.

3                    MR. KASOLAS:  Judge --

4                    MR. SHAW:  I should say the serial number is not

5    in the database for this product.

6                    THE COURT:  Okay.

7                    All right.  So with respect to this testimony of

8    Mr. Smaglik, when he is scheduled to testify, the parties --

9    if this issue remains, the parties should follow the Court's

10   dispute resolution and submit your submissions by 6:00 a.m.

11   and the Court will resolve it at that time.

12                   Just to give you my initial just sort of

13   reactions without seeing what all you will say in your

14   submissions -- I'll keep that to my myself, but... yeah,

15   I'll keep that to myself for now, but just follow the

16   Court's submissions.

17                   It seems like the parties may be rehashing some

18   discovery issues.  I know there's been a ton of discovery

19   issues that Judge Hall references, and I know she's ruled on

20   a bunch and had some sanctions in the case.  So the Court

21   isn't going to revisit those.  But to the extent I need to

22   deal with, you know, evidentiary issues, let's follow the

23   Court's procedures.  I don't think it would be wise for the

24   Court to just rule on the fly without having seen the

25   parties submissions.

1            So with that, we're adjourned for the day.

2            I'll look for the parties' submissions on the

3    *Hetronic* issue on Friday and Monday.

4            All right.

5            (Whereupon, the following proceeding concluded

6    at 4:28 p.m.)

7                I hereby certify the foregoing is a true

8    and accurate transcript from my stenographic notes in the

9    proceeding.

10                          /s/ Michele L. Rolfe, RPR, CRR
                              U.S. District Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 43:10

## 1

**1** [6] - 5:1, 10:9, 10:10, 11:15, 17:19, 24:18
**1-17** [1] - 18:11
**10** [1] - 25:18
**10-minute** [1] - 26:25
**1002** [2] - 36:13, 41:21
**1006** [3] - 13:1, 13:4, 13:5
**101** [1] - 14:18
**102** [1] - 14:23
**103** [1] - 16:1
**104** [1] - 16:1
**11** [1] - 13:21
**1117(b** [1] - 7:7
**1117(c** [1] - 7:7
**1125(a)(1** [1] - 22:1
**1141(a** [1] - 21:25
**12(b)(6** [1] - 6:24
**12(c** [1] - 6:24
**126-138** [1] - 39:25
**13** [1] - 1:11
**136** [1] - 6:21
**14** [5] - 8:19, 33:10, 36:2, 38:12, 38:16
**140** [1] - 6:16
**146** [3] - 6:21, 10:10, 10:11
**15** [2] - 7:7, 21:25
**18** [2] - 4:12, 18:12
**19** [2] - 7:24, 18:14
**19th** [1] - 17:17

## 2

**2** [1] - 18:1
**2-4** [1] - 5:23
**20** [1] - 18:15
**2023** [1] - 1:11
**21** [1] - 18:17
**21-1238** [1] - 3:9
**21-1238-GBW-JLH** [1] - 1:5
**228-256** [1] - 40:1
**24** [1] - 6:7
**25** [1] - 41:14
**2532** [1] - 7:20
**26** [1] - 41:14

## 3

**3** [5] - 7:4, 25:19, 32:22, 35:1
**32** [1] - 6:7
**33** [1] - 11:20

**33(d** [2] - 39:23, 40:5
**36** [1] - 12:19
**38** [1] - 12:4
**3:00** [1] - 3:4

## 4

**4** [2] - 6:6, 19:2
**45** [1] - 18:10
**48** [1] - 20:4
**4:28** [1] - 43:6

## 5

**50** [1] - 38:17
**55** [1] - 6:16
**56** [1] - 6:21
**58** [1] - 6:21
**5:00** [3] - 17:17, 27:22, 27:23

## 6

**6** [3] - 7:19, 33:6, 35:20
**62** [2] - 12:25, 13:2
**66** [1] - 13:7
**6:00** [1] - 42:10
**6B** [1] - 3:4

## 7

**7** [3] - 24:17, 33:8, 35:23
**71** [2] - 4:3, 13:16
**72** [2] - 4:3, 13:16
**7th** [1] - 14:22

## 8

**8:45** [1] - 13:24

## 9

**90** [1] - 13:19
**901** [2] - 37:2
**902** [1] - 41:21
**91** [1] - 13:23
**93** [1] - 14:3
**97** [1] - 14:11
**9:00** [2] - 13:24, 14:1

## A

**a.m** [3] - 13:24, 42:10
**ability** [1] - 32:23
**able** [5] - 15:8, 30:3, 30:22, 31:3, 32:9
**absence** [4] - 36:25, 37:3, 37:9, 41:12

**absolutely** [1] - 40:13
**accept** [1] - 13:18
**access** [1] - 14:12
**accidentally** [1] - 20:5
**accordance** [1] - 40:7
**account** [1] - 34:6
**accurate** [1] - 43:8
**acknowledge** [1] - 6:19
**Act** [8] - 22:1, 22:9, 23:22, 24:2, 25:20, 25:23, 25:25, 26:13
**action** [2] - 11:3, 11:6
**Action** [1] - 3:8
**actions** [1] - 8:13
**activities** [1] - 24:10
**activity** [4] - 22:16, 25:14, 25:15, 26:3
**adamant** [1] - 28:9
**add** [1] - 18:12
**additional** [1] - 27:20
**address** [2] - 5:7, 10:23
**addressed** [2] - 13:25, 22:12
**addresses** [1] - 11:5
**adjourned** [1] - 43:1
**admissible** [1] - 39:5
**admission** [1] - 13:13
**admitted** [1] - 24:23
**adverse** [1] - 40:20
**advisory** [1] - 41:22
**afternoon** [3] - 3:5, 3:6, 3:12, 3:18
**agenda** [1] - 19:9
**agree** [5] - 12:2, 14:5, 14:9, 14:24, 21:10
**agreed** [6] - 4:6, 15:3, 20:6, 20:10, 20:11, 24:17
**agreeing** [1] - 12:10
**agreement** [6] - 18:13, 20:16, 28:11, 31:25, 32:5, 32:10
**alert** [1] - 4:1
**Alex** [1] - 3:20
**ALEXIS** [1] - 2:13
**allegation** [5] - 9:12, 9:13, 34:18, 38:17, 41:2
**allegations** [4] - 5:4, 6:8, 8:3, 23:15
**allege** [1] - 6:22
**alleged** [11] - 5:13, 6:8, 22:7, 22:16, 22:17, 23:7, 23:9, 23:18, 26:13, 33:14, 41:3
**allegedly** [1] - 33:21

**alleging** [1] - 41:3
**allow** [3] - 14:13, 27:7, 29:5
**allows** [1] - 14:7
**ALSTON** [1] - 2:8
**Alston** [1] - 3:14
**alter** [1] - 40:9
**amend** [2] - 14:20, 40:9
**amendment** [1] - 23:17
**America** [1] - 23:10
**American** [1] - 23:3
**amount** [2] - 29:20, 31:2
**amounts** [1] - 30:18
**analysis** [3] - 11:1, 34:11, 36:14
**analyzed** [1] - 34:5
**AND** [1] - 1:2
**Andrew** [1] - 3:15
**ANDREW** [1] - 2:3
**answer** [7] - 17:19, 20:8, 36:1, 37:8, 37:9, 38:12, 39:24
**answered** [2] - 17:22, 18:3
**answers** [1] - 18:6
**anticipate** [1] - 22:4
**anticipating** [1] - 38:4
**apologize** [1] - 20:18
**appear** [2] - 5:10, 17:10
**appearances** [1] - 3:11
**APPEARANCES** [1] - 2:1
**applicable** [1] - 39:1
**application** [2] - 25:23, 26:9
**applied** [2] - 34:2, 39:21
**applies** [2] - 36:1
**apply** [4] - 20:7, 25:20, 35:19, 41:24
**applying** [1] - 23:2
**approach** [1] - 25:23
**appropriate** [1] - 11:18
**argument** [2] - 25:9, 32:25
**ascertain** [1] - 32:14
**assert** [2] - 5:4, 10:4
**asserted** [4] - 7:22, 9:25, 39:14, 39:22
**assertion** [1] - 36:15
**associates** [1] - 3:23, 4:14
**attainable** [1] - 25:25

**attempt** [1] - 39:15
**attention** [4] - 13:10, 16:19, 21:24, 29:17
**attorney** [2] - 7:16, 38:25
**attorney/client** [1] - 38:25
**attorneys** [1] - 17:11
**authority** [2] - 21:23, 26:20
**authorized** [6] - 6:3, 28:6, 28:19, 29:1, 29:11, 29:14
**Automation** [1] - 3:7
**AUTOMATION** [1] - 1:4
**available** [2] - 39:12, 40:3
**award** [1] - 7:16
**awarded** [1] - 27:10
**aware** [1] - 27:8

