IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCKWELL AUTOMATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> PARCOP S.R.L. d/b/a WIAUTOMATION, <br><br> Defendant. | C.A. No. 21-1238-GBW-JLH |

## ORDER

During the pre-trial conference held on July 13, 2023, the Court ordered the parties to provide supplemental letter briefing regarding the impact of the United States Supreme Court Opinion in *Abitron Austria GmbH v. Hetronic International, Inc.*, C.A. No. 21-1043, 2023 WL 4239255 (U.S. June 29, 2023) ("*Hetronic*") on the present litigation. D.I. 307. Having reviewed the parties' supplemental letter briefing (D.I. 309; D.I. 311) and for the reasons discussed below, the Court finds that Defendant Parcop S.R.L. d/b/a WiAutomation ("WiAutomation" or "Defendant") has overstated both the holding in *Hetronic* and Plaintiff Rockwell Automation, Inc.'s ("Rockwell" or "Plaintiff") intended use of the foreign conduct in the present litigation.

### I. SUMMARY OF HETRONIC

In *Hetronic*, the question presented before the Supreme Court was whether two provisions of the Lanham Act—15 U.S.C. § 1114(1)(a) and § 1125(a)(1)—apply extraterritorially. *Hetronic*, at *2. Section 1114(1)(a) prohibits the unauthorized "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services" when "such use is likely to cause confusion." Section 1125(a)(1) prohibits the "us[e] in commerce" of a protected mark that "is

1

likely to cause confusion." As discussed further below, the Supreme Court held that "§ 1114(1)(a) and § 1125(a)(1) are not extraterritorial and that the infringing 'use in commerce' of a trademark provides the dividing line between foreign and domestic applications of these provisions." *Hetronic*, at *9.

Hetronic International, Inc. ("Hetronic"), a United States company, sued six foreign parties (collectively, "Abitron") in the Western District of Oklahoma for trademark infringement under § 1114(1)(a) and § 1125(a)(1) of the Lanham Act. *Id.* at *3. Hetronic "sought damages under these provisions for Abitron's infringing acts worldwide." *Id.* A jury awarded $96 million in damages for all of Abitron's sales. *Id.* Of the infringing sales at issue, "97% were purely foreign: They were sales in foreign countries, by foreign sellers, to foreign customers, for use in foreign countries, that never reached the United States or confused U.S. consumers." D.I. 309-1, Ex. A at 3; *see also id.* at 21, 23. The district court subsequently entered a worldwide permanent injunction, which prohibited Abitron from using Hetronic's trademark anywhere in the world. *Hetronic*, at *3. Abitron appealed, and the Tenth Circuit narrowed the scope of the permanent injunction, "but otherwise affirmed the judgment, concluding that the Lanham Act extended to 'all of [Abitron's] foreign infringing conduct.'" *Id.*; *see also Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 10 F.4th 1016, 1046 (10th Cir. 2021).

Turning to the merits of the case, the Supreme Court first addressed the "longstanding principle" that whether a federal statue applies to conduct outside of the United States is a question of congressional intent. *Hetronic*, at *3 (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010)) (internal quotations omitted). The presumption against extraterritoriality refers to a "'presumption against application to conduct in the territory of another sovereign.'" *Id.* (quoting *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 119 (2013)). The Supreme Court

then summarized the two-step framework when applying the presumption against extraterritoriality. *Hetronic*, at *3-4. "At step one, [courts] determine whether a provision is extraterritorial, and that determination turns on whether 'Congress has affirmatively and unmistakably instructed that' the provision at issue should 'apply to foreign conduct.'" *Hetronic*, at *4 (quoting *RJR Nabisco, Inc. v. European Cmty*, 579 U.S. 325, 335, 337 (2016)). If the provision is not extraterritorial, courts must move to step two. *Id.* At step two, courts must determine "whether the suit seeks a (permissible) domestic or (impermissible) foreign application of the provision." *Id.* The Supreme Court further explained:

> To make that determination, courts must start by identifying the "focus" of congressional concern underlying the provision at issue. The focus of a statute is the object of its solicitude, which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate.
>
> Step two does not end with identifying statutory focus. We have repeatedly and explicitly held that courts must identify the statute's "focus" and ask whether the conduct relevant to that focus occurred in United States territory. Thus, to prove that a claim involves a domestic application of a statute, plaintiffs must establish that the conduct relevant to the statute's focus occurred in the United States.

