IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCKWELL AUTOMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1238-GBW-JLH |
| | ) | |
| PARCOP S.R.L. d/b/a | ) | |
| WIAUTOMATION, | ) | |
| | ) | |
| Defendant. | ) | |

**[PROPOSED] FINAL JURY INSTRUCTIONS**

# TABLE OF CONTENTS

1.0      GENERAL INSTRUCTIONS ..........................................................................1

1.1      INTRODUCTION ..........................................................................................1

1.2      JURORS' DUTIES .......................................................................................2

1.3      EVIDENCE DEFINED ................................................................................3

1.4      DIRECT AND CIRCUMSTANTIAL EVIDENCE ...............................5

1.5      CONSIDERATION OF EVIDENCE ........................................................6

1.6      STATEMENTS OF COUNSEL .................................................................7

1.7      CREDIBILITY OF WITNESSES .............................................................8

1.8      NUMBER OF WITNESSES .....................................................................10

1.9      EXPERT WITNESSES .............................................................................11

1.10      DEPOSITION TESTIMONY ...................................................................12

1.11      USE OF INTERROGATORIES .............................................................13

1.12      EXHIBITS ..................................................................................................14

1.13      BURDENS OF PROOF ............................................................................15

1.14      USE OF NOTES ........................................................................................17

2.0      THE PARTIES AND THEIR CONTENTIONS ...................................18

2.1    THE PARTIES ............................................................................18

2.2    THE PARTIES' CONTENTIONS ...............................................19

2.3    TRADEMARK OVERVIEW .......................................................26

2.3.1  TRADEMARK INFRINGEMENT – GENERALLY ......................27

2.3.2  [PLAINTIFF'S PROPOSAL: TRADEMARK INFRINGEMENT –LIKELIHOOD OF CONFUSION].........................................29

2.4    FALSE DESIGNATION OF ORIGIN .........................................39

2.5    FALSE ADVERTISING ...............................................................40

2.6    DECEPTIVE TRADE PRACTICES ............................................43

2.7    UNFAIR COMPETITION ...........................................................48

2.8    MONETARY AWARDS ...............................................................52

2.8.1  DISGORGEMENT OF PROFITS ...............................................55

2.8.2  STATUTORY DAMAGES UNDER THE FEDERAL LANHAM ACT    58

2.8.3  COMPENSATORY DAMAGES ..................................................60

2.8.4  PUNITIVE DAMAGES ................................................................65

3.0    DELIBERATION AND VERDICT ..............................................67

**3.1**     **INTRODUCTION** ...................................................................................67

**3.2**     **UNANIMOUS VERDICT** ......................................................................68

**3.3**     **DUTY TO DELIBERATE** .....................................................................70

**3.4**     **SOCIAL MEDIA** ....................................................................................72

**3.5**     **COURT HAS NO OPINION** ...............................................................73

## 1.0   GENERAL INSTRUCTIONS

### 1.1   INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

## 1.2   JURORS' DUTIES

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

## 1.3    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played by video or read to you), the exhibits that I allowed into evidence, and the stipulations to which the parties agreed.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some

of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

You should not be concerned with whether there were any earlier proceedings in this case or, if there were, what the outcome of any such proceedings might have been. And as I have told you previously, the Court has no opinion on the matters you are being asked to decide. Make your decision based only on the evidence, as I have defined it here, and nothing else.

## 1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining. Circumstantial evidence is of no less value than direct evidence.

It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**1.5**    **<u>CONSIDERATION OF EVIDENCE</u>**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**1.6**   **STATEMENTS OF COUNSEL**

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

### 1.7    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial. You have the right to distrust such a witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional

falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

**1.8     <u>NUMBER OF WITNESSES</u>**

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

## 1.9   <u>EXPERT WITNESSES</u>

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

## 1.10   **DEPOSITION TESTIMONY**

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition. If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

**1.11   <u>USE OF INTERROGATORIES</u>**

You may have heard answers that the parties gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath, before the trial.

You must consider the parties' answers to interrogatories in the same manner as if the answers were made from the witness stand.

## 1.12  __EXHIBITS__

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room to consider as evidence for your deliberations.

The remainder of the exhibits (including charts, PowerPoint presentations and graphics) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," will not be in the jury room and have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

In some instances, certain charts and summaries may have been received into evidence to illustrate information brought out in the trial. You may use these charts and summaries as evidence, even though the underlying documents and records are not here. You should give them only such weight as you think they deserve.

## 1.13   BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

Rockwell has the burden of proving its claims and the amount of its money damages, if any, by what is called a preponderance of evidence. That means that Rockwell has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Rockwell claims is more likely true than not. To put it differently, if you were to put the evidence of Rockwell and WiAutomation concerning each issue on opposite sides of a scale, the evidence supporting Rockwell's claims would have to make the scales tip somewhat on its side in each instance. If the scale should remain equal or tip in favor of the WiAutomation, you must find for WiAutomation.

If you find that WiAutomation is liable for one or more of Rockwell's claims, then as a separate question, Rockwell has also asserted that WiAutomation's conduct was willful. Rockwell has the burden of proving this additional contention by clear and convincing evidence.

15

Clear and convincing evidence means that it is highly probable that a fact is true.  Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof is higher than "clear and convincing," but applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

### 1.14   <u>USE OF NOTES</u>

You may use notes taken during trial to assist your memory. However, as I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency I think to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

## 2.0   THE PARTIES AND THEIR CONTENTIONS

### 2.1   THE PARTIES

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

The plaintiff in this case is Rockwell Automation, Inc., which I will refer to as "Rockwell." The defendant in this case is Parcop S.R.L., doing business as WiAutomation. I will refer to it as "WiAutomation."

## 2.2    THE PARTIES' CONTENTIONS

Rockwell seeks damages against WiAutomation for trademark infringement,

[counterfeiting,] false designation of origin, and false advertising in violation of

federal law, deceptive trade practices and unfair competition under state law

[**PLAINTIFF:** "."][**Defendant:** "concerning Rockwell's industrial automation

products**]**.[1] Rockwell also contends that WiAutomation's alleged violations were

---

[1] [**PLAINTIFF**: Defendant's insertion of "concerning Rockwell's industrial
automation products" is inappropriate and does not conform with the Court's
template instruction in *Cirba*.  Exhibit 1: Final Jury Instructions *Cirba v. VMware,*
19-cv-742, Dkt. No. 1767 (D. Del. Apr. 28, 2023). It also diverges from the template
final jury instruction in *Cirba Inc. v. VMware* in a later portion which states
"**potential purchasers of goods and services in the relevant marketplace**" and
this issue is further discussed in later portions of these jury instructions.  *Id*. ("A
trademark is a word, name, symbol, or device, or any combination of these items
that indicates the source of goods. A trademark may be registered or unregistered.
Assuming that Densify proves it owns a valid and protectable trademark, your
infringement analysis is the same regardless of registration. The owner of a
trademark has the right to exclude others from using that trademark or a similar mark
that is likely to cause confusion among the ***potential purchasers of goods and
services in the relevant marketplace***. The main function of a trademark is to identify
and distinguish goods or services as the product of a particular manufacturer or
merchant and to protect its goodwill.") (hereinafter, emphasis added unless
otherwise stated).  Further, Defendant's proposal excludes relevant consumers that
were identified by Rockwell's fact witness Warren Devilbiss and its expert David
Franklyn, which include purchasers of industrial, electrical, and electronic control
products.    D.I. 147 ¶ 4("Rockwell **sells industrial, electrical, and electronic
control products** ...."); D.I. 152 ¶ 27 ("Rockwell's survey expert found that 94.81%
of his survey respondents (which included hundreds of **purchasers of industrial,
electrical, and electronic control equipment**) reported that the original
manufacturer's warranty was important or very important to their purchasing
decision....").  Applying Defendant's overly narrowed definition of consumers in
the jury instructions would invite clear error and is being done by defendant to

willful.  Finally, Rockwell contends that it is entitled to an award of WiAutomation's

profits statutory damages, compensatory damages, and punitive damages.

WiAutomation denies all of Rockwell's allegations.

    Here are the issues you must decide:

1.  Whether   WiAutomation's   has   committed   trademark   infringement

    **[Defendant:** "by selling Rockwell industrial automation products in the

    United States in a manner that injured Rockwell's goodwill,**]**[2] and if so,

    whether it was willfully done.

---

improperly trying to get this Court to adopt a definition that it will then use to make
improper arguments.]  **[DEFENDANT:** All of the trademarks at issue are on
Plaintiff's industrial automation products.  Plaintiff's phrase for the products at issue
(notably different from its expert's which improperly included "electronic control
devices" which are TASERs) is overbroad and vague, as it can be interpreted to
apply to electrical equipment, or industrial equipment, that are irrelevant to this case.
Rockwell's Complaint states "Rockwell's core business is built around **its industrial
automation products."** D.I. 1 ¶19**]**

[2]  **[PLAINTIFF:** Defendant's proposed instruction is inappropriate because it
misstates the standard for Trademark Infringement, which is a "likelihood of
confusion in the marketplace", it is inconsistent with the parties agreed upon
definitions of trademark infringement in Section 2.3.1 later in these instructions
"Trademark Infringement Generally"  and it is inconsistent with the final jury
instructions in *Cirba* at Section 6.0, which do not contain this additional proposed
language by Defendant.  Exhibit 2: Final Instructions – *Cirba Inc. v. Vmware*, 19-
cv-742, Dkt. No. 526 section 6.0(3) (D. Del. Jan. 22, 2020) ("***Whether Densify has
proven that VMware engaged in trademark infringement.***"). Defendant's proposed
instruction which inserts "industrial automation products" is also inappropriate
because it improperly narrows the universe of products and diverges from the
template final jury instruction in *Cirba* at Section 7.0 which states "potential
purchasers of ***goods  and  services*** in the relevant marketplace."   Moreover
Defendant's proposal excludes products at issue in this lawsuit as identified by

2. Whether WiAutomation committed false designation of origin **[Defendant:** "concerning the Rockwell industrial automation products that WiAutomation sells/has sold in the United States,"**]** and if so, whether it was willfully done.

3. Whether WiAutomation engaged in false advertising **[Defendant:** "concerning the Rockwell industrial automation products that

---

Plaintiff and its expert, which include industrial, electrical, and electronic control products.   D.I. 147 ¶ 4("Rockwell **sells industrial, electrical, and electronic control products** …."); D.I. 152 ¶ 27 ("Rockwell's survey expert found that 94.81% of his survey respondents (which included hundreds of **purchasers of industrial, electrical, and electronic control equipment**) reported that the original manufacturer's warranty was important or very important to their purchasing decision….").]. Deletion of Defendant's proposed language will more closely track the instruction set forth in *Cirba* and should be adopted.]   **[DEFENDANT:** WiAutomation's proposed instruction is appropriate because it sets forth this circuit's most basic concepts concerning trademark infringement in gray market cases. *Iberia Foods Corp v. Romeo*, 150 F.3d 298, 302-304 (3d. Cir. 1998); *Checkpoint Systems, Inc v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 284 (3d Cir. 2001).  Plaintiff has not identified any conceivable way that the specific reference to the only products at issue can possibly limit damages.  Nor can it. Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case.  Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products."** ( D.I. 1 ¶19). Similarly, Rockwell's website prominently advertises that it is a "global leader" in "industrial automation." To the contrary, Rockwell provides no support to show that its vague definition accurately represents the products at issue besides from the self-serving statements made by Rockwell's own employees and agents.**]**

WiAutomation sells or has sold in the United States"][3] and if so, whether

it was willfully done.

4. Whether WiAutomation engaged in deceptive trade practices **[Defendant:**

"concerning   the   Rockwell   industrial   automation   products   that

---

[3] [**PLAINTIFF:** Defendant's proposed instruction is inappropriate because it is inconsistent with the final jury instructions in *Cirba* at Section 6.0, which do not contain this additional proposed language. Exhibit 2: Final Instructions – *Cirba Inc. v. Vmware*, 19-cv-742, Dkt. No. 526 section 6.0(3) (D. Del. Jan. 22, 2020) ("***Whether Densify has proven that VMware engaged in trademark infringement***."). Defendant's proposed instruction which inserts "industrial automation products" is also inappropriate because it improperly narrows the universe of products and diverges from the template final jury instruction in *Cirba* at Section 7.0 which states "potential purchasers of ***goods and services*** in the relevant marketplace." Moreover Defendant's proposal excludes products identified by Plaintiff and its expert, which include industrial, electrical, and electronic control equipment and devices. Deletion of Defendant's proposed language will more closely track the instruction set forth in *Cirba* and should be adopted.] [**DEFENDANT**: This instruction is appropriate because of the Supreme Court's decision in *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043, limiting the reach of the Lanham Act to conduct that occurred in the United States. Plaintiff has not identified any conceivable way that the specific reference to the only products at issue can possibly limit damages. Nor can it. Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case. Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products."** (D.I. 1 ¶19). Similarly, Rockwell's website prominently advertises that it is a "global leader" in "industrial automation." To the contrary, Rockwell provides no support to show that its vague definition accurately represents the products at issue besides from the self-serving statements made by Rockwell's own employees and agents.]

WiAutomation sells/has sold in the United States"]⁴ and if so, whether it

was willfully done.

_____

⁴ **[PLAINTIFF:** Defendant's proposed instruction is inappropriate because it is inconsistent with the final jury instructions in *Cirba* at Section 6.0, which does not contain this additional proposed language.  Exhibit 2: Final Instructions – *Cirba Inc. v. Vmware*, 19-cv-742, Dkt. No. 526 section 6.0(3) (D. Del. Jan. 22, 2020) ("*Whether Densify has proven that VMware engaged in trademark infringement*.").   Defendant's proposed instruction which inserts "industrial automation products" is also inappropriate because it improperly narrows the universe of products and diverges from the template final jury instruction in *Cirba* at Section 7.0 which states "potential purchasers of *goods and services* in the relevant marketplace."  Moreover Defendant's proposal excludes products identified by Plaintiff and its expert, which include industrial, electrical, and electronic control products. D.I. 147 ¶ 4("Rockwell **sells industrial, electrical, and electronic control products** …."); D.I. 152 ¶ 27 ("Rockwell's survey expert found that 94.81% of his survey respondents (which included hundreds of **purchasers of industrial, electrical, and electronic control equipment**) reported that the original manufacturer's warranty was important or very important to their purchasing decision….")  Deletion of Defendant's proposed language will more closely track the instruction set forth in *Cirba* and should be adopted.**]   [DEFENDANT**: This instruction is appropriate because of the Supreme Court's decision in *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043, limiting the reach of the Lanham Act to conduct that occurred in the United States.   There is no indication that Delaware state law can be applied extraterritorially.    Plaintiff has not identified any conceivable way that the specific reference to the only products at issue can possibly limit damages.  Nor can it.  Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case.  Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products." (**D.I. 1 ¶19.)  Similarly, Rockwell's website prominently advertises that it is a "global leader" in "industrial automation." To the contrary, Rockwell provides no support to show that its vague definition accurately represents the products at issue besides from the self-serving statements made by Rockwell's own employees and agents.**]

5. Whether WiAutomation engaged in unfair competition **[Defendant:** "concerning the Rockwell industrial automation products that WiAutomation sells/has sold in the United States"**]**[5] and if so, whether it was willfully done.

_____

[5] **[PLAINTIFF:** Defendant's proposed instruction is inappropriate because it is inconsistent with the final jury instructions in *Cirba* at Section 6.0, which does not contain this additional proposed language. Exhibit 2: Final Instructions – *Cirba Inc. v. Vmware*, 19-cv-742, Dkt. No. 526 section 6.0(3) (D. Del. Jan. 22, 2020) ("***Whether Densify has proven that VMware engaged in trademark infringement*.**"). Defendant's proposed instruction which inserts "industrial automation products" is also inappropriate because it improperly narrows the universe of products and diverges from the template final jury instruction in *Cirba* at Section 7.0 which states "potential purchasers of ***goods and services*** in the relevant marketplace." Moreover Defendant's proposal excludes products identified by Plaintiff and its expert, which include industrial, electrical, and electronic control products. D.I. 147 ¶ 4("Rockwell **sells industrial, electrical, and electronic control products** …."); D.I. 152 ¶ 27 ("Rockwell's survey expert found that 94.81% of his survey respondents (which included hundreds of **purchasers of industrial, electrical, and electronic control equipment**) reported that the original manufacturer's warranty was important or very important to their purchasing decision….") Deletion of Defendant's proposed language will more closely track the instruction set forth in *Cirba* and should be adopted.**] [DEFENDANT**: This instruction is appropriate because of the Supreme Court's decision in *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043, limiting the reach of the Lanham Act to conduct that occurred in the United States. There is no indication Delaware state law can be applied extraterritorially. Plaintiff has not identified any conceivable way that the specific reference to the only products at issue can possibly limit damages. Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case. Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products."** (D.I. 1 ¶19.). Similarly, Rockwell's website prominently advertises that it is a "global leader" in "industrial automation." To the contrary,

6. [Whether WiAutomation sold counterfeit Rockwell-branded products in the United States, and if so, whether it was willfully done.]

7. If you decide that Rockwell has proven that WiAutomation engaged in trademark infringement, false designation of origin, false advertising, deceptive trade practices, unfair competition or counterfeiting "in the United States, the monetary award to Rockwell for those acts.

I will now provide more detailed instructions on each of the issues you must decide.

---

Rockwell provides no support to show that its vague definition accurately represents the products at issue besides from the self-serving statements made by Rockwell's own employees and agents.]

## 2.3    TRADEMARK OVERVIEW

A federal statute known as the Lanham Act protects trademark owners.  The statute prohibits the use in commerce of "any reproduction, copy, counterfeit or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods.  The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion among the potential purchasers of goods and services in the relevant marketplace.  The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant to protect its goodwill.

**Source:** *See* Exhibit 3: The Lanham Act; Exhibit 2: Final Instructions – *Cirba Inc. v. Vmware*, 19-cv-742, Dkt. No. 526 sections 7.0 and 7.3 (D. Del. Jan. 22, 2020).

### 2.3.1  <u>TRADEMARK INFRINGEMENT – GENERALLY</u>

The parties do not dispute that Rockwell is the owner of the registered trademarks at issue and that the trademarks are valid and entitled to protection.

In order to prove trademark infringement, Rockwell must prove, by a preponderance of the evidence, that WiAutomation was selling, offering for sale, or distributing products in the United States bearing a Rockwell trademark that is likely to cause confusion among **[Plaintiff:** "potential purchasers of goods and services in the relevant marketplace**] [Defendant:** "purchasers of industrial automation products"]**[6]** as to the source, affiliation, approval or sponsorship of the products.

---

[6] **[Plaintiff**: Defendant's proposed instruction "purchaser of industrial automation products" is inappropriate because it improperly narrows the universe of relevant consumers and diverges from the template final jury instruction in *Cirba Inc. v. VMware*, which states "potential purchasers of goods and services in the relevant marketplace." Exhibit 2, Final Instructions, 19-cv-742, Dkt. No. 526 section 7.4 (D. Del. Jan. 22, 2020) ("A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. A trademark may be registered or unregistered. Assuming that Densify proves it owns a valid and protectable trademark, your infringement analysis is the same regardless of registration. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion among the ***potential purchasers of goods and services in the relevant marketplace***. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill."). Moreover Defendant's proposal excludes relevant consumers that were identified by Plaintiff and its expert, which include purchasers of industrial, electrical, and electronic control equipment and devices.**] [DEFENDANT**:  Plaintiff fails to identify what relevant purchasers would be omitted from the phrase "purchaser of industrial automation products." Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are

---

TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case.  Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products." (**D.I. 1 ¶19). Similarly, Rockwell's website prominently advertises that it is a "global leader" in "industrial automation." To the contrary, Rockwell provides no support to show that its vague definition accurately represents the products at issue besides from the self-serving statements made by Rockwell's own employees and agents.**]**

### 2.3.2  [PLAINTIFF'S PROPOSAL: TRADEMARK INFRINGEMENT –LIKELIHOOD OF CONFUSION]

If you find that the products sold by WiAutomation and Rockwell in the United States contain identical trademarks but are materially different, you are to presume that consumers are likely to be confused about the quality and nature of the trademarked goods.[7]

The test of whether any of these claimed differences is material is whether consumers would likely consider any of these differences to be relevant when

---

[7]

*Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998) ("When the products sold by the alleged infringer and the trademark owner contain identical marks but ***are materially different*, *consumers are likely to be confused*** about the quality and nature of the trademarked goods.").

purchasing the product.[8],[9] The threshold for materiality is low, and the existence of

any difference, even a subtle one, that consumers would likely consider to be

_____

[8] Defendant's proposal fails to include a critical part of the instruction that the jury need not find all differences to be material, rather any difference (one or more) may be sufficient.

 *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998) citing *Societe Des Produits Nestle, SA v. Casa Helvetia*, 982 F.2d 633, 641 (1st Cir. 1992) ("We conclude that the existence of any difference between the registrant's product and the allegedly infringing gray good that consumers **would likely consider to be relevant when purchasing a product** creates a presumption of consumer confusion sufficient to support a Lanham Act claim.") [**DEFENDANT**: Plaintiff's citation to *Iberia Foods* is objectively false, Iberia Foods does not contain the quoted language.]

*Gilson on Trademarks* § 5.20 **"**If a consumer 'is **likely to consider a difference relevant when purchasing a product**,' then that difference is likely to be material."

*McCarthy on Trademarks and Unfair Competition* § 26:51.75 (5th ed. 2023) "[e]ven a slight material difference will be adequate" (citing *Zino Davidoff SA v. CVS Corp.,* 571 F.3d 238, 246 (2d Cir. 2009) ("In the context of gray-market goods, … we ***apply a low threshold of materiality***, requiring no more than a slight difference which ***consumers would likely deem relevant*** when considering a purchase of the product.").

Exhibit 5 – Corpus Juris Secundum, 87 CJS Trademark § 304, Presumptions related to confusion or deception in civil actions on trademarks. ("In a gray market goods trademark infringement case, ***a material difference*** between goods simultaneously sold in the same market under the same name ***creates a presumption of consumer confusion*** as a matter of law.").

*Hokto Kinoko Co. v. Concord Farms, Inc.,* 738 F.3d 1085, 1093 (9th Cir. 2013) ("Because the likelihood of confusion increases as the differences between products become more subtle, the ***threshold for determining a material difference is low***. The key question is whether a ***consumer is likely to consider a difference relevant*** when purchasing a product.")*.*

[9] **[PLAINTIFF:** *Rockwell Automation, Inc. v Radwell Int'l, Inc.*, which stated "("In this [Third] Circuit, ***a material difference*** between goods simultaneously sold in the

same market under the same mark ***creates a presumption of consumer confusion as a matter of law***.").]

**[DEFENDANT:** Plaintiff's assertion that a material difference is only a factor that might be relevant to a consumer is not supported by Third Circuit jurisprudence on the "material differences" test. *See e.g. Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302-304 (3d. Cir. 1998).  Notably, Plaintiff does not cite any cases within the Third Circuit for this proposition.  The Third Circuit made clear that "***the purpose of the material differences test is to determine whether the allegedly infringing goods are likely to injure the goodwill developed by the trademark owner.***" *Id.* Plaintiff's proposal further fails to instruct that such an analysis is to be done on a case by case basis, and considering the products and market at issue, *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1073 (10th Cir. 2009), that is, the sophistication of the buyers.]  Plaintiff also fails to acknowledge that a characteristic is not necessarily a material difference just because it comes from the manufacturer. *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette*, 988 F.2d 587, 591 (5th Cir. 1993).]

relevant when purchasing a product creates a presumption of a likelihood of confusion.[10]  Material differences do not need to be physical–rather, differences may be physical or nonphysical.[11]

---

[10] *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998) citing *Societe Des Produits Nestle, SA v. Casa Helvetia*, 982 F.2d 633, 641 (1st Cir. 1992), 641 (1st Cir. 1992) ("[W]hen dealing with … gray goods, a reviewing court must necessarily be concerned with subtle differences, for it is by subtle difference that consumers are most easily confused."). Thus in gray goods cases, the "***threshold of materiality is always quite low***." *Id.* In fact, "the existence of ***any difference*** ... that ***consumers would likely consider to be relevant*** when purchasing a product ***creates a presumption of consumer confusion*** sufficient to support a Lanham Act claim." *Id.* [**DEFENDANT**: Plaintiff's citation to *Iberia Foods* is objectively false, Iberia Foods does not contain the quoted language.]

Corpus Juris Secundum, 87 CJS Trademark § 304, Presumptions related to confusion or deception in civil actions on trademarks. ("The presumption of consumer confusion arises since ***the threshold of materiality*** for the difference between gray market goods and authorized goods ***is quite low***, such that the existence of ***any difference*** between the trademark owner's product and the allegedly infringing gray good that ***consumers would likely consider to be relevant*** when purchasing a product ***creates a presumption of consumer confusion***.").

[11] *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 311 (S.D.N.Y. 2007) ("Courts have found both physical and ***non-physical material differences*** to cause consumer confusion and/or loss of goodwill in gray goods cases.") (collecting cases).

Exhibit 4 - *Rockwell Automation, Inc. v Radwell Int'l, Inc.*, 15-cv-5246, 2020 US Dist. Lexis 223998, at *32 (D.N.J. Nov. 24, 2020) (finding Rockwell's ***warranty*** (a ***non-physical difference***) to be a material difference).

If you believe Rockwell has proven that any of the claimed differences is material, then you are to presume that there is a likelihood of confusion.

### 2.3.2   [DEFENDANT'S PROPOSAL: TRADEMARK INFRINGEMENT – LIKELIHOOD OF CONFUSION][12]

If you find that the products sold by WiAutomation and Rockwell in the United States contain identical trademarks but are materially different, you are to presume that consumers are likely to be confused about the quality and nature of the trademarked goods.[13]

A material difference is any difference that is likely to injure the goodwill developed by the trademark owner in the trademarked goods.[14]

---

[12] [**DEFENDANT**: WiAutomation's proposed instruction entirely relies on the pivotal Third Circuit case on "material differences," consistent with the Court's order on the parties' motions for summary judgment. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298 (3d Cir. 1998); D.I. 304, p. 19.

[13] D.I. 304 p. 19 citing *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302-03 (3d Cir. 1998)

[14] [**DEFENDANT:** D.I. 304, p. 19, citing *Iberia*, 150 F.3d at 303.] [**PLAINTIFF:** Defendant **misquotes** *Iberia* at 303 (describing "[t]he purpose of the material differences test…". *Iberia* does **not** state a "material difference is any difference . . . " as Defendant's misleading quotation says.   Instead, *Iberia* cites *Casa Helvetia*, 982 F.2d at 641, a First Circuit case, which states: "We conclude that the existence of any difference between the registrant's product and the allegedly infringing gray good that consumers **would likely consider to be relevant when purchasing a product** creates a presumption of consumer confusion sufficient to support a Lanham Act claim." [**DEFENDANT**: Plaintiff's citation to *Iberia Foods* is objectively false, Iberia Foods does not contain the quoted language.] This "would likely consider to be relevant when purchasing a product" standard is applied in courts in nearly every circuit:

- **(1ˢᵗ Circuit)** *Societe Des Produits Nestle, SA v. Casa Helvetia*, 982 F.2d 633, 641 (1st Cir. 1992

- **(2d Circuit)** citing *Zino Davidoff SA v. CVS Corp.,* 571 F.3d 238, 246 (2d Cir. 2009)

- **(3d Circuit) -** *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998) citing *Societe Des Produits Nestle, SA v. Casa Helvetia*, 982 F.2d 633, 641 (1st Cir. 1992)

- **(5ᵗʰ Circuit**) – *Mary Kay v. Keller*, 2022 WL 1063033 (N.D. Tex. Apr, 8 2022)

- **(6ᵗʰ Circuit**) – *Brilliance Audio v. Haights*, 2007 WL 188103 (6ᵗʰ Cir. 2007)

- **(7ᵗʰ Circuit**) – *Duracell v. JRS Ventures*, 2018 WL 3920617 (N.D. Ill. Aug. 16, 2018)

- **(9ᵗʰ Circuit**) - *Hokto Kinoko Co. v. Concord Farms, Inc.,* 738 F.3d 1085, 1093 (9th Cir. 2013)

- **(10ᵗʰ Circuit**) - *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1073 (10ᵗʰ Cir. 2009),

- **(11ᵗʰ Circuit**) *Davidoff v. PLD Intern.*, 263 F.3d 1297 (11ᵗʰ Cir 2001)

- **(Federal Circuit**) – *Gamut Trading v. US ITC*, 200 F.3d 775 (Fed. Cir. 1999)

- *Gilson on Trademarks* § 5.20 **"**If a consumer 'is **likely to consider a difference relevant when purchasing a product**,' then that difference is likely to be material."

- *McCarthy on Trademarks and Unfair Competition* § 26:51.75 (5th ed. 2023) "[e]ven a slight material difference will be adequate" (citing *Zino Davidoff SA v. CVS Corp.,* 571 F.3d 238, 246 (2d Cir. 2009) ("In the context of gray-market goods, … we *apply a low threshold of materiality*, requiring no more than a slight difference which *consumers would likely deem relevant* when considering a purchase of the product.").

34

### 2.3.3 [TRADEMARK INFRINGEMENT - COUNTERFEITING[15]

A counterfeit trademark is a non-genuine or unauthorized copy of a trademark. It is identical with, or substantially indistinguishable from, a registered mark.  The distribution, sale, or offer for sale of goods bearing a counterfeit mark is illegal under federal law and a form of trademark infringement referred to as "counterfeiting".

This is true even if a person merely sells or offers for sale goods bearing a counterfeit mark and plays no part in affixing or placing the counterfeit mark on the goods, or otherwise designing or manufacturing the goods. **[Defendant:** To establish trademark counterfeiting, a plaintiff must show that the defendant intentionally used the trademark knowing it was counterfeit or was wilfully blind to such use.[16]**]**

---

[15] Exhibit 6: Adapted from Final Jury Instructions - *Luxottica Grp. v. Airport Mini Mall, LLC*, 15-cv-1422, Dkt. No. 155, pp. 8 and 18. (N.D. Ga. 2017)

[16] [**PLAINTIFF**: Defendant's proposed insertion is inappropriate and would invite clear error as evidence of intent is not required to find liability under the Lanham Act.  *See Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 187 (3d Cir. 2010) ("**Evidence of a defendant's intent is not a prerequisite for finding a Lanham Act violation** ...."); *Nike Inc. v. Eastern Ports Custom Brokers, Inc.*, 2018 WL 3472628, at * 6 (D.N.J. Jul. 19, 2018) ("**Defendants' knowledge or intent is not relevant to the [counterfeit] analysis**") ("Defendants urge the Court to read in a requirement that Defendants have knowledge or intent to use a counterfeit good in commerce as an element of liability. The Court declines to do so. The statute is clear that anyone who uses the mark in commerce in such a way that may cause confusion is liable. As indicated above, the statute defining liability does not include any mental element."); *N.V.E, Inc. v. Famous*, No. 08-1633, 2009 WL 2194538, at *3 (D.N.J. July 21, 2009) ("[U]nder the Lanham Act, sellers of counterfeit products bear strict liability. In that regard, the **plaintiff does not have to prove that the defendant intended to sell counterfeit products**, or even that the defendant was

[**Plaintiff:** Any claimed lack of knowledge by WiAutomation, provides no defense.]<sup>17</sup>

---

willfully blind to the fact the goods were counterfeit.") (internal citations omitted). In addition, Defendant's insertion is not supported by the <u>Luxottica</u> sample jury instruction. *See supra fn.* 31 and Exhibit 4.] [**DEFENDANT**]: WiAutomation's proposal includes the appropriate standard for a counterfeiting claim in this District. *Astrazeneca AB v. Dr. Reddy's Labs., Inc.,* 209 F.Supp.3d 744, 755 (D. Del. 2016)("Counterfeiting has a higher standard for similarity so the "likelihood to cause confusion" standard used for infringement violations is insufficient. *Id.* Instead, ***plaintiffs must establish defendant infringed on a registered trademark and "intentionally use[d] the trademark knowing it was counterfeit or was willfully blind to such use.***"). Tellingly, Plaintiff cited this case for this exact proposition in its Summary Judgment papers. (D.I. 145, pp 13-14)("To establish trademark counterfeiting, the record must show . . . the defendant intentionally used the trademark knowing it was counterfeit or was willfully blind to such use.")]

<sup>17</sup> [**PLAINTIFF**: *See Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 187 (3d Cir. 2010) ("Evidence of a defendant's intent is not a prerequisite for finding a Lanham Act violation ...."); *Nike Inc. v. Eastern Ports Custom Brokers, Inc.*, 2018 WL 3472628, at * 6 (D.N.J. Jul. 19, 2018) ("Defendants' knowledge or intent is not relevant to the [counterfeit] analysis") ("Defendants urge the Court to read in a requirement that Defendants have knowledge or intent to use a counterfeit good in commerce as an element of liability. The Court declines to do so. The statute is clear that anyone who uses the mark in commerce in such a way that may cause confusion is liable. As indicated above, the statute defining liability does not include any mental element."); *N.V.E, Inc. v. Famous*, No. 08-1633, 2009 WL 2194538, at *3 (D.N.J. July 21, 2009) ("[U]nder the Lanham Act, sellers of counterfeit products bear strict liability. In that regard, the plaintiff does not have to prove that the defendant intended to sell counterfeit products, or even that the defendant was willfully blind to the fact the goods were counterfeit.") (internal citations omitted).] [**DEFENDANT**: WiAutomation's proposal includes the appropriate standard for a counterfeiting claim in the District of Delaware. *Astrazeneca AB v. Dr. Reddy's Labs., Inc.,* 209 F.Supp.3d 744, 755 (D. Del. 2016)("Counterfeiting has a higher standard for similarity so the "likelihood to cause confusion" standard used for infringement violations is insufficient. *Id.* Instead, **plaintiffs must establish**

If you find by a preponderance of the evidence that WiAutomation

[**DEFENDANT**: intentionally or wilfully][18] has sold or distributed a product in the

---

defendant infringed on a registered trademark and "**intentionally use[d] the trademark knowing it was counterfeit or was willfully blind to such use.**"). Tellingly, Plaintiff cited this case for this proposition in its Summary Judgment papers. (D.I. 145, pp 13-14) ("To establish trademark counterfeiting, the record must show . . . the defendant intentionally used the trademark knowing it was counterfeit or was willfully blind to such use.")]

[18] [**PLAINTIFF: PLAINTIFF**: Defendant's proposed insertion is inappropriate and would invite clear error as evidence of intent is not required to find liability under the Lanham Act. *See Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 187 (3d Cir. 2010) ("**Evidence of a defendant's intent is not a prerequisite for finding a Lanham Act violation** ...."); *Nike Inc. v. Eastern Ports Custom Brokers, Inc.*, 2018 WL 3472628, at * 6 (D.N.J. Jul. 19, 2018) ("**Defendants' knowledge or intent is not relevant to the [counterfeit] analysis**") ("Defendants urge the Court to read in a requirement that Defendants have knowledge or intent to use a counterfeit good in commerce as an element of liability. The Court declines to do so. The statute is clear that anyone who uses the mark in commerce in such a way that may cause confusion is liable. As indicated above, the statute defining liability does not include any mental element."); *N.V.E, Inc. v. Famous*, No. 08-1633, 2009 WL 2194538, at *3 (D.N.J. July 21, 2009) ("[U]nder the Lanham Act, sellers of counterfeit products bear strict liability. In that regard, the **plaintiff does not have to prove that the defendant intended to sell counterfeit products**, or even that the defendant was willfully blind to the fact the goods were counterfeit.") (internal citations omitted). In addition, Defendant's insertion is not supported by the *Luxottica* sample jury instruction. *See supra fn.* 31 and Exhibit 4.] [**DEFENDANT**: WiAutomation's proposal includes the appropriate standard for a counterfeiting claim in the District of Delaware. *Astrazeneca AB v. Dr. Reddy's Labs., Inc.,* 209 F.Supp.3d 744, 755 (D. Del. 2016)("Counterfeiting has a higher standard for similarity so the "likelihood to cause confusion" standard used for infringement violations is insufficient. *Id.* Instead, plaintiffs must establish defendant infringed on a registered trademark and "intentionally use[d] the trademark knowing it was counterfeit or was willfully blind to such use."). Plaintiff cited this case for this proposition in its Summary Judgment papers. (D.I. 145, pp 13-14)]

United States bearing a counterfeit Rockwell trademark, you are to presume that there is a likelihood of confusion and therefore trademark infringement.[19]]

---

[19] [**PLAINTIFF:**]*McCarthy on Trademarks* §25:15.50 ("If an accused use is found to be a "counterfeit," this means ***it automatically satisfies the confusing similarity test*** of traditional infringement analysis. If the accused use is so closely similar as to be a "counterfeit," then traditional likelihood of confusion analysis is not necessary. Courts assume that if the goods are so closely similar as to be regarded as "counterfeit," then a likelihood of confusion must be present.") (collecting cases).

*Corpus Juris Secundum CJS Trademark* § 304 Presumptions related to confusion or deception in civil actions on trademarks ("Under the Lanham Act, the elements of public **confusion** or deception in trademark actions, whether for infringement or unfair competition, ***may be presumed when a trademark is counterfeit*** since a counterfeit mark is inherently confusing.")

*Callmann on Unfair Competition, Trademarks and Monopolies* (4th edition) § 22:36 Counterfeiting - Civil Liability ("In a federal trademark ***counterfeiting*** case**, *likelihood of confusion is presumed***").

*Innovation Ventures, LLC v. Ultimate One Distributing Corp.,* 176 F.Supp.3d 137, 154 (E.D.N.Y. 2016) ("counterfeit marks are ***inherently confusing***").

*Gucci America, Inc. v. Duty Free Apparel, Ltd*., 286 F.Supp.2d 284, 287 (S.D.N.Y. 2003) ("***counterfeits, by their very nature, cause confusion***").

*Opticians Ass'n of Am. v. Indep. Opticians of Am., supra,* 920 F.2d 187, 195 ("[L]ikelihood of ***confusion is inevitable***, when, as in this case, the identical mark is used concurrently by unrelated entities.")

## 2.4    FALSE DESIGNATION OF ORIGIN

On Rockwell's claim for false designation of origin, Rockwell has the burden of proving by a preponderance of the evidence that WiAutomation made use of any word, description, term, name, or symbol, that "is likely to cause confusion as to:

(1) the origin of WiAutomation's goods or services; or

(2) WiAutomation's affiliation, connection, or association with Rockwell; or

(3) endorsement or approval of the goods or services by Rockwell; or that

(4) misrepresents in advertising the nature, characteristics, qualities, or origin of WiAutomation's goods or services."

[**Source:** O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions,* 6th Ed. Thomson Reuters § 159:26 False Designation of Origin and false description]

## 2.5   <u>FALSE ADVERTISING</u>

Rockwell claims that WiAutomation engaged in false advertising. To succeed on this claim, Rockwell must prove five things by a preponderance of the evidence:

1.    WiAutomation made a false or misleading statement of fact in a commercial advertisement about the nature, quality, characteristic or geographic origin of its own product **[Plaintiff:** ", service, or commercial activities"**]**. A statement is misleading if it conveys a false impression and actually misleads a **[Plaintiff:** "consumer"**]**[20] **[Defendant:** purchaser of industrial automation

---

[20] **[PLAINTIFF**: 7th Cir. Pattern Jury Instructions 13.3.1 ("[A statement is misleading if it conveys a false impression and actually misleads a ***consumer***.") Defendant's instruction "purchaser of industrial automation products" is inappropriate because it improperly narrows the universe of relevant consumers and diverges from the relevant consumers that were identified by Plaintiff and its expert, which include purchasers of industrial, electrical, and electronic control products. D.I. 147 ¶ 4("Rockwell **sells industrial, electrical, and electronic control products** …."); D.I. 152 ¶ 27 ("Rockwell's survey expert found that 94.81% of his survey respondents (which included hundreds of **purchasers of industrial, electrical, and electronic control equipment**) reported that the original manufacturer's warranty was important or very important to their purchasing decision….").] **[DEFENDANT:** Plaintiff's phrase for the products at issue (notably different from its expert's which improperly included "electronic control devices" which are TASERs) is overbroad and vague, as it can be interpreted to apply to electrical equipment, or industrial equipment, that are irrelevant to this case. Rockwell's Complaint states "Rockwell's core business is built around **its industrial automation products.**" D.I. 1 ¶19]

products"]. [**Plaintiff:** A statement can be misleading even if it is literally true or ambiguous."][21]

2.      The statement actually deceived or had the tendency to deceive a substantial segment of WiAutomation's audience.

3.      The deception was likely to influence the purchasing decisions of [**Plaintiff:** "consumers"] [Defendant: purchaser of industrial automation products"].

4.      WiAutomation caused the false statement to enter interstate commerce. A false statement enters interstate commerce if WiAutomation's product, services, or commercial activities (a) were transferred, advertised, sold across state lines, or (b) were advertised on a website accessible via the Internet[22]

[**Plaintiff:** ", or (c) WiAutomation products were imported into the United States."][23]

---

[21] [**PLAINTIFF**: 7th Cir. Pattern Jury Instructions 13.3.1 ("*A statement can be misleading even if it is literally true or ambiguous*".)]

[22] *Laurel Capital Group, Inc. v. BT Fin. Corp.*, 45 F. Supp. 2d 469, 479 (W.D. Pa. 1999) (finding that *maintaining a website satisfies the interstate commerce requirement*).

[23]      [**PLAINTIFF:**  "The Lanham Act  defines  "commerce"  to  include "all commerce which may lawfully be regulated by Congress," *id.,* para. 3, which of course  includes  the *importation* of  goods  from abroad, U.S. CONST. art. I, § 8." *Philip Morris USA, Inc. v. Lee*, 481 F. Supp. 2d 742, 748 (5th Cir. 2006); *La Fabril, S.A. v. Mi Tierra Foods, LLC*, 2021 U.S. Dist. LEXIS 242132, *11 (D.N.J. Dec. 20, 2021) (In analyzing a false advertising claim under the Lanham Act, the court found "the *goods traveled in interstate commerce because they were imported*.")]

**[Defendant:** ".".**]**

5.      Rockwell has been or is likely to be injured as a result of the false statement. Injury can include a direct diversion of sales from itself to WiAutomation or a loss of goodwill associated with its products.

If you find that Rockwell has proved each of these **[Plaintiff:** "things"**]**[24] **[Defendant**: "five elements"**]**, then you must find for Rockwell. If, on the other hand, you find that Rockwell has failed to prove any one of these **[Plaintiff:** "things"**] [Defendant**: "five elements"**]**, then you must find for WiAutomation.

---

[24] **[PLAINTIFF**: 7th Cir. Pattern Jury Instructions 13.3.1 ("If you find that Plaintiff has proved each of these ***things***, then you must find for Plaintiff. If, on the other hand, you find that Plaintiff has failed to prove any one of these ***things***, then you must find for Defendant.")**][DEFENDANT:** A more specific reference to the factors that the Jury has to consider, *i.e.* the five elements, is more likely to guarantee that the jury consider all of the factors at issue than if they were vaguely instructed to consider "things."**]**

## 2.6 <u>DECEPTIVE TRADE PRACTICES</u>

Rockwell has asserted statutory unfair competition claims under the Delaware

Deceptive Trade Practices Act ("DDTPA"), which is also known as deceptive trade

practices.

A claim for deceptive trade practices brought under the Delaware statute can

be resolved according to the same principles that govern Rockwell's federal

trademark infringement claim **[Defendant:** except that it only relates to conduct that

occurred in the State of Delaware]**[25]**.

---

[25] [**PLAINTIFF**: Defendant's proposed insertion is not supported by any sample
final jury instruction, is not supported by the language of the DDTPA statute nor
Delaware case law,and is not supported by the cited sample jury instructions in
*Cirba* (see Exhibit 2 at Section 12.0) ("If you find for Densify on its trademark
infringement claim, you should also find for Densify on its deceptive trade practice
claim. Similarly, if you find for VMware on Densify's trademark infringement
claim, you should also find for VMware on Densify's deceptive trade practice
claim.") (jury instruction not limiting to acts in Delaware).

The *Focus Financial* case cited by Defendant is clearly distinguishable.   Unlike
here, where false advertising and other wrongful acts occurred in Delaware, the
holding in *Focus Financial* extends only to "an action occurring ***exclusively*** in
another state" and the court found that "Focus Parent has ***not cited any conduct
that took place in Delaware***." *Focus Financial Partners, LLC v. Holsopple*, 250
A.3d 939, 970 (Del C. 2020). In this action, WiAutomation's deceptive trade
practices and unfair competition took place nationwide, **including in Delaware**.
*J.E. Rhoads* is on point and held that the **Delaware Deceptive Trade Practices
Act applied extraterritorially** when the wrongful conduct that was not
"exclusively" in another state and where the **wrongful conduct was
"nationwide."** *J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*, No. C.A. 83C-NO-98,
1988 WL 116423, at *3 (Del. Super. Ct. Oct. 21, 1988). Since there is no clear
situs outside of Delaware where the harm to Rockwell occurred, *JE Rhoads*

As a result, if you find for Rockwell on its trademark infringement claim [**Defendant:** based on conduct that occurred in the State of Delaware**]**, then you also should find for Rockwell on its deceptive trade practices claim.[26]

---

provides that Delaware is then the proper venue to adjudicate the wrongful acts that occurred nationwide. *See J.E. Rhoads*, 1988 WL 116423, at *4; *see also Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp.*, 702 F. Supp. 2d 266, 272 (D. Del. 2010) (finding that a nationwide commercial campaign violated both the Lanham Act and the DTPA because "proof of a Lanham Act claim would necessarily meet the requirements for a claim under the DTPA").]
[**DEFENDANT**: "Delaware law presumes that a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted. Therefore, absent clear legislative intent, it is impermissible to punish an individual under Delaware law for an action occurring exclusively in another state." *Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del C. 2020). There is no clear legislative intent for the DDTPA to apply to conduct outside of the state of Delaware. Plaintiff's long narrative fails to cite to a single case or authority to suggest that the Delaware legislature intended for the DDTPA to be applied outside of Delaware. This supports WiAutomation's contention that there is no "clear legislative intent" to allow Rockwell to "punish an individual under Delaware law for an action occurring exclusively in another state.]
[26][**PLAINTIFF:** For the same reasons in the immediately prior footnote, this proposed insert by Defendant is inappropriate. *See* Exhibit 2 - Final Instructions - *Cirba Inc. v. VMware*, 19-cv-742 Dkt. No. 526 section 7.4 (D. Del. Jan. 22, 2020) ("If you find for Densify on its trademark infringement claim, you should also find for Densify on its deceptive trade practice claim.") (not including any limitation based on conduct in Delaware)] [**DEFENDANT**: "Delaware law presumes that a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted. Therefore, absent clear legislative intent, it is impermissible to punish an individual under Delaware law for an action occurring exclusively in another state." *Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del C. 2020). There is no clear legislative intent for the DDTPA to apply to conduct outside of the state of Delaware. Plaintiff's long narrative fails to cite to a single case or authority to suggest that the Delaware legislature intended for the DDTPA to be applied outside of Delaware. This supports WiAutomation's contention that there

Separately, you may also find for Rockwell on its deceptive trade practices claim if it proves by a preponderance of the evidence that WiAutomation engaged in one (or more) of the following actions **[Defendant: in the State of Delaware]**[27]:

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

---

is no "clear legislative intent" to allow Rockwell to "punish an individual under Delaware law for an action occurring exclusively in another state.]

[27] **[PLAINTIFF:** For the same reasons stated in the prior two footnotes, this proposed insert by Defendant is inappropriate.] [**DEFENDANT**: "Delaware law presumes that a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted. Therefore, absent clear legislative intent, it is impermissible to punish an individual under Delaware law for an action occurring exclusively in another state." *Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del C. 2020).  There is no clear legislative intent for the DDTPA to apply to conduct outside of the state of Delaware.  Plaintiff's long narrative fails to cite to a single case or authority to suggest that the Delaware legislature intended for the DDTPA to be applied outside of Delaware.  This supports WiAutomation's contention that there is no "clear legislative intent" to allow Rockwell to "punish an individual under Delaware law for an action occurring exclusively in another state.]

(4) Uses deceptive representations or designations of geographic origin in connection with goods or services;

(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

(6) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) Disparages the goods, services, or business of another by false or misleading representation of fact;

(9) Advertises goods or services with intent not to sell them as advertised;

(10) Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of, price reductions; or

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

In order to prevail in an action for deceptive trade practices, Rockwell need not prove competition between the parties, any actual confusion or a misunderstanding.

**Source**: **PLAINTIFF:**  Delaware Deceptive Trade Practices Act - 6 Del. C. 1953, § 2532 (Listing Deceptive Trade Practices 1 through 12).

47

## 2.7 UNFAIR COMPETITION

Rockwell has asserted an unfair competition claim under the Delaware common law.

A claim for unfair competition can be resolved according to the same principles that govern Rockwell's federal trademark infringement claim.

As a result, if you find for Rockwell on its trademark infringement claim, false designation of origin, or false advertising claim, then you also should find for Rockwell on its unfair competition claim.

To the extent you did not find for Rockwell on its trademark claim, then you may still find for Rockwell on its unfair competition claim if it proves by a preponderance of the evidence that:

(1) Rockwell had a reasonable expectancy of entering a valid business relationship with

   [Plaintiff: "its customers in the form of product sales; and"][28]

---

[28] [**PLAINTIFF**: Exhibit 10: Final Jury Instructions – *Surgiquest, Inc. v. Lexion Med., LLC*, 14-cv-382, Dkt. No. 265 at 1710-11 (D. Del. June 27, 2017) ("First, that the plaintiff had a reasonable expectancy of entering a valid business relationship *with its customers in the form of product sales*; Next. The defendant has wrongly interfered with the relationships and the defendant's actions have defeated the plaintiffs' legitimate expectancy of entering a valid business relationship.")]

[**Defendant:**   "customers   who   bought   Rockwell   products   from WiAutomation in Delaware[29]; and"]

(2)   WiAutomation has wrongly interfered with the relationships and its actions have defeated Rockwell's legitimate expectancy of product sales [**Plaintiff:** "."]

---

[29] [**PLAINTIFF**: Defendant's proposed insertion is not supported by any sample final jury instruction, is not supported by Delaware case law, and is not supported by the cited sample jury instructions in *Surgiquest* (see Exhibit 10) ("First, that the plaintiff had a reasonable expectancy of entering a valid business relationship ***with its customers in the form of product sales***.") (*The instruction did not limit to acts in Delaware*). The *Focus Financial* case cited by Defendant is distinguishable.   The holding in *Focus Financial* extends only to "an action occurring ***exclusively*** in another state" and the court found that "Focus Parent has not cited any conduct that took place in Delaware." *Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del C. 2020). In this action, WiAutomation's deceptive trade practices and unfair competition took place nationwide, **including in Delaware**. *J.E. Rhoads* is on point and held that the Delaware Deceptive Trade Practices Act applied extraterritorially when the wrongful conduct that was not "exclusively" in another state and where the wrongful conduct was "nationwide." *J.E. Rhoads*, 1988 WL 116423, at *3. Since there is no clear situs outside of Delaware where the harm to Rockwell occurred, *JE Rhoads* provides that Delaware is then the proper venue to adjudicate the wrongful acts that occurred nationwide. *See J.E. Rhoads*, 1988 WL 116423, at *4; *see also Schering-Plough*, 702 F. Supp. 2d at 272 (finding that a nationwide commercial campaign violated both the Lanham Act and the DTPA because "proof of a Lanham Act claim would necessarily meet the requirements for a claim under the DTPA").] [**DEFENDANT:** "Delaware law presumes that a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted. Therefore, absent clear legislative intent, it is impermissible to punish an individual under Delaware law for an action occurring exclusively in another state." *Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del C. 2020). Common law unfair competition is a tort claim. *Preston Hollow Capital LLC v. Nuveen LLC* 216 A.3d 1, 14 (Del C. 2019).  For tort claims, Delaware applies the law of the place where the misconduct primarily occurred. *Eureka Resources, LLC v. Range Resources-Appalachia, LLC* 62 A.3d 1233, 1236, n.20 (Del. Sup. C. 2012)]

## 2.8 WILLFUL CONDUCT AS TO ANY CLAIM

Rockwell need not prove that WiAutomation intended to cause confusion in order for Rockwell to succeed on its claims. However, there are certain post-trial issues for which it will be important for the Court to know the extent of WiAutomation's willful conduct, if any.

If you find for Rockwell on any of its claims for trademark infringement, false advertising, false designation of origin, deceptive trade practices, or unfair competition, you must also determine whether Rockwell has proven by clear and convincing evidence that WiAutomation's conduct was willful.

WiAutomation acted willfully if it had an intent to infringe, or if it had a deliberate disregard of Rockwell's rights, [**PLAINTIFF:** or if it had an aura of indifference as to Rockwell's rights.[30]]   Willfulness can be presumed if

---

[30] **[PLAINTIFF]** *SecuraComm Consulting Inc. v. Securacom Inc.,* 166 F.3d 182, 187 (3d Cir.1999) ("[W]illful infringement … involves an ***intent to infringe*** *or a **deliberate disregard of a mark holder's rights**.* The Second Circuit has aptly described willful infringement as involving "***an aura of indifference*** to plaintiff's rights….") *superseded by statute on other grounds as stated in Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, 173–76 (3d Cir. 2005). Fourteen courts in this Third Circuit refer to the Third Circuit precedent in *SecuraComm* for the "aura of indifference" standard. **[DEFENDANT]** This is not the standard in the Third Circuit. As noted in Plaintiff's fn 35, this is the Second Circuit's standard.

Exhibit 7: Jury Instructions - *Brand Marketing Group v. Intertek,* 12-cv-1572, Dkt. No. 178 p. 30 (W.D. Pa. Aug. 27, 2013) ("If you find that Brand infringed Intertek's trademark, you must also determine whether Intertek NA has proven that, at the time Brand infringed the trademark, Brand acted willfully. Brand acted willfully ***if it***

WiAutomation continued its wrongful conduct after being given notice by Rockwell of the alleged wrongful conduct.[31]

---

*knew* that it was infringing Intertek NA's trademark **or** if it *acted with indifference* to Intertek NA's trademark rights.")

[31] Exhibit 8: *New Balance Athletics, Inc. v. USA New Bunren Int'l. Co. Ltd. LLC,* 2020 U.S. Dist. LEXIS 170906, at *6 (D. Del. Sept. 18, 2020) ("***Willfulness can be inferred*** by the fact that a ***defendant continued infringing*** behavior ***after being given notice***."); *Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002) ("Willfulness can be inferred" when defendant continued to sell counterfeit products "after the summons and complaint were served upon defendants").

## 2.8 __MONETARY AWARDS__

If you find for Rockwell on any of its claims, then you should consider the amount of money to award to Rockwell if any.

[**Plaintiff**: "This should include (1) any profits that WiAutomation made because of its infringement, false advertising, false designation of origin, or unfair competition in the United States; (2) any statutory damages for counterfeiting; (3) any compensatory damages that Rockwell sustained because of WiAutomation's infringement, false advertising, false designation of origin, deceptive trade practices or unfair competition in the United States; and (4) punitive damages, if any, to be awarded."][32]

[**Defendant**: "The amount to be awarded will be left to your discretion, and be supported with a reasonable level of certainty by evidence in the record. You may not speculate as to the amount of monetary damages. Your analysis may

---

[32] [**PLAINTIFF**: Contrary to Defendant's assertions below, Plaintiff's proposed instruction does not ignore any Supreme Court authority and ties the monetary award to conduct "in the United States". The purpose of this section is to act as a roadmap for the remedy section that follows and should introduce the jury to the remedies that follow in in the jury instructions at Sections 2.8.1 through 2.8.4. In addition, Defendant's proposed instruction leaves out some of the claimed remedies, including Plaintiff's claim for statutory damages and punitive damages.]
[**DEFENDANT:** This instruction is improper because it fails to instruct the jury on the degree of certainty to which damages much need to be established. It is critical to inform the jury that they cannot speculate, but rather, any damages award they decide must be supported with a reasonable level of certainty by evidence in the record.]

include any statutory damages for counterfeiting and any monetary damages that Rockwell actually sustained because of WiAutomation's infringement, false advertising, false designation of origin, deceptive trade practices or unfair competition in the United States. You must find that Rockwell has proven by the preponderance of the evidence that WiAutomation actually confused purchasers in order to award damages for false advertising and false designation of origin."**]**

**[Plaintiff:** Surveys results can be evidence of actual confusion.**]**[33] **[DEFENDANT:**

---

[33] **[PLAINTIFF**: Survey results are deemed evidence of actual confusion. *See NFL Props. v. N.J. Giants, Inc.,* 637 F. Supp. 507, 513, 517-518 (D.N.J. 1986) (finding actual confusion based on a consumer survey); *see also Mut. Of Omaha Ins. Co. v. Novak,* 836 F.2d 397, 400 (8th Cir. 1987), *cert. denied,* 488 U.S. 933, 102 (1988) ("As to incidents of actual confusion, Mutual produced evidence of actual confusion in the form of a survey .... We consider this appropriate, for surveys are often used to demonstrate actual consumer confusion." (citing *PPX Enters. v. Audiofidelity Enters.,* 818 F.2d 266, 271 (2d Cir. 1987))); *accord Novartis Consumer Health, Inc. v. J & J Merck Consumer Pharm. Co.,* 290 F.3d 578, 594 (3d Cir. 2002) ("[S]urvey evidence of 15% confusion is sufficient to demonstrate actual confusion.") Defendant's proposal in the Pre-Trial Order submission in this case included an instruction that Plaintiff could obtain "**any net profits that WiAutomation** made from United States sales of Rockwell products because of infringement, false advertising, false designation of origin, or unfair competition...." The Defendant's proposal, in addition, is inappropriate because it does not include a correct summary of the monetary awards that Rockwell is seeking in the subsequent jury instruction sections. Specifically, the instruction fails to include "punitive damages". The instruction is also confusing because it inserts the word "net" before profits, which is not what is stated in the statute, which states that plaintiff is entitled to "recover (1) defendant's profits". 15 U.S.C. § 1117. Defendant's insertions and deletions in this section are inconsistent with the final jury instructions **Exhibit 11**: Jury Instructions - *Trust ID v. Next Caller,* 18-cv-172, Dkt. No. 295 p.47 (D. Del. July 16, 2021)] [**DEFENDANT**: Parkway Baking Co. v. Freihover Baking Co., 255 F.2d. 641, 648 (3d. Cir. 1958) ("[A] plaintiff in order to

A survey can serve as circumstantial evidence of confusion but only if the survey replicates the real world setting in which instances of actual confusion would occur."][34]

_____

make out a cause of action for damages under Section 43(a) must show not only that the defendant's advertisement is false but also that this falsification actually deceives a portion of the buying public.); Caredx, Inc. v. Natera, Inc., Ca No. 19-66-CFC "Actual deception, however, must still be proven to establish damages for a Lanham Act violation, even if based on an unambiguous and literally false advertisement."( Trustid, Inc. v. Next Caller, Inc. 2023 WL 2298748, at *3 (Fed. Cir. Mar. 1, 2023)(quotation marks omitted)("for cases involving monetary damages, there must be a showing of some customer reliance on the false advertisement.").]

[34] *Componentone, L.L.C. v. Componentart*, 2008 WL 4790661 (W.D.P.A. October 27, 2008)*citing Urban Outfitters v. BCBG Max Azria Group, Inc.*, 511 F.Supp. 2d 482, 498 (E.D.Pa. 2007)

### 2.8.1  [LIMITING INSTRUCTIONS]

[*PARTIES ARE MEETING AND CONFERRING ON ANY POTENTIAL LIMITING INSTRUCTION RELATED TO A SIDEBAR THAT OCCURRED ON 7/26/2023 AND WILL SUBMIT BY MIDNIGHT TONIGHT*]

### 2.8.2  [PLAINTIFF: DISGORGEMENT] OF PROFITS

A trademark owner may recover an infringer's profits attributable to the trademark infringement, false advertising, false designation of origin, or unfair competition claims. Profit is determined by deducting expenses from gross revenue. Gross revenue is all the money the infringer received due to its use of the trademarks in question in the United States.  The trademark owner is required only to prove the infringer's gross revenue from infringement in the United States.[35]  The infringer is required to prove any expenses that it argues should be deducted in determining its profits.  Rockwell is entitled to recover WiAutomation's total profits from WiAutomation's wrongful conduct, unless WiAutomation proves that a portion of the profit is due to factors other than the wrongful conduct.[36]

---

[35] Inclusion of this proposal does not waive Defendant's position that disgorgement of profits is not a proper jury issue in this case.

[36] [**PLAINTIFF:** Exhibit 9: Final Instructions - *American Cruise Lines, Inc. v. HMS American Queen Steamboat Co. LLC*, 13-cv-324, Dkt. No. 340, Section 10.2 (D. Del. 2019) ("A trademark owner may recover an infringer's profits attributable to the infringement. Profit is determined by deducting expenses from gross revenue. Gross revenue is all the money the infringer received due to its use of the trademarks in question. The trademark owner is required only to prove the infringer's gross revenue. The infringer is required to prove any expenses that it argues should be

If you find that the amount of gross revenue from WiAutomation's sales in the United States cannot be determined precisely due to a lack of records, you may reach a reasoned approximation, resolving any doubts against WiAutomation.

Expenses are all costs incurred by WiAutomation in producing the gross revenue in the United States. WiAutomation has the burden of proving the expenses by a preponderance of the evidence. WiAutomation also has the burden of demonstrating how any cost contributed to the sale of a Rockwell-branded product. Expenses cannot be speculative, and you should reject any expense if you find that WiAutomation failed to properly substantiate and document each such expense.

If the wrongful conduct has been found to be willful by clear and convincing evidence, you should give extra scrutiny to the categories of overhead expenses claimed by WiAutomation to ensure that each category is directly and validly

---

deducted in determining its profits. A trademark owner is entitled to recover the infringer's total profits from its use of the trademarks in question, unless the infringer proves that a portion of the profit is due to factors other than the use of the trademarks in question."). Contrary to Defendant's suggestion, this proposed instruction does not ignore Supreme Court authority and is consistent with Third Circuit precedent and sample jury instructions in Delaware.] [**DEFENDANT** Plaintiff's instruction ignores clear Supreme Court Authority that the Lanham Act is limited to conduct that occurred in the United States. *Abitron Austria GmbH et al. v. Hetronic International Inc.*, No. 21-1043. Plaintiff's proposal is improper because it fails to specify that the damages must relate to improperly obtained profits obtained from conduct in the United States.**]**

connected to the sale of the products.  You will subtract the proven expenses from

the gross revenue to determine the total profit that should awarded to Rockwell.[37]

---

[37] The parties submitted this instruction previously in the pre-trial order and Plaintiff relied on that in presenting its case.  Defendant should not be permitted to change the previously agreed upon language throughout this section.

### 2.8.3  <u>STATUTORY DAMAGES UNDER THE FEDERAL LANHAM ACT</u>

[**PLAINTIFF**: After you have made your determinations regarding WiAutomation's profits], if you found WiAutomation liable for counterfeiting in the United States you will then proceed to the second category of recovery and determine an appropriate amount of statutory damages.  [**PLAINTIFF**: This is a separate determination from the findings that you made regarding an award of profits and should not be affected by whatever amount of profits you determined.]  You will make the statutory damages determination by applying the following instructions.

You must first count the number of trademarks that were counterfeited in the United States.

If you believe WiAutomation's acts were willful, then for each trademark that was counterfeited, Rockwell is entitled to an award between $1000 and $2 million. So, if three (3) marks were counterfeited, Rockwell would be entitled to an award between $3,000 and $6 million.

If you believe WiAutomation's acts were not willful, then for each trademark that was counterfeited, Rockwell is entitled to an award between $1,000 and $200,000.  So if three (3) marks were counterfeited, Rockwell would be entitled to an award between $3,000 and $600,000.

In determining what amount of statutory damages is appropriate, you should consider factors such as (1) the expenses saved, if any, and the profits reaped, if any;

(2) the revenues lost by Rockwell, if any; (3) the value of the trademark; (4) the deterrent effect on others besides WiAutomation; (5) whether WiAutomation's conduct was innocent or willful; (6) whether WiAutomation has cooperated in providing particular records from which to assess the value of the infringing materials products; and (7) the potential for discouraging WiAutomation.[38]

---

[38] 15 U.S.C. § 1117(c)(1); Exhibit 12: Court's revised Jury Instructions - *Tiffany v. Costco,* 13cv1041 DKT 345 p.23 (S.D.N.Y. Sept. 27, 2016).

## 2.8.4  COMPENSATORY DAMAGES[39]

In addition to WiAutomation's profits and statutory damages, if you find for Rockwell on its trademark infringement, [**PLAINTIFF:** false advertising, false designation of origin] deceptive trade practices or unfair competition claim, you must determine Rockwell's compensatory damages resulting from WiAutomation's wrongful conduct in the United States .[40]  [**DEFENDANT**: If you find Rockwell proved, by the preponderance of the evidence, that WiAutomation actually confused purchasers, you must determine Rockwell's compensatory damages for false advertising and false designation of origin."][**Plaintiff:** Survey results are deemed evidence of actual confusion.][41]  [**DEFENDANT:** A survey can serve as

---

[39] [PLAINTIFF: Defendant's insertions and deletions in this section are inconsistent with the final jury instructions  **Exhibit 11**: Jury Instructions - *Trust ID v. Next Caller,* 18-cv-172, Dkt. No. 295 p.47 (D. Del. July 16, 2021)]

[41] [**Plaintiff:** Survey results are deemed evidence of actual confusion. *See NFL Props. v. N.J. Giants, Inc.,* 637 F. Supp. 507, 513, 517-518 (D.N.J. 1986) (finding actual confusion based on a consumer survey); *see also Mut. Of Omaha Ins. Co. v. Novak,* 836 F.2d 397, 400 (8th Cir. 1987), *cert. denied,* 488 U.S. 933, 102 (1988) ("As to incidents of actual confusion, Mutual produced evidence of actual confusion in the form of a survey .... We consider this appropriate, for surveys are often used to demonstrate actual consumer confusion." (citing *PPX Enters. v. Audiofidelity Enters.,* 818 F.2d 266, 271 (2d Cir. 1987))); *accord Novartis Consumer Health, Inc. v. J & J Merck Consumer Pharm. Co.,* 290 F.3d 578, 594 (3d Cir. 2002) ("[S]urvey evidence of 15% confusion is sufficient to demonstrate actual confusion."). Defendant's insertions and deletions in this section are inconsistent with the final jury instructions  **Exhibit 11**: Jury Instructions - *Trust ID v. Next Caller,* 18-cv-172, Dkt. No. 295 p.47 (D. Del. July 16, 2021)] [**Defendant:** Parkway Baking Co. v. Freihover Baking Co., 255 F.2d.

circumstantial evidence of confusion but only if the survey replicates the real world setting in which instances of actual confusion would occur."][42]

This is a separate determination from the findings that you made regarding WiAutomation's profits and statutory damages

Rockwell has the burden of proving compensatory damages by a preponderance of the evidence.  [**DEFENDANT**: Rockwell must prove, by the preponderance of the evidence, that WiAutomation actually confused purchasers in order to award damages for false advertising and false designation of origin."]

."][**Plaintiff:** Survey results are deemed evidence of actual confusion.][43]

_____

641, 648 (3d. Cir. 1958)  ("[A] plaintiff in order to make out a cause of action for damages under Section 43(a) must show not only that the defendant's advertisement is false but also that this falsification actually deceives a portion of the buying public.); Caredx, Inc. v. Natera, Inc., Ca No. 19-66-CFC "Actual deception, however, must still be proven to establish damages for a Lanham Act violation, even if based on an unambiguous and literally false advertisement."( Trustid, Inc. v. Next Caller, Inc. 2023 WL 2298748, at *3 (Fed. Cir. Mar. 1, 2023)(quotation marks omitted)("for cases involving monetary damages, there must be a showing of some customer reliance on the false advertisement.").]

[42] *Componentone, L.L.C. v. Componentart*, 2008 WL 4790661 (W.D.P.A. October 27, 2008)*citing Urban Outfitters v. BCBG Max Azria Group, Inc.*, 511 F.Supp. 2d 482, 498 (E.D.Pa. 2007)

[43] [**Plaintiff:** Survey results are deemed evidence of actual confusion. *See NFL Props. v. N.J. Giants, Inc.,* 637 F. Supp. 507, 513, 517-518 (D.N.J. 1986) (finding actual confusion based on a consumer survey); *see also Mut. Of Omaha Ins. Co. v. Novak,* 836 F.2d 397, 400 (8th Cir. 1987), *cert. denied,* 488 U.S. 933, 102 (1988) ("As to incidents of actual confusion, Mutual produced evidence of actual confusion in the form of a survey .... We consider this appropriate, for

[**DEFENDANT:** A survey can serve as circumstantial evidence of confusion but only if the survey replicates the real world setting in which instances of actual confusion would occur."][44]

Compensatory damages means the amount of money which will reasonably and fairly compensate the Rockwell for any injury you find was caused by WiAutomation's wrongful conduct [**DEFENDANT:** in the United States].

[**PLAINTIFF:** You should consider the following compensatory damages:

(i)     the injury or loss to Rockwell's reputation;

(ii)    the injury or loss to Rockwell's goodwill;

---

surveys are often used to demonstrate actual consumer confusion." (citing *PPX Enters. v. Audiofidelity Enters.,* 818 F.2d 266, 271 (2d Cir. 1987))); *accord Novartis Consumer Health, Inc. v. J & J Merck Consumer Pharm. Co.,* 290 F.3d 578, 594 (3d Cir. 2002) ("[S]urvey evidence of 15% confusion is sufficient to demonstrate actual confusion.") Defendant's insertions and deletions in this section are inconsistent with the final jury instructions  **Exhibit 11**: Jury Instructions - *Trust ID v. Next Caller,* 18-cv-172, Dkt. No. 295 p.47 (D. Del. July 16, 2021)] [**Defendant:** Parkway Baking Co. v. Freihover Baking Co., 255 F.2d. 641, 648 (3d. Cir. 1958)  ("[A] plaintiff in order to make out a cause of action for damages under Section 43(a) must show not only that the defendant's advertisement is false but also that this falsification actually deceives a portion of the buying public.); Caredx, Inc. v. Natera, Inc., Ca No. 19-66-CFC "Actual deception, however, must still be proven to establish damages for a Lanham Act violation, even if based on an unambiguous and literally false advertisement."( Trustid, Inc. v. Next Caller, Inc. 2023 WL 2298748, at *3 (Fed. Cir. Mar. 1, 2023)(quotation marks omitted)("for cases involving monetary damages, there must be a showing of some customer reliance on the false advertisement.").]

[44] *Componentone, L.L.C. v. Componentart*, 2008 WL 4790661 (W.D.P.A. October 27, 2008)*citing Urban Outfitters v. BCBG Max Azria Group, Inc.*, 511 F.Supp. 2d 482, 498 (E.D.Pa. 2007)

    (iii)    any lost profits that Rockwell would have earned but for WiAutomation's wrongful conduct;

    (iv)    the expense of preventing customers from being deceived; and

    (v)    the cost of future corrective advertising reasonably required to correct public confusion caused by WiAutomation's wrongful conduct.]**]**

In measuring the harm to Rockwell's goodwill or reputation, you should consider Rockwell's expenditures in building its reputation to estimate the harm to its reputation after WiAutomation's bad acts **[Plaintiff** ."]**[45]** **[Defendant:** ", supported by evidence in the record."**][Plaintiff:** "The amount of Rockwell's lost profits may be based on a reasonable estimate supported by the evidence.**[46]**

    **[Plaintiff:** WiAutomation's financial condition must not be considered in assessing compensatory damages."**[47]**

---

[45] [**PLAINTIFF:** Exhibit 11: Jury Instructions - *Trust ID v. Next Caller,* 18-cv-172, Dkt. No. 295 p.47 (D. Del. July 16, 2021) ("In measuring the harm to TRUSTID's goodwill or reputation, you should consider TRUSTID's expenditures in building its reputation to estimate the harm to its reputation after Next Caller's bad acts.")]

[46] [**PLAINTIFF**: *Bracco v. Amersham,* 627 F.Supp.2d 384, 490-91 (D.N.J. 2009) ("When quantifying lost profits under the Lanham Act, the Court may "***make a just and reasonable estimate of the damage based on the relevant data*** and act upon probable and inferential, as well as direct and positive proof"; "courts have been inclined to use 'limited speculation' in determining an award where it is difficult to ascertain the exact amount of damages as a result of the defendant's violative conduct.").]

[47] [**PLAINTIFF:** *Pattern Jury Instructions for Civil Practice in the Superior Court of the State of Delaware* – Del. P.J.I. Civ. § 22.27 (2000) ("[*Defendant's name*]'s financial condition must not be considered in assessing compensatory damages.")]

### 2.8.5  PUNITIVE DAMAGES

If you found for Rockwell on its common law unfair competition claim and awarded Rockwell its lost profits or other compensatory damages, you must determine what punitive damages, if any, to award to Rockwell.

Punitive damages are different from compensatory damages.  Compensatory damages are awarded to compensate Rockwell for the injury suffered.  Punitive damages, on the other hand, are awarded in addition to compensatory damages

You may award punitive damages to punish a party for outrageous conduct and to deter a party, and others like it, from engaging in similar conduct in the future. To award punitive damages, you must find by a preponderance of the evidence that WiAutomation acted intentionally or recklessly.  Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

Intentional conduct means it is the person's conscious object to engage in conduct of that nature.  Reckless conduct is a conscious indifference that amount to an "I don't care" attitude.  Reckless conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that it knows or should know that there is an eminent likelihood of harm that can result.  Each requires that WiAutomation foresee that its conduct threatens a particular harm to another.

The law provides no fixed standards for the amount of punitive damages.

In determining any award of punitive damages, you may consider the nature of WiAutomation's conduct and the degree to which the conduct was reprehensible. Finally, you may assess an amount of damages that will deter WiAutomation and others like it from similar conduct in the future. You may consider WiAutomation's financial condition when evaluating deterrence. Any award of punitive damages must bear a reasonable relationship to Rockwell's compensatory damages. If you find that Rockwell is entitled to an award of punitive damages, state the amount of punitive damages separately on the verdict form.[48]

---

[48] Pattern Jury Instructions for Civil Practice in the Superior Court of the State of Delaware – Del. P.J.I. Civ. § 22.27 (2000)

## 3.0    DELIBERATION AND VERDICT

### 3.1    INTRODUCTION

I have concluded the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

## 3.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous **[Plaintiff:** ".**"]**[49] **[Defendant:** ".  In the event you do not reach a unanimous agreement, you must notify the Court without completing the jury verdict sheet and the Court will instruct you on how to proceed."**]**

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

---

[49] **[PLAINTIFF**: Defendant's proposed instruction improperly inserts extra language that is not included in this Court's template instruction found in *Cirba*. Exhibit 1: Adapted from Final Jury Instructions *Cirba v. VMware,* 19-cv-742, Dkt. No. 1767 at 16.2 (D. Del. Apr. 28, 2023) ("Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. ***Your verdict must be unanimous.***")**]**

A form of verdict has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and [Plaintiff: "when you have reached"][50] [Defendant "if you reach a"] unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the Courtroom and my deputy will read aloud your verdict. Place the completed verdict sheet in the envelope we will give you. Do not show the completed verdict form to anyone or share it with anyone until you are in the Courtroom.

It is proper to add the caution that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

---

[50] [**PLAINTIFF**: Defendant's proposed instruction improperly inserts extra language that is not included in this Court's template instruction found in *Cirba*. Exhibit 1: Adapted from Final Jury Instructions *Cirba v. VMware,* 19-cv-742, Dkt. No. 1767 at 16.2 (D. Del. Apr. 28, 2023) ("***when you have reached*** unanimous agreement as to your verdict")]

### 3.3   DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that-your own vote **[Plaintiff:** ".   It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience."**]**[51] **[**Defendant: "."**]**

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

---

[51] [**PLAINTIFF**: Defendant's proposed instruction improperly removes language from this Court's template instruction found in *Cirba*.  Exhibit 1: Adapted from Final Jury Instructions *Cirba v. VMware,* 19-cv-742, Dkt. No. 1767 at 16.3 (D. Del. Apr. 28, 2023) ("But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that- your own vote**.** *It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience*")]

Listen carefully to what the other jurors have to say, and then decide for yourself.

### 3.4    <u>**SOCIAL MEDIA**</u>

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, Blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 3.5    <u>COURT HAS NO OPINION</u>

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.