# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCKWELL AUTOMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1238-GBW-JLH |
| | ) | |
| PARCOP S.R.L. d/b/a | ) | |
| WIAUTOMATION, | ) | |
| | ) | |
| Defendant. | ) | |

## FINAL JURY INSTRUCTIONS

## TABLE OF CONTENTS

1.0   GENERAL INSTRUCTIONS ............................................................. 1

1.1   INTRODUCTION ....................................................................... 1

1.2   JURORS' DUTIES ...................................................................... 2

1.3   EVIDENCE DEFINED ................................................................ 3

1.4   DIRECT AND CIRCUMSTANTIAL EVIDENCE ........................ 5

1.5   CONSIDERATION OF EVIDENCE ............................................ 6

1.6   STATEMENTS OF COUNSEL ................................................... 7

1.7   CREDIBILITY OF WITNESSES ................................................ 8

1.8   NUMBER OF WITNESSES ....................................................... 10

1.9   EXPERT WITNESSES ............................................................... 11

1.10  DEPOSITION TESTIMONY ...................................................... 12

1.11  USE OF INTERROGATORIES .................................................. 13

1.12  EXHIBITS ................................................................................. 14

1.13  BURDENS OF PROOF .............................................................. 15

1.14  USE OF NOTES ........................................................................ 17

2.0   THE PARTIES AND THEIR CONTENTIONS ......................... 18

2.1     THE PARTIES ....................................................................... 18

2.2     THE PARTIES' CONTENTIONS ..................................................... 19

2.3     TRADEMARK OVERVIEW ........................................................... 21

2.3.1   TRADEMARK INFRINGEMENT – GENERALLY ................... 22

2.3.2   TRADEMARK INFRINGEMENT – LIKELIHOOD OF

        CONFUSION ........................................................................... 23

2.4     FALSE DESIGNATION OF ORIGIN ............................................. 25

2.5     FALSE ADVERTISING ............................................................... 26

2.6     DECEPTIVE TRADE PRACTICES ............................................... 28

2.7     UNFAIR COMPETITION ............................................................ 31

2.8     WILLFUL CONDUCT AS TO ANY CLAIM ............................... 32

2.9     MONETARY AWARDS .............................................................. 33

2.9.1   DISGORGEMENT OF PROFITS ................................................ 34

2.9.2   STATUTORY DAMAGES UNDER THE FEDERAL LANHAM

        ACT ..................................................................................... 36

2.9.3   COMPENSATORY DAMAGES .................................................. 38

2.9.4   PUNITIVE DAMAGES ............................................................. 40

**3      DELIBERATION AND VERDICT**.................................................. **42**

**3.1      INTRODUCTION**.......................................................................... **42**

**3.2      UNANIMOUS VERDICT** ............................................................. **43**

**3.3      DUTY TO DELIBERATE**.............................................................. **45**

**3.4      SOCIAL MEDIA** ........................................................................... **46**

**3.5      COURT HAS NO OPINION**......................................................... **47**

## 1.0   GENERAL INSTRUCTIONS

### 1.1   INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

## 1.2   **JURORS' DUTIES**

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

## 1.3   **EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played by video or read to you), the exhibits that I allowed into evidence, and the stipulations to which the parties agreed.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some

of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

You should not be concerned with whether there were any earlier proceedings in this case or, if there were, what the outcome of any such proceedings might have been. And as I have told you previously, the Court has no opinion on the matters you are being asked to decide. Make your decision based only on the evidence, as I have defined it here, and nothing else.

## 1.4   DIRECT AND CIRCUMSTANTIAL EVIDENCE

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining. Circumstantial evidence is of no less value than direct evidence.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.5   **CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 1.6   <u>STATEMENTS OF COUNSEL</u>

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

## 1.7    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial. You have the right to distrust such a witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional

8

falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

## 1.8    NUMBER OF WITNESSES

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

## 1.9   **EXPERT WITNESSES**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

## 1.10   **DEPOSITION TESTIMONY**

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition. If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

## 1.11   <u>USE OF INTERROGATORIES</u>

You may have heard answers that the parties gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath, before the trial.

You must consider the parties' answers to interrogatories in the same manner as if the answers were made from the witness stand.

## 1.12 **EXHIBITS**

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room to consider as evidence for your deliberations.

The remainder of the exhibits (including charts, PowerPoint presentations and graphics) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," will not be in the jury room and have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

In some instances, certain charts and summaries may have been received into evidence to illustrate information brought out in the trial. You may use these charts and summaries as evidence, even though the underlying documents and records are not here. You should give them only such weight as you think they deserve.

## 1.13  **BURDENS OF PROOF**

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

Rockwell has the burden of proving its claims and the amount of its money damages, if any, by what is called a preponderance of evidence. That means that Rockwell has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Rockwell claims is more likely true than not. To put it differently, if you were to put the evidence of Rockwell and WiAutomation concerning each issue on opposite sides of a scale, the evidence supporting Rockwell's claims would have to make the scales tip somewhat on its side in each instance. If the scale should remain equal or tip in favor of the WiAutomation, you must find for WiAutomation.

If you find that WiAutomation is liable for one or more of Rockwell's claims, then as a separate question, Rockwell has also asserted that WiAutomation's conduct was willful. Rockwell has the burden of proving this additional contention by clear and convincing evidence.

Clear and convincing evidence means that it is highly probable that a fact is true. Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof is higher than "clear and convincing," but applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

### 1.14   <u>USE OF NOTES</u>

You may use notes taken during trial to assist your memory. However, as I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency I think to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

## 2.0   **THE PARTIES AND THEIR CONTENTIONS**

### 2.1   **THE PARTIES**

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

The plaintiff in this case is Rockwell Automation, Inc., which I will refer to as "Rockwell." The defendant in this case is Parcop S.R.L., doing business as WiAutomation. I will refer to it as "WiAutomation."

## 2.2   **THE PARTIES' CONTENTIONS**

Rockwell seeks damages against WiAutomation for trademark infringement, counterfeiting, false designation of origin, and false advertising in violation of federal law, deceptive trade practices and unfair competition under state law. Rockwell also contends that WiAutomation's alleged violations were willful. Finally, Rockwell contends that it is entitled to an award of WiAutomation's profits statutory damages, compensatory damages, and punitive damages.   WiAutomation denies all of Rockwell's allegations.

Here are the issues you must decide:

1. Whether WiAutomation has committed trademark infringement in the United States, and if so, whether it was willfully done.

2. Whether WiAutomation committed false designation of origin in the United States, and if so, whether it was willfully done.

3. Whether WiAutomation engaged in false advertising in the United States, and if so, whether it was willfully done.

4. Whether WiAutomation engaged in deceptive trade practices in the United States, and if so, whether it was willfully done.

5. Whether WiAutomation engaged in unfair competition in the United States, and if so, whether it was willfully done.

6. Whether WiAutomation sold counterfeit Rockwell-branded products in the United States, and if so, whether it was willfully done.

7. If you decide that Rockwell has proven that WiAutomation engaged in trademark infringement, false designation of origin, false advertising, deceptive trade practices, unfair competition or counterfeiting in the United States, then Rockwell should be monetarily awarded for those acts.

I will now provide more detailed instructions on each of the issues you must decide.

## 2.3   **TRADEMARK OVERVIEW**

A federal statute known as the Lanham Act protects trademark owners.  The statute prohibits the use in commerce of "any reproduction, copy, counterfeit or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods.  The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion among the potential purchasers of goods and services in the relevant marketplace.  The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant to protect its goodwill.

### 2.3.1 **TRADEMARK INFRINGEMENT – GENERALLY**

The parties do not dispute that Rockwell is the owner of the registered trademarks at issue and that the trademarks are valid and entitled to protection.

In order to prove trademark infringement, Rockwell must prove, by a preponderance of the evidence, that WiAutomation was selling, offering for sale, or distributing products in the United States bearing a Rockwell trademark that is likely to cause confusion among potential purchasers of goods and services in the relevant marketplace as to the source, affiliation, approval or sponsorship of the products.

### 2.3.2 **TRADEMARK INFRINGEMENT – LIKELIHOOD OF CONFUSION**

If you find that the products sold by WiAutomation and Rockwell in the United States contain identical trademarks but are materially different, you are to presume that consumers are likely to be confused about the quality and nature of the trademarked goods.  The test of whether any of these claimed differences is material is whether consumers would likely consider any of these differences to be relevant when purchasing the product.

### 2.3.3 **TRADEMARK INFRINGEMENT - COUNTERFEITING**

A counterfeit trademark is a non-genuine or unauthorized copy of a trademark. It is identical with, or substantially indistinguishable from, a registered mark. The distribution, sale, or offer for sale of goods bearing a counterfeit mark is illegal under federal law and a form of trademark infringement referred to as "counterfeiting."

This is true even if a person merely sells or offers for sale goods bearing a counterfeit mark and plays no part in affixing or placing the counterfeit mark on the goods, or otherwise designing or manufacturing the goods.

If you find by a preponderance of the evidence that WiAutomation has sold or distributed a product in the United States bearing a counterfeit Rockwell trademark, you are to presume that there is a likelihood of confusion and therefore trademark infringement.

### 2.4    **FALSE DESIGNATION OF ORIGIN**

On Rockwell's claim for false designation of origin, Rockwell has the burden of proving by a preponderance of the evidence that WiAutomation made use of any word, description, term, name, or symbol, that is likely to cause confusion as to:

(1) the origin of WiAutomation's goods or services; or

(2) WiAutomation's affiliation, connection, or association with Rockwell; or

(3) endorsement or approval of the goods or services by Rockwell; or that

(4) misrepresents in advertising the nature, characteristics, qualities, or origin of WiAutomation's goods or services.

## 2.5   **FALSE ADVERTISING**

Rockwell claims that WiAutomation engaged in false advertising. To succeed on this claim, Rockwell must prove five things by a preponderance of the evidence:

1.      WiAutomation made a false or misleading statement of fact in a commercial advertisement about the nature, quality, characteristic or geographic origin of its own product, service, or commercial activities. A statement is misleading if it conveys a false impression and actually misleads a consumer. A statement can be misleading even if it is literally true or ambiguous.

2.      The statement actually deceived or had the tendency to deceive a substantial segment of WiAutomation's audience.

3.      The deception was likely to influence the purchasing decisions of consumers.

4.      WiAutomation caused the false statement to enter interstate commerce. A false statement enters interstate commerce if WiAutomation's product, services, or commercial activities (a) were imported into the United States, and (b) were advertised on a website accessible via the Internet.

5.      Rockwell has been or is likely to be injured as a result of the false statement. Injury can include a direct diversion of sales from itself to WiAutomation or a loss of goodwill associated with its products.

If you find that Rockwell has proved each of these five elements, then you must find for Rockwell. If, on the other hand, you find that Rockwell has failed to prove any one of these five elements, then you must find for WiAutomation.

## 2.6 **DECEPTIVE TRADE PRACTICES**

Rockwell has asserted statutory unfair competition claims under the Delaware Deceptive Trade Practices Act ("DDTPA"), which is also known as deceptive trade practices.

A claim for deceptive trade practices brought under the Delaware statute can be resolved according to the same principles that govern Rockwell's federal trademark infringement claim.

As a result, if you find for Rockwell on its trademark infringement claim, then you also should find for Rockwell on its deceptive trade practices claim.

Separately, you may also find for Rockwell on its deceptive trade practices claim if it proves by a preponderance of the evidence that WiAutomation engaged in one (or more) of the following actions:

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(4) Uses deceptive representations or designations of geographic origin in connection with goods or services;

28

(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

(6) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) Disparages the goods, services, or business of another by false or misleading representation of fact;

(9) Advertises goods or services with intent not to sell them as advertised;

(10) Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of, price reductions; or

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

In order to prevail in an action for deceptive trade practices, Rockwell need not prove competition between the parties, any actual confusion or a misunderstanding.

## 2.7 **UNFAIR COMPETITION**

Rockwell has asserted an unfair competition claim under the Delaware common law.

A claim for unfair competition can be resolved according to the same principles that govern Rockwell's federal trademark infringement claim.

As a result, if you find for Rockwell on its trademark infringement claim, false designation of origin, or false advertising claim, then you also should find for Rockwell on its unfair competition claim.

To the extent you did not find for Rockwell on its trademark claim, then you may still find for Rockwell on its unfair competition claim if it proves by a preponderance of the evidence that:

(1) Rockwell had a reasonable expectancy of entering a valid business relationship with its customers in the form of product sales; and

(2) WiAutomation has wrongly interfered with the relationships and its actions have defeated Rockwell's legitimate expectancy of product sales.

## 2.8 WILLFUL CONDUCT AS TO ANY CLAIM

Rockwell need not prove that WiAutomation intended to cause confusion in order for Rockwell to succeed on its claims. However, there are certain post-trial issues for which it will be important for the Court to know the extent of WiAutomation's willful conduct, if any.

If you find for Rockwell on any of its claims for trademark infringement, false advertising, false designation of origin, deceptive trade practices, or unfair competition, you must also determine whether Rockwell has proven by clear and convincing evidence that WiAutomation's conduct was willful.

WiAutomation acted willfully if it had an intent to infringe, or if it had a deliberate disregard of Rockwell's rights, or if it had an aura of indifference as to Rockwell's rights. Willfulness can be presumed if WiAutomation continued its wrongful conduct after being given notice by Rockwell of the alleged wrongful conduct.

## 2.9  **MONETARY AWARDS**

If you find for Rockwell on any of its claims, then you should consider the amount of money to award to Rockwell if any.

This may include (1) any profits that WiAutomation made because of its infringement, false advertising, false designation of origin, or unfair competition in the United States; (2) any statutory damages for counterfeiting; (3) any compensatory damages that Rockwell sustained because of WiAutomation's infringement, false advertising, false designation of origin, deceptive trade practices or unfair competition in the United States; and (4) punitive damages, if any, to be awarded.

### 2.9.1 **DISGORGEMENT OF PROFITS**

A trademark owner may recover an infringer's profits attributable to the trademark infringement, false advertising, false designation of origin, or unfair competition claims. Profit is determined by deducting expenses from gross revenue. Gross revenue is all the money the infringer received due to its use of the trademarks in question in the United States. The trademark owner is required only to prove the infringer's gross revenue from infringement in the United States. The infringer is required to prove any expenses that it argues should be deducted in determining its profits. Rockwell is entitled to recover WiAutomation's total profits from WiAutomation's wrongful conduct, unless WiAutomation proves that a portion of the profit is due to factors other than the wrongful conduct.

If you find that the amount of gross revenue from WiAutomation's sales in the United States cannot be determined precisely due to a lack of records, you may reach a reasoned approximation, resolving any doubts against WiAutomation.

Expenses are all costs incurred by WiAutomation in producing the gross revenue in the United States. WiAutomation has the burden of proving the expenses by a preponderance of the evidence. WiAutomation also has the burden of demonstrating how any cost contributed to the sale of a Rockwell-branded product. Expenses cannot be speculative, and you should reject any expense if you find that WiAutomation failed to properly substantiate and document each such expense.

If the wrongful conduct has been found to be willful by clear and convincing evidence, you should give extra scrutiny to the categories of overhead expenses claimed by WiAutomation to ensure that each category is directly and validly connected to the sale of the products. You will subtract the proven expenses from the gross revenue to determine the total profit that should awarded to Rockwell.

## 2.9.2 **STATUTORY DAMAGES UNDER THE FEDERAL LANHAM ACT**

If you found WiAutomation liable for counterfeiting in the United States you will then proceed to the second category of recovery and determine an appropriate amount of statutory damages. This is a separate determination from the findings that you made regarding an award of profits and should not be affected by whatever amount of profits you determined. You will make the statutory damages determination by applying the following instructions.

You must first count the number of trademarks that were counterfeited in the United States.

If you believe WiAutomation's acts were willful, then for each trademark that was counterfeited, Rockwell is entitled to an award between $1000 and $2 million. So, if three (3) marks were counterfeited, Rockwell would be entitled to an award between $3,000 and $6 million.

If you believe WiAutomation's acts were not willful, then for each trademark that was counterfeited, Rockwell is entitled to an award between $1,000 and $200,000. So if three (3) marks were counterfeited, Rockwell would be entitled to an award between $3,000 and $600,000.

In determining what amount of statutory damages is appropriate, you should consider factors such as (1) the expenses saved, if any, and the profits reaped, if any; (2) the revenues lost by Rockwell, if any; (3) the value of the trademark; (4) the

36

deterrent effect on others besides WiAutomation; (5) whether WiAutomation's conduct was innocent or willful; (6) whether WiAutomation has cooperated in providing particular records from which to assess the value of the infringing materials products; and (7) the potential for discouraging WiAutomation.

### 2.9.3  **COMPENSATORY DAMAGES**

In addition to WiAutomation's profits and statutory damages, if you find for Rockwell on its trademark infringement, false advertising, false designation of origin, deceptive trade practices or unfair competition claim, you must determine Rockwell's compensatory damages resulting from WiAutomation's wrongful conduct in the United States.

This is a separate determination from the findings that you made regarding WiAutomation's profits and statutory damages.

Rockwell has the burden of proving compensatory damages by a preponderance of the evidence.

Compensatory damages means the amount of money which will reasonably and fairly compensate Rockwell for any injury you find was caused by WiAutomation's wrongful conduct in the United States.

You should consider the following compensatory damages:

(i)     the injury or loss to Rockwell's reputation;

(ii)    the injury or loss to Rockwell's goodwill;

(iii)   any lost profits that Rockwell would have earned but for WiAutomation's wrongful conduct;

(iv)    the expense of preventing customers from being deceived; and

(v)     the cost of future corrective advertising reasonably required to correct public confusion caused by WiAutomation's wrongful conduct.

In measuring the harm to Rockwell's goodwill or reputation, you should consider Rockwell's expenditures in building its reputation to estimate the harm to its reputation after WiAutomation's bad acts, which is supported by evidence in the record. The amount of Rockwell's lost profits may be based on a reasonable estimate supported by the evidence.

### 2.9.4  **PUNITIVE DAMAGES**

If you found for Rockwell on its common law unfair competition claim and awarded Rockwell its lost profits or other compensatory damages, you must determine what punitive damages, if any, to award to Rockwell.

Punitive damages are different from compensatory damages. Compensatory damages are awarded to compensate Rockwell for the injury suffered. Punitive damages, on the other hand, are awarded in addition to compensatory damages.

You may award punitive damages to punish a party for outrageous conduct and to deter a party, and others like it, from engaging in similar conduct in the future. To award punitive damages, you must find by a preponderance of the evidence that WiAutomation acted intentionally or recklessly. Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

Intentional conduct means it is the person's conscious object to engage in conduct of that nature. Reckless conduct is a conscious indifference that amount to an "I don't care" attitude. Reckless conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that it knows or should know that there is an eminent likelihood of harm that can result. Each requires that WiAutomation foresee that its conduct threatens a particular harm to another.

The law provides no fixed standards for the amount of punitive damages.

In determining any award of punitive damages, you may consider the nature of WiAutomation's conduct and the degree to which the conduct was reprehensible. Finally, you may assess an amount of damages that will deter WiAutomation and others like it from similar conduct in the future. You may consider WiAutomation's financial condition when evaluating deterrence. Any award of punitive damages must bear a reasonable relationship to Rockwell's compensatory damages. If you find that Rockwell is entitled to an award of punitive damages, state the amount of punitive damages separately on the verdict form.

# 3     DELIBERATION AND VERDICT

## 3.1     INTRODUCTION

I have concluded the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

### 3.2 **UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous. It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the Courtroom and my deputy will read aloud your verdict. Place the completed verdict sheet in the envelope we will give you. Do not show the completed verdict form to anyone or share it with anyone until you are in the Courtroom.

It is proper to add the caution that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

### 3.3   **DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that-your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

### 3.4   <u>**SOCIAL MEDIA**</u>

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, Blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

## 3.5     **COURT HAS NO OPINION**

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.