**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROCKWELL AUTOMATION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 21-1238-GBW-JLH |
| ) | |
| PARCOP S.R.L. d/b/a WIAUTOMATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**WIAUTOMATION'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR**
**JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b), NEW**
**TRIAL PURSUANT TO FED. R. CIV. P. 59(a), OR REMITTITUR**

Dated: September 11, 2023

*Of Counsel*:

Bob Kasolas
Eric J. Boden
BRACH EICHLER, LLC
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 403-3139
bkasolas@bracheichler.com
eboden@bracheichler.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Pilar G. Kraman (No. 5199)
Alexis N. Stombaugh (No. 6702)
Maliheh Zare (No. 7133)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
astombaugh@ycst.com
mzare@ycst.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

    I.     JUDGMENT AS A MATTER OF LAW .......................................... 2

          A.    WiAutomation is Entitled to JMOL on Counterfeiting. ...................... 2

              1.    Rockwell's case entirely rested upon unsupported conclusions by Ryan Smaglik. ............................................... 2

              2.    Rockwell presented no admissible evidence of U.S. sales by WiAutomation. .......................................... 4

              3.    Rockwell failed to meet its burden regarding willful counterfeiting. ......................................................... 6

          B.    WiAutomation is Entitled to JMOL on All Other Claims. ................. 6

    II.    NEW TRIAL .................................................................................. 8

          A.    The Court Erred in Admitting Evidence From Test Purchases. .................................................................... 9

          B.    The Court Erred in Allowing Christoph Bank to Testify Outside of His Personal Knowledge. .............................. 11

          C.    The Court Erred Admitting Evidence of Foreign Sales. .................... 12

          D.    The Jury Awarded Damages Based on Incorrect Instructions ............................................................... 14

              1.    False designation of origin. .................................. 15

               2.    Counterfeiting .................................................... 16

          E.    The Court Erred in Permitting Undisclosed Theories of Counterfeiting. ................................................... 16

    III.    REMITTITUR ............................................................................. 18

          A.    Rockwell Must Elect Statutory or Compensatory Damages. ................................................................... 18

          B.    Rockwell Cannot Recover Both Statutory Damages & Punitive Damages ........................................................... 19

i

      C.       The Statutory Damages Award is Excessive ..................................... 21

      D.       The Compensatory Damages Award is Excessive ........................... 22

CONCLUSION ........................................................................................................... 23

## TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*A&H Sportswear, Inc. v. Victoria Secret's Stores, Inc.*,
   237 F.3d 198 (3d Cir. 2000)...................................................................................3

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
   143 S.Ct. 2522 (2023)..............................................................................12, 13, 14

*Am. Bridal & Prom Indus. Assoc., Inc. v. Jollyprom.com*,
   2018 WL 1226106 (D.N.J. Mar. 9, 2018)..............................................................19

*Astrazeneca AB v. Dr. Reddy's Lab'ys., Inc.*,
   209 F.Supp.3d 744 (D. Del. 2016)........................................................................16

*CareDx, Inc. v. Natera, Inc.*,
   2023 WL 4561059 (D. Del. July 17, 2023) ......................................................3, 15

*Chanel, Inc. v. Gordashevsky*,
   558 F.Supp.2d 535 (D.N.J. 2008)........................................................................21

*Chanel, Inc. v. Matos*,
   133 F.Supp.3d 678 (D.N.J. 2015)........................................................19, 20, 21, 22

*Checkpoint Sys., Inc v. Check Point Software Techs., Inc.*,
   269 F.3d 270 (3d. Cir. 2001)..................................................................................3

*Church & Dwight Co. v. Kaloti Enters. of Mich.*,
   697 F.Supp.2d 287 (E.D.N.Y. 2009) ....................................................................20

*Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*,
   383 F.3d 110 (3d Cir. 2004)....................................................................................3

*Coach, Inc. v. Cosm. House*,
   2011 WL 1211390 (D.N.J. Mar. 29, 2011)...........................................................19

*Conway v. Chem. Leaman Tank Lines, Inc.*,
   687 F.2d 108 (5th Cir. 1982) ................................................................................16

*Cooper Distrib. Co. v. Amana Refrigeration*,
   63 F.3d 262 (3d Cir. 1995).....................................................................................16

*Cortez v. Trans Union, LLC*,
   617 F.3d 688 (3d Cir. 2010)..................................................................................18

*Covertech Fabricating, Inc. v. TVM Bldg. Prod., Inc.*,
    855 F.3d 163 (3d Cir. 2017)..............................................................................................18

*Cromling v. Pittsburgh & L.E.R. Co.*,
    327 F.2d 142 (3d Cir. 1963)..................................................................................................9

*Gomez v. Allegheny Health Servs., Inc.*,
    71 F.3d 1079 (3d Cir. 1995)..................................................................................................2

*Goodman v. Pa. Tpk. Comm'n*,
    293 F.3d 655 (3d Cir. 2002)..................................................................................................9

*Gumbs v. Pueblo Int'l, Inc.*,
    823 F.2d 768 (3d Cir. 1987)................................................................................................18

*Iberia Foods Corp. v. Romeo*,
    150 F.3d 298 (3d Cir. 1998)..................................................................................................7

*Johnson & Johnson v. Azam Int'l Trading*,
    2013 WL 4048295 (E.D.N.Y. Aug. 9, 2013).....................................................................20

*Kirk v. Raymark Indus., Inc.*,
    61 F.3d 147 (3d Cir. 1995)....................................................................................................9

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993)....................................................................................................2

*Lightning Lube, Inc. v. Witco Corp.*,
    802 F.Supp. 1180 (D.N.J. 1992) ...........................................................................................8

*Luxottica Grp., S.p.A. v. Shore Enuff*,
    2019 WL 4027547 (D.N.J. Aug. 27, 2019) ........................................................................19

*Malletier v. Carducci Leather Fashions, Inc.*,
    648 F.Supp.2d 501 (S.D.N.Y. 2009)..................................................................................20

*Mil. Cert. Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*,
    251 F.Supp.3d 750 (D. Del 2017).........................................................................................7

*N.V.E., Inc. v. Day*,
    2009 WL 2526744 (D.N.J. Aug. 18, 2009) ........................................................................21

*New Balance Athletics, Inc. v. USA New Bunren Int'l Co.*,
    2020 WL 5593932 (D. Del. Sept. 18, 2020).......................................................................21

*Nike, Inc. v. Top Brand Co.*,
    2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006).....................................................................21

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*,
    219 F.R.D. 494 (C.D. Ca. 2003) ..........................................................................21

*Platypus Wear, Inc. v. Bad Boy Club, Inc.*,
    2009 WL 2147843 (D.N.J. July 15, 2009)............................................................20

*Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc.*,
    1998 WL 767440 (E.D. Pa. Nov. 3, 1998) ..........................................................16

*Reynolds v. Univ. of Pa.*,
    483 F.App'x 726 (3d Cir. 2012) ............................................................................9

*Sanofi-Aventis v. Advancis Pharm. Corp.*,
    453 F.Supp.2d 834 (D. Del 2006).........................................................................7

*Solvay, S.A. v. Honeywell Int'l Inc.*,
    886 F.Supp.2d 396 (D. Del. 2012)......................................................................15

*Spence v. Bd. Of Educ. Of Christina Sch. Dist.*,
    806 F.2d 1198 (3d Cir. 1986)..............................................................................18

*Tiffany (NJ) LLC v. Dong*,
    2013 WL 4046380 (S.D.N.Y. Aug. 9, 2013)........................................................21

*U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*,
    898 F.2d 914 (3d Cir. 1990)................................................................................15

*Vectura Ltd. v. GlaxoSmithKline LLC*,
    397 F.Supp.3d 579 (D. Del. 2019)........................................................................8

*Warner-Lambert Co. v. Breathasure, Inc.*,
    204 F.3d 87 (3d Cir. 2000).................................................................................15

*Wi-Lan v. Sharp Elecs. Corp.*,
    362 F.Supp.3d 226 (D. Del. 2019)........................................................................5

*Woodson v. Scott Paper Co.*,
    109 F.3d 913 (3d Cir. 1997)................................................................................14

**STATUTES**

15 U.S.C. § 1117(a) ......................................................................................18, 19, 23

15 U.S.C. § 1117(b) ................................................................................................17

15 U.S.C. § 1117(c) ......................................................................................18, 19, 20, 21

15 U.S.C. § 1117(c)(1)............................................................................................20

15 U.S.C. § 1117(c)(2)...................................................................................................20

15 U.S.C. § 1125(a)(1)(A)..............................................................................................7

**RULES**

Fed. R. Civ. P. 50(a)......................................................................................................2

Fed. R. Civ. P. 59(a)....................................................................................................14

Fed. R. Civ. P. 59(e)..............................................................................................18, 23

Fed. R. Evid. 403.........................................................................................................14

Fed. R. Evid. 602...................................................................................................11, 12

Fed. R. Evid. 802...................................................................................................11, 12

Fed. R. Evid. 901(b)(4)...........................................................................................4, 5

## INTRODUCTION

After five days of evidence, the jury returned a verdict for Rockwell on all of its claims except one. (D.I. 339.)  This verdict against WiAutomation cannot stand.  WiAutomation is entitled to judgment as a matter of law because there was no legally sufficient evidentiary basis for Rockwell's claims.  Rockwell's case was entirely based on unsupported conclusions from its own biased agents and a flawed survey, designed to achieve a pre-determined result.  No reasonable jury could hear this self-serving evidence and find that Rockwell met its burden of establishing that WiAutomation is liable for trademark infringement, counterfeiting, false designation of origin, Delaware's Deceptive Trade Practices Act, or common law unfair competition, let alone that any of these acts were willful.  WiAutomation is entitled to judgment as a matter of law.

In the alternative, the Court should grant a new trial because the jury's verdict was undoubtedly swayed by evidence that was admitted in error.  For example, although the Court barred Rockwell's private investigator from testifying because WiAutomation was unable to depose or cross-examine the undisclosed third-parties he relied on to obtain evidence, it nevertheless allowed Rockwell to admit the same evidence provided by the same undisclosed third-parties through another witness.  This evidence was the sole physical proof of any alleged "counterfeit" sale in the United States.  Further, the Court permitted a Rockwell witness to testify to matters about which he had no personal knowledge, allowing Rockwell to backdoor into evidence hearsay statements to support its counterfeiting claims. These prejudicial evidentiary errors, and others described below, warrant a new trial.

Even if the Court does not disturb the jury's finding of liability, however, it must reduce its damages award.  *First*, Rockwell must elect either statutory damages *or* compensatory damages.  Otherwise, Rockwell will receive a windfall double recovery.  *Second*, Rockwell

1

cannot receive both statutory damages under the Lanham Act and punitive damages under state law, which would also amount to a double recovery. *Third*, the statutory damages awarded by the jury are excessive. *Fourth*, there is no evidentiary basis to award compensatory damages that are nearly four times WiAutomation's profits.

## ARGUMENT

## I.    JUDGMENT AS A MATTER OF LAW

Judgment as a Matter of Law ("JMOL") is appropriate where there is no "legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a); *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995). "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citation omitted). WiAutomation is entitled to JMOL for the reasons explained below.

### A.    WiAutomation is Entitled to JMOL on Counterfeiting.

#### 1.    Rockwell's case entirely rested upon unsupported conclusions by Ryan Smaglik.

The jury was instructed that Rockwell was required to prove by a preponderance of the evidence that WiAutomation sold counterfeit products in the United States. (D.I. 333 at p. 15). Rockwell fell far short of meeting this burden. Rockwell's entire counterfeiting case relies on conclusory, unsupported statements from its own biased witness.

Rockwell representative Ryan Smaglik repeatedly concluded that a product sold in the U.S. was counterfeit without any evidence or details to corroborate this conclusion. For example, Smaglik testified that he analyzed a product sold to Rockwell's investigator and "determined we did not make a [product] with that serial number." (July 25 Tr. at 338:7-11.)

2

But neither Smaglik nor Rockwell offered any evidentiary basis for this statement, and Smaglik did not describe any actions he took to reach this conclusion.  Smaglik also testified that "a number of [products purportedly sold to a U.S. customer] were counterfeit." (*Id.* at 491:16-22.)  Again, the jury was not presented with any evidentiary basis for Smaglik's conclusion. Smaglik's conclusion was based on his unique definition of the word counterfeit (*id.* at 393:1-6 ("Our definition is any, you know, Rockwell-branded product that contains any non-factory original element that gets advertised as new")), which is different from the definition the jury was given in the final jury instructions (D.I. 335 at p. 24 ("A counterfeit trademark is a non-genuine or unauthorized copy of a trademark.")).

While Smaglik's unsupported conclusions are insufficient to demonstrate that WiAutomation is liable for counterfeiting by a preponderance of the evidence, his conclusions are worth even less when his bias is considered.  The Third Circuit has repeatedly held that testimony concerning actual confusion provided by a party representative "must be viewed with skepticism because it tends to be biased or self-serving."  *Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 122 (3d Cir. 2004); *see also A&H Sportswear, Inc. v. Victoria Secret's Stores, Inc.*, 237 F.3d 198, 227 (3d Cir. 2000) (appropriate to view plaintiff's representatives "with great skepticism, given the interested sources"); *Checkpoint Sys., Inc v. Check Point Software Techs., Inc.*, 269 F.3d 270, 298 (3d. Cir. 2001) ("the District Court properly took into account the potential bias of [plaintiff's] employees.").  Notably, Chief Judge Connolly recently granted a defendant's post-trial motion for JMOL in a Lanham Act case where the plaintiff similarly relied on "vague, conclusory, and hearsay-riddled testimony" from its own agents.  *CareDx, Inc. v. Natera, Inc.*, 2023 WL 4561059, at *4 (D. Del. July 17, 2023).

3

While the above-cited cases specifically address testimony concerning confusion, there is no reason why the same skepticism should not be applied to testimony concerning counterfeiting. Rockwell *entirely* relied on Smaglik's testimony to "prove" that a product was counterfeit. Rockwell did not offer any evidence to support this conclusion. Nor did Rockwell call any third-party witnesses or experts to demonstrate why the products were counterfeit. Further, Smaglik is clearly biased because he: (1) works as Rockwell's director of revenue and brand management (July 25 Tr. at 274:5-6);(2) works with Rockwell's Office of IP Counsel in connection with investigations of gray market companies (*id.* at 292:12-16); and (3) presented to Rockwell's board of directors about the gray market (*id.* at 356:2-11). Given his role, and considering the lack of evidence, Smaglik has an interest in ensuring Rockwell's success in this litigation. His unsupported conclusions, which served as Rockwell's sole "proof" in support of its most serious claims, must be viewed with great skepticism.

When considering Smaglik's testimony in the proper light, no reasonable jury would find that Rockwell proved by the preponderance of the evidence that WiAutomation sold counterfeit products. WiAutomation is therefore entitled to JMOL on counterfeiting.

**2.     Rockwell presented no admissible evidence of U.S. sales by WiAutomation.**

Moreover, the Court erred in admitting Rockwell's "evidence" of U.S. sales in the first instance. Rockwell could not authenticate the evidence that was improperly admitted through Smaglik. Smaglik has no personal knowledge of what products were purchased or received from WiAutomation. (July 24 Tr. at 205:22-206:5.) Nonetheless, the Court improperly allowed Rockwell to authenticate evidence using Fed. R. of Evid. ("FRE") 901(b)(4), with testimony that certain photographs showed the same products that Smaglik asked Rockwell's investigator to purchase from WiAutomation. (July 25 Tr. at 256:21-258:10, 333:22-335:17;

4

PTX-1949.)  This ruling was in error for at least two reasons.

*First*, as WiAutomation argued in its MIL, there is no indication that the images with serial numbers that Rockwell used to "demonstrate" counterfeiting show products that actually came from WiAutomation.  (July 25 Tr. at 337:9-341:15; PTX 1949.3-6, 15; D.I. 314 at Ex. 15D.)  There is no WiAutomation logo or insignia on any box that contains a "counterfeit" serial number.  (*Id.*)  Further, there is no image showing that any box with alleged "counterfeit" information came inside a box bearing WiAutomation's logo.  (*Id.*)  It was therefore improper to admit the images with serial numbers, which bear no mark related to WiAutomation at all.

*Second*, the dubious circumstances surrounding this evidence renders it inadmissible under FRE 901(b)(4).  *Wi-Lan v. Sharp Elecs. Corp.*, 362 F.Supp.3d 226, 233 (D. Del. 2019) (rejecting authentication under FRE 901(b)(4) "given the highly dubious circumstances surrounding the production" of the offered evidence).  Rockwell repeatedly made misrepresentations to WiAutomation and the Court concerning the evidence related to the test purchases (D.I. 265 at pp. 1-4; D.I. 314 at Ex. 15D), and the Court ultimately barred Paliszewski from testifying because he was "tainted" by Rockwell's misrepresentations (July 24 Tr. at 205:3-9, 206:16-207:14).  This same taint renders the evidence that the jury relied on to be untrustworthy and inadmissible under FRE 901(b)(4).  The mere fact that a photograph shows the same product Smaglik asked its investigator to purchase does not provide sufficient foundation to admit the evidence related to the test purchases, especially since Smaglik testified that the product in the photographs was a "very popular, high run" product.  (July 25 Tr. at 334:5-13.)  That the photograph Rockwell relied on shows a very popular product is yet another reason why there was insufficient foundation to admit the evidence under FRE 901(b)(4), considering the dubious circumstances.

Therefore, since Rockwell offered no admissible evidence of a U.S. sale that was counterfeit, WiAutomation is entitled to JMOL.

### 3. Rockwell failed to meet its burden regarding willful counterfeiting.

Moreover, there was no sufficient evidentiary basis for a reasonable jury to find that Rockwell met its burden of demonstrating that WiAutomation willfully sold counterfeit goods in the U.S. by clear and convincing evidence.   Rockwell offered "evidence" that WiAutomation made only two counterfeit sales in the U.S., less than one month apart: one on March 29, 2022 (*id.* at 339:16-21; PTX 1949.15) and the other on April 21, 2022 (*id.* at 490:14-491:22; DTX 11.7).   Put differently, Rockwell proselytized that WiAutomation has been infringing from 2018 (*id.* at 473:7-17; PTX-1573**)** to at least early 2023 (July 24 Tr. at 215:22-216:3), yet only gave the jury these two examples of "counterfeit" U.S. sales made in a one-month period (PTX-1949.15; DTX-11.7).   No jury could find that such limited proof amounts to clear and convincing evidence that WiAutomation willfully sold counterfeit products. Therefore, WiAutomation is entitled to JMOL on the finding of willful counterfeiting.

### B. WiAutomation is Entitled to JMOL on All Other Claims.

It is clear the jury's verdict is entirely based on counterfeiting.   The jury was directed to automatically find for Rockwell on trademark infringement and both Delaware state claims because it found for Rockwell on counterfeiting.   (D.I. 339.)   Further, the jury found that WiAutomation is not liable for false advertising.   That the jury found for Rockwell on trademark infringement but ***not*** false advertising demonstrates that the entire verdict was based on counterfeiting.   For the reasons established in the section above, WiAutomation is entitled to JMOL on the counterfeiting claim, and is therefore entitled to JMOL on all other claims. WiAutomation is also entitled to JMOL on these other claims for independent reasons,

explained below.

Rockwell's trademark infringement claim hinges on whether "consumers are likely to be confused about the quality and nature of the" goods WiAutomation sold. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998). Similarly, Rockwell's false designation of origin claim concerns the use of language that is likely to cause confusion. 15 U.S.C. § 1125(a)(1)(A). Further, Rockwell's state law claims apply the same standard as the trademark infringement claims. *Mil. Cert. Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*, 251 F.Supp.3d 750, 757 (D. Del 2017); *Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F.Supp.2d 834, 847 n.2 (D. Del 2006). No reasonable jury would find that Rockwell met its burden of showing by the preponderance of the evidence that customers were likely confused about the products and services they would receive from WiAutomation.

Rockwell did not call any third-party witnesses to testify that they were confused by WiAutomation. Nor did Rockwell offer any evidence of confused customers. To the contrary, the evidence demonstrated that Rockwell's own distributors believed that Rockwell's sophisticated customers know what they are getting (or not getting) when they purchase from the gray market. (DTX-3.) Instead, Rockwell entirely relied upon results from a survey conducted by Rockwell's expert, David Franklyn. No reasonable jury could find these survey results showed confusion, especially after listening to the testimony of Professor Young-Hoon Park and learning that Franklyn used methodologies that his own literature deems unreliable.

Professor Park explained that Franklyn's surveys were unreliable because they asked questions about the importance of one attribute at a time, even though purchasers consider multiple attributes at the same time when making decisions, including price. (July 27 Tr. at 87:4-88:20.) This method caused respondents to claim that all factors are important. (*Id.*)

Indeed, the jury learned that Franklyn published an article stating that such direct questions have "several criticisms and limitations" including that respondents "may have their guard up or they may believe that there is a correct answer." (*Id.* at 89:2-91:11; DTX-29.37-38.) Franklyn's article also stated that most market scholars and professionals believe that the exact sort of questions posed in Franklyn's surveys "do not reveal the true preferences of the consumer." (July 28 Tr. at 60:23-61:6; DTX-29.37-38 at n.207.) Further, Professor Park explained that Franklyn's surveys were unreliable because they only collected data from engineers, even though a person in charge of finances is often the key decisionmaker. (July 27 Tr. at 84:8-85:3, 86:16-23.) Put simply, no reasonable jury would find that Franklyn's surveys analyzed real-world buying conditions and offered reliable results.

Since no reasonable jury would find that Rockwell met its burden of demonstrating a likelihood of confusion by the preponderance of the evidence, WiAutomation is entitled to JMOL on all of Rockwell's remaining claims.

## II.   NEW TRIAL

A court may order a new trial under Fed. R. Civ. P. ("FRCP") 59(a) if "the verdict is against the clear weight of the evidence; damages are excessive; the trial was unfair; and that substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions." *Lightning Lube, Inc. v. Witco Corp.*, 802 F.Supp. 1180, 1186 (D.N.J. 1992), *aff'd* 4 F.3d 1153 (3d Cir. 1993) (citation omitted). When analyzing a motion for a new trial, "the Court need not view the evidence in the light most favorable to the verdict winner." *Vectura Ltd. v. GlaxoSmithKline LLC*, 397 F.Supp.3d 579, 586 (D. Del. 2019), *aff'd* 981 F.3d 1030 (Fed. Cir. 2020).

Where the court identifies an incorrect evidentiary ruling, it must grant a new trial

"unless it was highly probable 'that the error did not affect any substantial rights.'" *Reynolds v. Univ. of Pa.*, 483 F.App'x 726, 730 (3d Cir. 2012) (quoting *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 189 (3d Cir. 1990)); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 676 (3d Cir. 2002) ("A motion for a new trial should be granted where substantial errors occurred in admission or rejection of evidence."). The Third Circuit has ordered a new trial where the district court improperly admitted hearsay evidence. *See Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 167, 170 (3d Cir. 1995) (reversing judgment and remanding for new trial where district court improperly admitted hearsay evidence that lacked trustworthiness); *Cromling v. Pittsburgh & L.E.R. Co.*, 327 F.2d 142, 152 (3d Cir. 1963) (ordering new trial based, in part, on the admission of inadmissible hearsay).

Each of the issues set forth below justifies a new trial to correct substantial and prejudicial errors.

### A. The Court Erred in Admitting Evidence From Test Purchases.

WiAutomation repeatedly objected to the admission of evidence that Rockwell obtained from third parties who Rockwell concealed in discovery, including PPX-0001, PPX-0002, and PTX-1949 ("Test Purchase Evidence"). (D.I. 314, Ex. 15D at pp. 1-4; July 24 Tr. at 6:15-21, 25:9-26:15.) Specifically, Rockwell belatedly disclosed that its investigator, Mark Paliszewski, conducted test purchases from WiAutomation. (D.I. 314, Ex. 15D at p. 1.) Despite Rockwell's representations that Paliszewski conducted the test purchases alone, other unidentified third-parties actually made the test purchases. (*Id.*)

The Court barred Paliszewski from testifying because WiAutomation was not given the opportunity to depose or cross-examine the undisclosed third-parties who bought products for Rockwell using the name "J&J Systems," and Image-Tek. (July 24 Tr. at 204:1-205:2; *see*

*also id.* at 146:6-24, 149:18-150:1, 150:3-20, 159:4-18.)  The Court repeatedly emphasized that the issue was not just about authentication of the Test Purchase Evidence; it concerned WiAutomation's inability to depose or cross-examine these key individuals who allegedly gave the Test Purchase Evidence to Rockwell.  (*Id.*)  Yet the Court nevertheless allowed Rockwell to admit the Test Purchase Evidence through Smaglik.  (*Id.* at 205:3-9; 206:16-207:14.)  While the Court held Paliszewski "is just too tainted  . . . to allow to testify," it allowed Smaglik to offer the same tainted Test Purchase Evidence.  (*Id*. at 205:3-9, 206:16-207:14.)  Allowing Rockwell to admit the Test Purchase Evidence through Smaglik completely undermined the Court's prior ruling concerning Paliszewski, allowing Rockwell to offer evidence from third-parties, despite discovery abuses warranting the exclusion of that same evidence under FRCP 37.

The Court reasoned that Rockwell can offer the Test Purchase Evidence through Smaglik because "there may be more of a basis for those things to be authenticated through him."  (*Id.* at 205:3-9.)  But that ignores the Court's own repeated recognition that this issue extends beyond authentication.  (July 24 Tr. at 204:1-205:2; *see also id.* at 146:6-24, 149:18-150:1, 150:3-20, 159:4-18.)   Similarly, the Court found that WiAutomation "had an opportunity to depose [Smaglik] . . . so that doesn't concern me as much as the Paliszewski issue."  (*Id.* at 205:7-9.)  Again, this reasoning overlooks the fact that WiAutomation was unaware that some other third-party provided the Test Purchase Evidence when WiAutomation deposed Smaglik.  (*Id*. at 144:25-146:5.)   Even worse, Rockwell refused to allow WiAutomation to re-depose Smaglik after additional information about the test purchases came to light.  (*Id.* at 145:17-22.)

Moreover, the Test Purchase Evidence was inadmissible for the reasons set forth in

10

Section I(A)(2) *infra*.  As explained in that section, Smaglik was unable to authenticate the Test Purchase evidence.  Thus, on top of the fact that WiAutomation was severely prejudiced by not being able to pursue discovery on Rockwell's most critical evidence, the Test Purchase Evidence was inadmissible in the first place. *See* Section I(A)(2) *infra*.

In short, it was manifestly unfair for the jury to consider the Test Purchase Evidence when WiAutomation was unable to depose or cross-examine these third-parties who provided the evidence.  The Court itself acknowledged this prejudice, yet made inconsistent rulings, nullifying any rulings made to cure the prejudice.  Further, the Test Purchase Evidence was inadmissible.  A new trial is warranted to correct this substantial error.

**B.    The Court Erred in Allowing Christoph Bank to Testify Outside of His Personal Knowledge.**

WiAutomation repeatedly objected to the testimony of Rockwell's employee Christoph Bank because he lacked personal knowledge of any relevant facts, as required by FRE 602. (July 24 Tr. at 5:6-6:1, 198:6-203:14, 214:22-215:14.)  The Court ultimately ruled that Bank was "limited to testifying about things that are within his personal knowledge."  (*Id.* at 203:8-14.)  But, as WiAutomation argued, Bank's testimony was not based on his own personal knowledge.  (*Id*. at 200:5-16.)  Instead, Bank parroted information allegedly given to him by others to testify that certain products were counterfeit.  (*Id.* at 214:22-215:14.)  Such testimony should have been barred by FRE 602, which only allows witnesses to testify about the facts within their personal knowledge, and FRE 802, which bars the admission of hearsay.

Rockwell intended for Bank to testify that Rockwell analyzed certain products and deemed them to be counterfeit.  (*Id*. at 210:21-211:4.)  But Rockwell's counsel admitted that Bank did not himself analyze any products—"he had his team at Rockwell determine that [products] were counterfeit and he's going to tell the jury that he contacted Syntegon and told

11

them the results." (*Id.*)  Rockwell offered Bank to backdoor into evidence hearsay information others gave him, not Bank's own personal knowledge.  WiAutomation again objected to Bank testifying about information others told to him as hearsay and outside of Bank's personal knowledge.  (July 24 Tr. at 214:22-215:14.)  The Court nonetheless allowed Rockwell to proceed with this testimony, even though it was not based on Bank's personal knowledge.

For example, Bank testified that he forwarded photographs, PTX-1771, PTX-1772, PTX-1773, PTX-1774, PTX-1775, and PTX-1776, to Rockwell's "internal investigation team . . . to check the serial numbers."  (*Id.* at 217:4-8.)  The Court then allowed Bank to testify, over WiAutomation's objection, that Bank told a Syntegon representative "the labels we checked are counterfeit."  (*Id.* at 222:12-17.)  In other words, the Court permitted Bank to testify about information provided by the "internal investigation team," which is not within Bank's personal knowledge and is inadmissible hearsay.

This error was highly prejudicial to WiAutomation because it permitted Bank to repeatedly testify that certain products were counterfeit (*id.* at 222:12-17, 223:25-224:1, 224:6-8, 227:4-10) to support Rockwell's most serious claims, even though such testimony was inadmissible under FRE 602 and 802.  A new trial is necessary to cure the prejudice caused by the Court's error in allowing this testimony over WiAutomation's objection.

### C.    The Court Erred Admitting Evidence of Foreign Sales.

Rockwell was improperly allowed to admit highly prejudicial evidence in direct contravention of the Supreme Court's decision in *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 143 S.Ct. 2522 (2023).  In *Abitron*, the Supreme Court held "if the conduct *relevant* to the focus [of the Lanham Act] occurred in a foreign country, the case involves an ***impermissible*** extraterritorial application ***regardless*** of any other conduct that occurred in U.S. territory."  *Id.*

at 2532 (emphasis added).  Said "focus" is infringement in U.S. commerce.  *Id.* at 2531.

Nonetheless, the Court permitted Rockwell to offer foreign sale evidence as "circumstantial evidence of" infringing U.S. sales (D.I. 312 at p. 5; July 24 Tr. at 209:24-230:14; July 25 Tr. at 320:3-321:4, 332:4-333:12, 348:25-352:2; PTX-1645; PTX-1649; PTX-1771 through PTX-1776) even though this is exactly what the Supreme Court proscribed. *Abitron*, 143 S.Ct. at 2532.  Rockwell's claim that the foreign sales are circumstantial evidence of U.S. infringement is identical to saying that foreign conduct is relevant to the focus of the Lanham Act, *i.e.*, counterfeit U.S. sales.  Such use is "impermissible" even if other conduct occurred in the U.S.  *Id.*  WiAutomation raised this issue during the pre-trial conference (July 13 Pretrial Conf. Tr. at 21:19-22:19) and its subsequent brief and request for reargument (D.I. 309; D.I. 316) yet the Court never directly addressed the above-quoted language from *Abitron* (*see generally* D.I. 312; D.I. 321).

The admission of this foreign evidence was further improper because Rockwell sought damages based on this foreign sale.  The Court permitted the foreign evidence partially because "Rockwell has represented to the Court and Defendant that it 'will not seek damages for foreign sales or apply the Lanham Act to foreign sales at trial.'" (D.I. 312 at p. 4.)  But Rockwell did just that.  Rockwell relied on "evidence" from European sales to support its claim for punitive damages under state law and enhanced/treble damages under the Lanham Act.  For example, Rockwell offered "evidence" of foreign counterfeit sales before it offered "evidence" of any domestic counterfeit sales.  (July 24 Tr. at 222:12-17, 223:25-224:1, 224:6-8, 227:4-10.)  Further, in closing statements, Rockwell's counsel spent considerable time claiming the products from the alleged European sale were counterfeit, and repeatedly referred back to a misspelled word on one of the products.  (July 28 Tr. at 18:4-20:17, 19:3-5, 21:13-15; *see, e.g.,*

PTX-1776.)  Rockwell indisputably used this foreign sale evidence to support a finding of willfulness, in support of its claim for damages under the Lanham Act.

The admission of foreign sale evidence (PTX-1645, PTX-1649, PTX-1771 through PTX-1776) and related testimony (July 24 Tr. at 209:24-230:14; July 25 Tr. at 320:3-321:4, 332:4-333:12, 348:25-352:2) unfairly prejudiced WiAutomation.  As explained above, Rockwell's use of foreign conduct was "impermissible."  *Abitron*, 143 S.Ct. at 2532.  The probative value of the evidence was therefore substantially outweighed by unfair prejudice, confusion, and the capacity to mislead the jury making it inadmissible under FRE 403.  The admission of this foreign evidence substantially impacted WiAutomation's rights, because it allowed Rockwell to admit evidence of a misspelled label (PTX-1776) and cumulative "evidence" of counterfeiting, which Rockwell heavily relied on in support of its claim for liability and damages.  (July 28 Tr. at 18:4-20:17, 19:3-5, 21:13-15; *see also* July 24 Tr. at 218:2-230:13.)  Further, Rockwell is attempting to amplify its damages recovery by millions of dollars based on this foreign conduct.  A new trial is required to ensure compliance with Supreme Court authority.

### D.    The Jury Awarded Damages Based on Incorrect Instructions.

It is well settled under FRCP 59(a) that misleading or inadequate jury instructions may be grounds for a new trial unless the error is harmless.  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 916-17, 931 (3d Cir. 1997).  For an erroneous jury instruction to constitute harmless error, there must be a "high probability that the error did not affect the outcome of the case."  *Id.* at 931 (internal citations omitted).  Moreover, "[a] party seeking to set aside a judgment based on erroneous jury instructions must establish that: '(1) it made a proper and timely objection to the jury instructions, (2) those instructions were legally erroneous, (3) the errors had

14

prejudicial effect, and (4) it requested alternative instructions that would have remedied the error.'" *Solvay, S.A. v. Honeywell Int'l Inc.*, 886 F.Supp.2d 396, 408 (D. Del. 2012).

While the record itself is insufficient to justify the damages verdict, the record is even more deficient when one accounts for the erroneous jury instructions that led the jury to improperly find damages.

### 1. False designation of origin.

To recover damages for a claim of false designation of origin under the Lanham Act, a plaintiff must show actual confusion. *See U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922 (3d Cir. 1990) ("To recover damages, a plaintiff must show that the 'falsification [or misrepresentation] actually deceives a portion of the buying public.'") (quoting *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir. 1958)); *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 92 (3d Cir. 2000) ("a plaintiff seeking damages under §43(a) must establish customer reliance"); *CareDx, Inc.*, 2023 WL 4561059, at *2 ("Actual deception, however, must still be proven to establish damages for a Lanham Act violation, even if based on an unambiguous and literally false advertisement.").

In light of this authority, WiAutomation proposed a jury instruction that required the jury to find that "WiAutomation actually confused purchasers in order to award damages for false advertising and false designation of origin," citing Third Circuit authority. (D.I. 333 at p. 53 n.33; *see also id.* at p. 60 n.41, p. 61 n.43.) Yet, despite the weight of authority from both the Third Circuit and this District, WiAutomation's proposed language requiring the jury to find actual confusion before awarding damages for Rockwell's claim of false designation of origin was struck. (D.I. 335.) The jury found for Rockwell on its claim of false designation of origin and awarded damages to Rockwell. (D.I. 339 at pp. 2, 4-5.)

This damages award was erroneous because the Court did not require the jury to make a necessary factual finding.  Thus, a new trial is required for the matter to be decided under the correct legal standard.  *See Cooper Distrib. Co. v. Amana Refrigeration*, 63 F.3d 262, 275 (3d Cir. 1995) (new trial will be granted "only if the [jury] instruction was capable of confusing and thereby misleading the jury.").

### 2.    Counterfeiting.

Consistent with case law in this Circuit, WiAutomation's proposed jury instruction for counterfeiting required Rockwell to prove that WiAutomation intentionally used the trademark knowing it was counterfeit.  (D.I. 333 at p. 35); *see Astrazeneca AB v. Dr. Reddy's Lab'ys., Inc.*, 209 F.Supp.3d 744, 755 (D. Del. 2016) (To establish trademark counterfeiting, "plaintiff[] must establish defendant . . . 'intentionally used the trademark knowing it was counterfeit or was willfully blind to such use.'"); *Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc.*, 1998 WL 767440, at *7 (E.D. Pa. Nov. 3, 1998) (same).  The Court erred in striking WiAutomation's proposed jury instruction.  This error lowered Rockwell's burden of proof by eliminating the intentionality and knowledge components, allowing Rockwell to simply present evidence that WiAutomation sold a product that Rockwell concluded, without evidentiary support, was counterfeit.  This goes against established case law in this Circuit.

### E.    The Court Erred in Permitting Undisclosed Theories of Counterfeiting.

The Court erred in permitting Rockwell to pursue theories of infringement that it failed to disclose during discovery.  Such a surprise is grounds for a new trial.  *Conway v. Chem. Leaman Tank Lines, Inc.*, 687 F.2d 108, 111-112 (5th Cir. 1982) (citing 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2805 at 38 (1973) ("It is well settled that Rule 59 provides a means of relief in cases in which a party has been unfairly made

the victim of surprise.")).

WiAutomation objected to Rockwell's last minute attempt to pursue counterfeit theories that it failed to disclose during discovery. (July 13 Pretrial Conf. Tr. at 5:9-10:6.) For example, Rockwell did not list "counterfeiting" in response to WiAutomation's interrogatory seeking the basis for Rockwell's trademark infringement claim. (*Id.* at 7:23-8:15; Ex. 1 at Rog 19.)[1] Similarly, Rockwell did not identify that it sought damages for counterfeiting at all, and did not state that it sought damages under 15 U.S.C. 1117(b) or (c) in response to WiAutomation's interrogatory requesting the nature of damages sought. (July 13 Pretrial Conf. Tr. at 7:2-11; Ex. 1 at Rog. 3.) Put simply, Rockwell's discovery responses did not indicate that Rockwell was pursing any counterfeit claims at trial. These disclosures, however, were inaccurate, and Rockwell pursued extensive counterfeit theories at trial. (*See, e.g.,* July 24 Tr. at 222:12-17, 223:25-224:1, 224:6-8, 227:4-10; July 25 Tr. at 320:20-321:1, 321:8-18, 330:3-331:18, 332:4-25.)

Moreover, Rockwell, for the first time at trial, asserted that WiAutomation sold counterfeit products to RA Controls, a Rockwell Authorized Distributor (July 28 Tr. at 17:16-18:14) and to a customer in Houston (*id.* at 12:14-13:15). WiAutomation's interrogatories sought the factual bases for Rockwell's claim that WiAutomation sold counterfeit products, yet Rockwell never identified either of these examples in response. (July 13 Pretrial Conf. Tr. at 33:10-11; Ex. 3 at Rog 14.) WiAutomation was sandbagged at trial, and was not given a fair opportunity to prepare a defense. WiAutomation's objection about Rockwell's pursuit of unidentified theories should have been sustained. A new trial is required to correct the unfair

---

[1] Citation to "Ex." refers to exhibits attached to the B. Kasolas Declaration filed contemporaneously.

surprise that Rockwell caused at trial.

## III.   REMITTITUR

FRCP 59(e) allows parties to seek a reduction of damages awarded by the jury, commonly referred to as "remittitur."  Remittitur is "a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive."  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 715 (3d Cir. 2010) (citation omitted).  The district judge is given such discretion because he "is in the best position to evaluate the evidence presented and determine whether or not the jury ha[d] come to a rationally based conclusion."  *Spence v. Bd. Of Educ. Of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986) (citation omitted).  "There must be a rational relationship between the specific injury sustained and the amount awarded."  *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987).

As explained below, Rockwell is not entitled to recover every category of damages awarded by the jury.  Further, the jury's award of statutory damages and compensatory damages were excessive and must be reduced.

### A.   Rockwell Must Elect Statutory or Compensatory Damages.

Rockwell cannot recover both compensatory damages and statutory damages under the Lanham Act.  15 U.S.C. § 1117(a), (c).  Indeed, §1117(c) explicitly states that a "plaintiff may elect . . . ***instead of actual damages and profits*** under subsection (a), an award of statutory damages. . . ."  15 U.S.C. §1117(c) (emphasis added).

Courts have repeatedly held that a plaintiff cannot recover both compensatory damages and statutory damages under the Lanham Act.  *Covertech Fabricating, Inc. v. TVM Bldg. Prod., Inc.*, 855 F.3d 163, 176 (3d Cir. 2017) ("The Lanham Act provides two alternatives for calculating damages: either an award subject to principles of equity that turns on evidence of

the defendant's sales and profits or, alternatively, statutory damages . . ., the choice between these awards is at the plaintiff's election."). *See also Chanel, Inc. v. Matos*, 133 F.Supp.3d 678, 687 (D.N.J. 2015) ("In actions involving the use of counterfeit marks, the Lanham Act permits the plaintiff, as here, to elect to recover an award of statutory damages, rather than actual damages and profits."); *Coach, Inc. v. Cosm. House*, 2011 WL 1211390, at *7 (D.N.J. Mar. 29, 2011) (award of statutory damages under § 1117(c) and damages for false designation of origin and state unfair competition claims would be a "double recovery" that the plaintiff is "not entitled to"); *Luxottica Grp., S.p.A. v. Shore Enuff*, 2019 WL 4027547, at *6 (D.N.J. Aug. 27, 2019) ("plaintiff cannot recover under both 15 U.S.C. § 1117(a) and § 1117(c)."); *Am. Bridal & Prom Indus. Assoc., Inc. v. Jollyprom.com*, 2018 WL 1226106, at *5 (D.N.J. Mar. 9, 2018) (rejecting claim that plaintiff can recover damages under both 15 U.S.C. § 1117(a) and § 1117(c)).

The jury awarded compensatory damages in the amount it believed was needed to make Rockwell whole for all WiAutomation's alleged wrongdoing, not just counterfeiting. It would be a windfall double recovery to award Rockwell these compensatory damages, as well as statutory damages that nearly double Rockwell's actual damages. Since damages under the Lanham Act are subject to the principles of equity, Rockwell can only recover statutory damages or compensatory damages. Based on the foregoing authorities, Rockwell must elect either statutory damages or compensatory damages.

### B.    Rockwell Cannot Recover Both Statutory Damages & Punitive Damages.

In light of the jury's finding of willfulness, and the statutory damages award of $2,000,000, Rockwell cannot also recover punitive damages under state law. The Lanham Act provides for two levels of statutory damages in a case involving counterfeit marks. 15 U.S.C.

§ 1117(c).  A plaintiff can recover statutory damages between $1,000 and $200,000 per counterfeit mark per type of goods sold, as the court deems just.  15 U.S.C. § 1117(c)(1).  But, if the "court finds that the use of the counterfeit mark was willful," the plaintiff can be entitled to statutory damages of up to $2,000,000" per counterfeit mark per type of goods sold, as the court deems just.  15 U.S.C. § 1117(c)(2).  The increased statutory damages for willful counterfeiting, which is up to ten times ordinary statutory damages, is clearly punitive.  *Id.*; *see Matos*, 133 F.Supp.3d at 687 ("courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants."); *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, 2009 WL 2147843, at *7 (D.N.J. July 15, 2009) ("the purpose of statutory damages [is] to deter willful defendants.").  Here, the exceedingly high statutory damages awarded by the jury (an award of nearly seven times WiAutomation's profits) is undoubtedly punitive.

Courts have repeatedly declined to award punitive damages under state law, in addition to Lanham Act statutory damages, to prevent a double recovery.  *Church & Dwight Co. v. Kaloti Enters. of Mich.*, 697 F.Supp.2d 287, 293 (E.D.N.Y. 2009) ("Awarding punitive damages [from state law claims] on the facts here would be cumulative since statutory damages awards under the Lanham Act are already intended to take into account the goals of deterrence and punishment[.]"); *Malletier v. Carducci Leather Fashions, Inc.*, 648 F.Supp.2d 501, 506 (S.D.N.Y. 2009) ("The substantial sum [of $400,000] that I previously have recommended as a statutory damages award under the Lanham Act includes a punitive component. Accordingly, Louis Vuitton is not entitled to an additional award under New York law."); *Johnson & Johnson v. Azam Int'l Trading*, 2013 WL 4048295, at *15 (E.D.N.Y. Aug. 9, 2013) (declining to award punitive damages under state law after awarding statutory damages under § 1117(c)

20

based on the same facts).

The Court should not permit Rockwell to recover punitive damages if it elects the already-punitive award of statutory damages, to prevent a double recovery.

###### C.      The Statutory Damages Award is Excessive.

The Court has wide discretion in determining the "proper and just" amount of statutory damages. *New Balance Athletics, Inc. v. USA New Bunren Int'l Co.*, 2020 WL 5593932, at *3 (D. Del. Sept. 18, 2020) (awarding $504,000 in statutory damages for willful counterfeiting). While statutory damages have a punitive aspect, they "serve as a substitute for actual damages," and should "bear some discernible relation to the actual damages suffered." *Matos*, 133 F. Supp. 3d at 687 (quotation omitted).   The existence of willfulness "does not automatically entitle [Rockwell] to the maximum damages available under the Lanham Act." *N.V.E., Inc. v. Day*, 2009 WL 2526744, at *3 (D.N.J. Aug. 18, 2009) (awarding $250,000 in statutory damages for willful counterfeiting).

In fact, maximum statutory damages have only been awarded where there was evidence of substantial counterfeiting, not present here.   *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501-02 (C.D. Ca. 2003) (Awarding $2 million in statutory damages for willfully importing 8 million counterfeit cigarettes worth millions of dollars.); *Nike, Inc. v. Top Brand Co.*, 2006 WL 2946472, at *2 (S.D.N.Y. Feb. 27, 2006) (maximum statutory damages awarded where defendants' counterfeiting operation produced millions of counterfeit goods); *Tiffany (NJ) LLC v. Dong*, 2013 WL 4046380, at *6 (S.D.N.Y. Aug. 9, 2013) (awarding maximum statutory damages after finding that Defendants "offered more than 10,000 counterfeit" products); *Chanel, Inc. v. Gordashevsky*, 558 F.Supp.2d 535, 538 (D.N.J. 2008) (awarding $2,238,624 in statutory damages for nine websites that only sold counterfeit

21

handbags).

Unlike the above-cited cases, Rockwell has not presented evidence that WiAutomation sold millions of counterfeit products or ran a website dedicated to selling knockoffs. Rather, Rockwell only offered (at best) ***two examples*** of counterfeit sales in the United States. The evidence at trial does not support the same level of statutory damages that were awarded in cases where the defendant sold or manufactured millions of counterfeit products or ran large scale operations dedicated solely to the sale of counterfeit products. That the jury found WiAutomation only profited $288,800 from unlawful conduct demonstrates that the $2 million statutory damages award improperly bears no discernable relation to actual damages suffered. *Matos*, 133 F.Supp.3d at 687.

For these reasons, the Court must reduce the statutory damages award to an amount that compensates Rockwell and deters future conduct. Given that WiAutomation only received $288,800 in profits from the conduct at issue, these goals will be achieved by an award that is far less than $2 million.

### D.  The Compensatory Damages Award is Excessive.

The award of $1.052 million in compensatory damages is unsupported and excessive. The jury found that WiAutomation received $288,800 in profits from infringing U.S. sales. There is no evidence in the record from which the jury could have deduced that Rockwell needs an additional $764,000 to be compensated for conduct that only allowed WiAutomation to profit $288,800. Rockwell's damages expert testified that WiAutomation bought products from Rockwell distributors in Italy for 34.4% less than Rockwell's American dealers. (July 27 Tr. at 26:16-27:11.) Thus, the most "lost profits" that are supported by the record, and the jury's other findings, is $440,243.90 based on the following calculation: $288,800 / (1-.344).

Further, there is no support in the record from which the jury could have deduced that Rockwell incurred over $550,000 in any costs related to WiAutomation.  Rockwell made blanket statements that it spends "more than a million dollar[] a year" for all of its gray market and counterfeit enforcement costs, not just those relating to WiAutomation.  (July 25 Tr. at 358:6-12.)  But Rockwell did not give any specifics about its overall costs.  Worse, Rockwell offered no testimony or evidence even suggesting any actual costs incurred in connection with WiAutomation.  Further, Rockwell's expert admitted that he did not offer a quantification of damages concerning any loss of good will or price erosion.  (July 27 Tr. at 50:20-24.)

Based on the foregoing, there was no evidentiary basis to award $1.052 million in compensatory damages.  This amount must be reduced under Rule 59(e) because it is excessive and unsupported.  Alternatively, the Court should reduce this unsupported award "subject to the principles of equity," per 15 U.S.C. § 1117(a), the provision providing for Rockwell's award of compensatory damages.

## CONCLUSION

For the foregoing reasons, WiAutomation respectfully requests that its motion for JMOL, a New Trial, and/or Remittitur be granted.

Dated: September 11, 2023

*Of Counsel*:

Bob Kasolas
Eric J. Boden
BRACH EICHLER, LLC
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 403-3139
bkasolas@bracheichler.com
eboden@bracheichler.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ *Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Alexis N. Stombaugh (No. 6702)
Maliheh Zare (No. 7133)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
astombaugh@ycst.com
mzare@ycst.com

*Attorneys for Defendant*

24

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 11, 2023, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**<u>BY E-MAIL</u>**

Dominick T. Gattuso
HEYMAN ENERIO GATTUSO
& HIRZEL LLP
300 Delaware Ave., Suite 200
Wilmington, DE 19801
dgattuso@hegh.law

John W. Shaw
Andrew E. Russell
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
jshaw@shawkeller.com
arussell@shawkeller.com
skRockwell@shawkeller.com

Matthew M. Welch
ALSTON & BIRD LLP
One South at The Plaza
101 South Tryon Street
Suite 4000
Charlotte, NC 28280
matt.welch@alston.com

Neal J. McLaughlin
Paul Tanck
Christopher L. McArdle
Andrew J. Ligotti
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
neal.mclaughlin@alston.com
paul.tanck@alston.com
chris.mcardle@alston.com
andy.ligotti@alston.com

Joshua M. Weeks
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
joshua.weeks@alston.com


YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Alexis N. Stombaugh (No. 6702)
Maliheh Zare (No. 7133)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
astombaugh@ycst.com
mzare@ycst.com
*Attorneys for Defendant*