IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCKWELL AUTOMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Redacted - Public Version |
| | ) | |
| v. | ) | C.A. No. 21-1238-GBW-JLH |
| | ) | |
| PARCOP S.R.L. d/b/a | ) | ████████████ |
| WIAUTOMATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ROCKWELL AUTOMATION, INC.'S OPENING BRIEF IN
<u>SUPPORT OF POST-TRIAL MOTIONS</u>**

OF COUNSEL:
Paul Tanck
Neal J. McLaughlin
Christopher L. McArdle
Andrew J. Ligotti
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9400

Matthew M. Welch
ALSTON & BIRD LLP
One South at The Plaza
101 South Tryon Street
Suite 4000
Charlotte, NC 28280-4000
(704) 444-1000

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
edibenedetto@shawkeller.com

*-and-*

Joshua M. Weeks
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309-3424
(404) 881-7000

Dated: September 11, 2023

Dominick T. Gattuso (No. 3630)
HEYMAN ENERIO GATTUSO & HIRZEL
LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7311
dgattuso@hegh.law

*Attorneys for Rockwell Automation, Inc.*

## <u>TABLE OF CONTENTS</u>

I.      **Introduction** ...................................................................................1

II.     **Nature and Stage of the Proceedings**.................................................2

III.    **Summary of the Argument**...............................................................3

IV.    **Argument** .......................................................................................3

     A.     The Court Should Enter a Permanent Injunction ...................................3

     B.     The Court Should Treble the Jury's Award of Rockwell's Actual Damages ........................................................................................6

     C.     The Court Should Disgorge $21,761,933.17 from WiAutomation ......8

          i.      Disgorgement is Appropriate Under Equitable Principles ........9

          ii.     $21,761,933.17 Should be Disgorged.......................................10

               a.     WiAutomation's Total Sales Revenue ...........................11

               b.     WiAutomation's U.S. Sales of Rockwell-branded Products ...............................................................................14

               c.     WiAutomation Fails to Meet its Burden to Demonstrate Deductible Costs beyond €55,751 ..................................16

          iii.    Rockwell is Entitled to Both WiAutomation's Profits and Rockwell's Actual Damages....................................................17

               a.     There is No Double Recovery .......................................17

               b.     WiAutomation's Willful Counterfeiting and Infringement Along with Its Failure to Produce Discovery Warrant the Full Disgorgement Amount. ..........................................19

     D.     Reasonable Attorneys' Fees and Costs Should be Awarded to Rockwell..........................................................................................21

          i.      Exceptionality ........................................................................22

           ii.     Reasonableness .......................................................................24

     E.     Pre-Judgment and Post-Judgment Interest Should be Awarded to Rockwell..........................................................................................27

          i.      Pre-Judgment Interest .............................................................27

           ii.     Post-Judgment Interest............................................................29

**V.      Conclusion**................................................................................**31**

## <u>TABLE OF AUTHORITIES</u>

**Pages(s)**

**Cases**

*Abbott Labs. v. H&H Wholesale Servs., Inc.*,
   2022 U.S. Dist. LEXIS 232695 (E.D.N.Y. Dec. 27, 2022)...........................22

*Acumed LLC v. Advanced Surgical Servs.*,
   561 F.3d 199 (3d. Cir. 2009) ........................................................................23

*Am. Honda Motor Co., Inc. v. Two Wheel Corp.*,
   918 F.2d 1060 (2d Cir. 1990) .......................................................................27

*AstraZeneca AB v. Camber Pharma., Inc.*,
   2015 U.S. Dist. LEXIS 156272 (D. Del. Nov. 19, 2015)................................5

*Banjo Buddies, Inc. v. Renosky*,
   399 F.3d 168 (3d Cir. 2005) ............................................................. 9, 10, 19

*Blum v. Stenson*,
   465 U.S. 886, 895 (1984) ..............................................................................26

*Choice Hotels Int'l, Inc. v. Frontier Hotels, Inc.*,
   2018 WL 2317604 (S.D. Tex. May 22, 2018)................................................17

*Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City*,
   383 F.3d 110 (3d Cir. 2004) ...........................................................................4

*Concordia Pharms., Inc. v. Method Pharms., LLC*,
   240 F. Supp. 3d 449 (W.D. Va. 2017)............................................................7

*CPC Props. v. Dominic, Inc.*,
   2013 U.S. Dist. LEXIS 145907 (E.D. Pa. Oct. 9, 2013) ...............................19

*Deckers Outdoor Corp. v. Ego Shoes Ltd.*,
   2021 U.S. Dist. LEXIS 243692 (C.D. Cal. Nov. 19, 2021) ...........................17

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)........................................................................................3

*Experience Hendrix, L.L.C. v. Pitsicalis*,
    2020 U.S. Dist. LEXIS 115075 (S.D.N.Y. July 1, 2020)...........................22

*Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*,
    952 F.2d 44 (3d Cir. 1991) ........................................................................23

*Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*,
    2023 U.S. Dist. LEXIS 97646 (S.D.N.Y. June 5, 2023)..............................22

*Fox v. Vice*,
    563 U.S. 826 (2011).....................................................................................25

*Game Power Headquarters, Inc. v. Owens*,
    1995 U.S. Dist. LEXIS 5998 (E.D. Pa. May 4, 1995)....................................5

*Georgia-Pacific Consumer Prods. LP v. Von Drehle Corp.*,
    781 F.3d 710 (4th Cir. 2015) ......................................................................27

*Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*,
    2010 Del. Ch. LEXIS 15 (Del. Ch. Jan. 29, 2010).......................................21

*Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*,
    2020 Del. Ch. LEXIS 76 (Del. Ch. Feb. 27, 2020) ......................................20

*GTFM, Inc. v. Solid Clothing, Inc.*,
    215 F. Supp. 2d 273 (S.D.N.Y. 2002) ................................................... 16, 19

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
    315 F. Supp. 2d 511 (S.D.N.Y. 2004) .........................................................21

*Hetronic Int'l, Inc. v. Hetronic Germany GmbH*,
    2020 U.S. Dist. LEXIS 77982 (W.D. Okla. May 4, 2020) .............................5

*In re Southland Royalty Co. LLC*,
    2020 WL 13571824 (Bankr. D. Del. Feb. 5, 2020).....................................25

*In re: Bestwall LLC*,
    2018 WL 3496624 (Bankr. W.D.N.C. Feb. 9, 2018) ...................................25

*Jack Tyler Eng'g Co. v. Env't-One Corp.*,
    2009 U.S. Dist. LEXIS 140245 (W.D. Tenn. July 30, 2009).......................11

*John Wiley & Sons, Inc. v. Book Dog Books*, LLC,
    327 F. Supp. 3d 606 (S.D.N.Y. 2018) ........................................................22

*JUUL Labs Inc. v. Gates Mini Mkt. Corp.*,
    2022 U.S. Dist. LEXIS 81103 (E.D.N.Y. May 2, 2022)................................6

*Karen Dillard's College Prep, L.P. v. KD Studio*,
    2014 U.S. Dist. LEXIS 194047 (E.D. Tex. Oct. 30, 2014)...........................5

*Kars 4 Kids Inc. v. Am. Can!*,
    2020 U.S. Dist. LEXIS 224692 (D.N.J. Aug. 6, 2020).................................27

*Kars 4 Kids Inc. v. Am. Can!*,
    8 F.4th 209 (3d Cir. 2021) ......................................................................7, 27

*Luxottica Grp., S.p.A. v. Shore Enuff*,
    2019 U.S. Dist. LEXIS 145357 (D.N.J. Aug. 27, 2019)..............................27

*Maldonado v. Houstoun*,
    256 F.3d 181 (3d Cir. 2001) .......................................................................24

*Merck Eprova AG v. Gnosis S.p.A.*,
    901 F. Supp. 2d 436 (S.D.N.Y. 2012) .........................................................20

*MetaQuotes Ltd. v. MetaQuotes Software Corp.*,
    2023 U.S. Dist. LEXIS 86844 (C.D. Cal. May 17, 2023)............................17

*Mon Cheri Bridals, Inc. v. Wen Wu*,
    383 Fed. Appx. 228 (3d. Cir. 2010) ...............................................................8

*Nakava, LLC v. S. PAC Elixir Co.*,
    2022 U.S. Dist. LEXIS 218592 (S.D. Fla. Dec. 5, 2022)............................22

*Ne. Lumber Mfrs. Ass'n v. N. States Pallet Co.*,
    2011 WL 320619 (D.N.H. Jan. 31, 2011) ....................................................17

*New Balance Ath., Inc. v. USA New Bunren Int'l Co. LLC*,
    2020 U.S. Dist. LEXIS 170906 (D. Del. Sept. 18, 2020) ..............................8

*Opticians Ass'n of Am. v. Independent Opticians of Am.*,
    920 F.2d 187 (3d Cir. 1990) ..........................................................................6

*Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*,
    51 F.3d 1179 (3d Cir. 1995) ...........................................................................25

*Regeneron Pharms., Inc. v. Merus N.V.*,
    2018 U.S. Dist. LEXIS 115661 (S.D.N.Y. June 25, 2018) ...........................26

*Romag Fasteners, Inc. v. Fossil Grp., Inc.*,
    140 S. Ct. 1492 (2020) ..................................................................................19

*S&P Glob. Inc. v. S&P Data LLC*,
    619 F. Supp. 3d 445 (D. Del. 2022) ...............................................................4

*St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*,
    2008 U.S. Dist. LEXIS 140044 (M.D. Fla. Mar. 12, 2008) .........................23

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
    282 U.S. 555 (1931) ......................................................................................20

*SurgiQuest v. Lexion Med., Inc.*,
    2018 U.S. Dist. LEXIS 82323 (D. Del. May 16, 2018) ...............................29

*W. R. Berkley Corp. v. Dunai*,
    2022 U.S. Dist. LEXIS 226628 (D. Del. Dec. 16, 2022) ................. 28, 29, 30

*Waits v. Frito-Lay, Inc.*,
    978 F.2d 1093 (9th Cir. 1992) .......................................................................23

*Wi-Lan Inc. v. Sharp Elecs. Corp.*,
    2022 U.S. Dist. LEXIS 75512 (D. Del. Apr. 25, 2022) ................................25

**Statutes**

15 U.S.C. § 1116(a) .................................................................................................4

15 U.S.C. § 1117(a) .......................................................................................... *passim*

28 U.S.C. § 1961 .............................................................................................. 27, 29

6 Del. C. § 2301(a) ................................................................................................28

6 Del. C. 1953 § 2533(b) ................................................................................ 6, 7, 21

**Rules**

F.R.E. 703 ........................................................................................................12

Fed. R. Civ. P. 54(d)(2)(A) ..............................................................................21

## I.      INTRODUCTION

WiAutomation is a willful infringer and counterfeiter that demonstrated a complete disregard for Rockwell's intellectual property rights and the litigation process in general. WiAutomation had every opportunity to stop infringing and remove untruthful website statements, but it consistently chose to put its own financial interest first, no matter the cost. Its actions extend beyond a mere "aura of indifference"—this case is truly exceptional.

The trial record makes this clear. WiAutomation invented warehouses in countries across the world, fabricated reviews, and falsely claimed "+20 years of experience." WiAutomation's founders, Porfirio Ladonea and Fulvio Coppola, repeatedly impeached themselves and undercut their credibility throughout trial. WiAutomation obfuscated discovery, was sanctioned, and failed to produce basic financial information to try to hide the scope of its counterfeiting and infringement.

The jury recognized this in its verdict, awarding disgorgement, compensatory, statutory, and punitive damages. Even still, Rockwell introduced evidence of even higher amounts of lost profits and greater damage to its valuable goodwill. Rockwell also demonstrated WiAutomation's millions of dollars in sales. Accordingly, the Court should evaluate the evidence presented at trial to craft the appropriate remedy and damages award to address WiAutomation's exceptional conduct and permanently enjoin it from further infringement.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

The jury found WiAutomation liable for trademark infringement, counterfeiting, false designation of origin, deceptive trade practices, and unfair competition. D.I. 339. The jury found that WiAutomation's wrongful conduct was willful and awarded compensatory ($1,052,000), statutory ($2,000,000), and punitive ($1,000,000) damages. *Id*. The jury also provided an advisory verdict that the Court should disgorge $288,800 in WiAutomation's profits. *Id*. The below table compares the jury's award to the evidence:

| | __Evidence__ | __Jury Award__ |
|---|---|---|
| __WiAutomation's Profit__ | $21,700,000 | $288,800 |
| __Harm to Rockwell__ | $11,560,000 | $1,052,000 |
| __Statutory Damages__ | $8,000,000 (4x$2,000,000) | $2,000,000 |
| __Punitive Damages__ | Jury's Discretion | $1,000,000 |

The Court entered judgment in favor of Rockwell against WiAutomation in the amount of $4,052,000 (*i.e.*, actual, statutory, and punitive damages) and will decide disgorgement post-trial. D.I. 342.

## III.   SUMMARY OF THE ARGUMENT

First, WiAutomation should be permanently enjoined. Second, the jury's compensatory damages award should be trebled as required by statute and particularly in view of WiAutomation's willful conduct. Third, the Court should disgorge WiAutomation's profits in an amount reflecting (a) the evidence at trial and (b) the adverse inferences drawn from WiAutomation's failure to provide financial evidence. Fourth, this case is exceptional and reasonable attorneys' fees and costs should be awarded. And fifth, pre-judgment and post-judgment interest should be awarded.

## IV.   ARGUMENT

### A.   The Court Should Enter a Permanent Injunction

Rockwell moves for a permanent injunction enjoining WiAutomation as set forth in Appendix A of the [Proposed] Amended Judgment Following Jury Verdict (which is Exhibit 1 to the Proposed Order), submitted herewith. A plaintiff seeking a permanent injunction must demonstrate: (1) it suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) a remedy in equity is warranted considering the balance of hardships; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "A permanent injunction is the usual and normal remedy once trademark infringement has been found in a final

judgment." *S&P Glob. Inc. v. S&P Data LLC*, 619 F. Supp. 3d 445, 472 (D. Del. 2022).

### Irreparable Harm:

A "plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction." 15 U.S.C. §1116(a). The presumption applies because WiAutomation violated the Lanham Act. *Id.*; D.I. 342; *see also Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 125 (3d Cir. 2004).

### Remedies at law:

In trademark cases, "[r]emedies available at law would not be able to compensate Plaintiffs for their loss of control over their reputation." *S&P Global*, 619 F. Supp. 3d at 472. At trial, Rockwell introduced evidence that WiAutomation sold and was continuing to sell used and counterfeit products bearing Rockwell trademarks. Trial Transcript ("Transcript") (7/26/2023), 97:1-98:2; *id.*, (7/25/2023), 525:11-22 (Professor Franklyn testifying to "serious risk of injury" to Rockwell's goodwill); *id.*, 361:9-25 (Mr. Smaglik testifying to the harm to Rockwell from counterfeit products), 542:10-17; *id.*, (7/27/2023), 29:3-30:6, 31:7-32:3, 48:8-50:19.

WiAutomation cannot be permitted to simply pay damages and continue its improper conduct. The high likelihood that future confused consumers will continue to mistakenly attribute to Rockwell defects or negative impressions they have due to those improper WiAutomation sales causes harm to Rockwell's reputation that is "irreparable" and thus money damages are "inadequate" to fully compensate Rockwell. *See Game Power Headquarters, Inc. v. Owens*, 1995 U.S. Dist. LEXIS 5998, at *18-20 (E.D. Pa. May 4, 1995) (granting permanent injunction because "monetary damages only addresses injury caused by past infringement").

**Balance of Hardships:**

Denying injunctive relief would prolong Rockwell's irreparable harm and WiAutomation should bear the consequences of an injunction because it "engaged in the conduct at issue fully aware of such consequences." *AstraZeneca AB v. Camber Pharma., Inc.*, 2015 U.S. Dist. LEXIS 156272, at *17 (D. Del. Nov. 19, 2015) ("[A] party 'can hardly claim to be harmed where it brought any and all difficulties occasioned by the issuance of an injunction upon itself.'").[1]

---

[1] *Karen Dillard's College Prep, L.P. v. KD Studio*, 2014 U.S. Dist. LEXIS 194047, at *5-6 (E.D. Tex. Oct. 30, 2014) ("[N]o balancing of hardships is required if the infringement is willful."); *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 2020 U.S. Dist. LEXIS 77982, at *5-6 (W.D. Okla. May 4, 2020) (same).

*Public Interest:*

And finally, "public interest would be served by a permanent injunction by preventing consumer confusion." *S&P Global*, 619 F. Supp. 3d at 472. Given that WiAutomation's use of Rockwell's marks infringes, "it follows that if such use continues, the public interest would be damaged" while "a prohibition upon [defendant's] use of the marks would eliminate that confusion." *Opticians Ass'n of Am. v. Independent Opticians of Am.,* 920 F.2d 187, 198 (3d Cir. 1990); *JUUL Labs Inc. v. Gates Mini Mkt. Corp*., 2022 U.S. Dist. LEXIS 81103, at *2-3 (E.D.N.Y. May 2, 2022) (granting permanent injunction addressing non-genuine, counterfeit, and/or unauthorized grey market products).

A permanent injunction, as set forth in Appendix A of the [Proposed] Amended Judgment Following Jury Verdict , should be entered.

## B.   The Court Should Treble the Jury's Award of Rockwell's Actual Damages

The jury found, *inter alia*, WiAutomation liable for willful unfair competition and deceptive trade practices under Delaware's Deceptive Trade Practices Act (DDTPA). Rockwell was awarded $1,052,000 for these violations. D.I. 339, 5. Under the DDTPA, this award is trebled to $3,156,000. 6 Del. C. 1953 §2533(b).

In addition, under 15 U.S.C. §1117(a) "the court may enter judgment . . . for any sum above the amount found as actual damages, not exceeding three times

such amount." Courts regularly enhance damages when there is willful infringement and plaintiff will not be fully compensated without the enhancement. *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 224, n.22 (3d Cir. 2021) (holding that "willful infringement is central, to the decision whether to enhance damages"); *Concordia Pharms., Inc. v. Method Pharms., LLC*, 240 F. Supp. 3d 449, 455-58 (W.D. Va. 2017) (exercising "discretion to treble the amount found as actual damages . . . to fairly and adequately compensate Concordia for the adverse effects of the defendants' misconduct").

Here, trebling to $3,156,000 is not only required under the DDTPA, but would also be appropriate under §1117(a) to compensate Rockwell for WiAutomation's willful infringement and counterfeiting. D.I. 339. This trebled amount is more than appropriate considering Rockwell's actual harm due to WiAutomation's conduct. It is, in fact, well short of it. Mr. Reed testified that Rockwell suffered at least $11.56M in actual harm from 2018 (the beginning of WiAutomation's infringement) through trial. PDX004.33-34; Transcript (7/27/2023), 36:8-13; 24:11-29:2. Mr. Reed's testimony is amply supported by: Rockwell's lost sales (Transcript, (7/27/2023), 24:11-29:2, 36:8-13); Mr. Smaglik's testimony that Rockwell incurs $1 million/year to police gray market infringers and counterfeiters like WiAutomation (*id*., 31:19-32:3; *id*., (7/25/2023), 358:6-18)); price erosion and price pressure (*id*., (7/27/2023), 31:7-18, 48:20-

50:19, 30:8-11); and harm to Rockwell's valuable goodwill which is valued at about $70M for the Rockwell Automation-owned trademarks alone. *Id*., 29:20-30:6; *id.*, (7/24/2023), 106:2-6. Accordingly, the Court should treble the compensatory damages to $3,156,000.

If the Court does not treble the compensatory damages under 6 Del. C. 1953 §2533(b) and further denies Rockwell's request for enhanced damages under §1117(a), Rockwell requests the opportunity, before entry of final judgment, to elect trebled damages under §1117(b) of the Lanham Act, because the jury found WiAutomation willfully counterfeited and there are no extenuating circumstances. 15 U.S.C. §1117(b); *see also Mon Cheri Bridals, Inc. v. Wen Wu*, 383 Fed. Appx. 228, 240 (3d. Cir. 2010) (noting trebling is "mandatory" under 1117(b)); *New Balance Ath., Inc. v. USA New Bunren Int'l Co. LLC*, No. 17-1700-MN, 2020 U.S. Dist. LEXIS 170906, at *8-9 (D. Del. Sept. 18, 2020).

### C.     The Court Should Disgorge $21,761,933.17 from WiAutomation

Under §1117(a), Rockwell "shall be entitled . . . subject to the principles of equity, to recover (1) ***defendant's profits***, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. §1117(a) (emphasis added). While the jury correctly determined that disgorgement was appropriate, the amount

8

of its advisory verdict[2] was inconsistent with the evidence and the Court's instructions. The evidence supports disgorging $21,761,933.17 from WiAutomation.

  i. <u>Disgorgement is Appropriate Under Equitable Principles</u>

Disgorgement is warranted to prevent WiAutomation from profiting from its willful infringement. *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175, 177-78 (3d Cir. 2005) (determining that intent to infringe (factor 1) is an "important . . . factor in evaluating whether equity supports disgorging the infringer's profits"). The other *Banjo Buddies* factors favor disgorgement as well. WiAutomation's misconduct diverted Rockwell's sales (factor 2) (18:14-24:5, 24:14-24, 25:12-18, 26:7-15, 29:20-30:11, 31:7-32:3, 36:8-12, *id.* (7/25/2023), 300:8-310:1, 310:23-313:5, 313:18-314:17, 316:9-318:15, 319:24-320:17, 333:22-343:17, 357:4-360:10, 361:9-25, 475:8-14, 475:23-476:7, 490:14-491:22; PPX-001, PPX-002; PTX-1948; PTX-1949; DTX-11); other relief would not correct Rockwell's harm (factor 3) (*id.*, (7/25/2023), 318:16-319:24, 358:6-360:10, 361:9-25, 525:11-22, 542:10-17 *id.*, (7/27/2023), 29:3-32:3, 46:1-18, 48:6-9, 50:9-51:1; PTX-1857.10); WiAutomation abandoned its laches and equitable estoppel defenses at trial (factor 4) (D.I. 11, 14-16; D.I. 155, 2-3; D.I. 314-5, ¶¶3-4, 54-60); the public has a strong

---

[2] The jury's finding of the amount of WiAutomation's profits is an "advisory issue" for which the Court would make the "final decision." Transcript (7/26/2023), 203:1-7; 15 U.S.C. §1117(a).

interest in preventing WiAutomation from profiting off its intentional conduct (factor 5) (D.I. 342, ¶¶1-5; Transcript (7/25/2023), 280:19-284:24, 291:4-298:7, 301:16-302:2; Transcript (7/24/2023), 95:17-97:18, 101:14-102:3, 105:14-106:6); and WiAutomation palmed off old, used, and counterfeit products as genuine new Rockwell products (factor 6). (7/25/2023), 289:2-291:20, 300:8-310:1, 310:23-313:5, 313:18-314:17, 316:9-318:15, 319:24-320:17, 333:22-343:17, 357:4-21; PTX-1566.2; PPX-001, PPX-002; PTX-1948; PTX-1949; DTX-11. The equities favor disgorgement.

      ii.   <u>$21,761,933.17 Should be Disgorged</u>

Under the Lanham Act, "profits" are defined as defendant's sales deducting only costs **proven by Defendant** to be "directly and validly connected to the sale of the products." D.I. 335, 34-35; *Banjo Buddies*, 399 F.3d at 177 ("[T]he onus of producing [cost and deductions] evidence is clearly placed by §35(a) on" the infringer); 15 U.S.C. §1117(a). Rockwell bears the burden "to prove defendant's sales only." *Id.* Rockwell met its burden and provided evidence that WiAutomation earned $21,761,933.17, after deduction of costs, from 2018 through trial based on WiAutomation's total global revenue (€168,941,061), the percentage of Rockwell-branded products (██%), and the percentage of U.S. sales of Rockwell-branded products (██%).

It was ***WiAutomation's burden***, however, to prove any deductions from that revenue to be disgorged. *Id*. Yet WiAutomation came to court empty handed. The only evidence at trial on WiAutomation's deductions from the revenue was provided by Mr. Reed, who credited WiAutomation with €55,751 in costs based on the limited invoices produced.

  a. *WiAutomation's Total Sales Revenue*

Because WiAutomation failed to produce records for Rockwell-branded products sold to U.S. customers, Rockwell's expert, Mr. Reed, used other reliable sources of information to calculate WiAutomation's sales. Transcript (7/27/2023), 11:6-14, 12:15-13:24, 45:14, 55:25, 69:22-70:6. For 2018-20, Mr. Reed evaluated WiAutomation's Italian tax returns. (PTX-1924-25). He determined they disclosed €81,238, €459,823, and €3,574,533 in revenue for 2018, 2019, and 2020. Transcript (7/27/2023), 12:15-13:24, 39:24-40:5, 42:10-13.

For 2021-2023, WiAutomation failed to provide any tax returns. Transcript (7/27/2023), 12:13-13:16; *id*., (7/26/2023), 122:2-14. Mr. Reed thus evaluated other reliable evidence of WiAutomation's revenue for that period: the presentation of WiAutomation's key financial metrics by its trusted web-hosting partner, Flame Networks. Mr. Reed combined the revenue from the two periods totaling €168,941,061. PDX004.12, PDX004.31.

11

WiAutomation presented no contradictory sales evidence, challenging only the reliability of the Flame Networks presentation. Mr. Reed carefully analyzed the record and provided the following reasons why the presentation was reliable. *See Jack Tyler Eng'g Co. v. Env't-One Corp.*, 2009 U.S. Dist. LEXIS 140245, at *6 (W.D. Tenn. July 30, 2009) (holding an expert is "only required to use *a* reliable method" not "a particular reliable method").

(1) **The Nature of the Presentation:** Mr. Reed testified that Flame Network's CEO publicly presented the data at an e-commerce conference. Transcript (7/27/2023), 16:5-16, 41:2-6. He explained that the presentation is a "case study about the huge success of WiAutomation." *Id.*, 16:5-16; PTX-1885. He also explained that the charts in the presentation had "information about orders, about revenue, about traffic, with a lot of other support." *Id.*, 40:25-41:6. Based on these indicia of reliability, Mr. Reed testified that the data was of the type that experts in his field normally rely upon.  *Id.*, 15:4-10, 16:5-16; 18:14-25; F.R.E. 703. WiAutomation's own expert, Mr. Blok, also admitted that "I think you would consider that information," when asked about the Flame Networks data. *Id.*, 121:7-11.

(2) **WiAutomation's CEO's Testimony:** Porfirio Ladonea, WiAutomation's founder and CEO, "recommend[s] the guys at Flame Networks," because they are "like talking to family," and "it's a pleasure to collaborate with such a well-

prepared, friendly, and visionary team." Transcript (7/26/2023), 103:16-104:1. He stated that Flame Networks is "unlike many other companies in the same market that do not honor their promises." *Id*.

Mr. Ladonea's attempts to undercut the presentation's data were repeatedly shown to be meritless. Transcript (7/26/2023), 106:21-107:7, 111:2-22, 119:10-123:13. He was impeached—even on matters as basic as whether the Flame Networks presentation had units on the graph (it does) or whether the presentation remains available online (it is). *Id.*, 104:2-105:4, 105:20-106:7, 119:4-120:18. As Mr. Reed explained "[t]here's no documents that support" Mr. Ladonea's testimony. *Id.*, 55:17-25.

*(3) WiAutomation is Identified as the Source:* Mr. Reed testified that "the source that was identified for the information underneath [the data] was identified as Parcop S.r.l., which is WiAutomation." Transcript (7/27/2023), 19:1-18. Mr. Ladonea confirmed this. *Id.*, (7/26/2023), 111:15-22.

*(4) Consistent Data:* Mr. Reed further explained why the Flame Networks data are reliable.

First, Mr. Reed had 2020 sales data from both the Flame Networks presentation (€3,950,000) and WiAutomation's 2020 tax returns (€3,574,533). Mr. Reed determined that these data were consistent, which also gave him confidence that the remainder of the data in the Flame Networks presentation were reliable.

13

Transcript (7/27/2023), 41:18-23 ("this was completely consistent"); 18:14-25, 19:1-18; PDX004.11-12.

Second, the Flame Networks data trend shows substantial growth beginning in 2020 and continuing into 2021. *Id.*, (7/27/2023), 18:14-19:18, 42:21-43:23. This is consistent with WiAutomation's tax returns—filed in the summer of 2021—which state "the 2020 financial year was the first year in which the company saw, starting from the fourth quarter, *an exponential growth in business volumes and consequently in profits compared to previous years*." Transcript (7/26/2023), 116:15-117:3; *id.*, (7/27/2023), 18:14-19:18, 38:3-7, 42:21-43:13, 44:25-45:25. Thus, the evidence at trial supports the Flame Networks data's reliability.

### b. WiAutomation's U.S. Sales of Rockwell-branded Products

Mr. Reed next calculated the percentage of WiAutomation's global revenue attributable to Rockwell-branded products (step one) and the percentage of those products' sales made in the U.S (step two). PDX004.13-4.18; Transcript (7/27/2023), 19:19-24:10.

For step one, Mr. Reed evaluated an ARC Advisory Group report "to assess the market, assess market share, to look at trends in the industry." Transcript (7/27/2023), 20:18-21:12; PTX-1767. The ARC report details the industry and reports that Rockwell had a ███% market share on a worldwide basis. PTX-1767.15; Transcript (7/27/2023), 21:19-22:11. Mr. Reed applied the ███% share to

WiAutomation's worldwide product sales because WiAutomation's share of product sales by brand would be similar because WiAutomation sells the same brands globally. *Id.*

For step two, Mr. Reed evaluated data regarding the portion of Rockwell's global sales made in the U.S. Transcript (7/27/2023), 22:18-23:11; PDX004.17-18; PTX-1765, PTX-1766. Mr. Reed explained that "Rockwell is very strong in the United States . . . because of the demand for its products [are] here in the U.S., that's why [] the customers are here for Rockwell products." Transcript (7/27/2023), 53:12-54:1. WiAutomation sells to where the demand for Rockwell products is and ██% of Rockwell's demand is in the U.S. *Id.*, 71:20-71:14; PTX-1767.45; 56:1-3, 56:10-21, 57:3-6.

WiAutomation's only rebuttal on this calculation was from Mr. Blok, whose opinions were almost entirely excluded by the Court's *Daubert* rulings. D.I. 304, 4-7. As Mr. Reed explained, Mr. Blok's internet traffic data was based on an incomplete, free, public version of the data. Transcript (7/27/2023), 36:14-37:3. Mr. Reed testified that the full, paid version of the data "is completely consistent with [Mr. Reed's] analysis" and that even Mr. Blok's partial data supports Rockwell's ██% figure. *Id.*

### c. *WiAutomation Fails to Meet its Burden to Demonstrate Deductible Costs beyond €55,751*

Last, Mr. Reed subtracted deductible costs in the amount of €55,751. Transcript (7/27/2023), 23:12-22; PDX004.19. Mr. Reed's costs figure is derived from the ***only*** deductible costs evidence admitted at trial. *Id.* WiAutomation's attempt to cross-examine Mr. Reed regarding *global cost of goods sold and total profit margin for the entire company* fell flat. *Id.*, 68:3-71:13. WiAutomation did not meet its burden to demonstrate how cost data in 2018-2020 Italian tax returns "contributed to the sale of a Rockwell-branded product." D.I. 335, 34. Mr. Reed repeatedly testified that these claimed profit margins "relate to the overall business" and were provided "without any supporting documentation." Transcript (7/27/2023), 69:15-71:13. Plus, these data cannot withstand the "extra scrutiny" WiAutomation must face for its willful infringement. D.I. 335, 35. WiAutomation also failed to meet its burden because it failed to provide ***any*** evidence of expenses for 2021, 2022, and 2023 "incurred by WiAutomation in producing the gross revenue in the United States." *Id*.

All told, the maximum proven deduction from the gross revenue is €55,751. When this is deducted from the revenue of U.S. sales of Rockwell-branded products, it results in $21,761,933.17 in profit ((€14,116,665 (2018-2022 revenue) + €6,590,000 (2023 revenue through trial) – €55,751 (deductible costs))*1.0538). PDX004.19, 31, 34.

iii.   Rockwell is Entitled to Both WiAutomation's Profits and Rockwell's Actual Damages

a.   *There is No Double Recovery*

The Lanham Act provides that Rockwell is entitled to recover, subject to equitable principles, each of "(1) defendant's profits, (2) any damages sustained by the plaintiff, ***and*** (3) the costs of the action. 15 U.S.C. §1117(a) (emphasis added). An award of both WiAutomation's profits and damages sustained by Rockwell is appropriate. *See, e.g.*, *GTFM, Inc. v. Solid Clothing, Inc*., 215 F. Supp. 2d 273, 305 (S.D.N.Y. 2002) (award of both infringer's profits ($5.3M) and the trademark owner's lost profits damages ($1.4M) was not double recovery); *MetaQuotes Ltd. v. MetaQuotes Software Corp.*, 2023 U.S. Dist. LEXIS 86844, at *33-35 (C.D. Cal. May 17, 2023) (recovery of treble profits and damages permitted); *Deckers Outdoor Corp. v. Ego Shoes Ltd.*, 2021 U.S. Dist. LEXIS 243692, at *7 (C.D. Cal. Nov. 19, 2021) (awarding treble damages plus profits); *Choice Hotels Int'l, Inc. v. Frontier Hotels, Inc.*, 2018 WL 2317604, at *3 (S.D. Tex. May 22, 2018) (awarding treble profits plus damages); *Ne. Lumber Mfrs. Ass'n v. N. States Pallet Co.*, 2011 WL 320619, at *7 (D.N.H. Jan. 31, 2011) (same). The trial evidence demonstrates that sales leading to WiAutomation's profits are ***not*** duplicative of Rockwell's harm, and therefore an award of both defendant's profits and Rockwell's damages is permitted under the Lanham Act.

17

This is not a case where WiAutomation's profits are a proxy for Rockwell's lost sales. Rather, Rockwell sells genuine products to its ADs (Transcript (7/24/2023), 106:7-107:13) while WiAutomation sells counterfeit, used, or old products directly to consumers at a margin that vastly exceeds Rockwell's margins. Transcript (7/27/2023), 31:7-18, 49:1-18. These are two separate transactions involving distinct purchasers, markets, and margins. An award of both would not constitute "double-recovery."

The harm to Rockwell included, *inter alia*, lost sales of genuine, new, Rockwell products to Rockwell's ADs. Transcript (7/27/2023), 24:11-25:19. For example, when WiAutomation sells **counterfeit** or non-genuine Rockwell-branded products directly to consumers, Rockwell loses a sale of a genuine, new Rockwell product, **and** WiAutomation profits on its sale of the counterfeit on non-genuine product by a margin divorced from (and exceeding) Rockwell's lost profits. *Compare* PDX004.23, 25 *with* PTX-1949.15. By way of further example, Mr. Reed testified that Rockwell sells part "5069-L306" to its U.S. ADs for $█████. Transcript (7/27/2023), 25:20-26:6; PDX004.23. When WiAutomation sells a counterfeit product to a U.S. customer, Rockwell loses the amount for which it would have sold this product to a U.S. AD ($█████). *Id.*

But in this example, if the Court were to only award Rockwell its $█████ in lost profits, WiAutomation still pockets a much larger profit. WiAutomation sold

"counterfeit" Rockwell-branded "5069-L306" products for $2,195.00. PTX-1949.15; Transcript (7/25/2023), 334:20-342:12. While evidence at trial indicated profit margins of about ██% (PDX004.22), WiAutomation presented no evidence of its costs to acquire counterfeit products which would certainly present much higher margins. Therefore, for each "5069-L306" sale, WiAutomation enjoys its own profits that are divorced from and exceeding Rockwell's lost profits and margins. This underscores that there is no double recovery.

> b.   *WiAutomation's Willful Counterfeiting and Infringement Along with Its Failure to Produce Discovery Warrant the Full Disgorgement Amount.*

Allowing a willful counterfeiter and infringer like WiAutomation to profit would be a direct contravention of the Lanham Act, which embodies a "Congressional purpose of making infringement unprofitable." *Banjo Buddies*, 399 F.3d at 178.  Such a result is rightly discouraged under the law, as "the public has a great interest in making trademark infringement unprofitable." *CPC Props. v. Dominic, Inc*., 2013 U.S. Dist. LEXIS 145907, at *10 (E.D. Pa. Oct. 9, 2013); *Romag Fasteners, Inc. v. Fossil Grp., Inc*., 140 S. Ct. 1492, 1494 (2020) ("Without question, a defendant's state of mind may have a bearing on what relief a plaintiff should receive.").

Without increasing the jury's disgorgement remedy, WiAutomation would be rewarded for its willful infringement along with its numerous discovery

violations. Throughout discovery, including as recently as March 2023, Rockwell repeatedly requested invoices showing WiAutomation's U.S. sales of Rockwell products but received nothing. McLaughlin Decl., ¶7; Exhibit 1 (Requests for Production), Nos. 6, 7, 14, 27, 82, 88; D.I. 294-17, Ex. 15C, 4; D.I. 143. The Court sanctioned WiAutomation for failing to provide discovery. *See* D.I. 65 (awarding Rockwell attorneys' fees and costs); D.I. 306, 3-4 (again recognizing WiAutomation's failure to provide discovery). WiAutomation should not benefit because it "systematically obstructed the discovery process to prevent the [Rockwell] from gathering evidence regarding [WiAutomation's] sales and profits." *GTFM*, 215 F. Supp. 2d at 304. With minimal disgorgement, the message to other infringers and counterfeiters is clear: frustrate discovery and avoid penalty. Indeed, the Court has discretion to "enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. §1117(a); *Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 460-61 (S.D.N.Y. 2012) (holding that the court may award enhancement of defendant's profits to correct inadequacy of the award or for deterrence).

This same rationale supports the Court's instruction to the jury that if "the amount of gross revenue from WiAutomation's sales in the United States cannot be determined precisely due to a lack of records," it is appropriate to "resolv[e] all doubts against WiAutomation" due to the established "lack of records." D.I. 335,

34-35; *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2020 Del. Ch. LEXIS 76, at *53 (Del. Ch. Feb. 27, 2020) ("In accordance with public policy, Delaware courts place the burden of uncertainty where it belongs; so long as a plaintiff provides a reasonable method to calculate damages, the risk that such cannot be determined with mathematical certitude falls on the wrongdoer, not the wronged."). This evidentiary inference also makes logical sense, WiAutomation would have introduced these records if they were helpful to its case. *See Story Parchment Co. v. Paterson Parchment Paper Co*., 282 U.S. 555, 565 (1931) ("[A]n uncertainty caused by the defendant's own wrongful act; and justice and sound public policy alike require that he should bear the risk of the uncertainty thus produced."); *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 Del. Ch. LEXIS 15, at *88-89 (Del. Ch. Jan. 29, 2010); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004).

> **D.    Reasonable Attorneys' Fees and Costs Should be Awarded to Rockwell**

Rockwell moves for reasonable attorneys' fees and costs under §1117(a), 6 Del. C. 1953 §2533(b), Fed. R. Civ. P. 54(d)(2)(A), which grant courts the power to award such fees in exceptional cases.

Should the Court deny Rockwell's request for attorneys' fees and costs under §1117(a) and 6 Del. C. 1953 §2533(b), Rockwell requests the opportunity,

before entry of final judgment, to elect an award of attorneys' fees and costs under §1117(b).

      i.   <u>Exceptionality</u>

A "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. §1117(a); *see also* 6 Del. C. 1953 §2533(b). Here, the jury found WiAutomation liable as a willful infringer and counterfeiter and awarded punitive damages. D.I. 339. These facts strongly support a finding of exceptionality under both §1117(a) and the DDTPA.

WiAutomation further engaged in unreasonable litigation conduct, which also warrants a finding of exceptionality. WiAutomation put forth meritless arguments and claims, failed to meet its discovery obligations, disobeyed court orders, continuously made failed objections at trial, and abandoned affirmative defenses. *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 2023 U.S. Dist. LEXIS 97646, at *20-23 (S.D.N.Y. June 5, 2023) ("[C]ourts have not hesitated to find [the exceptionality] standard met . . . where a party found to have willfully infringed engages in unreasonable litigation practices" like maintaining claims "meritless and contrary to established law."); *Abbott Labs. v. H&H Wholesale Servs., Inc.*, 2022 U.S. Dist. LEXIS 232695, at *9-11, 42-44 (E.D.N.Y. Dec. 27, 2022) (considering "discovery misconduct" through "deliberate and strategic non-compliance with discovery, selective withholding of responsive documents, and

perjury as well as deceptive and evasive deposition testimony") (internal quotations omitted); *Experience Hendrix, L.L.C. v. Pitsicalis*, 2020 U.S. Dist. LEXIS 115075, at *44-45 (S.D.N.Y. July 1, 2020) (considering need for deterrence and "defendants' behavior during litigation, including disobeying court orders and refusing to participate in discovery"); *John Wiley & Sons, Inc. v. Book Dog Books*, LLC, 327 F. Supp. 3d 606, 643 (S.D.N.Y. 2018) (considering that defendants "violated the Court's Orders"); *Nakava, LLC v. S. PAC Elixir Co.*, 2022 U.S. Dist. LEXIS 218592, at *12-13 (S.D. Fla. Dec. 5, 2022), *R&R aff'd*, 2022 U.S. Dist. LEXIS 229868 (S.D. Fla. Dec. 20, 2022) (considering willful conduct and abandoned affirmative defenses at trial).

To determine whether a case is exceptional courts look at several factors, the most important of which is whether infringement was willful. *Acumed LLC v. Advanced Surgical Servs.*, 561 F.3d 199, 230 (3d. Cir. 2009) ("Exceptional cases involve culpable conduct on the part of the losing party, 'such as bad faith, fraud, malice, or ***knowing infringement***.'") (emphasis added); *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 48-49 (3d Cir. 1991) (In a gray market goods case, the court held that "evidence demonstrating bad faith," such as "willful[ness]" supports finding the case "exceptional."). Here, the jury found clear and convincing evidence that WiAutomation was liable as a willful infringer

and counterfeiter. D.I. 339, 1-2. This strongly supports finding that this case is exceptional.

In addition to finding willfulness, the jury also awarded punitive damages, meant to "punish [WiAutomation] for outrageous conduct . . . ." D.I. 335, 40-41; D.I. 339, 5. This further qualifies this case as exceptional. *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1111-12 (9th Cir. 1992) (holding district court was within its discretion to award attorneys' fees because the jury awarded punitive damages); *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 2008 U.S. Dist. LEXIS 140044, at *8 (M.D. Fla. Mar. 12, 2008) (same).

The jury's finding that WiAutomation's actions were willful and sufficiently "outrageous" to warrant punitive damages underscores this is an exceptional case and that an award of attorneys' fees is appropriate.

    ii.   <u>Reasonableness</u>

Rockwell seeks reasonable attorneys' fees and costs. Rockwell's attorneys' fees and costs in bringing this action through August 2023 were $3,922,209.70 and $495,068.92, respectively, for a total of $4,417,278.62. McLaughlin Decl., ¶3; Gattuso Decl., ¶3; Russell Decl., ¶3; *see also Dropbox, Inc. v. Thru Inc.*, 2017 WL 914273, at *5-6 (N.D. Cal. Mar. 8, 2017) ("[A]ttorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the 'prevailing party' as long as such costs are reasonably incurred."). These amounts

are calculated through August 2023, and Rockwell reserves the right to supplement to include fees and costs through final judgment. Rockwell will also produce more detailed billing records regarding its attorneys' fees and costs for *in camera* inspection, if required by the Court.

"The starting point in ascertaining a reasonable hourly rate is the attorney's usual billing rate, but this is not dispositive." *Maldonado v. Houstoun*, 256 F.3d 181, 184-85 (3d Cir. 2001) (internal quotations omitted). Here, Alston & Bird charged rates 31.9% less on average than would be typical for these types of matters. McLaughlin Decl., ¶4. Rockwell's Delaware local counsel also charged discounted rates in keeping with the market. Gattuso Decl., ¶¶4-5; Russell Decl., ¶¶4-5. Notably, their charged rates are in keeping with WiAutomation's Delaware attorneys. *See, e.g.*, *In re: Bestwall LLC*, 2018 WL 3496624 (Bankr. W.D.N.C. Feb. 9, 2018); *In re Southland Royalty Co. LLC*, 2020 WL 13571824 (Bankr. D. Del. Feb. 5, 2020). Accordingly, Rockwell's local counsel rates are also reasonable. *See Wi-Lan Inc. v. Sharp Elecs. Corp.*, 2022 U.S. Dist. LEXIS 75512, at *12 (D. Del. Apr. 25, 2022) (rejecting argument for a lower hourly rate stating that "the more appropriate hourly rates to apply are the actual rates paid by Defendants for Defendant's attorneys' work in defeating [plaintiff's] accusations).

Courts determining a reasonable amount of attorneys' fees generally use the "lodestar" approach, multiplying a reasonable hourly rate by the number of hours

reasonably spent. *Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). However, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

First, much of this case was specific to the Lanham Act and related claims, which required the specialized expertise of lawyers experienced in these cases, and even more specifically gray market trademark infringement cases. Accordingly, Rockwell's reliance on national counsel from Alston & Bird with experience in these issues was reasonable. Rockwell's local Delaware counsel were also required not only to satisfy the Court's Delaware counsel requirement but also to assist Rockwell in litigating the numerous discovery issues caused by Defendant as well as conducting a jury trial with Delaware jurors. Moreover, the average rates charged by Rockwell's specialized national counsel ($699.66), Delaware local counsel ($553.83), and Delaware trial counsel ($513.69) are reasonable given the market for attorneys with similar skill and experience. McLaughlin Decl., ¶¶3-7; Gattuso Decl., ¶¶3-5; Russell Decl., ¶¶3-5; *Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984); *see also Regeneron Pharms., Inc. v. Merus N.V.*, 2018 U.S. Dist. LEXIS 115661, at *4-5 (S.D.N.Y. June 25, 2018).

Second, the amount of time (6,069.1 hours) spent by Rockwell's attorneys on this two-year long litigation is also reasonable. McLaughlin Decl., ¶¶3-7. In

fact, the average fees for trademark infringement litigation through trial involving claims greater than $25M, as here, are over $7M. *Id*., ¶8; Exhibit 2, I-197, I-202. Although any Federal case culminating in a week-long jury trial involves a substantial baseline of hours to prepare and try, the discovery issues caused by WiAutomation's conduct in this case, discussed above, as well as the specialized nature of the claims further justify this amount of effort.

Finally, the costs incurred by Rockwell in litigating this case are also reasonable given the issues involved and include, for example, translation services for depositions and at trial, multiple discovery dispute conferences to address WiAutomation's discovery violations, expert witnesses, and a full jury trial.

## E.    Pre-Judgment and Post-Judgment Interest Should be Awarded to Rockwell

### i.    Pre-Judgment Interest

Pre-judgment interested is allowed under 15 U.S.C. §1117(b) or 28 U.S.C. §1961. *Luxottica Grp., S.p.A. v. Shore Enuff*, 2019 U.S. Dist. LEXIS 145357, at *20-21 (D.N.J. Aug. 27, 2019). "Section 1117(b), which applies to knowing and intentional use of a counterfeit mark, allows courts to also award, among other forms of relief, prejudgment interest." *Kars 4 Kids*, 8 F.4th at 225. "Thus, §1117(b), by providing for heightened monetary awards, reflects the fact that use of a counterfeit mark is the most blatant and egregious form of 'passing

off." *Georgia-Pacific Consumer Prods. LP v. Von Drehle Corp.*, 781 F.3d 710, 718 (4th Cir. 2015).

Courts regularly find that pre-judgment interest is warranted in exceptional cases. *Am. Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990) ("[Pre-judgment interest] is within the discretion of the trial court and is normally reserved for 'exceptional' cases."), *Luxottica*, 2019 U.S. Dist. LEXIS 145357 at *20-21 (same), *Kars 4 Kids Inc. v. Am. Can!*, 2020 U.S. Dist. LEXIS 224692, at *4 (D.N.J. Aug. 6, 2020) (same). Here, pre-judgment interest is warranted because the case is exceptional (§IV.D.i, *supra*) and it should apply to the enhanced compensatory damages award to Rockwell. *See* §IV.B, *supra*.

To determine pre-judgment interest, Rockwell seeks "5% over the Federal Reserve discount rate . . . as of the time from which interest is due." *W. R. Berkley Corp. v. Dunai*, 2022 U.S. Dist. LEXIS 226628, at *2 (D. Del. Dec. 16, 2022) (citing 6 Del. C. §2301(a)). Rockwell asked WiAutomation to cease-and-desist on July 18, 2018. *See* Transcript (7/25/2023), 260:4-262:12, 294:14-298:3, 473:7-13; PTX-1573. The discount rate then was 2.5%. Fed. Rsrv. Bank, Interest Rates, Discount Rate for United States, (available at https://fred.stlouisfed.org/series/INTDSRUSM193N). The pre-judgment interest rate is thus 7.5% (5% plus the discount rate).

Rockwell also seeks annually compounded interest as both parties are sophisticated. *W. R. Berkley*, 2022 U.S. Dist. LEXIS 226628, at *2 (exercising discretion to compound when both parties were financially sophisticated). Compound interest is computed using the formula: $A = P(1 + \frac{r}{n})^{nt}$. *Id* at *2-3.[3]

Time period *t* is years (as a fraction) from the cease-and-desist letter's date (July 18, 2018) to the issued judgment (August 14, 2023). Applying the formula results in compensatory damages with pre-judgment interest totaling $4,555,149.99.

$$A = 3,156,000(1 + \frac{0.075}{1})^{1(5+\frac{27}{365})} = \$4,555,149.99$$

Pre-judgment interest, therefore, is $1,399,149.99 (*i.e.*, $4,555,149.99-$3,156,000).

ii.   Post-Judgment Interest

As indicated in the judgment, Rockwell is entitled to post-judgment interest on the damages awarded pursuant to 28 U.S.C. §1961. D.I. 342, ¶8.

"Under 28 U.S.C. §1961(a), post-judgment interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." *SurgiQuest v. Lexion*

---

[3] *A*=total amount; *P*=initial principal; *r*=interest rate; *n*=number of times interest is compounded per period; *t*=number of periods (years). *Id.*

*Med., Inc.*, 2018 U.S. Dist. LEXIS 82323, at *35 (D. Del. May 16, 2018); *W. R. Berkley*, 2022 U.S. Dist. LEXIS 226628, at *3.

The weekly 1-year average for the calendar week preceding the date of judgment was 5.34% (08/07/2023-08/11/2023 average). Fed. Rsrv. Bank, Market Yield on U.S. Treasury Securities at 1-year Constant Maturity, Quoted on an Investment Basis, (available at https://fred.stlouisfed.org/series/DGS1). Post-judgment interest runs "to the date of payment." *W. R. Berkley*, 2022 U.S. Dist. LEXIS 226628, at *3.

The total damages amount, should the Court grant Rockwell's motion, is $33,734,361.78, comprising: $3,156,000 (enhanced compensatory damages); $2,000,000 (statutory damages); $1,000,000 (punitive damages); $21,761,933.17 (disgorgement); $1,399,149.99 (pre-judgment interest); $3,922,209.70 in attorneys' fees, and $495,068.92 in costs (attorneys' fees and costs).

Post-judgment interest will accrue on the $33,734,361.78 from August 14, 2023, at 5.34%, compounded annually, until payment. *W. R. Berkley*, 2022 U.S. Dist. LEXIS 226628, at *3. Post-judgment is calculated using the above compound interest formula to result in total damages, where *t* is years (as a decimal) from entry of judgment to payment.

$$A = \$33,734,361.78 \left(1 + \frac{.0534}{1}\right)^{1t}$$

For example, after one year WiAutomation would accrue $1,801,414.92 in interest, or approximately $4,935.38/day, for a total judgment of $35,535,776.70. This approximate daily rate and overall judgment would increase if interest is compounded further due to WiAutomation's payment after more than a year.

## V.   CONCLUSION

Rockwell respectfully requests for an award of $33,734,361.78 plus post-judgment interest, in an amount to be determined upon payment, as set forth above.

|  |  |
|---|---|
|  | */s/ Andrew E. Russell* |
|  | John W. Shaw (No. 3362) |
|  | Andrew E. Russell (No. 5382) |
|  | Emily S. DiBenedetto (No. 6779) |
|  | SHAW KELLER LLP |
|  | I.M. Pei Building |
|  | 1105 North Market Street, 12th Floor |
| OF COUNSEL: | Wilmington, DE 19801 |
| Paul Tanck | (302) 298-0700 |
| Neal J. McLaughlin | jshaw@shawkeller.com |
| Christopher L. McArdle | arussell@shawkeller.com |
| Andrew J. Ligotti | edibenedetto@shawkeller.com |
|  |  |
| ALSTON & BIRD LLP | *-and-* |
| 90 Park Avenue |  |
| New York, NY 10016 | Dominick T. Gattuso (No. 3630) |
| (212) 210-9400 | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
|  | 300 Delaware Avenue, Suite 200 |
| Matthew M. Welch | Wilmington, DE 19801 |
| ALSTON & BIRD LLP | (302) 472-7311 |
| One South at The Plaza | dgattuso@hegh.law |
| 101 South Tryon Street |  |
| Suite 4000 |  |
| Charlotte, NC 28280-4000 | *Attorneys for Rockwell Automation, Inc.* |
| (704) 444-1000 |  |

Joshua M. Weeks
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309-3424
(404) 881-7000

Dated: September 11, 2023

## <u>WORD COUNT CERTIFICATION</u>

The undersigned hereby certifies that Rockwell Automation, Inc.'s Opening Brief in Support of Post-Trial Motions contains 6,195 words (exclusive of the cover page, tables of contents, authorities, and exhibits, and signature block, in Times New Roman 14-point font, counted using Microsoft Word's word count feature.

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
edibenedetto@shawkeller.com

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew E. Russell, hereby certify that on September 11, 2023, this

document was served on the persons listed below in the manner indicated:

**<u>BY EMAIL</u>**

Pilar G. Kraman
Alexis N. Stombaugh
YOUNG, CONAWAY, STARGATT
 & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
astombaugh@ycst.com

Bob Kasolas
Eric J. Boden
Eric Alvarez
BRACH EICHLER, LLC
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-5700
bkasolas@bracheichler.com
eboden@bracheichler.com
ealvarez@bracheichler.com

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
edibenedetto@shawkeller.com

*-and-*

Dominick T. Gattuso (No. 3630)
HEYMAN ENERIO GATTUSO & HIRZEL
LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7311
dgattuso@hegh.law

*Attorneys for Rockwell Automation,
Inc.*