## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCKWELL AUTOMATION, INC.,<br><br>                              Plaintiff,<br><br>                    v.<br><br>PARCOP S.R.L. d/b/a WIAUTOMATION,<br><br>                              Defendant. | Civil Action No. 21-1238-GBW |

---

John W. Shaw, Andrew E. Russell, Emily S. DiBenedetto, SHAW KELLER LLP, Wilmington, Delaware; Dominick T. Gattuso, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; Paul Tanck, Christopher L. McArdle, Neal J. McLaughlin, Andrew J. Ligotti, ALSTON & BIRD LLP, New York, New York;  Matthew M. Welch, ALSTON & BIRD LLP, Charlotte, North Carolina; JOSHUA M. WEEKS, ALSTON & BIRD LLP, Atlanta, Georgia

*Counsel for Plaintiff*

Pilar G. Kraman, Alexis N. Stombaugh, Maiheh Zare, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Bob Kasolas, Eric J. Bodan, BRACH EICHLER, LLC, Roseland, New Jersey

*Counsel for Defendant*

## MEMORANDUM OPINION

June 4, 2024
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiff Rockwell Automation, Inc. ("Rockwell") filed this action against Defendant Parcop S.R.L. d/b/a WiAutomation ("WiAutomation"), alleging trademark infringement, counterfeiting, false advertising, false designation of origin, violations of Delaware's Deceptive Trade Practices Act, and common law unfair competition. D.I. 1. After a five-day trial, a jury returned a verdict for Rockwell on all claims except false advertising. D.I. 339. Pending before the Court are Defendant's motions for judgment as a matter of law, new trial, or remittitur (D.I. 344), and Plaintiff's motions for a permanent injunction, enhanced damages, disgorgement, attorneys' fees, and pre-judgment interest (D.I. 347).

The Court has reviewed the parties' briefing (D.I. 345; D.I. 348; D.I. 353; D.I. 355; D.I. 359; D.I. 360) and oral argument is not necessary (D.I. 361; D.I. 362). For the reasons explained below, the Court **DENIES** WiAutomation's motions for judgment as a matter of law and for a new trial, **GRANTS-IN-PART** WiAutomation's motion for remittitur, **GRANTS** Rockwell's motions for a permanent injunction and for treble damages, **GRANTS-IN-PART** Rockwell's motion for disgorgement of profits and **DENIES** Rockwell's motions for attorneys' fees and for pre-judgment interest.

## I.    WIAUTOMATION'S POST-TRIAL MOTIONS

### A. WiAutomation's Motion for Judgment as a Matter of Law is Denied.

Under Fed. R. Civ. P. 50(a), a grant of Judgment as a Matter of Law ("JMOL") is appropriate "where a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have had a legally sufficient evidentiary basis to find for the party

2

on that issue." *Idenix Pharms. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149, 1153–54 (Fed. Cir. 2019) (quoting *Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1341–42 (Fed. Cir. 2008)).

WiAutomation moves for JMOL on Rockwell's counterfeiting claims, arguing that Rockwell's case rested entirely upon unreliable testimony from Ryan Smaglik, and that all other evidence was inadmissible. D.I. 345 at 2-8.

First, the Court finds that the jury was entitled to rely on the testimony of Ryan Smaglik. WiAutomation cites several cases standing for the proposition that testimony concerning actual confusion by a party representative "must be viewed with skepticism because it tends to be biased or self-serving." *Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 122 (3d Cir. 2004); *see also A&H Sportswear, Inc. v. Victoria Secret's Stores, Inc.*, 237 F.3d 198, 227 (3d Cir. 2000) (appropriate to view plaintiff's representatives "with great skepticism, given the interested sources"); *Checkpoint Sys., Inc v. Check Point Software Techs., Inc.*, 269 F.3d 270, 298 (3d. Cir. 2001) ("the District Court properly took into account the potential bias of [plaintiff's] employees."). However, a grant of JMOL to overrule a jury verdict is a "sparingly invoked remedy," *MHL Custom, Inc. v. Waydoo USA, Inc.*, No. 21-0091-RGA, 2023 WL 5748755, at *1 (D. Del. Sept. 6, 2023), and WiAutomation only cites one case at the post-trial JMOL stage: *CareDx, Inc. v. Natera, Inc.*, 2023 WL 4561059, at *4 (D. Del. July 17, 2023). In *CareDx*, Chief Judge Connolly granted a post-trial JMOL motion when the Plaintiff's only evidence of confusion was the vague and conclusory statement by party representatives that they were receiving complaints. 2023 WL 4561059 at *4. Smaglik's testimony of personally investigating a product and determining that Rockwell "did not make a [product] with that serial number," *inter alia*, is significantly more reliable than a generalized and conclusory statement that actual confusion existed. July 25 Tr. at 338:7-11. The jury was aware of Smaglik's potential bias and ultimately

3

found that the bias did not discredit him as a witness.  July 25 Tr. at 274:5-6, 292:12-16.  The jury's decision was not unreasonable, and does not merit JMOL.

Second, Rockwell introduced significant evidence of counterfeiting other than Smaglik's testimony.  Evidence supporting the jury's verdict of counterfeiting includes (1) physical counterfeit products, including WiAutomation invoices and shipping inscriptions (PPX-002; PTX-1949; July 25 Tr. at 332:22-343:17, 366:21-24); (2) emails, introduced by WiAutomation, with photographs of WiAutomation selling counterfeit Rockwell-branded products to United States customers (DTX-11; July 25 Tr. at 461:1-462:14); (3) the admission of WiAutomation that it had one shared pool of Rockwell inventory for the United States and foreign customers (July 25 Tr. at 192:25-193:7; July 26 Tr. at 45:19-21); and (4) evidence that Rockwell-branded products from this shared pool were counterfeit (PTX-1645; PTX-1649; PPX-003; PTX-1842; PTX-1847).  Based on this evidence, there was sufficient evidence to support the jury's conclusion that WiAutomation made counterfeit sales in the United States.

Rockwell argues that the Court erred in finding PTX-1949 and PPX-0002 admissible and authenticated under Fed. R. Evid. 901(b)(4).  The burden for authentication is "slight."  *Link v. MercedesBenz of N. Am., Inc.*, 788 F.2d 918, 927-28 (3d Cir. 1986) (requiring only a "foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be").  Trade inscriptions "purporting to have been affixed in the course of business and indicating origin, ownership, or control" are self-authenticating.  Fed. R. Evid. 902(7).  Ryan Smaglik testified, *inter alia*, that he directed test purchases to be made, that he received confirmation the test purchases were made, that he received photographs of the purchases, packaging materials, and shipping labels matching the exhibits, and that the serial numbers of the products in photographs matched that of the physical products in the boxes.  July 25 Tr. at 301:16-

303:8, 304:7-305:5, 333:22-341:15. This testimony was sufficient for authentication, and the chain of control issue that WiAutomation identifies goes to the weight of evidence. While WiAutomation argues that the "dubious circumstances" surrounding this evidence render it inadmissible under Fed. R. Evid. 901(b)(4), that a separate Rockwell witness had submitted an inaccurate declaration (asserting that he had made the test purchases, when it was an agent acting on his behalf, *see* D.I. 265) did not render the evidence so unreliable as to prevent authentication. *Cf. Wi-Lan v. Sharp Elecs. Corp.*, 362 F. Supp. 3d 226, 233 (D. Del. 2019). WiAutomation also argues that one of the test purchases cannot be traced to WiAutomation because Mr. Smaglik testified it was a high run product. D.I. 345 at 5. However, the product's presence on a WiAutomation invoice, when combined with the fact that the same package contained software traceable directly to WiAutomation through Sy.El, provides sufficient basis to authenticate the test purchase. PPX-002; PTX-1949.12-13; July 25 Tr. at 335:10-357:21, 439:1-444:14. Thus, the Court did not err in permitting Smaglik to authenticate the test purchases, to the extent that they were not self-authenticating under Fed. R. Evid. 902(7). The jury therefore had sufficient evidence to find that WiAutomation had engaged in counterfeiting. Thus, WiAutomation's JMOL motion is denied as to counterfeiting.[1]

WiAutomation also moves for JMOL on willfulness, arguing that Rockwell's evidence of two United States sales in one month was insufficient to find that WiAutomation willfully sold counterfeited products. However, WiAutomation never raised willfulness in its rule 50(a) motion, so it has waived its separate willfulness argument. Fed. R. Civ. P. 50(b); July 27 Tr. at 129:25-

---

[1] WiAutomation argues that entry of JMOL on counterfeiting would necessitate entry of JMOL on all other claims. D.I. 360 at 4-5. However, because the Court denies WiAutomation's JMOL motion as to counterfeiting, the Court also denies WiAutomation's JMOL motion as to the parallel state and Lanham Act claims.

135:7. A party's Rule 50(a) motion must be "sufficiently specific to afford the party against whom the motion is directed with an opportunity to cure possible defects in proof which otherwise might make its case legally insufficient." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1172 (3d Cir. 1993). WiAutomation argues that its Rule 50(a) motion, which argued that Rockwell failed to show counterfeiting altogether, notified Rockwell of WiAutomation's position that Rockwell failed to show willful counterfeiting. D.I. 360 at 4. WiAutomation's willfulness position, however, relies on inadequacy of notice, which is a separate component of willfulness that WiAutomation did not raise in its Rule 50(a) motion. *Id.* ("[T]he vague claims in the Complaint that merely regurgitated full portions of the Lanham Act upon information and belief failed to give WiAutomation sufficient notice . . ."). Thus, Rockwell was not put on notice of WiAutomation's willfulness position by a general JMOL of no counterfeiting, and WiAutomation's JMOL was waived as to willfulness.

## B.  WiAutomation's Motion for a New Trial is Denied.

WiAutomation moves for a new trial on the grounds that the Court erred in admitting evidence from test purchases and that the Court erred by allowing Christoph Bank to testify beyond his personal knowledge.[2] D.I. 345 at 9-12.

Where the Court identifies an incorrect evidentiary ruling, it must grant a new trial "unless it was highly probable 'that the error did not affect any substantial rights.'" *Reynolds v. Univ. of*

---

[2] In its initial motion, WiAutomation also argued that a new trial was justified because the Court erred by admitting evidence of foreign sales, that various portions of the Court's jury instructions were incorrect, and that WiAutomation was sandbagged as to Rockwell's counterfeiting theories. D.I. 345 at 12-18. WiAutomation has dropped these arguments in its reply brief, D.I. 360, so it has "implicitly conceded those points." *Progressive Sterilization, LLC v. Turbett Surgical LLC*, No. CV 19-627-CFC, 2020 WL 3071951, at *2 (D. Del. June 10, 2020). The Court denies WiAutomation's motion for a new trial on the ground that the Court improperly admitted evidence of WiAutomation's foreign conduct for the same reasons as it has previously. D.I. 312; D.I. 321.

*Pa.*, 483 F.App'x 726, 730 (3d Cir. 2012) (quoting *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 189 (3d Cir. 1990)).

WiAutomation argues that the Court erred in admitting evidence of test purchases (e.g. PPX-0001, PPX-0002, PTX-1949). The Court has already found that it did not err with respect to the test purchase evidence, because Ryan Smaglik could authenticate the evidence with his personal knowledge, to the extent that the packages were not self-authenticating. *See* Section I.A, *supra*. Thus, WiAutomation's motion for a new trial on this ground is denied for the same reasons as its motion for JMOL on this ground.

WiAutomation also argues that the Court erred by overruling its objections to the testimony of Christoph Bank. July 24 Tr. at 5:6-6:1, 198:6-203:14, 214:22-215:14. Bank testified that he forwarded photographs (PTX-1771; PTX-1772; PTX-1773; PTX-1774; PTX-1775; PTX-1776) to Rockwell's internal investigation team to check the serial number. July 24 Tr. at 217:4-8. He then testified that he told a Synegon representative that "the labels we checked are counterfeit." *Id.* at 222:12-17. However, this is not hearsay, since Bank was testifying as to his personal knowledge of his actions (forwarding photographs, e.g.), and the evidence is not being offered for the truth of the matter asserted. Bank's testimony was admissible to show that Rockwell investigated the products, *id.* at 210:2-215:19, and to show that Rockwell informed its customer that the products

---

With respect to the purported jury instruction errors, the Court finds that WiAutomation waived its arguments, and fails to meet the plain error standard as any error was harmless. *See* D.I. 353 at 16-18. With respect to WiAutomation's argument that it was blindsided by Rockwell's assertion of a counterfeiting theory, the Court notes that Count I of the complaint mentions counterfeiting, D.I. 1 ¶ 146, and that Rockwell responded to Interrogatories No. 3 and 19 by incorporating an expert report that repeatedly discusses counterfeiting. *See* D.I. 346-1, at 9-11, 40-42. Counterfeiting was in summary judgment briefing, the pretrial order, and the proposed verdict form. D.I. 145 at 13-17, D.I. 308 at 5-35. Thus, WiAutomation was not blindsided, and had a fair opportunity to present its defenses.

were counterfeit, *id.* at 210:2-215:19; 223:6-14.   Thus, the Court did not err by permitting Christoph Bank to testify.

Even if the Court did err, any error was harmless, as Rockwell introduced significant other counterfeiting evidence at trial, including the testimony of Ryan Smaglik and physical evidence of counterfeiting. *See, e.g.*, Section I.A, *supra*; July 25. Tr. at 289:2-343:17, 357:3-21, 448:4-449:4, 490:14-491:22; PPX-002; PTX-1949.

### C.  WiAutomation's Motion for Remittitur is Granted-in-Part.

WiAutomation moves for remittitur on the grounds that (1) Rockwell must elect either statutory or compensatory damages; (2) Rockwell may not recover both statutory and punitive damages; (3) the award of statutory damages is excessive; and (4) the award of compensatory damages is excessive.   Remittitur under Fed. R. Civ. P. 59(e) is a "device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 715 (3d Cir. 2010).   There "must be a rational relationship between the specific injury sustained and the amount awarded." *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987).   However, the determination of damages awards by the jury is "entitled to great deference." *Dee v. Borough of Dunmore*, 474 F. App'x 85, 87 (3d Cir. 2012).

WiAutomation argues that Rockwell must elect either statutory or compensatory damages. *See* 115 U.S.C. § 1117(c) ("In a case involving the use of a counterfeit mark . . . the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use . . . ."). "The Lanham Act provides two alternatives for calculating damages: either an award subject to principles of equity that turns on evidence of the defendant's sales and profits or, alternatively, statutory damages . . . the choice between these awards is at the plaintiff's election." *Covertech*

*Fabricating, Inc. v. TVM Bldg. Prod., Inc.*, 855 F.3d 163, 176 (3d Cir. 2017). However, when a defendant has committed two separate violations it is appropriate to award both compensatory and statutory damages, as long as the awards do not constitute a double recovery. *See Fineman v. Armstrong World Indus.*, Inc., 980 F.2d 171, 218 (3d Cir. 1992) (declining to permit a "plaintiff whose case concerns a single course of conduct" and "a single injury" to "recover those profits twice or thrice over for each legal theory advanced in favor of liability."). At trial, Rockwell presented evidence of gray market trademark infringement, unfair competition, deceptive trade practices, and false designation of origin that would not constitute counterfeit sales. *See, e.g.*, July 25 Tr., 301:16-316:7; PPX-001; PTX-1948 (evidence of a WiAutomation sale of old Rockwell parts to a purchaser who requested new Rockwell parts). Because Rockwell presented evidence of two different courses of conduct and injuries, Rockwell may receive statutory damages for the counterfeit sales, and compensatory damages for the non-counterfeit sales.

WiAutomation argues that Rockwell may not receive statutory damages for willfulness and punitive damages under state law.[3] The Lanham Act provides for two levels of statutory damages for counterfeit marks: an award of up to $200,000 per counterfeit mark per type of goods sold, or an award of up to $2,000,000 per counterfeit mark, if the Court finds that "the use of the counterfeit mark was willful." 15 U.S.C. § 117(c). The jury in this case awarded statutory damages of $2,000,000, seven times WiAutomation's profits. The jury also awarded punitive damages under state law claims. Awarding both willful statutory damages under the Lanham Act and punitive damages under the parallel state law claims "would be cumulative since statutory damages awards under the Lanham Act are already intended to take into account the goals of deterrence and

---

[3] Rockwell argues that WiAutomation has waived this argument by failing to object at the time of jury instructions. However, the election of remedies is on Rockwell, not the jury, see 15 U.S.C. § 1117(c), so this is an appropriate time for WiAutomation to object.

punishment." *Church & Dwight Co. v. Kaloti Enters. of Mich.*, 697 F. Supp. 2d 287, 293 (E.D.N.Y. 2009); *but see Johnson & Johnson v. Guilin Chung Fai Biotech Co.*, 2018 WL 2078233, at \*12-14 (E.D.N.Y. Jan. 16, 2018), *report and recommendation adopted* (Mar. 6, 2018) (permitting punitive damages under state law and willful statutory damages under the Lanham Act when the defendant sold millions of counterfeit glucose test strips, and describing the conduct as especially egregious). In the circumstances of this case, WiAutomation's conduct was not so egregious as to merit departing from the general principle that the receipt of damages for willful counterfeiting is duplicative of state law punitive damages. Thus, the Court will grant WiAutomation's motion for remittitur with respect to the election between statutory damages for counterfeiting and state law punitive damages.

WiAutomation argues that the jury's award of statutory damages is excessive. While statutory damages have punitive and deterrence aspects, they should "bear some discernable relation to the actual damages suffered." *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 687 (D.N.J. 2015). The jury heard evidence that Rockwell had sent multiple letters to WiAutomation demanding that WiAutomation stop its infringement, and evidence that WiAutomation continued to send out counterfeit Rockwell products just weeks before trial. PTX-1573; PTX-1574; PTX-1575; PTX-1842; PTX-1847; PPX-003; July 24 Tr. at 192:25-193:7, 215:22-217:24; July 25 Tr. at 344:8-347:6, 349:18-350:10, 351:10-354:2, 473:7-479:10; July 26 Tr. at 45:19-21. There was substantial evidence to support the jury's statutory damages verdict, so the jury verdict was not clearly unsupported or excessive.

Similarly, WiAutomation argues that the jury's award of compensatory damages is unsupported and excessive. Rockwell's damages expert testified that Rockwell's lost profits were $11.56 million. July 27 Tr. at 24:11-29:2, 36:8-13. He further testified that Rockwell spent more

than $1 million per year policing infringing conduct, that there was harm to Rockwell's goodwill, and that there was price erosion. *Id.* at 29:20-30:11, 31:17-32:3, 48:20-50:19. This evidence is sufficient to support the jury's $1.052 million compensatory damages award. While WiAutomation argues that the compensatory damages award is excessively larger than WiAutomation's own profits, WiAutomation ignores that the measure of damages here is the lost profits to Rockwell, not the amount of profits that WiAutomation itself received. *See* 15 U.S.C. § 1117(a) ("damages sustained by the plaintiff."). There was sufficient evidence in the record to support the jury's compensatory damages verdict.

Thus, the Court grants WiAutomation's motion for remittitur only to the extent it requires Rockwell to choose between statutory damages and state law punitive damages. The remainder of the jury's verdict is supported by substantial evidence and the Court declines to remit it.

## II.    ROCKWELL'S POST-TRIAL MOTIONS

### A. Rockwell's Motion for a Permanent Injunction is Granted.

Rockwell moves for a permanent injunction. A plaintiff seeking a permanent injunction must demonstrate that: (1) it suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) a remedy in equity is warranted considering the balance of hardships; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

WiAutomation does not contest that a permanent injunction should be entered, but only the scope of that injunction. D.I. 355 at 18-20. Where Rockwell proposes an injunction that bars WiAutomation from selling infringing or counterfeit Rockwell products, WiAutomation proposes an injunction that "bars the sale of counterfeit goods, and that requires disclosures on

11

WiAutomation's website clearly reporting that WiAutomation is not a Rockwell authorized distributor." D.I. 355 at 19.

Disclaimers are disfavored in trademark law, as "the consumer is then faced with two contradictory messages: the infringing trademark says that this product comes from source Alpha - the disclaimer says we have no connection with Alpha." 3 McCarthy on Trademarks and Unfair Competition § 23:51 (5th ed.). The Third Circuit has held that "there is a great likelihood of confusion when an infringer uses the exact trademark," that "[p]rotection of infringers is not a purpose of the Lanham Act" and that "the avoidance of confusion to the infringer's interest cannot support an order permitting the continued use of the trademark even if it is . . . accompanied by a disclaimer of affiliation with the trademark owner." *United States Jaycees v. Philadelphia Jaycees,* 639 F.2d 134, 142 (3d Cir. 1981). Courts, including in the Third Circuit, have placed the burden of demonstrating that that a disclaimer would prevent confusion on the infringer, rather than the mark owner. *Liquid Glass Enters. v. Dr. Ing. h.c.F. Porsche AG*, 8 F. Supp. 2d 398, 405 n.5 (D.N.J. 1998) (citing *Home Box Office, Inc. v. Showtime/Movie Channel, Inc.,* 832 F.2d 1311, 1315-16 (2d Cir.1987)); *see also Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1243 (10th Cir. 2006); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 (9th Cir. 2011); *CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 595 (6th Cir. 2015). WiAutomation has provided no evidence that a disclaimer would be effective. *See generally* D.I. 355.

In the circumstances of this case, the Court finds that a disclaimer would be ineffective. The Court's finding is bolstered by the evidence that WiAutomation violated an earlier agreement to use a disclaimer on its website. PTX-1575.2; PTX-1574.1; July 25 Tr. at 317:8-10; PTX-1905.1. Moreover, WiAutomation's proposed relief would be extremely difficult to police— WiAutomation has admitted it cannot verify whether products it sells are counterfeit. July 24 Tr.

at 194:18-196:6.  While injunctions must be "no more burdensome to the defendant than necessary to provide complete relief to plaintiffs," in the circumstances of this case the Court finds that an injunction on infringing products is necessary to provide Rockwell with complete relief.  *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 206 (3d Cir. 2014).  Thus, the Court will grant a permanent injunction preventing WiAutomation from selling infringing or counterfeit products.

### B.  Rockwell's Motion for Treble Damages is Granted.

Rockwell moves for treble damages under a combination of 6 Del. C. § 2533(c), 15 U.S.C. § 1117(a), and 15 U.S.C. § 1117(b).  The jury found WiAutomation liable for unfair competition, and the court instructed the jury that damages for unfair competition should be included in the compensatory damages calculation.  D.I. 335 at 31, 38.  The Delaware Deceptive Trade Practices Act (DDTPA) provides that damages shall be trebled "if damages are awarded to the aggrieved party under the common law or other statutes of this state."  6 Del. C. § 2533(c).  The Lanham Act provides that the Court may "enter judgment . . . for any sum above the amount found as actual damages, not exceeding three times such amount."  15 U.S.C. § 1117(a).  "[W]illful infringement is central" but "not itself enough to justify an enhanced award."  *Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 224, n.22 (3d Cir. 2021).  WiAutomation never addresses Rockwell's § 1117(a) request to treble the actual damages award but argues that permitting enhanced damages under the DDTPA would be duplicative.  *See* D.I. 355 at 16-18.  Enhanced damages are proper under § 1117(a) given the volume of evidence supporting a finding of willfulness, and the extent of the actual harm done to Rockwell.  *See* PDX004.33-34; July 2 Tr. at 24:11-30:6, 31:7-32:3, 36:8-13.  Rockwell would not be adequately compensated without enhanced damages.  Thus, because the compensatory damages verdict includes damages for deceptive trade practices (which must be

trebled), and damages for trademark infringement (which the Court in its discretion trebles), the compensatory damages verdict is trebled. Because "Rockwell only seeks treble damages under § 1117(b)'s mandatory provision if the Court denies the DDTPA and § 1117(a) requests," Rockwell's request under § 1117(b) is denied as moot. D.I. 359 at 4.

### C.  Rockwell's Motion for Disgorgement is Granted-in-Part.

The Lanham Act provides that Rockwell "shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The jury determined that disgorgement was appropriate, but awarded only $288,800. Rockwell argues that the Court should require WiAutomation to disgorge $21,761,933.17, arguing that this larger number more accurately reflects the true profits WiAutomation received by infringing. WiAutomation argues that disgorgement is entirely inappropriate, and that Rockwell's calculation in support of disgorgement is inaccurate. The Court finds that disgorgement is appropriate, but in a lower amount than that sought by Rockwell.

The Third Circuit has set out six factors to determine whether disgorgement is appropriate: (i) whether the defendant intended to confuse or deceive consumers; (ii) whether sales were diverted; (iii) adequacy of other remedies; (iv) any delay by the plaintiff in asserting its rights; (v) any public interest in punishing the alleged misconduct; and (vi) whether it is a case of palming off. *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir. 2005). The jury's finding of willfulness means that the first factor weighs in favor of disgorgement. *Id.* at 177-78. The second factor weighs in favor of disgorgement—the record is replete with evidence that WiAutomation's customers were in the market for Rockwell's products, and that sales were diverted. July 25 Tr. at 300:8-310:1, 310:23-313:5, 313:18-314:17, 316:9-318:15, 319:24-320:17, 333:22-343:17, 357:4- 360:10, 361:9-25, 475:8-14, 475:23-476:7, 490:14-491:22; PPX-001; PPX-002; PTX-

1948; PTX-1949; DTX-11. There is evidence that WiAutomation's actions harmed Rockwell's reputation, which is hard to quantify. July 27 Tr. at 29:3-32:3, 46:1-18, 48:6-9, 50:9-51:1; PTX-1857.10; *World Ent. Inc. v. Brown*, 487 Fed. Appx. 758, 762 (3d Cir. 2012). On the fourth factor, while Rockwell knew since July 2018 that WiAutomation was selling Rockwell products without a Rockwell warranty, customer service, and product recall notices, PTX-1573, and waited until August 2021 to file suit, D.I. 1, Rockwell notified WiAutomation promptly and reasonably relied on WiAutomation's representations that it had stopped infringing. July 25 Tr. at 298:8-299:11, 318:2-6; PTX-1574. Thus, the fourth factor weighs in favor of disgorgement. The public has an interest in preventing WiAutomation from profiting off of conduct that confuses purchasers, so the fifth factor weighs in favor of disgorgement. *See Banjo Buddies*, 399 F.3d at 176. The sixth factor weighs in favor of disgorgement, as the jury found that WiAutomation was selling counterfeit goods as genuine new Rockwell products. *See* July 25 Tr, 302:21-316:8. Thus, all factors weigh in favor of disgorging profits.

Rockwell arrives at its sought disgorgement figure by the following calculation. First, Mr. Reed (Rockwell's damages expert) determined WiAutomation's total sales revenue from 2018-2020 based on Italian tax returns (€81,238, €459,823, and €3,574,533). PTX-1925; PTX-1925. For 2021-2023 revenue, WiAutomation did not provide any tax returns, so Mr. Reed relied on a presentation by Flame Networks, WiAutomation's web-hosting partner. July 27 Tr. at 12:13-13:16, July 26. Tr. at 122:2-14; PDX004. Using the Flame Networks presentation, Mr. Reed calculated revenue totaling €168,941,061. *Id.*

WiAutomation argues that the calculations relying on the Flame Networks data are inherently unreliable, because "Flame had an incentive to inflate WiAutomation's profits," and "Rockwell made no effort to verify with Flame that its presentation was accurate." D.I. 355 at 9.

However, the Flame Networks data is consistent with the reliable tax returns data, lending it credibility. July 27 Tr. at 18:14-25; 19:1-18; PDX004. Moreover, the Flame Networks data source is listed as WiAutomation, and WiAutomation's CEO testified to the strong relationship between WiAutomation and Flame Networks. July 27 Tr. at 19:1-18; July 26 Tr. at 103:16-104:1. The Flame Networks presentation also has internal indicia of reliability, with "information about orders, about revenue, about traffic." July 27 Tr. at 40:24-41:6. Moreover, the data is consistent with the known exponential growth of WiAutomation during this period. July 26 Tr. at 116:15-117:3; July 27 Tr. at 18:14-19:18, 38:3-7, 42:21-43:13, 44:25. The evidence from trial supports the use of the Flame Networks data to calculate WiAutomation's total revenue.

Mr. Reed, having calculated WiAutomation's global revenue, proceeded to calculate the percentage of that revenue attributable to Rockwell-branded products sold in the United States. July 27 Tr. at 19:19-24:10. Mr. Reed used an ARC Advisory Group report to find that Rockwell had a 21.5% market share on a worldwide basis. PTX-1767.15; July 27 Tr. at 21:19-22:11. Mr. Reed argued that WiAutomation's share of product sales by brand would be similar because WiAutomation sells the same brands globally. He then assumed that, because 57% of Rockwell's demand is in the United States, 57% of WiAutomation's Rockwell-branded sales are in the United States. July 27 Tr. at 71:20-71:14; 56:1-57:6; PTX-1767.45. This calculation is transparently flawed. WiAutomation lacks any physical presence in the United States, whereas Rockwell has an authorized distributor footprint in all 50 states. July 27 Tr. at 116:2-117:13. Only 18-19% of WiAutomation's website traffic is in the United States. July 27 Tr. at 117:14-119:22. The website data had a ~93% correlation for Rockwell's sales, and there is little reason to think it is that different for WiAutomation's sales. *Id.* at 118:2-119:8. While Mr. Reed testified that the web traffic data was based on a free public version of the data, and that the full paid version of the data

is "completely consistent" with his analysis, the Court remains highly skeptical that 57% of WiAutomation's Rockwell-branded sales were in the United States. *Id.* at 36:14-37:3. Instead, the Court finds that an estimation that 20% of WiAutomation's Rockwell-branded sales were in the United States would more accurately reflect the record.

Mr. Reed then deducted costs in the amount of €55,751. July 27 Tr. at 23:12-22. The burden is on WiAutomation to identify with specificity any costs or deductions it claims. *See* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). However, if a defendant fails to produce evidence of costs, the Court should "use an alternative method to estimate [the defendant]'s profits." *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 177 (3d Cir. 2005). The Court does not believe that WiAutomation received a profit margin of 99.7% (as Mr. Reed's result would suggest). Such a figure would be punitive, rather than compensatory, and would thus be in violation of the Lanham Act. 15 U.S.C. § 1117(a). Rockwell itself admits that "evidence at trial indicated profit margins of about 48%." D.I. 348 at 19. Keeping in mind that the burden was on WiAutomation to prove costs, the Court will apply a profit margin of 50% when calculating disgorgement.

The final disgorgement calculation is thus €168,941,061 (WiAutomation's global revenue)*21.5% (percent of WiAutomation's global revenue attributable to Rockwell-branded products)*20% (share of WiAutomation's Rockwell-branded products sold in the United States)*50% (profit margin)*1.0538 = $3,827,646.94. *See* PDX004.19, 31, 34.

### D. Rockwell's Motion for Attorneys' Fees and Costs is Denied.

The "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a); *see* 6 Del. C. 1953 § 2533(b). A "district court may find a case

'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014) (incorporating the *Octane Fitness* framework from the patent context); *see Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Whether a case is exceptional is a question committed to the Court's discretion, and the Court must consider the totality of the circumstances in reaching its conclusion. *Octane Fitness*, 572 U.S. at 554. A party seeking attorneys' fees must show the case is exceptional by a preponderance of the evidence. *Id.* at 557-58. The Court may award attorneys' fees in "the rare case in which a party's unreasonable conduct – while not necessarily independently sanctionable – is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 555. That a defendant's infringement is found to be willful does not automatically result in an exceptional case finding. *See Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016) ("Though we uphold the district court's willfulness determination, it does not necessarily follow that the case is exceptional."). The Court must instead examine the totality of the circumstances to evaluate whether the strength of the defendant's litigation positions was unusually weak compared to the plaintiff's, as well as whether the defendant litigated in the present case in an unreasonable manner. *See Fair Wind*, 764 F.3d at 315.

Rockwell argues that WiAutomation "put forth meritless arguments and claims." D.I. 348 at 22. However, WiAutomation won summary judgment against Rockwell's unjust enrichment claim, defeated Rockwell's summary judgment claim, and prevailed on Rockwell's false advertising claim at trial while discrediting Rockwell's damages calculations. D.I. 304; D.I. 339. Rockwell argues that WiAutomation "raised meritless objections causing needless sidebars" but

does not identify these purportedly meritless objections with specificity. D.I. 359 at 11. Indeed, WiAutomation successfully objected to the testimony of Rockwell's private investigator and Rockwell's database evidence. July 24 Tr. at 204:1-205:2, 218:5-221:13. The Court finds that WiAutomation's case was not unusually weak compared to Rockwell's.

Rockwell also argues that WiAutomation "failed to meet its discovery obligations" and "disobeyed court orders." D.I. 348 at 22. While WiAutomation was sanctioned in this litigation, this sanction was because WiAutomation provided interrogatory responses less than two weeks late. D.I. 64. Rockwell's arguments that WiAutomation failed to comply with the Court's orders has been considered and rejected by the Court already. *See* D.I. 143; D.I. 368; D.I. 278. Moreover, Rockwell has its own set of discovery violations that resulted in sanctions. *See* D.I. 265. Under the circumstances of this case, the Court does not find that WiAutomation's litigation conduct warrants an award of attorneys' fees.

### E. Rockwell's Motion for Pre-Judgment Interest is Denied.

Rockwell claims it should receive pre-judgment interest under either 15 U.S.C. § 1117(b) or 28 U.S.C. § 1961. Pre-judgment interest is available under 15 U.S.C. § 1117(b) if the Court finds that the defendant "intentionally us[ed] a mark . . . knowing such mark . . . is a counterfeit." Rockwell in its opening brief does not identify any evidence that WiAutomation knew the counterfeit marks were counterfeit or was willfully blind to counterfeit marks. *See generally* D.I. 348. In its reply brief, Rockwell only suggests that the Court should exercise its discretion "[s]eparate from 15 U.S.C. § 1117," effectively conceding that it has failed to demonstrate a necessary element to be entitled to pre-judgment interest under 15 U.S.C. § 1117(b). However, the Third Circuit has barred the awarding of pre-judgment interest in Lanham Act cases other than

under § 1117(b). *Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 225 & n.24 (3d Cir. 2021). Thus, the Court denies Rockwell's motion for pre-judgment interest.

### III.    CONCLUSION

For the reasons set forth above, the Court **DENIES** WiAutomation's motions for judgment as a matter of law and for a new trial, **GRANTS-IN-PART** WiAutomation's motion for remittitur, **GRANTS** Rockwell's motions for a permanent injunction and for treble damages, **GRANTS-IN-PART** Rockwell's motion for disgorgement of profits and **DENIES** Rockwell's motions for attorneys' fees and for pre-judgment interest. The Court will issue an order consistent with this opinion.

20