## B

**back-and-forth** [2] - 28:6, 31:16
**barebones** [1] - 23:12
**barred** [2] - 25:16, 35:16
**based** [11] - 6:23, 12:14, 22:9, 22:18, 23:11, 23:14, 23:15, 23:16, 26:14, 27:11, 33:1
**basis** [4] - 8:18, 19:23, 27:21, 33:22
**bearing** [4] - 8:8, 8:10, 39:14, 39:17
**BEFORE** [1] - 1:14
**beginning** [1] - 3:4
**behind** [1] - 41:5
**belabor** [1] - 24:25
**belief** [1] - 38:18
**below** [2] - 35:17, 38:2
**bench** [1] - 18:5
**benefits** [3] - 8:8, 8:12, 8:14
**best** [8] - 15:22, 34:8, 34:11, 34:15, 35:16, 37:4, 37:5
**between** [1] - 15:1
**beyond** [1] - 24:13
**BIRD** [1] - 2:8
**Bird** [1] - 3:14
**black** [1] - 22:11
**black-and-white** [1] - 22:11
**BOB** [1] - 2:16
**Bob** [2] - 3:21, 5:11
**BODEN** [1] - 2:16

**Boden** [1] - 3:22
**book** [1] - 20:20
**books** [1] - 41:24
**bore** [3] - 8:20, 39:16, 39:22
**bottom** [1] - 35:17
**bought** [1] - 29:10
**box** [7] - 9:8, 18:2, 20:25, 21:6, 39:17, 39:20, 41:18
**Brach** [1] - 3:22
**BRACH** [1] - 2:15
**branded** [1] - 24:19
**break** [3] - 18:10, 26:25, 27:3
**Brett** [1] - 22:25
**brief** [1] - 35:8
**briefing** [2] - 27:20, 27:21
**bring** [4] - 15:18, 16:19, 21:23, 29:17
**broader** [1] - 25:25
**brought** [1] - 13:9
**BSA** [5] - 28:24, 29:1, 29:9, 29:24, 31:7
**bunch** [1] - 42:20
**burdensome** [1] - 39:7
**business** [2] - 17:7, 25:4
**but..** [1] - 42:14
**buying** [2] - 29:15, 31:12
**BY** [4] - 2:3, 2:6, 2:8, 2:16

## C

**C.A** [1] - 1:5
**calculate** [3] - 23:3, 23:9, 39:5
**calculation** [1] - 25:14
**calculations** [1] - 23:1
**calendar** [1] - 13:7
**cannot** [1] - 22:8
**care** [1] - 19:8
**carryover** [1] - 41:15
**case** [38] - 5:22, 5:23, 7:3, 7:5, 7:22, 9:3, 10:1, 11:9, 21:21, 21:24, 21:25, 22:16, 22:18, 23:5, 23:13, 23:24, 25:1, 25:3, 25:16, 25:17, 26:8, 26:13, 26:15, 27:5, 27:10, 27:18, 33:9, 33:21, 35:24, 36:1, 37:20, 38:5, 40:10, 41:1, 42:20
**cases** [2] - 4:18, 11:4

**caught** [2] - 20:5, 20:9
**caveat** [2] - 12:7, 13:3
**certainly** [9] - 10:25, 24:25, 29:15, 31:16, 37:15, 37:20, 37:25, 38:2, 38:5
**certification** [1] - 23:15
**certify** [1] - 43:7
**chambers** [2] - 14:15, 17:8
**chance** [1] - 31:18
**change** [1] - 13:23
**changed** [1] - 8:23
**charge** [7] - 10:4, 16:3, 16:7, 16:11, 16:14, 19:24, 20:4
**charges** [1] - 9:23
**Chris** [1] - 3:14
**CHRISTOPHER** [1] - 2:9
**circle** [1] - 17:21
**Circuit** [1] - 11:10
**citation** [1] - 35:12
**cite** [3] - 7:13, 7:20, 35:16
**cited** [1] - 11:4
**cites** [1] - 11:12
**Civil** [1] - 3:8
**claim** [19] - 5:5, 5:14, 5:20, 6:22, 7:25, 8:5, 8:18, 9:1, 9:2, 9:15, 9:20, 10:5, 11:7, 11:11, 11:12, 22:9, 25:21, 26:3, 39:4
**claimed** [2] - 22:2, 24:6
**claiming** [4] - 9:5, 24:6, 31:9, 33:19
**claims** [5] - 22:2, 24:2, 35:13, 35:15, 40:20
**clarity** [1] - 24:12
**clear** [2] - 7:21, 24:7
**client** [8] - 5:25, 7:1, 8:1, 8:14, 9:9, 22:7, 22:16, 28:9
**client's** [2] - 23:1, 23:9
**close** [1] - 28:13
**closings** [1] - 21:3
**come..** [1] - 18:4
**coming** [5] - 8:25, 12:8, 24:23, 37:22, 38:4
**commencement** [1] - 14:13
**comment** [1] - 41:22
**commentary** [1] - 37:3
**commerce** [3] - 8:15, 10:12, 22:3
**committee** [1] - 41:22

**committing** [1] - 23:21
**common** [1] - 16:7
**communicate** [1] - 4:19
**communicated** [1] - 4:19
**company** [1] - 23:19
**compensatory** [1] - 7:15
**competing** [1] - 16:2
**compile** [1] - 17:1
**complaint** [14] - 5:16, 5:20, 5:22, 6:5, 6:7, 6:8, 6:9, 6:16, 7:13, 10:9, 10:15, 11:13, 23:16, 38:17
**completely** [1] - 41:5
**Component** [1] - 30:1
**components** [1] - 7:8
**Components** [2] - 29:11, 31:8
**computer** [1] - 38:13
**Conaway** [1] - 3:20
**CONAWAY** [1] - 2:12
**concern** [2] - 12:14, 12:16
**concerned** [2] - 12:6, 34:24
**concerning** [2] - 14:4, 16:2
**concluded** [1] - 43:5
**conduct** [5] - 22:7, 23:8, 26:4, 26:7, 26:9
**confer** [3] - 14:24, 20:15, 32:4
**conference** [8] - 3:3, 3:7, 16:3, 16:7, 16:11, 16:15, 19:24, 20:4
**Conference** [1] - 1:11
**conferred** [2] - 15:3, 15:8
**confidential** [1] - 39:9
**conflict** [1] - 12:3
**confusion** [1] - 25:22
**consent** [1] - 10:13
**consistent** [4] - 12:22, 13:6, 13:12, 17:16
**consistently** [1] - 17:3
**constantly** [1] - 21:4
**constitutes** [1] - 10:12
**consulted** [2] - 33:6, 35:21
**contain** [2] - 41:16, 41:25
**contained** [1] - 39:19, 39:20, 41:18
**content** [1] - 40:13
**contention** [1] - 10:19

**contents** [2] - 34:14, 36:24
**continue** [1] - 32:4
**continuing** [1] - 18:1
**contrary** [1] - 31:25
**Control** [3] - 29:10, 29:25, 31:8
**control** [2] - 39:12, 40:5
**conveyed** [1] - 21:11
**Conway** [1] - 3:19
**coordinate** [1] - 16:20
**copy..** [1] - 10:14
**correct** [2] - 10:23, 31:21
**corrected** [1] - 19:2
**costs** [1] - 29:8
**counsel** [5] - 3:10, 3:21, 18:8, 25:9, 28:11
**counsel's** [1] - 16:19
**Count** [2] - 10:9, 10:10
**count** [1] - 5:15
**counterfeit** [21] - 8:20, 8:21, 8:22, 9:6, 9:8, 9:9, 10:13, 10:17, 10:18, 14:21, 24:15, 24:16, 24:22, 25:2, 35:10, 38:19, 39:16, 39:17, 39:18, 41:16
**counterfeiting** [44] - 5:3, 5:4, 5:6, 5:13, 5:14, 5:16, 5:21, 5:24, 6:4, 6:10, 6:18, 6:20, 6:23, 7:1, 7:8, 7:9, 7:14, 7:22, 8:3, 8:18, 9:2, 9:11, 9:15, 9:18, 9:20, 10:5, 10:5, 10:23, 10:24, 11:5, 11:11, 11:15, 11:18, 32:22, 33:1, 33:11, 33:17, 33:22, 33:23, 34:18, 34:22, 35:19, 36:3, 41:2
**country** [1] - 26:7
**couple** [2] - 25:17, 28:2
**Court** [48] - 4:18, 5:2, 5:10, 7:17, 11:14, 11:22, 12:21, 12:24, 13:3, 13:15, 13:18, 14:7, 14:12, 14:19, 14:22, 14:23, 15:24, 16:3, 16:10, 16:14, 16:16, 16:18, 16:19, 16:25, 17:6, 17:15, 19:6, 19:13, 21:20, 21:25, 22:19, 23:8, 23:11, 23:13, 24:1, 26:2, 27:7, 27:8,

27:24, 29:5, 33:1, 34:19, 36:13, 38:13, 42:11, 42:20, 42:24, 43:10
**court** [3] - 17:8, 23:20, 40:17
**COURT** [54] - 1:1, 1:15, 3:5, 3:17, 3:25, 4:5, 4:7, 4:9, 4:13, 5:8, 10:7, 11:8, 12:1, 12:13, 12:17, 14:18, 15:10, 15:14, 15:20, 19:6, 19:14, 19:18, 19:22, 20:3, 20:10, 20:15, 20:22, 21:7, 21:18, 24:4, 25:6, 25:8, 26:16, 26:18, 26:24, 27:4, 28:4, 29:21, 30:2, 30:8, 30:13, 30:17, 31:13, 32:3, 32:15, 32:19, 34:25, 35:3, 36:4, 36:7, 36:11, 37:7, 38:8, 42:6
**Court's** [12] - 12:23, 13:10, 13:12, 16:17, 16:18, 16:22, 21:23, 22:10, 36:11, 42:9, 42:16, 42:23
**courtroom** [1] - 14:12
**Courtroom** [1] - 3:4
**Courts** [1] - 25:19
**covered** [1] - 37:4
**cross** [3] - 40:19, 40:20, 41:4
**cross-examine** [3] - 40:19, 40:20, 41:4
**CRR** [2] - 1:25, 43:10
**custody** [2] - 39:11, 40:5
**customer** [4] - 8:7, 8:11, 8:14, 39:15
**customers** [1] - 38:19

## D

**d/b/a** [2] - 1:6, 3:8
**damage** [1] - 7:6
**damages** [15] - 7:5, 7:8, 7:15, 7:21, 7:22, 8:16, 10:24, 22:24, 23:1, 24:7, 24:10, 25:14, 27:10, 27:12
**database** [39] - 32:24, 33:5, 33:13, 33:19, 33:24, 33:25, 34:1, 34:2, 34:8, 34:11, 34:12, 34:14, 34:16, 34:20, 34:23, 35:11, 35:20, 35:25, 36:6,

36:15, 36:23, 36:24, 36:25, 37:8, 37:10, 37:19, 40:11, 40:14, 40:21, 40:22, 40:23, 41:7, 41:10, 41:13, 42:2, 42:5
**date** [4] - 4:19, 29:20, 30:23, 31:3
**dates** [1] - 29:5
**David** [1] - 9:16
**days** [3] - 17:7, 26:14, 31:19
**deadline** [1] - 19:25
**deal** [1] - 42:22
**dealing** [1] - 36:12
**deals** [2] - 12:25, 18:24
**dealt** [1] - 36:11
**deceive** [1] - 6:12
**December** [1] - 38:7
**decide** [1] - 20:17
**decided** [1] - 32:24
**decision** [8] - 21:21, 22:11, 23:8, 25:10, 25:19, 32:21, 34:7, 34:10
**dedicate** [1] - 6:7
**deduplicate** [2] - 17:1, 17:2
**deems** [1] - 7:17
**defendant** [4] - 3:19, 14:21, 39:12, 39:14
**Defendant** [2] - 1:7, 2:17
**Defendant's** [1] - 35:1
**defendants** [1] - 39:25
**defense** [1] - 39:4
**Del.C** [1] - 7:20
**DELAWARE** [1] - 1:2
**Delaware** [1] - 1:10
**delete** [3] - 17:23, 17:25, 18:5
**deleted** [1] - 19:3
**delivering** [1] - 16:21
**demands** [3] - 9:14, 33:4, 34:17
**demonstratives** [1] - 13:14
**deposition** [1] - 37:17
**derived** [2] - 39:24, 40:6
**describe** [2] - 6:8, 7:4
**described** [1] - 6:16
**describes** [1] - 5:22
**descriptions** [1] - 8:16
**designated** [1] - 42:1
**designation** [2] - 5:18, 5:19
**detail** [2] - 6:23, 9:25
**detailed** [1] - 9:13

**determination** [1] - 33:1
**develop** [1] - 24:12
**difference** [4] - 6:15, 27:12, 32:6, 32:10
**differences** [2] - 6:9, 6:17
**different** [13] - 6:2, 8:6, 8:20, 20:20, 21:13, 21:14, 29:4, 30:18, 30:20, 30:23, 30:24, 32:11
**difficult** [1] - 18:20
**digitized** [1] - 34:12
**dire** [4] - 4:10, 17:12, 17:18, 18:24
**directly** [2] - 4:20, 25:17
**disclose** [3] - 4:17, 4:21, 37:25
**disclosure** [2] - 9:13, 38:25
**discovered** [1] - 10:17
**discovery** [18] - 4:4, 4:21, 7:3, 10:2, 10:16, 14:20, 33:4, 33:18, 34:5, 34:17, 36:6, 37:14, 37:15, 39:5, 40:24, 42:18
**discrete** [1] - 5:15
**discuss** [2] - 18:6, 21:15
**discussion** [1] - 19:5
**dismissed** [1] - 5:19
**display** [1] - 21:9
**displayed** [1] - 21:4
**dispute** [9] - 4:2, 11:20, 12:20, 12:24, 13:15, 14:3, 14:4, 16:22, 42:10
**disputed** [1] - 15:11
**disputes** [9] - 4:21, 4:24, 4:25, 13:9, 13:11, 13:13, 16:5, 19:1, 20:2
**disputing** [1] - 10:20
**distinct** [2] - 7:9, 8:25
**distribution** [1] - 6:1
**distributor** [3] - 28:6, 28:19, 29:1
**distributors** [3] - 6:3, 29:11, 29:15
**DISTRICT** [3] - 1:1, 1:2, 1:15
**District** [1] - 43:10
**district** [1] - 6:22
**docket** [1] - 8:5
**doctrine** [1] - 39:1
**document** [4] - 9:14, 28:9, 28:13, 37:4

**documents** [10] - 28:7, 29:12, 33:4, 33:6, 33:8, 35:15, 35:21, 35:23, 39:24, 40:4
**domestic** [5] - 22:3, 23:23, 25:15, 25:22, 26:3
**Dominic** [1] - 3:15
**DOMINICK** [1] - 2:6
**done** [5] - 21:5, 23:6, 23:13, 25:24, 28:14
**dovetailed** [1] - 32:25
**down** [4] - 8:25, 20:2, 21:2, 22:18
**Dr** [1] - 10:21
**draw** [1] - 26:12
**due** [2] - 27:22, 27:23
**during** [12] - 9:3, 10:16, 11:17, 16:14, 16:21, 20:7, 20:25, 22:22, 33:2, 33:21, 36:6

### E

**e-mail** [1] - 17:8
**easy** [2] - 32:2, 41:15
**efficient** [1] - 32:1
**EICHLER** [1] - 2:15
**Eichler** [1] - 3:22
**eight** [1] - 31:23
**either** [2] - 7:13, 24:16
**electronic** [1] - 15:16
**elements** [2] - 11:10, 11:11
**enclosed** [1] - 39:17
**end** [1] - 14:1
**ENERIO** [1] - 2:5
**Enerio** [1] - 3:16
**engaged** [1] - 22:7
**engages** [1] - 5:25
**England** [1] - 22:8
**English** [10] - 15:1, 15:2, 28:10, 28:23, 29:6, 30:6, 30:12, 30:25, 31:22, 31:24
**enrichment** [1] - 5:18
**entered** [1] - 19:6
**entitled** [1] - 10:10
**entries** [1] - 36:16
**equally** [1] - 39:12
**equate** [1] - 33:5
**equitable** [1] - 7:18
**Eric** [1] - 3:21
**ERIC** [1] - 2:16
**ESQ** [11] - 2:3, 2:3, 2:6, 2:8, 2:9, 2:9, 2:12, 2:13, 2:13, 2:16, 2:16

**essentially** [1] - 23:6
**Europe** [3] - 22:7, 25:12, 26:12
**European** [1] - 25:13
**Evidence** [2] - 36:12, 37:2
**evidence** [15] - 11:17, 22:9, 24:1, 25:2, 26:13, 27:14, 29:22, 34:8, 34:11, 34:15, 35:16, 37:6, 37:9, 39:6
**evidentiary** [1] - 42:22
**evolved** [1] - 9:3
**exact** [2] - 29:19, 37:12
**exactly** [1] - 30:14
**examinations** [1] - 21:1
**examine** [3] - 40:19, 40:20, 41:4
**examined** [1] - 41:25
**examining** [1] - 21:2
**example** [5] - 7:3, 28:24, 29:23, 31:20, 36:4
**except** [2] - 29:4, 29:20
**exchanged** [1] - 13:6
**exclusively** [1] - 8:4
**excuse** [1] - 41:10
**exhibit** [16] - 13:5, 13:11, 17:1, 17:3, 17:4, 28:8, 28:19, 29:2, 29:9, 29:23, 29:24, 29:25, 30:1, 30:11, 31:5, 41:14
**Exhibit** [1] - 24:18
**exhibits** [1] - 13:1, 13:4, 13:14, 17:2, 17:3, 31:24
**existence** [1] - 8:2
**existent** [1] - 35:13
**exists** [1] - 40:6
**expedited** [1] - 27:21
**expert** [7] - 9:16, 9:17, 10:22, 10:24, 10:25, 22:24, 24:2
**experts** [1] - 10:22
**extend** [1] - 22:2
**extent** [6] - 38:24, 39:3, 39:8, 39:10, 40:6, 42:21
**extra** [1] - 19:2
**extraterritorial** [2] - 22:1, 26:8
**extraterritoriality** [1] - 26:1
**extreme** [1] - 29:8

### F

**fact** [4] - 13:19, 24:17, 25:1, 36:1
**factory** [2] - 8:21, 39:18
**facts** [10] - 7:25, 8:2, 8:5, 25:13, 33:9, 33:11, 35:24, 36:2, 37:22, 38:16
**factual** [1] - 6:8
**fair** [1] - 18:20
**false** [2] - 5:18, 5:19
**familiarize** [1] - 16:16
**far** [2] - 27:6, 27:18
**fault** [1] - 1:20
**feasible** [1] - 31:19
**Federal** [2] - 36:12, 37:2
**fees** [1] - 7:16
**figure** [1] - 15:22
**file** [1] - 17:15
**filed** [2] - 21:22
**final** [10] - 3:7, 9:22, 11:19, 16:5, 16:9, 16:11, 16:12, 17:14, 32:16
**financial** [1] - 22:24
**first** [13] - 4:23, 5:1, 8:25, 9:4, 10:1, 10:14, 13:2, 17:18, 19:12, 19:19, 36:19, 36:23, 37:2
**five** [2] - 13:20, 27:22
**five-day** [1] - 13:20
**floor** [1] - 20:25
**fly** [1] - 42:24
**focus** [4] - 10:25, 25:20, 26:5, 26:7
**focus-only** [1] - 25:20
**folks** [1] - 18:7
**follow** [4] - 37:18, 42:9, 42:15, 42:22
**following** [4] - 3:3, 13:10, 39:24, 43:5
**footnote** [2] - 11:4, 35:17
**FOR** [1] - 1:2
**foregoing** [1] - 43:7
**foreign** [9] - 22:16, 22:17, 26:3, 26:7, 27:11, 27:13, 27:15, 28:7, 28:21
**forget** [1] - 12:3
**forgoing** [1] - 39:13
**form** [1] - 20:1
**formally** [1] - 16:12
**forms** [2] - 16:2, 16:3
**formula** [1] - 23:2

**forth** [6] - 5:16, 5:20, 10:14, 13:6, 28:6, 31:16
**forward** [1] - 23:25
**four** [1] - 6:21
**framework** [2] - 23:12, 26:1
**Franklyn** [1] - 9:16
**franklyn's** [1] - 10:21
**Friday** [2] - 14:17, 43:3
**front** [2] - 20:25, 21:12
**fulfill** [3] - 27:15, 27:16, 38:20
**fulfillment** [1] - 39:15
**fulfills** [1] - 24:18
**furtherer** [1] - 40:3

## G

**gallery** [1] - 3:23
**Gattuso** [2] - 3:15, 3:16
**GATTUSO** [2] - 2:5, 2:6
**general** [1] - 38:22
**generally** [1] - 37:15
**genuine** [2] - 29:13, 29:15, 31:10
**given** [4] - 11:12, 14:9, 18:12, 27:7
**glad** [1] - 4:14
**global** [1] - 23:1
**glossary** [1] - 17:9
**goods** [7] - 5:23, 7:1, 7:11, 8:15, 9:4, 9:18, 27:17
**grant** [1] - 14:12
**granted** [2] - 13:21, 14:22
**gray** [11] - 5:23, 6:1, 6:17, 7:2, 7:11, 8:15, 8:22, 9:3, 9:7, 9:18, 24:16
**great** [1] - 20:16
**GREGORY** [1] - 1:14
**grounds** [1] - 8:9
**group** [1] - 40:12
**groups** [1] - 28:18
**guard** [1] - 20:9
**guys** [5] - 15:21, 20:15, 23:21, 32:5, 32:9

## H

**Hall** [1] - 42:19
**Han** [1] - 3:1
**hand** [2] - 17:23, 41:23

**handle** [3] - 22:21, 22:22
**hands** [1] - 41:4
**happy** [1] - 9:24
**hard** [1] - 21:1
**hear** [7] - 10:7, 24:4, 31:13, 36:7, 36:17, 36:20, 38:8
**heard** [3] - 10:21, 16:13, 26:18
**hearing** [1] - 36:13
**hearsay** [2] - 35:5, 36:12
**held** [3] - 3:4, 19:5, 21:25
**help** [1] - 27:9
**hereby** [1] - 43:7
**herein** [1] - 38:23
**hesitation** [1] - 12:10
**Hetronic** [9] - 21:24, 22:10, 22:23, 23:5, 23:9, 27:5, 27:10, 43:3
**HEYMAN** [1] - 2:5
**Heyman** [1] - 3:15
**hide** [1] - 37:25
**higher** [1] - 37:24
**highlighted** [1] - 41:16
**HIRZEL** [1] - 2:5
**hold** [1] - 16:3
**holding** [2] - 22:10, 23:11
**honest** [1] - 20:14
**Honor** [37] - 3:12, 3:18, 4:1, 5:7, 5:19, 9:22, 10:6, 10:8, 11:24, 12:12, 14:16, 15:5, 15:11, 19:11, 19:16, 20:18, 20:24, 22:12, 22:21, 24:5, 25:7, 26:21, 27:2, 28:2, 28:16, 31:15, 32:13, 32:17, 32:21, 32:24, 34:5, 35:2, 35:7, 36:19, 38:13, 38:14, 41:11
**Honor's** [3] - 29:17, 34:4, 34:10
**HONORABLE** [1] - 1:14
**hope** [1] - 24:5
**hopefully** [1] - 32:5
**hours** [2] - 13:21, 20:4

## I

**identical** [2] - 11:11, 31:20
**identify** [2] - 12:5, 12:7

**immunity** [1] - 39:1
**impact** [3] - 21:21, 22:24, 23:24
**impartial** [1] - 18:20
**impede** [1] - 21:6
**impermissible** [1] - 26:8
**implicate** [1] - 25:13
**implication** [1] - 24:21
**important** [4] - 22:4, 31:6, 31:7, 31:9
**importantly** [1] - 33:10
**IN** [2] - 1:1, 1:2
**Inc** [1] - 3:7
**INC** [1] - 1:4
**include** [15] - 5:2, 11:14, 11:21, 11:22, 12:18, 12:22, 13:1, 13:3, 14:5, 14:9, 14:21, 18:11, 18:12, 18:14, 18:22
**included** [3] - 16:23, 17:12, 38:2
**includes** [2] - 5:3
**including** [5] - 5:6, 11:14, 14:6, 23:17, 24:14
**inclusion** [1] - 14:8
**incorporated** [1] - 38:23
**incur** [1] - 29:8
**independent** [1] - 14:25
**indicate** [1] - 8:23
**indicates** [1] - 34:21
**indicia** [1] - 34:21
**individual** [1] - 37:22
**inexpensive** [1] - 31:17
**inference** [1] - 33:16
**information** [16] - 24:24, 33:24, 35:14, 36:25, 37:4, 38:18, 38:24, 39:3, 39:9, 39:11, 40:4, 40:6, 40:7, 40:11, 40:21, 41:7
**informed** [1] - 14:23
**Infringement** [1] - 10:10
**infringement** [1] - 5:5, 5:17, 6:22, 7:10, 7:11, 7:25, 8:5, 8:9, 11:12, 23:21, 26:14
**infringing** [3] - 22:3, 22:17, 23:7
**initial** [1] - 42:12
**insignia** [1] - 6:13
**instances** [1] - 24:14
**instead** [2] - 13:23,

34:14
**instruction** [1] - 11:3
**instructions** [8] - 9:22, 11:19, 16:5, 16:9, 16:13, 17:12, 18:25, 20:1
**instructs** [1] - 17:15
**intellectual** [1] - 18:18
**intend** [1] - 29:21
**intended** [2] - 9:23, 13:8
**intends** [2] - 24:3, 33:12
**interest** [1] - 7:17
**interpreter** [8] - 14:25, 15:4, 15:6, 15:7, 15:12, 15:15, 15:21
**interrogatories** [8] - 8:17, 9:14, 33:7, 33:23, 35:18, 37:20, 37:23, 38:3
**Interrogatory** [9] - 7:4, 7:24, 8:19, 33:5, 33:10, 35:20, 36:2, 38:12, 38:16
**interrogatory** [12] - 34:17, 35:12, 35:22, 35:23, 37:10, 37:13, 38:24, 39:2, 39:6, 39:8, 39:10, 41:11
**introduce** [5] - 22:5, 22:8, 23:17, 24:3, 29:21
**inventory** [4] - 24:20, 25:12, 27:15, 27:16
**investigation** [1] - 39:4
**invoice** [14] - 28:19, 29:8, 29:18, 29:19, 30:1, 30:9, 30:10, 30:19, 30:21, 30:22, 31:1, 31:6, 31:7, 31:8
**invoices** [13] - 28:18, 28:23, 28:25, 29:2, 29:3, 29:6, 29:22, 29:24, 29:25, 30:3, 30:6, 30:14, 31:5
**involve** [2] - 23:1, 23:22
**involves** [2] - 26:3, 26:8
**involving** [1] - 25:21
**issue** [30] - 9:23, 20:14, 20:19, 21:19, 22:20, 22:23, 27:9, 27:21, 27:25, 28:5, 28:15, 28:17, 32:4, 32:16, 32:22, 32:24, 33:2, 33:20, 33:22,

34:5, 35:19, 35:20, 37:16, 38:4, 38:6, 38:10, 38:11, 41:6, 42:9, 43:3
**issues** [6] - 13:24, 16:14, 28:13, 42:18, 42:19, 42:22
**Italian** [4] - 15:1, 15:2, 28:8, 28:10
**Italy** [1] - 22:8
**item** [1] - 37:22
**items** [2] - 7:2, 19:13
**itself** [7] - 5:3, 9:8, 9:21, 34:8, 34:11, 34:16, 36:23

## J

**job** [1] - 15:23
**JOHN** [1] - 2:3
**John** [2] - 3:12, 10:8
**joining** [2] - 3:13, 3:24
**joint** [4] - 17:1, 17:2, 17:4
**Judge** [12] - 5:9, 20:13, 26:17, 30:15, 31:14, 32:18, 35:9, 38:9, 40:14, 41:7, 41:10, 42:19
**JUDGE** [1] - 1:15
**judge** [3] - 5:12, 36:10, 42:3
**Judge's** [1] - 20:8
**judgment** [6] - 7:16, 7:17, 9:1, 9:4, 9:21, 10:2
**July** [3] - 1:11, 14:22, 17:17
**juror** [8] - 14:4, 14:6, 14:8, 14:10, 17:25, 18:7, 18:20, 30:21
**jurors** [4] - 21:7, 21:8, 31:22, 31:23
**jury** [26] - 9:22, 10:4, 11:3, 11:19, 13:20, 14:1, 14:13, 15:24, 16:4, 16:5, 16:9, 16:13, 16:21, 17:7, 17:12, 17:20, 18:2, 18:5, 18:25, 20:25, 21:4, 21:12, 25:3, 29:6, 30:2

## K

**K-A-S-O-L-A-S** [1] - 5:11
**Karen** [1] - 4:17
**KASOLAS** [27] - 2:16, 5:7, 5:9, 19:11,

20:13, 21:19, 25:7, 25:9, 26:17, 27:2, 28:2, 28:5, 28:15, 29:23, 30:5, 30:9, 30:15, 30:20, 31:14, 32:16, 32:20, 35:2, 35:6, 36:5, 36:10, 38:9, 42:3
**Kasolas** [5] - 3:21, 5:11, 12:15, 26:18, 27:5
**keep** [2] - 42:14, 42:15
**KELLER** [1] - 2:2
**Keller** [2] - 3:13, 4:17
**key** [1] - 25:18
**kind** [6] - 6:23, 8:18, 9:12, 9:13, 15:12, 15:21
**knocking** [1] - 6:11
**knockoff** [1] - 9:11
**known** [1] - 10:18
**KRAMAN** [9] - 2:12, 3:18, 4:1, 4:6, 4:8, 4:10, 15:5, 21:11, 21:14
**Kraman** [1] - 3:19

## L

**label** [6] - 8:20, 8:21, 9:6, 9:7, 39:17, 39:18
**labeled** [1] - 18:17
**labels** [5] - 8:23, 39:18, 39:21, 41:16
**language** [9] - 11:15, 11:21, 11:23, 11:25, 12:18, 30:13, 30:25, 31:23
**languages** [2] - 28:7, 28:21
**Lanham** [7] - 22:1, 22:9, 23:22, 24:2, 25:20, 25:24, 26:13
**large** [1] - 27:11
**last** [5] - 11:2, 16:4, 20:23, 31:19, 38:7
**law** [3] - 11:9, 25:10
**lawyers** [2] - 18:3, 18:6
**lead** [1] - 39:5
**least** [5] - 10:19, 17:6, 20:3, 31:23, 39:22
**level** [2] - 37:24, 38:2
**likelihood** [1] - 25:21
**Limine** [3] - 32:22, 35:1
**limine** [4] - 19:7, 22:12, 33:3, 37:1
**limited** [1] - 27:14

**limits** [1] - 22:17
**list** [7] - 13:17, 17:1, 17:3, 17:4, 17:9, 17:10, 28:8
**LLC** [1] - 2:15
**LLP** [4] - 2:2, 2:5, 2:8, 2:12
**local** [1] - 40:8
**location** [1] - 15:13
**locking** [2] - 8:7, 8:11
**logistics** [1] - 15:11
**look** [13] - 6:6, 6:15, 7:3, 7:12, 7:23, 26:25, 27:5, 30:7, 31:18, 32:13, 35:7, 35:8, 43:2
**looked** [1] - 38:7
**looking** [6] - 9:15, 30:21, 31:4, 33:13, 34:20, 35:20
**lunch** [2] - 14:1, 18:9
**lunches** [1] - 16:21

## M

**mail** [1] - 17:8
**major** [2] - 21:21, 22:24
**MALIHEH** [1] - 2:13
**Maliheh** [1] - 3:20
**man's** [1] - 9:17
**manner** [1] - 24:19
**March** [1] - 9:1
**mark** [1] - 9:10
**market** [12] - 5:23, 6:1, 6:17, 7:2, 7:10, 7:11, 8:15, 8:22, 9:3, 9:7, 9:18, 24:16
**Master** [1] - 4:18
**match** [3] - 35:10, 39:19, 41:17
**material** [4] - 5:17, 6:9, 6:15, 6:17
**materially** [3] - 6:2, 8:6, 8:19
**materials** [1] - 37:14
**matter** [4] - 15:11, 21:22, 23:13, 42:1
**matters** [1] - 4:20
**McArdle** [1] - 3:14
**MCARDLE** [1] - 2:9
**McLaughlin** [1] - 3:14
**MCLAUGHLIN** [1] - 2:9
**mean** [3] - 9:19, 9:24, 30:9
**meet** [1] - 32:4
**meet-and-confer** [1] - 32:4
**mentioned** [1] - 41:9

**mentions** [1] - 10:24
**Michele** [2] - 1:25, 43:10
**might** [1] - 18:19
**minor** [1] - 19:1
**minutes** [1] - 18:10
**miss** [1] - 36:19
**misspeak** [1] - 41:20
**Monday** [2] - 27:24, 43:3
**monitor** [1] - 20:24
**morning** [1] - 13:10
**most** [5] - 7:23, 31:6, 31:7, 31:9, 33:10
**Motion** [3] - 32:22, 35:1
**motion** [8] - 6:24, 14:19, 14:22, 22:12, 22:15, 33:3, 37:1
**motions** [3] - 19:7, 21:22, 36:21
**moving** [2] - 11:20, 18:25
**MR** [52] - 3:12, 5:7, 5:9, 10:8, 11:24, 12:2, 12:14, 14:16, 15:11, 15:18, 19:11, 19:15, 19:19, 19:24, 20:5, 20:13, 20:18, 20:23, 21:8, 21:13, 21:16, 21:19, 24:5, 25:7, 25:9, 26:17, 26:21, 27:2, 28:2, 28:5, 28:12, 28:15, 29:23, 30:5, 30:9, 30:15, 30:20, 31:14, 31:15, 32:12, 32:16, 32:20, 35:2, 35:6, 36:5, 36:10, 36:19, 37:12, 38:9, 41:11, 42:3, 42:4
**MS** [8] - 3:18, 4:1, 4:6, 4:8, 4:10, 15:5, 21:11, 21:14

## N

**name** [3] - 15:7, 17:24, 31:6
**names** [2] - 17:9, 17:11
**narrow** [1] - 20:2
**nature** [1] - 7:4
**NEAL** [1] - 2:9
**Neal** [1] - 3:14
**need** [8] - 11:1, 13:9, 13:25, 15:12, 29:18, 32:13, 40:18, 42:21
**needs** [1] - 15:24
**never** [7] - 5:20, 6:22,

7:21, 9:12, 9:25, 10:5, 34:16
**new** [3] - 31:11, 38:20, 39:16
**next** [7] - 11:20, 12:19, 12:24, 13:15, 13:17, 14:3, 18:9
**nine** [1] - 31:23
**non** [3] - 29:15, 31:10, 35:13
**non-existent** [1] - 35:13
**non-genuine** [2] - 29:15, 31:10
**nonparties** [1] - 39:9
**nonphysical** [1] - 8:7
**nonprivileged** [1] - 40:3
**NOTE** [1] - 3:3
**notebooks** [4] - 14:4, 14:6, 14:8, 14:10
**notes** [4] - 41:22, 43:8
**nothing** [4] - 6:9, 9:17, 37:7, 37:8
**notice** [6] - 7:6, 8:1, 21:23, 26:19, 38:5, 38:10
**notion** [1] - 26:11
**nowhere** [2] - 6:13, 8:16
**number** [19] - 12:4, 17:21, 17:25, 19:20, 30:23, 33:14, 34:22, 35:10, 35:14, 37:16, 38:6, 39:19, 40:22, 40:23, 41:3, 41:13, 41:17, 42:2, 42:4
**numbers** [3] - 29:5, 30:18, 30:20
**numerous** [1] - 24:14

## O

**object** [1] - 16:12
**objecting** [1] - 35:4
**objection** [6] - 4:11, 16:22, 19:22, 19:23, 35:3, 36:12
**objections** [6] - 13:9, 13:13, 19:19, 38:22, 39:2, 39:13
**objects** [6] - 12:21, 14:7, 38:23, 39:6, 39:7, 39:10
**obstructing** [1] - 15:24
**obtained** [1] - 38:20
**obviously** [1] - 35:25
**occurred** [3] - 26:5, 26:7, 26:9

**OF** [1] - 1:2
**of..** [1] - 18:10
**off-guard** [1] - 20:9
**Office** [1] - 18:19
**old** [1] - 25:10
**once** [2] - 16:11, 20:6
**one** [25] - 8:24, 13:7, 15:14, 18:3, 19:20, 20:12, 20:23, 21:1, 21:19, 22:20, 28:5, 28:15, 28:23, 28:24, 29:2, 29:3, 29:24, 30:6, 30:8, 30:10, 30:11, 32:7, 32:16, 32:25, 39:22
**opening** [2] - 20:7, 35:8
**openings** [2] - 20:25, 21:3
**opinion** [2] - 24:3, 34:4
**opinions** [1] - 18:18
**opportunity** [2] - 16:12, 27:20
**opposed** [2] - 5:6, 5:12
**order** [13] - 4:3, 4:16, 4:24, 11:16, 12:25, 14:20, 17:15, 17:16, 19:6, 23:18, 24:17, 39:16, 40:8
**ordered** [2] - 39:20, 41:18
**ordering** [1] - 16:20
**orders** [2] - 24:18, 38:20
**origin** [2] - 5:18, 5:20
**original** [2] - 37:3, 37:5
**ought** [1] - 31:24
**outside** [1] - 13:25
**overall** [3] - 6:7, 25:4, 40:12
**overbroad** [1] - 39:7
**overlooked** [1] - 36:14
**overseas** [7] - 23:7, 24:7, 24:9, 24:14, 24:22, 25:1, 25:16
**oversees** [1] - 24:25
**own** [4] - 29:14, 29:25, 30:1, 31:11

## P

**p.m** [4] - 3:4, 14:1, 17:17, 27:22, 27:23, 43:6
**page** [13] - 4:22, 16:18, 17:19, 18:1, 19:2, 25:18, 26:2,

30:8, 32:8, 35:7, 35:8, 35:17, 41:14
**pages** [4] - 6:7, 27:22, 32:7, 32:8
**paginate** [1] - 17:3
**pagination** [1] - 17:4
**papers** [1] - 32:14
**paragraph** [27] - 4:3, 5:1, 5:22, 6:6, 10:9, 10:10, 11:15, 11:20, 12:4, 12:11, 12:19, 12:25, 13:2, 13:7, 13:16, 13:19, 13:23, 14:3, 14:11, 14:18, 14:23, 17:19, 18:2, 18:9, 35:8, 38:17, 41:15
**paragraphs** [2] - 6:21, 16:1
**paramount** [1] - 21:19
**PARCOP** [1] - 1:6
**Parcop** [1] - 3:8
**part** [4] - 11:7, 12:3, 27:11, 41:15
**particular** [14] - 6:21, 22:6, 23:13, 28:7, 28:19, 29:9, 29:19, 30:15, 30:23, 31:1, 31:5, 33:15, 34:2, 40:12
**parties** [25] - 12:5, 12:7, 13:21, 14:5, 14:14, 14:23, 15:3, 16:4, 16:8, 16:11, 16:16, 16:20, 16:25, 17:6, 17:8, 17:15, 19:10, 27:7, 27:20, 32:3, 42:8, 42:9, 42:17, 42:25
**parties'** [6] - 13:18, 14:11, 16:2, 18:13, 27:24, 43:2
**partner** [2] - 3:15, 4:17
**parts** [1] - 37:19
**Patent** [1] - 18:19
**Paul** [1] - 3:14
**PAUL** [1] - 2:8
**pay** [1] - 16:20
**pending** [1] - 14:19
**people** [3] - 15:16, 19:16, 37:24
**per** [1] - 13:21
**permit** [1] - 20:24
**permitory** [1] - 40:5
**permitted** [1] - 26:22
**person** [2] - 12:7, 21:2
**persuasive** [1] - 7:24
**pertain** [1] - 7:14
**pertaining** [1] - 28:25
**Phil** [1] - 3:20

**phonetic** [1] - 17:10
**photos** [4] - 14:5, 14:6, 14:8, 14:10
**phrase** [2] - 5:6, 37:13
**pick** [1] - 18:16
**Pilar** [1] - 3:18
**PILAR** [1] - 2:12
**place** [2] - 15:20, 15:22
**plaintiff** [4] - 3:11, 3:13, 19:12, 19:14
**Plaintiff** [2] - 1:5, 2:10
**plaintiff's** [1] - 10:12
**pleading** [1] - 9:13
**pleasure** [1] - 5:9
**pled** [1] - 10:5
**podium** [1] - 41:20
**point** [6] - 11:5, 22:18, 23:11, 26:12, 36:6, 38:11
**pointed** [1] - 33:3
**points** [1] - 25:18
**popped** [1] - 20:19
**portion** [1] - 34:1
**position** [3] - 28:22, 35:25, 40:17
**possession** [2] - 39:11, 40:4
**possible** [3] - 17:2, 17:5, 17:9
**possibly** [1] - 16:9
**post** [1] - 7:17
**post-judgment** [1] - 7:17
**potential** [1] - 24:9
**potentially** [1] - 33:2
**power** [1] - 12:8
**practice** [1] - 12:23
**prayer** [1] - 7:12
**pre** [1] - 7:16
**pre-judgment** [1] - 7:16
**precludes** [1] - 23:5
**prefer** [1] - 19:19
**preference** [2] - 5:12, 19:20
**preliminary** [2] - 17:12, 18:25
**prepare** [1] - 35:21
**prepared** [1] - 36:21
**presence** [1] - 13:25
**present** [2] - 38:14, 39:4
**presentation** [1] - 13:22
**presentations** [1] - 15:16
**presented** [2] - 24:1, 25:13

**presume** [1] - 31:22
**pretrial** [12] - 3:3, 3:7, 4:3, 4:16, 4:24, 11:16, 12:25, 17:15, 17:16, 22:22, 24:17, 28:6
**Pretrial** [1] - 1:11
**pretty** [1] - 29:4
**previously** [1] - 41:21
**printed** [1] - 34:13
**privilege** [1] - 38:25
**probative** [2] - 25:3, 27:17
**procedural** [1] - 19:15
**procedure** [1] - 13:12
**procedures** [2] - 16:17, 42:23
**proceeding** [2] - 43:5, 43:9
**proceeds** [1] - 40:10
**produce** [10] - 33:19, 33:24, 33:25, 35:14, 36:15, 37:8, 37:19, 38:11, 40:3, 40:18
**produced** [10] - 13:4, 13:6, 34:1, 34:16, 35:4, 35:6, 39:25, 40:13, 40:21, 41:7
**producing** [1] - 34:14
**product** [19] - 6:13, 8:19, 8:22, 8:24, 9:7, 9:8, 9:10, 9:11, 9:21, 31:2, 33:15, 34:2, 35:10, 39:14, 39:16, 39:20, 40:12, 41:17, 42:5
**products** [23] - 6:2, 6:11, 8:6, 8:10, 8:14, 9:5, 10:17, 10:19, 24:16, 24:19, 29:13, 29:14, 29:16, 31:10, 31:11, 31:12, 35:13, 38:19, 38:21, 40:12
**profits** [1] - 7:16
**profound** [1] - 23:24
**progress** [1] - 20:2
**prohibited** [1] - 23:8
**pronunciation** [1] - 17:11
**proofs** [1] - 9:23
**property** [1] - 18:18
**proposal** [4] - 5:2, 12:21, 13:3, 13:18
**proposals** [1] - 18:14
**proposed** [7] - 4:11, 4:23, 9:23, 11:15, 16:8, 16:9, 17:16
**proposes** [2] - 11:21, 13:1
**proposition** [1] -

31:21
**propounded** [1] - 35:18
**proprietary** [1] - 39:8
**protected** [1] - 38:24
**protection** [1] - 39:2
**prove** [2] - 22:9, 40:13
**provide** [2] - 7:5, 40:7
**provided** [3] - 15:5, 15:7, 37:10
**provider** [1] - 41:9
**provision** [3] - 7:20, 12:4, 12:19
**public** [1] - 6:12
**pull** [1] - 38:13
**punitives** [1] - 7:15
**purpose** [2] - 22:14, 27:14
**purposed** [2] - 17:14
**purposes** [1] - 40:24
**pursuant** [4] - 7:7, 34:15, 39:23, 40:5
**put** [4] - 3:10, 8:1, 20:24, 21:12
**putting** [1] - 6:12

---

## Q

**quality** [1] - 27:17
**quantity** [1] - 30:24
**questions** [8] - 17:20, 18:4, 18:11, 18:23, 19:15, 36:22, 37:16, 37:19
**quickly** [1] - 27:8
**quite** [2] - 15:8, 21:1

---

## R

**RA** [3] - 29:10, 29:25, 31:8
**raise** [3] - 17:20, 19:13, 22:20
**raised** [1] - 33:21
**raising** [2] - 20:14, 20:19
**reach** [5] - 20:16, 25:25, 31:25, 32:5, 32:10
**reached** [1] - 14:14
**reaction** [1] - 32:12
**reactions** [1] - 42:13
**read** [7] - 25:17, 27:7, 31:22, 31:23, 38:14, 38:15, 41:12
**reading** [2] - 4:4, 41:14
**really** [2] - 29:8, 34:24
**realtime** [1] - 14:25
**reargument** [1] -

**reason** [1] - 12:2
**reasonable** [2] - 14:12, 32:9
**reasonably** [1] - 39:5
**recent** [2] - 14:21, 24:14
**recognized** [1] - 17:24
**record** [7] - 3:11, 4:4, 11:14, 14:21, 19:4, 19:5, 38:14
**records** [2] - 35:11, 41:24
**Reed** [3] - 10:24, 22:25, 23:5
**Reed's** [2] - 22:25, 24:2
**refer** [1] - 17:4
**reference** [6] - 6:17, 10:21, 11:2, 31:4, 34:9, 41:25
**referenced** [2] - 16:23, 41:23
**references** [2] - 5:17, 42:19
**regarding** [6] - 14:15, 14:19, 16:5, 22:13, 32:23, 35:23
**regardless** [2] - 24:20, 26:9
**regular** [1] - 11:7
**rehashing** [1] - 42:17
**related** [2] - 4:3, 33:9
**relating** [2] - 35:24, 39:9
**relevance** [2] - 24:9, 24:11
**relevant** [6] - 25:2, 26:4, 26:7, 39:3, 40:3, 40:8
**relief** [5] - 7:6, 7:10, 7:12, 7:16, 7:17
**relying** [1] - 33:20
**remaining** [2] - 4:24, 18:22
**remains** [2] - 13:17, 42:9
**remedies** [1] - 7:9
**reminds** [2] - 16:16, 17:6
**rendered** [2] - 8:14, 21:21
**repeat** [1] - 6:6
**report** [3] - 9:17, 10:22, 10:25
**reporter** [1] - 17:8
**REPORTER'S** [1] - 3:3
**reproduction** [1] - 10:13
**request** [3] - 14:11,

14:15, 16:19
**requests** [1] - 16:25
**reserves** [1] - 40:9
**resold** [4] - 8:7, 8:10, 8:15, 29:13
**resolution** [2] - 16:22, 42:10
**resolutions** [2] - 4:2, 16:23
**resolve** [6] - 4:24, 13:11, 16:5, 16:14, 21:16, 42:11
**resolved** [3] - 4:7, 13:18, 32:5
**resolving** [3] - 4:21, 13:12, 19:7
**respect** [9] - 13:19, 16:1, 17:13, 17:14, 24:2, 27:25, 28:17, 36:17, 42:7
**respond** [1] - 26:20
**response** [14] - 8:4, 27:23, 33:18, 33:23, 34:17, 35:12, 37:1, 37:11, 37:13, 38:22, 40:4, 40:5, 40:10, 41:12
**responses** [2] - 8:4, 35:22
**retained** [1] - 15:6
**retention** [1] - 14:24
**reveals** [1] - 7:9
**review** [1] - 27:24
**revised** [2] - 17:16, 19:25
**revisions** [1] - 16:8
**revisit** [2] - 11:19, 42:21
**ROCK** [2] - 39:25
**Rockwell** [52] - 3:7, 4:11, 5:2, 6:2, 6:3, 8:1, 8:10, 8:11, 8:24, 9:10, 9:11, 10:7, 10:8, 10:13, 11:13, 12:20, 13:1, 14:18, 22:5, 22:25, 23:6, 24:4, 24:19, 26:20, 28:9, 28:21, 29:11, 29:13, 29:14, 29:16, 31:2, 31:10, 31:11, 31:13, 35:9, 35:11, 35:14, 36:8, 36:15, 36:17, 38:21, 38:23, 39:2, 39:7, 39:9, 39:13, 39:21, 39:23, 39:25, 40:2, 40:7, 40:8
**rockwell** [1] - 39:6
**ROCKWELL** [1] - 1:4
**Rockwell's** [7] - 7:25,

8:8, 8:10, 13:3, 27:23, 35:12, 39:11
**Rockwell-branded** [1] - 24:19
**Rog** [1] - 33:8
**Rolfe** [2] - 1:25, 43:10
**room** [3] - 18:5, 18:7, 21:9
**RPR** [2] - 1:25, 43:10
**RS** [3] - 29:10, 30:1, 31:8
**Rule** [11] - 6:24, 13:1, 13:4, 13:5, 36:12, 37:2, 39:23, 40:5, 41:21
**rule** [9] - 19:20, 34:9, 34:16, 35:16, 37:3, 37:5, 37:6, 41:24, 42:24
**ruled** [1] - 42:19
**rules** [2] - 26:22, 40:8
**ruling** [2] - 27:25, 36:11
**rulings** [2] - 17:13, 17:16
**Russell** [1] - 3:15
**RUSSELL** [1] - 2:3
**Ryan** [1] - 22:6

---
# S
---

**S.L.R** [1] - 3:8
**S.R.L** [1] - 1:6
**sale** [5] - 5:25, 28:20, 29:2, 31:2
**sales** [22] - 10:16, 10:18, 14:21, 22:17, 23:2, 23:3, 23:7, 23:9, 23:18, 23:23, 24:7, 24:13, 24:15, 24:23, 25:1, 25:13, 25:15, 27:11, 27:13, 27:15, 27:16, 29:1
**sanctions** [1] - 42:20
**sandbagged** [2] - 33:20, 41:1
**SAP** [1] - 41:9
**satisfying** [1] - 6:25
**saw** [3] - 5:1, 10:1, 34:9
**scheduled** [2] - 13:20, 42:8
**scheduling** [3] - 14:20, 23:18, 40:8
**screen** [1] - 21:2
**seal** [1] - 8:21
**sealed** [1] - 39:18
**seated** [1] - 3:5
**seats** [1] - 18:2
**second** [7] - 7:23,

11:22, 12:20, 16:4, 22:23, 24:9, 35:8
**Section** [1] - 26:2
**section** [4] - 7:21, 8:3, 25:19
**see** [17] - 4:15, 9:20, 15:25, 20:23, 21:1, 21:3, 21:7, 21:8, 22:21, 27:9, 29:6, 30:22, 33:14, 34:4, 34:6, 34:10, 40:14
**seeing** [1] - 42:13
**seek** [1] - 7:15
**seeking** [4] - 7:7, 24:10, 27:12, 33:6
**seeks** [4] - 38:24, 39:3, 39:8, 39:10
**sees** [2] - 12:24, 13:15
**selling** [2] - 31:10, 31:12
**sent** [1] - 31:18
**sentence** [5] - 8:24, 11:22, 12:20, 12:22, 13:2
**separate** [3] - 7:9, 8:25, 11:6
**sequestration** [2] - 20:6, 20:10
**serial** [14] - 33:14, 34:22, 35:10, 35:13, 37:16, 38:6, 39:19, 40:16, 40:22, 41:3, 41:13, 41:17, 42:2, 42:4
**set** [6] - 5:16, 5:20, 13:6, 14:14, 15:22, 37:1
**shall** [1] - 17:8
**Shaw** [3] - 3:13, 10:8
**SHAW** [28] - 2:2, 2:3, 3:12, 10:8, 11:24, 12:2, 12:14, 14:16, 15:11, 15:18, 19:15, 19:19, 19:24, 20:5, 20:18, 20:23, 21:8, 21:13, 21:16, 24:5, 26:21, 28:12, 31:15, 32:12, 36:19, 37:12, 41:11, 42:4
**Shaw's** [1] - 4:17
**sheet** [3] - 16:6, 16:10, 16:13
**shipment** [1] - 24:21
**shipped** [3] - 24:15, 24:20, 39:14
**shipping** [3] - 24:22, 25:4, 38:18
**ships** [1] - 9:8
**short** [1] - 24:13
**show** [4] - 21:12,

29:12, 31:9, 34:13
**showing** [1] - 27:14
**side** [2] - 13:4, 13:21
**sides** [2] - 14:9, 15:16
**sides'** [1] - 28:8
**similar** [1] - 6:12
**similarly** [1] - 35:12
**simple** [1] - 24:6
**single** [3] - 28:22, 29:8, 29:18
**sit** [1] - 15:13
**Smaglik** [8] - 22:6, 22:13, 22:15, 23:20, 33:12, 34:19, 37:17, 42:8
**Smaglik's** [2] - 23:15, 32:23
**small** [2] - 20:24, 21:5
**snacks** [1] - 16:21
**so-called** [1] - 35:19
**software** [1] - 41:9
**sold** [6] - 6:3, 8:6, 29:12, 29:14, 35:9, 35:13
**sorry** [5] - 8:3, 10:22, 28:3, 28:10, 32:17
**sort** [1] - 42:12
**sought** [1] - 7:22
**source** [2] - 24:22, 24:24
**sources** [1] - 38:20
**speaks** [1] - 15:1
**Special** [1] - 4:17
**specific** [6] - 8:1, 11:5, 33:4, 34:17, 35:18, 40:11
**specifically** [3] - 6:25, 7:20, 10:11
**speedy** [1] - 31:17
**spot** [1] - 30:23
**sprinkle** [2] - 6:19, 6:20
**stand** [1] - 17:24
**standard** [1] - 25:21
**STARGATT** [1] - 2:12
**start** [4] - 3:10, 3:11, 10:9, 17:7
**starters** [1] - 5:15
**starts** [1] - 10:14
**state** [8] - 6:25, 7:14, 8:9, 17:24, 19:22, 26:6, 29:6, 38:16
**State** [1] - 7:19
**statements** [2] - 9:23, 20:7
**STATES** [2] - 1:1, 1:15
**states** [6] - 11:10, 24:18, 37:2, 39:13, 39:23, 40:2
**States** [12] - 6:4,

18:19, 23:4, 24:13, 24:25, 25:5, 25:15, 25:22, 26:5, 26:14, 27:16, 39:15
**Statute** [1] - 11:6
**statute** [3] - 5:3, 7:8, 7:19
**statutes** [1] - 26:4
**statutory** [1] - 7:6
**stenographic** [1] - 43:8
**STOMBAUGH** [1] - 2:13
**Stombaugh** [1] - 3:20
**story** [1] - 32:11
**stream** [1] - 8:15
**strong** [1] - 20:12
**stuff** [1] - 23:23
**subject** [1] - 39:12
**submissions** [6] - 27:25, 42:10, 42:14, 42:16, 42:25, 43:2
**submit** [3] - 9:22, 27:20, 42:10
**submitted** [2] - 11:4, 26:19
**subsections** [1] - 7:13
**subsequent** [2] - 21:23, 26:19
**suggest** [1] - 8:2
**summary** [5] - 9:1, 9:4, 9:21, 10:2
**summer** [2] - 3:23, 4:14
**superimposed** [1] - 9:10
**supplement** [2] - 14:20, 40:9
**supplier** [4] - 28:24, 29:19, 30:16, 31:2
**suppliers** [1] - 31:11
**support** [2] - 11:3, 35:15
**supporting** [5] - 7:25, 8:5, 33:11, 36:2, 38:17
**supposed** [2] - 33:15, 40:18
**Supreme** [7] - 21:20, 21:25, 22:10, 22:18, 23:8, 23:11, 23:13
**survey** [1] - 9:17
**survive** [1] - 6:24
**Switzerland** [3] - 22:8, 23:19, 23:24
**Syntegon** [3] - 23:19, 23:23, 24:15

## T

**table** [3] - 3:21, 15:12, 33:2
**tables** [1] - 15:16
**talks** [2] - 6:10, 41:12
**TANCK** [1] - 2:8
**Tanck** [1] - 3:14
**tangible** [1] - 8:11
**TAYLOR** [1] - 2:12
**Technology** [4] - 28:25, 29:10, 29:24, 31:7
**template** [4] - 29:3, 30:5, 30:24, 31:4
**term** [2] - 6:19, 6:20
**termed** [1] - 37:5
**terms** [8] - 17:9, 19:20, 20:6, 23:25, 25:4, 25:23, 37:15, 37:20
**territory** [1] - 26:10
**testified** [1] - 35:9
**testify** [8] - 22:6, 22:14, 22:15, 23:25, 32:23, 33:12, 42:1, 42:8
**testifying** [1] - 36:23
**testimony** [4] - 13:14, 36:24, 41:24, 42:7
**text** [3] - 30:18, 32:7, 32:11
**THE** [54] - 1:1, 1:2, 3:5, 3:17, 3:25, 4:5, 4:7, 4:9, 4:13, 5:8, 10:7, 11:8, 12:1, 12:13, 12:17, 14:18, 15:10, 15:14, 15:20, 19:6, 19:14, 19:18, 19:22, 20:3, 20:10, 20:15, 20:22, 21:7, 21:18, 24:4, 25:6, 25:8, 26:16, 26:18, 26:24, 27:4, 28:4, 29:21, 30:2, 30:8, 30:13, 30:17, 31:13, 32:3, 32:15, 32:19, 34:25, 35:3, 36:4, 36:7, 36:11, 37:7, 38:8, 42:6
**theirs** [1] - 6:12
**themselves** [3] - 9:5, 16:17
**theories** [4] - 33:9, 35:24, 37:25
**therefore** [4] - 25:12, 33:16, 35:15, 40:18
**therein** [2] - 4:24, 4:25
**they've** [4] - 9:12, 9:25, 24:23, 34:18

**third** [2] - 15:19, 17:19
**Third** [1] - 11:9
**thoughts** [1] - 20:12
**three** [4] - 17:7, 19:13, 31:19, 33:4
**Thursday** [1] - 1:11
**tied** [1] - 41:5
**timed** [1] - 13:20
**today** [11] - 5:10, 15:7, 17:17, 22:13, 32:21, 32:24, 33:1, 34:4, 34:10, 36:21, 38:4
**tomorrow** [1] - 27:23
**ton** [1] - 42:18
**took** [3] - 28:25, 29:1, 37:21
**tool** [1] - 31:4
**track** [1] - 16:10
**trade** [1] - 7:10
**Trademark** [3] - 10:10, 11:6, 18:19
**trademark** [13] - 5:4, 5:5, 5:17, 5:21, 6:22, 7:25, 8:2, 11:7, 11:10, 11:12, 13:21, 39:14, 39:22
**trademarks** [4] - 8:8, 8:10, 10:12, 18:18
**traditional** [1] - 7:10
**traditionally** [1] - 20:7
**transcript** [2] - 37:21, 43:8
**translate** [8] - 14:25, 28:9, 28:22, 29:3, 29:8, 29:18, 30:12, 32:7
**translated** [2] - 30:4, 30:6
**translates** [1] - 30:25
**translating** [1] - 32:8
**translation** [3] - 28:13, 28:17, 29:7
**TransPerfect** [1] - 15:6
**treble** [3] - 7:6, 7:15, 7:20
**trepidation** [1] - 26:21
**trial** [27] - 11:17, 12:6, 12:8, 13:20, 13:22, 14:2, 14:13, 14:25, 16:4, 16:17, 16:21, 17:7, 17:10, 18:21, 19:17, 20:21, 22:22, 23:17, 24:3, 24:11, 25:13, 31:17, 33:2, 37:21, 40:24
**trials** [2] - 19:16, 21:5
**tries** [1] - 22:15
**true** [1] - 43:7
**try** [6] - 22:5, 22:9,

23:9, 23:17, 23:20, 26:13
**trying** [1] - 40:13
**turn** [1] - 17:18
**turning** [2] - 4:23, 21:4
**two** [6] - 4:2, 4:18, 11:4, 19:12, 30:10, 31:19
**Twombly** [1] - 6:25
**type** [6] - 6:10, 10:5, 22:14, 24:1, 39:19, 41:17
**typically** [1] - 14:5
**typo** [1] - 19:2

## U

**U.S** [4] - 6:1, 24:23, 26:10, 43:10
**U.S.C** [2] - 7:7, 21:25
**unauthorized** [2] - 6:1, 10:11
**under** [2] - 11:6, 23:22
**undermines** [1] - 25:25
**unduly** [1] - 39:7
**UNITED** [2] - 1:1, 1:15
**United** [12] - 6:3, 18:19, 23:3, 24:13, 24:25, 25:5, 25:15, 25:22, 26:5, 26:14, 27:16, 39:15
**unjust** [1] - 5:18
**unlawful** [1] - 5:25
**unless** [1] - 31:25
**unnecessarily** [1] - 15:23
**unverified** [1] - 38:20
**up** [14] - 13:24, 14:14, 15:22, 18:5, 18:16, 20:19, 21:6, 23:14, 28:5, 33:21, 37:18, 38:5, 38:7, 38:13
**upshot** [1] - 25:20
**utters** [1] - 37:23

## V

**verbatim** [1] - 19:3
**verdict** [6] - 16:2, 16:6, 16:9, 16:13, 20:1
**versus** [1] - 3:7
**virtue** [1] - 8:7
**voir** [4] - 4:10, 17:12, 17:18, 18:24

## W

**waiving** [1] - 39:13

**wants** [4] - 16:18, 19:12, 34:19, 41:2
**warranty** [1] - 8:11
**website** [1] - 16:18
**week** [2] - 20:20, 31:18
**welcome** [2] - 3:25, 4:14
**wherein** [1] - 11:21
**white** [1] - 22:11
**whole** [3] - 30:9, 30:10, 33:25
**WIAUTOMATION** [1] - 1:6
**wiAutomation** [1] - 24:18
**WiAutomation** [15] - 3:8, 5:6, 8:6, 8:9, 10:18, 11:21, 12:21, 14:7, 24:15, 26:19, 35:9, 35:13, 36:13, 38:18
**WiAutomation's** [2] - 10:11, 27:22
**WILLIAMS** [1] - 1:14
**willing** [1] - 32:1
**Wilmington** [1] - 1:10
**wise** [1] - 42:23
**withdrawn** [1] - 4:11
**witness** [5] - 15:1, 21:1, 37:23, 40:20, 42:1
**witness's** [2] - 14:8, 17:11
**witnesses** [7] - 13:14, 14:5, 14:6, 17:9, 21:2, 22:5, 23:25
**word** [2] - 19:20, 37:22
**worldwide** [1] - 23:2
**writing** [3] - 34:12, 34:13, 37:5
**wrote** [1] - 20:20

## Y

**year** [1] - 9:1
**yes"** [1] - 17:22
**YOUNG** [1] - 2:12
**Young** [2] - 3:19, 3:20

## Z

**ZARE** [1] - 2:13
**Zare** [1] - 3:20