*Id.* (cleaned up).

Turning to the facts before it, at step one, the Supreme Court found the presumption against extraterritoriality has not been rebutted. The Supreme Court reasoned that "neither provision at issue [§ 1114(1)(a) or § 1125(a)(1)] provides an express statement of extraterritorial application or any other clear indication that it is one of the 'rare' provisions that nonetheless applies abroad." *Hetronic*, at *5. Because the Supreme Court concluded § 1114(1)(a) and § 1125(a)(1) are not extraterritorial, the Supreme Court analyzed step two, which required "determining the provision's focus and then ascertaining whether Hetronic can establish that the conduct relevant to that focus occurred in the United States." *Id.* at *6 (cleaned up). The Supreme Court held that "the infringing 'use in commerce' of a trademark provides the dividing line between foreign and domestic

3

applications of these provisions." *Id.* at *9. In other words, the Supreme Court found that any domestic application of these provision turned on whether the alleged infringing "use in commerce" occurred in the United States. The Supreme Court ultimately "vacate[d] the judgment of the Court of Appeals and remand[ed] the case for further proceedings consistent" with the Supreme Court's interpretation of the Lanham Act. *Id.*

## II.   IMPACTS OF HETRONIC ON THE PRESENT LITIGATION

For the reasons discussed below, the Court finds that the Supreme Court's holding in *Hetronic* does not prohibit Rockwell's intended use of the foreign conduct in the present litigation.

First, the facts in the present action are distinguishable from the facts in *Hetronic*. Importantly, Rockwell has represented to the Court and Defendant that it "will not seek damages for foreign sales or apply the Lanham Act to foreign sales at trial." D.I. 311 at 3 (citing D.I. 311-1, Ex. 1 (Expert Report of Brett Reed) ¶¶ 42-46; D.I. 311-3 (Rebuttal Expert Report of Justin R. Blok) ¶¶ 19-20; D.I. 294, Ex. 6 (Rockwell's Statement of Intended Proof) ¶¶ 6, 15, 29, 33). In contrast, in *Hetronic*, the plaintiff sought damages for Abitron's infringing acts *worldwide*. Thus, the "focus" of Rockwell's trademark allegation is Defendant's infringing use of Rockwell's mark in commerce *in the United States*.[1]

Second, the Court disagrees with Defendant that Rockwell "can only rely on U.S. conduct to support [its] claims" or that Rockwell should be "barred from offering any 'evidence' concerning WiAtuomation's foreign conduct." D.I. 309 at 4, 6. *Hetronic* did not address the type of evidence a trademark owner may introduce to show the alleged infringing "use in commerce" occurred in the United States. Tellingly, the Supreme Court does not cite to the Federal Rules of

---

[1] Rockwell reiterated in its brief that it "is not attempting to claim damages for any of [Defendant's] European counterfeit sales." D.I. 311 at 4.

Evidence in its opinion, nor was the question of admissibility of evidence of foreign conduct in support of Lanham Act claims before the Supreme Court in *Hetronic*.

At trial, Rockwell intends to introduce evidence that Defendant has sold counterfeit Rockwell-branded products to customers in Europe as "circumstantial evidence of WiAutomation's counterfeit sales to U.S. customers." D.I. 311 at 4. According to Luca Coppola, who is the owner, director, and warehouse manager of WiAutomation, Defendant's foreign and U.S. inventory pools "are all together." *Id.* (citing D.I. 311-2, Ex. 2 at 8:16-19, 34:4-35:2). Rockwell represents that it "intends to rely on this evidence to prove that WiAutomation's inventory contains counterfeits in addition to other direct evidence of sales of counterfeit[s] . . . to U.S. customers." *Id.* Accordingly, the Court finds that *Hetronic* does not bar Rockwell from relying on its intended use of the foreign conduct in the present litigation as circumstantial evidence that WiAutomation allegedly made counterfeit sales in the United States.

### III. CONCLUSION

For the foregoing reasons, *Hetronic* does not prohibit Rockwell's intended use of the foreign conduct and the parties should be prepared to proceed with the jury trial on July 24, 2023. Defendant's request that Rockwell be "barred from relying on any evidence of foreign conduct in support of its claims," D.I. 309 at 6, under 15 U.S.C. § 1114(1)(a) and § 1125(a)(1) is denied.

Date: July 18, 2023

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE